UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BINH THAN IMPORT EXPORT PRODUCTION & TRADE JOINT STOCK CO., d/b/a GILIMEX, INC., | Case No.:  1:23-cv-00292-LGS |
| Plaintiff, | |
| -against- | |
| AMAZON.COM SERVICES, LLC, d/b/a AMAZON ROBOTICS, | |
| Defendant. | |

## MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

Alan B. Howard
Adam R. Mandelsberg
Margaret W. Meyers
Evelyn Y. Pang
1155 Avenue of the Americas, 22nd Floor
New York, New York 10036-2711
Tel: 212.262.6900
Fax: 212.977.1649
AHoward@perkinscoie.com

*Attorneys for Defendant Amazon.com Services LLC*

February 24, 2023

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 2

      A.     Amazon's Purchases of Pods from Gilimex ......................................................... 2

      B.     The Component Sale and Purchase Agreement .................................................. 2

      C.     The Decline in Amazon's Demand for Pods ....................................................... 3

      D.     The Present Lawsuit ............................................................................................ 4

LEGAL STANDARDS ....................................................................................................... 6

ARGUMENT ...................................................................................................................... 7

I.      The Component Sale And Purchase Agreement Is An Enforceable Contract That Governs The Parties' Entire Economic Relationship. ................................................... 7

II.     New York Law Governs This Dispute ........................................................................ 10

III.    Gilimex Fails To State A Claim For Negligent Misrepresentation (First Cause Of Action). ...................................................................................................................... 11

IV.    Gilimex Fails To State A Claim For Unfair Trade Practices (Second Cause Of Action). ...................................................................................................................... 14

V.     Gilimex Fails To State A Claim For Breach Of Contract (Third Cause Of Action). ... 16

VI.    Gilimex Fails To State A Claim For Breach Of Fiduciary Duty (Fourth Cause Of Action). ...................................................................................................................... 21

CONCLUSION ................................................................................................................. 23

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*,
  404 F.3d 566 (2d Cir. 2005)........................................................................................11, 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................................................6

*ATSI Commc'ns, Inc. v. Shaar Fund Ltd.*,
  493 F.3d 87 (2d Cir. 2007)...................................................................................................6

*Boccardi Cap. Sys., Inc. v. D.E. Shaw Laminar Portfolios, L.L.C.*,
  No. 05-cv-6882 (GBD), 2009 WL 362118 (S.D.N.Y. Feb. 9, 2009), *aff'd*, 355
  F. App'x 516 (2d Cir. 2009) ..............................................................................................19

*Career Partners, Inc. v. Brady*,
  No. 652451/2019, 2020 WL 149606 (N.Y. Sup. Ct., N.Y. Cty. Jan. 13, 2020) .....................10

*CIBC Bank & Trust Co. (Cayman) Ltd. v. Credit Lyonnais*,
  270 A.D.2d 138 (1st Dep't 2000) .......................................................................................21

*Coll v. PB Diagnostic Sys., Inc.*,
  50 F.3d 1115 (1st Cir. 1995)................................................................................................8

*Dallas Aerospace, Inc. v. CIS Air Corp.*,
  352 F.3d 775 (2d Cir. 2003)..........................................................................................12, 14

*Diesel Props S.r.l. v. Greystone Bus. Cred. II LLC*,
  631 F.3d 42 (2d Cir. 2011)............................................................................................17, 18

*Feldman v. Byrne*,
  210 A.D.3d 646 (2d Dep't 2022) ........................................................................................21

*Freedman v. Chem. Constr. Corp.*,
  43 N.Y.2d 260 (N.Y. 1977) ...............................................................................................10

*Gertz v. Vantel Int'l Pearls in the Oyster Inc.*,
  No. 19-cv-12036-FDS, 2020 WL 3977404 (D. Mass. July 14, 2020)..............................12, 14

*Greentech Research LLC v. Wissman*,
  104 A.D.3d 540 (1st Dep't 2013) ..................................................................................12, 13

*HSBC Realty Credit Corp. (USA) v. O'Neil*,
  745 F.3d 564 (1st Cir. 2014)..............................................................................................16

*In re Bristol-Myers Squibb Sec. Litig.*,
   312 F. Supp. 2d 549 (S.D.N.Y. 2004) ................................................................................6

*In re Lois/USA, Inc.*,
   264 B.R. 69 (Bankr. S.D.N.Y. 2001) ...............................................................................10

*Indus. Gen. Corp. v. Sequoia Pac. Sys. Corp.*,
   44 F.3d 40 (1st Cir. 1995) .........................................................................................21, 22

*JP Morgan Chase Bank v. Winnick*,
   350 F. Supp. 2d 393 (S.D.N.Y. 2004) .......................................................................12, 14

*Katz v. Belveron Real Estate Partners, LLC*,
   28 F.4th 300 (1st Cir. 2022) ............................................................................................21

*Klaxon Co. v. Stentor Elec. Mfg. Co. Inc.*,
   313 U.S. 487 (1941) ........................................................................................................10

*Klos v. Polskie Linie Lotnicze*,
   133 F.3d 164 (2d Cir. 1997) ..............................................................................................9

*Marquette Transp. Fin., LLC v. Soleil Chartered Bank*,
   No. 18-cv-9879 (LGS), 2020 WL 122975 (S.D.N.Y. Jan. 16, 2020) .................................6

*McNally Wellman Co., a Div. of Boliden Allis, Inc. v. N.Y.S. Elec. & Gas Corp.*,
   63 F.3d 1188 (2d Cir. 1995) ............................................................................................20

*N.E. Data Sys., Inc. v. McDonnell Douglas Comp. Sys. Co.*,
   986 F.2d 607 (1st Cir. 1993) ...........................................................................................15

*Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*,
   392 F.3d 520 (2d Cir. 2004) ......................................................................................18, 19

*Reynolds Indus., Inc. v. Mobil Oil Corp.*,
   618 F. Supp. 419 (D. Mass. 1985) ....................................................................................9

*S. Wine & Spirits of Am., Inc. v. Impact Env't Eng'g, PLLC*,
   80 A.D.3d 505 (1st Dep't 2011) ......................................................................................18

*Saul v. Cahan*,
   153 A.D.3d 947 (2d Dep't 2017) .....................................................................................22

*SOL Grp. Mktg. Co. v. Am. President Lines, Ltd.*,
   No. 14-cv-9929 (SHS), 2016 WL 205444 (S.D.N.Y. Jan. 15, 2016) ............................9, 10

*Torres v. D'Alesso*,
   80 A.D.3d 46 (1st Dep't 2010) ..........................................................................................8

*Trez Cap. (FL.) Corp. v. Noroton Heights & Co., LLC*,
    No. 20-cv-9622 (DLC), 2022 WL 16833701 (S.D.N.Y. Nov. 8, 2022) ................................ 11

*Underwood v. Coinbase Global, Inc.*,
    No. 21-cv-8353 (PAE), 2023 WL 1431965 (S.D.N.Y. Feb. 1, 2023) ...................................... 6

*Worldwide Commodities, Inc. v. J. Amicone Co., Inc.*,
    630 N.E.2d 615 (Mass. App. Ct. 1994) ........................................................................ 15, 16

STATUTES

Massachusetts General Laws Chapter 93A ........................................................................ 14, 15, 16

Massachusetts General Laws Annotated Chapter 93A § 9 .............................................................. 4

OTHER AUTHORITIES

Federal Rule of Civil Procedure 12(b)(6) ........................................................................................ 2, 6

Rule 9(b) ............................................................................................................................................ 11

**PRELIMINARY STATEMENT**

Plaintiff Binh Thanh Import Export Production & Trade Joint Stock Co., d/b/a Gilimex, Inc. ("Gilimex") asks this Court to transform a commercial agreement between a manufacturer and a customer – with no minimum purchase requirements and freely exercisable termination rights – into a perpetual obligation on the customer, Defendant Amazon.com Services LLC ("Amazon"), to purchase from Gilimex products that Amazon does not need. Gilimex's claims, as well as the damages Gilimex seeks, are expressly foreclosed by the parties' contract and the settled law of New York and Massachusetts alike.

Gilimex and Amazon are contractual counterparties. Their entire commercial relationship is confined to a fully integrated Component Sale and Purchase Agreement ("CSPA" or the "Agreement"), which prescribes for Gilimex's sale to Amazon of steel and cloth containers known as Fabric Pod Arrays ("FPAs" or "pods"). The parties specifically agreed that Amazon would have "no obligation to . . . place any Purchase Order or purchase any minimum volume of Products," that any forecasts of future demand provided by Amazon to Gilimex "are for planning purposes only, are non-binding, and are not an order, purchase or commitment," and that "NEITHER PARTY WILL BE BOUND BY . . . ANY PROVISION THAT IS DIFFERENT FROM OR IN ADDITION TO THIS AGREEMENT." Compl. Ex. A §§ 4.2, 17.12(a), 17.14 (capitalization in original). The parties further agreed that "NEITHER PARTY WILL BE LIABLE TO THE OTHER FOR ANY LOST PROFITS OR INDIRECT, INCIDENTAL, CONSEQUENTIAL OR SPECIAL DAMAGES." *Id.* § 12.3 (same).

Gilimex reaped the rewards of its contractual bargain, achieving $250 million in sales of pods from Amazon in 2021 and 2022. But when Amazon's demand for pods declined, Gilimex inexplicably ignored Amazon's downward-revised forecasts, and now seeks to hold Amazon

responsible for Gilimex's own decision to continue manufacturing based on Amazon's higher demand for pods in years past.

This Court should reject Gilimex's attempted end run around unequivocal contract provisions. Whether evaluated under New York or Massachusetts law, the parties' relationship was contractual – not "fiduciary" or otherwise "special". Applicable law requires that the parties' unambiguous Agreement be enforced as written. Gilimex's claims, which are expressly precluded by the Agreement, should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## STATEMENT OF FACTS

### A.    Amazon's Purchases of Pods from Gilimex

Gilimex is a Vietnamese manufacturer of textile products. Compl. ¶ 14. In 2014, Amazon began purchasing pods from Gilimex to store products in Amazon's distribution centers. *Id.* ¶¶ 20-21, 28. Gilimex alleges that Amazon's purchases of pods increased each year, from 47,161 units in 2014 to 821,949 units in 2020. *Id.* ¶ 29. Gilimex's annual revenues from sales of pods to Amazon likewise increased from $4.2 million in 2014 to $109.5 million in 2020. *Id.* ¶ 30. Gilimex alleges that it expanded manufacturing capacity and invested in equipment and its labor force to meet Amazon's volume requirements because Amazon was its "business partner." *Id.* ¶ 47.

### B.    The Component Sale and Purchase Agreement

On January 7, 2021, the parties executed the Component Sale and Purchase Agreement, which "sets the terms for Supplier [Gilimex] to sell certain products to Purchaser [Amazon]." *See* Compl. Ex. A at p. 1. The CSPA "supersedes all prior and contemporaneous agreements and communications about its subject matter" and expressly precludes reliance by either party on "ANY PROVISION THAT IS DIFFERENT FROM OR IN ADDITION TO THIS AGREEMENT

(WHETHER PROFFERED VERBALLY OR IN ANY . . . CORRESPONDENCE, OR OTHERWISE)." *Id.* § 17.14 (capitalization in original).

The CSPA provides that Amazon "may terminate this Agreement or one or more Exhibit As or Work Orders without cause by giving at least 30 days' notice to" Gilimex (*id.* § 16.2(g)), and states that Amazon "will have no obligation to . . . place any Purchase Order or purchase any minimum volume of Products" (*id.* § 17.12(a)). While the CSPA provides that Amazon "intends to provide" forecasts of future demand for pods to Gilimex, the Agreement explicitly cautions that such "[f]orecasts are for **planning purposes only, are non-binding, and are not an order, purchase or commitment**." *Id.* § 4.2 (emphasis added). Finally, the CSPA contains an express damage disclaimer barring either party from recovering lost profits or indirect, consequential, or special damages:

> NEITHER PARTY WILL BE LIABLE TO THE OTHER FOR ANY LOST PROFITS OR INDIRECT, INCIDENTAL, CONSEQUENTIAL OR SPECIAL DAMAGES, EVEN IF IT HAS NOTICE OF [sic] THAT THOSE KINDS OF DAMAGES MAY OCCUR.

Compl. Ex. A § 12.3 (capitalization in original).

Following execution of the CSPA, and pursuant to its terms, Amazon purchased 936,438 FPA units in 2021 and 1,117,036 FPA units in 2022. Compl. ¶ 29. Gilimex's revenues from sales of pods to Amazon were $146.6 million in 2021 and $94.3 million in 2022. *Id.* ¶ 30.

### C.    The Decline in Amazon's Demand for Pods

Gilimex alleges that, on April 2, 2022, "Amazon provided Gilimex with a reduced forecast demand of 760,000 FPA units for the period of September 2022 through August 2023, in addition to any purchase orders that had been placed already." Compl. ¶ 69. Other pod suppliers were competing with Gilimex for sales of pods to satisfy Amazon's declining demand. *Id.* Gilimex acknowledges that Amazon's April 2022 forecast was "lower than expected." *Id*. ¶ 70.

Nonetheless, Gilimex proceeded to "maintain its high rate of production and to secure raw materials" on the belief that "Amazon would continue to purchase a high volume of FPAs to allow Gilimex to ramp down production gradually" even if "demand ultimately decrease[d] significantly." *Id*. Gilimex also alleges that it relied on an unspecified "past practice and experience [when] such forecasts were often revised upward." *Id.*

Gilimex alleges that, on May 28, 2022, Amazon provided Gilimex with a "more dramatically reduced forecast for 2022 and 2023 that cut the projected FPA quantities to less than a third of the previously anticipated volume." Compl. ¶ 71. Even so, "Gilimex continued to manufacture FPAs." *Id.* ¶ 74.

### D.    The Present Lawsuit

Gilimex commenced this lawsuit on December 13, 2022, in the Supreme Court of the State of New York, County of New York. *See* Index No. 654794/2022 (Dkt. No. 1). Amazon removed the action to this Court based on diversity jurisdiction. Dkt. No. 1.

The Complaint asserts four causes of action. First, Gilimex claims "negligent misrepresentation." Gilimex alleges that Amazon breached some duty, separate and apart from the CSPA, to notify Gilimex sooner than April 2, 2022, that Amazon's demand for pods would decrease. Compl. ¶¶ 93, 97.

Second, Gilimex alleges "unfair trade practices" under Massachusetts General Laws Annotated Chapter 93A § 9. The gravamen of this claim is that Amazon allegedly "pressured" Gilimex into expanding its manufacturing capacity, "induced" Gilimex to incur significant expenditures, "unfairly and deceptively induced" Gilimex to purchase raw materials and manufacture pods, "cause[d] Gilimex to believe that it would support Gilimex if the forecasts

proved to be incorrect or demand decreased unexpectedly," and then "refused to do so." Compl. ¶¶ 106-107.

Third, Gilimex alleges breach of contract, pointing to a single provision of the CSPA. Gilimex alleges that Amazon failed to hold certain quarterly business review meetings ("QBRs") referenced in the CSPA. Gilimex further alleges that "the failure to hold the QBRs meant that Gilimex did not have a sufficient opportunity to discuss business trends and projections with Amazon," and that if Gilimex had that opportunity "it is more likely than not that Gilimex would have learned from Amazon in advance of April 2022 that there was a risk of decreased FPA demand, and Gilimex thus would not have continued to purchase raw materials and manufacture FPAs at historical levels to its pecuniary detriment." Compl. ¶ 116.

Fourth, Gilimex asserts a claim for "breach of fiduciary duty." Gilimex alleges that, notwithstanding the parties' arms-length commercial contract, Amazon's "superior resources" established "a special relationship of trust pursuant to which Amazon owed fiduciary duties to Gilimex." Compl. ¶¶ 120, 123. As a result, Gilimex claims that Amazon owed Gilimex "duties of care, honesty, good faith, loyalty, and disclosure" and that Amazon breached these duties "by failing to exercise due care in formulating and communicating forecasts for its demand of FPAs and failing to warn Gilimex of a sharp decrease in FPA demand prior to May 2022," as well as "by refusing to provide sufficient time for Gilimex to gradually ramp down production." *Id.* ¶¶ 124, 125).

Gilimex's claims are foreclosed by the plain text of the parties' Agreement and refuted by Gilimex's own contradictory allegations.

## LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must 'nudge[]' claims 'across the line from conceivable to plausible.'" *Marquette Transp. Fin., LLC v. Soleil Chartered Bank*, No. 18-cv-9879 (LGS), 2020 WL 122975, at *4 (S.D.N.Y. Jan. 16, 2020) (quoting *Twombly*, 550 U.S. at 570). "A complaint is properly dismissed where, as a matter of law, 'the allegations in a complaint, however true, could not raise a claim of entitlement to relief.'" *Underwood v. Coinbase Global, Inc.*, No. 21-cv-8353 (PAE), 2023 WL 1431965, at *4 (S.D.N.Y. Feb. 1, 2023) (quoting *Twombly*, 550 U.S. at 558).

On a motion to dismiss, the Court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns, Inc. v. Shaar Fund Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Moreover, "when any allegations contradict the evidence contained in the document[ ] relied upon by … plaintiff[s], the document[ ] controls, and the Court need not accept the allegations contained within the complaint as true." *Underwood*, 2023 WL 1431965, at *8 (quoting *Trahan v. Lazar*, 457 F. Supp. 3d 323, 341 (S.D.N.Y. 2020)). "The court need not accept as true an allegation that is contradicted by documents on which the complaint relies." *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 555 (S.D.N.Y. 2004).

## ARGUMENT

The Complaint fails to state a cognizable claim under either New York law, which the parties agreed would govern their commercial relationship, or Massachusetts law, on which Gilimex inexplicably relies. In pursuing generic tort claims predicated on a supposed "special relationship" and unspecified "fiduciary duties," Gilimex distorts beyond reality the parties' arms-length commercial relationship and ignores the unequivocal terms of Gilimex's contractual bargain, which specifically forecloses the claims *and* the relief Gilimex now seeks. Gilimex's attempt to leverage a CSPA provision prescribing periodic business meetings between the parties likewise misreads the contractual obligations assigned in that provision and relies on rank speculation belied by Gilimex's decision to ignore Amazon's actual forecasts of decreased demand. Gilimex's claims should be dismissed with prejudice in accordance with the terms of the parties' commercial contract and clearly established law.

## I.      The Component Sale And Purchase Agreement Is An Enforceable Contract That Governs The Parties' Entire Economic Relationship.

Gilimex seeks to skirt its contractual bargain with reference to supposed "independent legal dut[ies]" purportedly owed by Amazon to Gilimex that derive outside the CSPA. Dkt. No. 17 at p. 3 (emphasis omitted). But the parties' comprehensive and integrated Agreement, executed on January 7, 2021, expressly refutes Gilimex's presumption that any such amorphous duties apply to the parties' commercial relationship. In a provision entitled "**Entire Agreement**," the parties agreed that:

> This Agreement, including all Exhibits and Work Orders, together with the NDA, is the entire agreement between Purchaser and Supplier regarding the purchase and sale of the Product and its other subject matter. **It supersedes all prior and contemporaneous agreements and communications about its subject matter** .
> . . .
>
> The parties may use standard business forms or other communications, but use of such forms is for convenience only and does not alter the provisions of this

Agreement. NEITHER PARTY WILL BE BOUND BY, AND EACH SPECIFICALLY OBJECTS TO, ANY PROVISION THAT IS DIFFERENT FROM OR IN ADDITION TO THIS AGREEMENT (WHETHER PROFFERED VERBALLY OR IN ANY QUOTATION, INVOICE, SHIPPING DOCUMENT, ACCEPTANCE, CONFIRMATION, CORRESPONDENCE, OR OTHERWISE), UNLESS SUCH PROVISION IS SPECIFICALLY AGREED TO IN A WRITING SIGNED BY BOTH PARTIES.

Compl. Ex. A § 17.14 (bold added; capitalization in original).

Thus, in accordance with the CSPA's broad merger clause, "any claimed prior oral condition or agreement was necessarily extinguished at the moment the written contract became fully executed by both parties." *Torres v. D'Alesso*, 80 A.D.3d 46, 53 (1st Dep't 2010).[1] Having not only executed but substantially profited from its entry into the fully integrated CSPA (to the tune of $250 million) (Compl. ¶ 30), Gilimex "could not expect to rely on any previous understanding or oral representation that was not included in the mutually executed written document." *Torres*, 80 A.D.3d at 53. Gilimex's attempt to bypass the parties' Agreement, in search of alleged oral representations contrary to the CSPA,[2] is flatly foreclosed by the Agreement itself and applicable law.

Unhappy with the CSPA's terms, Gilimex apparently seeks to avoid the parties' unambiguous and fully integrated Agreement by alleging it had "no choice" but to sign after Amazon "induced" it to do so. Compl. ¶¶ 59-60. Even accepted as true, these allegations are immaterial and have no impact on the CSPA's validity. "New York courts have previously found

---

[1] *Accord Coll v. PB Diagnostic Sys., Inc.*, 50 F.3d 1115, 1123 (1st Cir. 1995) ("Where the parties reduce an agreement to a writing which in view of its completeness and specificity reasonably appears to be a complete agreement, it is taken to be an integrated agreement unless it is established by other evidence that the writing did not constitute a final expression." (applying Massachusetts law)).

[2] At various points in its Complaint, Gilimex alleges that Amazon made representations to Gilimex to the effect that Amazon would provide Gilimex the opportunity to "ramp down" production in the event of declining demand. *See, e.g.*, Compl. ¶¶ 1, 5, 47, 49, 68, 70, 74, 79, 81, 83. Even assuming the truth of these allegations for purposes of this Motion to Dismiss, Gilimex has not made any claim that those alleged representations constituted a modification to the parties' Agreement or were otherwise legally enforceable.

that no contract of adhesion or procedural unconscionability exists where—as here—the party complaining is commercially sophisticated." *SOL Grp. Mktg. Co. v. Am. President Lines, Ltd.*, No. 14-cv-9929 (SHS), 2016 WL 205444, at *7 (S.D.N.Y. Jan. 15, 2016) (citing, among other authorities, *Surrey Strathmore Corp. v. Dollar Sav. Bank of N.Y.*, 325 N.Y.2d 527, 530 (1975)). Instead, "[t]ypical contracts of adhesion are standard-form contracts offered by large, economically powerful corporations to unrepresented, uneducated, and needy individuals on a take-it-or-leave-it basis, with no opportunity to change the contract's terms." *Klos v. Polskie Linie Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997) (citation omitted). Importantly, "there is no contract of adhesion where the complaining party had the option of engaging in business with another company or individual besides the defendant before signing the contract." *Id.* (citing *Finsel v. Wachala*, 79 A.D.3d 1402, 1403-04 (3d Dep't 2010)).[3]

Gilimex is a large corporation that benefited handsomely for years from its commercial relationship with Amazon. *See* Compl. ¶¶ 30, 52 (alleging that Gilimex's annual revenues from sales of pods to Amazon increased from $4.2 million in 2014 to $146.6 million in 2021). In January 2021, Gilimex *chose* to enter into the CSPA, fully aware of its terms, (*id.* ¶ 63), in order to further grow its profits from pod sales to Amazon. At about the same time, Gilimex also *chose* to "sever business ties with its other large customers" to focus on its profitable commercial relationship with Amazon. *Id.* ¶ 54. Where, as here, Gilimex "had the option of engaging in business with" multiple other companies but made a strategic decision to contract with Amazon, applicable law does not

---

[3] *Accord Reynolds Indus., Inc. v. Mobil Oil Corp.*, 618 F. Supp. 419, 422-23 (D. Mass. 1985) (concluding that gasoline supply contract between retailer and supplier "was not a contract of adhesion," and explaining that "[w]hen two sophisticated parties freely enter into facially comprehensive written agreements, such documents cannot be 'easily bypassed or given restrictive interpretations.'" (quoting *Int'l Bus. Machines Corp. v. Catamore Enters. Inc.*, 548 F.2d 1065, 1073 (1st Cir. 1976))).

permit Gilimex to avoid the express terms of its contractual bargain. *SOL Grp.*, 2016 WL 205444, at *7.

Accordingly, the fully integrated CSPA should be enforced in accordance with its terms. And, as set forth herein, those terms expressly foreclose each of Gilimex's claims.

## II.   New York Law Governs This Dispute.

The CSPA governing all aspects of the parties' commercial relationship provides that "[t]his Agreement is governed by the substantive laws of the state of New York." Compl. Ex. A § 17.4. Pursuant to New York's choice of law rules,[4] "[a]s a general matter, the parties' manifested intentions to have an agreement governed by the law of a particular jurisdiction are honored." *Freedman v. Chem. Constr. Corp.*, 43 N.Y.2d 260, 264-65, n.* (N.Y. 1977); *see also Career Partners, Inc. v. Brady*, No. 652451/2019, 2020 WL 149606, at *4 (N.Y. Sup. Ct., N.Y. Cty. Jan. 13, 2020) ("[I]t is the general policy of New York courts to enforce a choice of law provision." (citing *Koob v. IDS Fin. Servs.*, 213 A.D.2d 26, 33 (1st Dep't 1995)). Thus, "where, as here, parties have agreed on a choice-of-law rule applicable in whole or in part to their dealings, the analysis is not the same as it would be if they were silent on the subject." *In re Lois/USA, Inc.*, 264 B.R. 69, 91 (Bankr. S.D.N.Y. 2001).

Notwithstanding the parties' contractual agreement upon New York governing law, Gilimex takes the position that New York law "applies only to the agreement itself," while its tort claims may be assessed under Massachusetts law. Dkt. No. 17 at p. 2 n.1 (emphasis omitted). However, Gilimex's claims for negligent misrepresentation and breach of fiduciary duty necessarily implicate – and, indeed, seek to avoid – multiple provisions of the parties' fully

---

[4] Gilimex concedes that New York choice of law rules apply to this Court's exercise of diversity jurisdiction in the present matter. *See* Dkt. No. 17 at p. 2 n.1; *accord Klaxon Co. v. Stentor Elec. Mfg. Co. Inc.*, 313 U.S. 487, 496 (1941) ("The conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts.").

integrated Agreement, including the parties' agreement that Amazon "will have no obligation to . . . place any Purchase Order or purchase any minimum volume of Products" (Compl. Ex. A § 17.12(a)), that any "[f]orecasts are for planning purposes only, are non-binding, and are not an order, purchase or commitment" (*id.* § 4.2), and that "NEITHER PARTY WILL BE BOUND BY . . . ANY PROVISION THAT IS DIFFERENT FROM OR IN ADDITION TO THIS AGREEMENT," (*id.* § 17.14). *See* Compl. ¶¶ 90-102, 111-17. The present dispute thus should be governed entirely by New York law in accordance with the parties' express choice of law. *See Trez Cap. (FL.) Corp. v. Noroton Heights & Co., LLC*, No. 20-cv-9622 (DLC), 2022 WL 16833701, at *18 (S.D.N.Y. Nov. 8, 2022) (applying New York choice of law agreement to negligent misrepresentation claim, which "turns on the 'obligations arising under'" the parties' agreement). With that said, Gilimex's attempt to bypass New York law is as futile as its bid to bypass the CSPA, since Gilimex's tort claims likewise fail under clearly established Massachusetts law.

### III.   Gilimex Fails To State A Claim For Negligent Misrepresentation (First Cause Of Action).

Gilimex alleges that Amazon breached some duty, separate and apart from the CSPA, to notify Gilimex sooner than April 2, 2022, that its demand for pods would decrease and then to continue purchasing pods Amazon no longer needed. Compl. ¶¶ 90-102. But no such legal duty existed (whether assessed under New York or Massachusetts law), and any such hypothetical duty was extinguished by the express terms of the parties' Agreement.

Negligent misrepresentation claims "must be pled in accordance with the specificity criteria of Rule 9(b)." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 583 (2d Cir. 2005). "It is settled New York law that the elements of negligent misrepresentation are: (1) carelessness in imparting words; (2) upon which others were expected to rely; (3) and upon

which they did act or failed to act; (4) to their damage." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003). Additionally, and "[m]ost relevant, the action requires that (5) the declarant must express the words directly, with knowledge or notice that they will be acted upon, to one to **whom the declarant is bound by some relation or duty of care**." *Id.* (emphasis added). New York courts have underscored that "the law of negligent misrepresentation requires a **closer degree of trust between the parties than that of the ordinary buyer and seller** in order to find reliance on such statements justified." *Id.* (citing *Kimmell v. Schaefer*, 89 N.Y.2d 257, 264 (N.Y.)) (emphasis added); *see JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 404 (S.D.N.Y. 2004) (dismissing negligent misrepresentation claim because New York law does not impose liability absent a "duty of care arising from any source external" to the parties' agreement).

With respect to the "relation or duty of care" prong of the claim, New York courts have clarified that "[a]n arm's length business relationship . . . is **not** generally considered to be the sort of confidential or fiduciary relationship that would support a cause of action for negligent misrepresentation." *Greentech Research LLC v. Wissman*, 104 A.D.3d 540, 540 (1st Dep't 2013) (emphasis added). Moreover, "knowledge of the particulars of the company's business . . . does not constitute the type of 'specialized knowledge' that is required in order to impose a duty of care in the commercial context." *Winnick*, 350 F. Supp. 2d at 402. Accordingly, "if the only interest at stake is holding the defendant to a promise the courts have said that the plaintiff may not transmogrify the contract claim into one for tort." *Id.* at 401. Likewise, "[u]nder Massachusetts law, 'reliance on supposed misrepresentations that contradict the terms of the parties' agreement is unreasonable as a matter of law.'" *Gertz v. Vantel Int'l Pearls in the Oyster Inc.*, No. 19-cv-12036-FDS, 2020 WL 3977404, at *11 (D. Mass. July 14, 2020) (quoting *HSBC Realty Credit Corp. (USA) v. O'Neil*, 745 F.3d 564, 574 (1st Cir. 2014)).

-12-

Here, the very basis for Gilimex's negligent misrepresentation claim is foreclosed by the parties' Agreement. While Gilimex alleges that it "relied on Amazon's forecasts to incur significant expenses," (Compl. ¶ 92), the CSPA specifically provides that any such "[f]orecasts are for planning purposes only, are non-binding, and are not an order, purchase or commitment" (Compl. Ex. A § 4.2). The Agreement similarly precludes Gilimex's alleged reliance on unspecified suggestions that despite Amazon's decline in demand for pods (which it relayed and reiterated to Gilimex during the spring and summer of 2022), "Amazon would look out for Gilimex as its partner and continue purchasing FPAs to allow Gilimex to gradually ramp down its production." Compl. ¶ 98. Gilimex's purported reliance on any such suggestion flatly contradicts *two* separate provisions of the CSPA: (i) a section entitled "**No Obligation**," which provides that Amazon "will have no obligation to . . . place any Purchase Order or purchase any minimum volume of Products" (Compl. Ex. A § 17.12(a)); and (ii) the parties' comprehensive merger clause, which provides:

> NEITHER PARTY WILL BE BOUND BY, AND EACH SPECIFICALLY OBJECTS TO, ANY PROVISION THAT IS DIFFERENT FROM OR IN ADDITION TO THIS AGREEMENT (WHETHER PROFFERED VERBALLY OR IN ANY QUOTATION, INVOICE, SHIPPING DOCUMENT, ACCEPTANCE, CONFIRMATION, CORRESPONDENCE, OR OTHERWISE), UNLESS SUCH PROVISION IS SPECIFICALLY AGREED TO IN A WRITING SIGNED BY BOTH PARTIES.

*Id.* § 17.14 (capitalization in original).

Gilimex's attempt to circumvent the plain text of the parties' Agreement is forbidden under New York and Massachusetts law alike. As an arms-length commercial counterparty, Amazon lacked any freestanding "duty of care" to Gilimex which could form the basis of a negligent misrepresentation claim. *Greentech Research LLC*, 104 A.D.3d at 540. Indeed, the parties' comprehensive supply contract confirms that Gilimex and Amazon were "the ordinary buyer and

seller" for whom misrepresentation claims are unavailable as a matter of law. *See Dallas Aerospace, Inc.*, 352 F.3d at 788. Having specifically agreed that Amazon's forecasts of its demand for pods are non-binding, (Compl. Ex. A § 4.2), that Amazon will have no minimum purchase obligations, (*id.* § 17.12(a)), and that the parties are not bound by any provision that differs from the CSPA (*id.* § 17.14), Gilimex may not now re-cut its contractual bargain with reference to extra-contractual "representations" – least of all, the sparse and conclusory suggestions referenced in the Complaint. *Aetna Cas. & Sur. Co.*, 404 F.3d at 583. Put differently, Gilimex "may not 'transmogrify'" the parties' fully integrated contract into a claim for tort, *Winnick*, 350 F. Supp. 2d at 401, and its reliance on purported representations "that contradict the terms of the parties' agreement is unreasonable as a matter of law." *Gertz*, 2020 WL 3977404, at *11.

In the absence of any applicable legal duty between these commercial counterparties, and given their arms-length contract which expressly forecloses Gilimex's purported reliance on extra-contractual statements, Gilimex's claim for negligent misrepresentation should be dismissed for failure to state a claim.

## IV.    Gilimex Fails To State A Claim For Unfair Trade Practices (Second Cause Of Action).

Gilimex's claim for unfair trade practices under Massachusetts General Laws Chapter 93A ("Chapter 93A") blithely ignores the parties' agreement to resolve their commercial disputes in accordance with "the substantive laws of the state of New York." Compl. Ex. A § 17.4; *see supra* at pp. 10-11. Where, as here, Gilimex's statutory claim implicates – and, indeed, seeks to avoid – the express provisions of the parties' comprehensive commercial agreement, Massachusetts courts have held that Chapter 93A does not provide an alternative to a party's contractual bargain.

In an underlying commercial dispute between a food product manufacturer and its distributor, the Appeals Court of Massachusetts held that the parties' New York choice of law

agreement foreclosed any claim under Chapter 93A. *See Worldwide Commodities, Inc. v. J. Amicone Co., Inc.*, 630 N.E.2d 615, 616 (Mass. App. Ct. 1994). The dispositive choice of law provision in that case was virtually identical to the CSPA provision at issue here: "This Agreement is governed by the laws of the State of New York, excluding those relating to conflicts of law." *Id.* at 305 n.2. Because the parties' contractual relationship lay "at the core of" the plaintiff's claims and the parties had agreed that their contract would be governed by New York law, the appellate court held that relief under Chapter 93A was unavailable as a matter of law. *Id.* at 308; *see also N.E. Data Sys., Inc. v. McDonnell Douglas Comp. Sys. Co.*, 986 F.2d 607, 609-10 (1st Cir. 1993) (dismissing Chapter 93A claims described as "embroidered 'breach of contract' claims" foreclosed by the parties' California choice of law agreement).

Gilimex's gambit is none too subtle. In asserting a claim under Chapter 93A, Gilimex seeks to avoid the parties' agreement to be governed by "the substantive laws of the state of New York." Compl. Ex. A § 17.4. But as in *Worldwide Commodities, Inc.*, here, the parties' **contractual** relationship resides "at the core of" Gilimex's claims. 630 N.E.2d at 618. Significantly, Gilimex's statutory claim is predicated on the same "acts and conduct" underpinning its claim for negligent misrepresentation (Compl. ¶¶ 105-07), which in turn rely on purported extra-contractual representations at odds with the plain terms of the parties' Agreement, (*id.* ¶¶ 90-102). Once again, pursuant to the comprehensive integration clause, the parties agreed that "NEITHER PARTY WILL BE BOUND BY, AND EACH SPECIFICALLY OBJECTS TO" any such "PROVISION THAT IS DIFFERENT FROM OR IN ADDITION TO THIS AGREEMENT (WHETHER PROFFERED VERBALLY OR IN ANY . . . CORRESPONDENCE, OR OTHERWISE)." *Id.* Ex. A § 17.14. Because the CSPA expressly forecloses the purported extra-contractual promises underpinning Gilimex's claims – including its claim under Chapter 93A – the parties' New York

-15-

choice of law agreement bars Gilimex's attempt to circumvent the CSPA with resort to Massachusetts law. *See Worldwide Commodities, Inc.*, 630 N.E.2d at 616.

Setting aside the parties' New York choice of law agreement, the Chapter 93A claim warrants dismissal as a repackaged recitation of the same allegations that comprise Gilimex's claim for negligent misrepresentation. *See HSBC Realty Credit Corp. (USA) v. O'Neil*, 745 F.3d 564, 574-75 (1st Cir. 2014) (affirming dismissal of Chapter 93A claim premised on commercial counterparty's "already-rejected fraud theory"). As discussed *supra* at pp. 11-14, Gilimex's sparse and conclusory allegations of a "special" or "fiduciary" relationship between commercial contract counterparties plainly fail to state a claim for negligent misrepresentation. Moreover, Gilimex's claims are expressly foreclosed by the parties' Agreement, which provides that (a) "[f]orecasts are for planning purposes only, are non-binding, and are not an order, purchase or commitment" (*id.* § 4.2), and (b) Amazon "will have no obligation to . . . place any Purchase Order or purchase any minimum volume of Products" (*id.* § 17.12(a)). Because Gilimex's contract-defying allegations fail to state a claim for negligent misrepresentation, they cannot predicate a claim under Chapter 93A. *O'Neil*, 745 F.3d at 574-75.

Given the parties' agreement that New York law would govern their commercial relationship and the CSPA's various provisions which expressly foreclose Gilimex's conclusory theory of liability, Gilimex's claim for unfair trade practices should be dismissed for failure to state a claim.

## V.   Gilimex Fails To State A Claim For Breach Of Contract (Third Cause Of Action).

Straining to identify any claim under the party's Agreement, Gilimex alleges only that Amazon breached a contractual obligation "to hold quarterly business review ('QBR') meetings at the end of each quarter." Compl. ¶ 114. Gilimex fails, however, to allege several claim

prerequisites – including its own performance and damages attributable to any alleged breach – thus necessitating dismissal.

"[T]o recover from a defendant for breach of contract, a plaintiff must prove, by a preponderance of the evidence, (1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." *Diesel Props S.r.l. v. Greystone Bus. Cred. II LLC*, 631 F.3d 42, 52 (2d Cir. 2011). The Second Circuit has emphasized that "[c]ausation is an essential element of damages in a breach of contract action; and, as in tort, a plaintiff must prove that a defendant's breach *directly and proximately caused* his or her damages." *Id.* at 52-53 (emphasis in original).

While Gilimex points to the CSPA, an unquestionably enforceable commercial agreement, the Complaint fails to quote – or even reference – the CSPA provision on which Gilimex's claim hinges. That provision explains that the parties will meet quarterly to discuss production **after** Gilimex provides specific documentation:

> At the end of each calendar quarter during the Term, Supplier [Gilimex] and Purchaser [Amazon] shall meet (either by telephone or in person at Purchaser's designated place of business, at Purchaser's option provided that notice of the QBR including time, venue and participants must be sent to Supplier at least seven (7) days in advance) (each such quarterly meeting, a "**QBR**") to discuss all factors affecting the then-current Product pricing, including (1) Supplier's raw material and component costs, (2) any volume and other discounts achieved by Supplier with its third party suppliers, (3) any process, supply chain, manufacturing or other efficiencies achieved by Supplier, items related to or affecting the quality of the Product(s) and (4) any process, supply chain, manufacturing or other improvements proposed by the parties. **No fewer than thirty (30) days prior to each QBR, Supplier shall provide to Purchaser detailed documentation setting forth the information required by items (1)-(3) above and any other information affecting Product prices reasonably requested by Purchaser in advance of the QBR.**

Compl. Ex. A § 1.3(b) (emphasis added). On its face, the contract provision invoked by Gilimex imposes no obligations on Amazon absent Gilimex's provision of "detailed documentation" setting forth critical information regarding Gilimex's costs and other pricing and process-related issues.

While the second element of a breach of contract claim under New York law requires a plaintiff to establish its own "performance of the plaintiff's obligations under the contract," *Diesel Props S.r.l. v. Greystone Bus. Cred. II LLC*, 631 F.3d at 52, Gilimex fails to allege that it provided to Amazon the "detailed documentation" required under the CSPA at any time after the quarterly business meeting held in May 2021. Compl. ¶¶ 65, 111-17. Such failure to allege compliance with a contractual prerequisite for the parties' quarterly business meetings precludes Gilimex's claim based on allegations that further meetings were not held. *See S. Wine & Spirits of Am., Inc. v. Impact Env't Eng'g, PLLC*, 80 A.D.3d 505, 505-06 (1st Dep't 2011) (affirming dismissal of complaint "since plaintiffs failed to comply with the express, bargained-for condition precedent" provided in the parties' contract).

Even more, Gilimex fails to allege that any purported damages were actually "caused by" the purported failure to hold quarterly business meetings. *Diesel Props S.r.l. v. Greystone Bus. Cred. II LLC*, 631 F.3d at 52. Ignoring that "[d]amages for breach of contract must be 'such only as actually follow or may follow from the breach of the contract,'" *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004) (quoting *Wakeman v. Wheeler & Wilson Mfg. Co.*, 4 N.E. 264, 266 (N.Y. 1886)), Gilimex engages in rank speculation by alleging, without any specificity, that had such business meetings occurred, "it is more likely than not that Gilimex would have learned from Amazon in advance of April 2022 that there was a risk of decreased FPA demand." Compl. ¶ 116. Such speculation falls far short of demonstrating, as required, that

Gilimex's knowledge of decreased pod demand would have "actually follow[ed]" from any such quarterly business meetings with Amazon. *Nat'l Mkt. Share, Inc.*, 392 F.3d at 525.

Indeed, it strains credulity that Gilimex would have adjusted its raw material purchases and manufacturing to account for Amazon's decreased demand had the parties simply held quarterly business meetings, (Compl. ¶ 116), given Gilimex's own acknowledged conduct. Gilimex freely admits that even **after** "Amazon provided Gilimex with a reduced forecast demand" for pods on April 2, 2022, Gilimex disregarded Amazon's forecast on the unfounded assumption that "Amazon would continue to purchase a high volume of [pods] to allow Gilimex to ramp down production gradually." *Id.* ¶¶ 69-70. Even when Amazon further reduced its projected demand for pods on May 28, 2022, "provid[ing] Gilimex with an even more dramatically reduced forecast for 2022 and 2023," Gilimex simply ignored the forecast and "continued to manufacture" pods as before. *Id.* ¶¶ 71, 74. Gilimex's suggestion that the convention of a quarterly meeting would have saved Gilimex from its own business decisions in disregard of its counterparty's commercial needs is implausible. Such unfettered speculation – particularly when contradicted by Gilimex's own allegations – cannot predicate a claim for breach of contract. *See Boccardi Cap. Sys., Inc. v. D.E. Shaw Laminar Portfolios, L.L.C.*, No. 05-cv-6882 (GBD), 2009 WL 362118, at *6 (S.D.N.Y. Feb. 9, 2009), *aff'd*, 355 F. App'x 516 (2d Cir. 2009) ("Plaintiff's speculative optimism, concerning what 'could have and would have' happened, cannot substitute for facts evincing direct causation and actual damages.").

Moreover, the damages Gilimex seeks for the alleged breach of the CSPA are expressly precluded by the Agreement itself. The CSPA provides that except for certain inapplicable circumstances, "NEITHER PARTY WILL BE LIABLE TO THE OTHER FOR ANY LOST PROFITS OR INDIRECT, INCIDENTAL, CONSEQUENTIAL OR SPECIAL DAMAGES,

EVEN IF IT HAS NOTICE OF [sic] THAT THOSE KINDS OF DAMAGES MAY OCCUR." Compl. Ex. A § 12.3 (capitalization in original). Yet those are precisely the sorts of indirect, downstream – and highly speculative – damages that Gilimex, without any evidence and in conclusory fashion, attributes to the alleged failure to hold quarterly business meetings. *See* Compl. ¶ 117 (seeking "tens of millions of dollars in what is now worthless inventory," "tens of millions of dollars more in raw materials purchased from suppliers that cannot be returned," "tens of millions of dollars in unrecouped investment in manufacturing facilities dedicated to Amazon," "tens of millions of dollars in costs it will incur to modify its facilities and train workers to manufacture products for prospective new customers," and "lost profits while it works to locate new customers"). Gilimex's claimed nine-figure damages for its unsold pod inventory, raw materials, strategic investment in manufacturing facilities, and alleged "lost profits" (*id.* ¶¶ 88, 117), are the archetypical indirect, incidental, and consequential damages that do **not** flow directly from the alleged contractual breach identified in the Complaint. The parties' specific agreement to exclude any such damages for "lost profits," or for "indirect, incidental, consequential or special damages," must be enforced as written. *See McNally Wellman Co., a Div. of Boliden Allis, Inc. v. N.Y.S. Elec. & Gas Corp.*, 63 F.3d 1188, 1195, 1198 (2d Cir. 1995) (enforcing contractual exclusions of incidental and consequential damages to preclude alleged harm caused by seller's delay).

Given its *prima facie* infirmities and reliance on contractually excluded damages, Gilimex's claim for breach of contract should be dismissed for failure to state a claim.

**VI.    Gilimex Fails To State A Claim For Breach Of Fiduciary Duty (Fourth Cause Of Action).**

Gilimex rehashes the same allegations underpinning its negligent misrepresentation claim as a separate claim for breach of fiduciary duty. Compl. ¶¶ 118-27. It fails at the threshold for the same reasons.

As a foundational matter, New York law does not ascribe a "fiduciary duty" to sophisticated contractual counterparties. *See CIBC Bank & Trust Co. (Cayman) Ltd. v. Credit Lyonnais*, 270 A.D.2d 138, 139 (1st Dep't 2000). Accordingly, "[a] conventional business relationship, without more, is insufficient to create a fiduciary relationship. Rather, a plaintiff must make a showing of 'special circumstances' that could have transformed the parties' business relationship to a fiduciary one, such as control by one party of the other." *Feldman v. Byrne*, 210 A.D.3d 646, 650 (2d Dep't 2022).

Likewise, Massachusetts courts have held that "business transactions conducted at arm's length generally do **not** give rise to fiduciary relationships." *Katz v. Belveron Real Estate Partners, LLC*, 28 F.4th 300, 311 (1st Cir. 2022) (emphasis added). While a fiduciary relationship can develop over time, "courts have repeatedly cautioned that 'the plaintiff alone, by reposing trust and confidence in the defendant, **cannot** thereby transform a business relationship into one which is fiduciary in nature.'" *Indus. Gen. Corp. v. Sequoia Pac. Sys. Corp.*, 44 F.3d 40, 44-45 (1st Cir. 1995) (emphasis added) (finding no fiduciary duty between product developer and parts supplier, despite developer's "overall 'management' role" in the purchase transaction).

Here, Gilimex plainly fails to establish "special circumstances" that would recast the parties' arms-length contractual relationship into a fiduciary one. Gilimex's conclusory allegation that Amazon possessed "superior resources, expertise, experience, and access to information," (Compl. ¶ 120), does not suffice "in an arm's-length business transaction involving sophisticated

business people." *Saul v. Cahan*, 153 A.D.3d 947, 949 (2d Dep't 2017). Gilimex does not – and cannot credibly – claim that it was under the "control" of Amazon, its commercial counterparty. *Id.* (holding that "[t]he plaintiff, an attorney and sophisticated business owner, was not under the control of" his art acquisition consultant" and dismissing claim for breach of fiduciary duty).

Nor can Gilimex avoid dismissal on the pleadings by alleging that it "reposed its trust and confidence in Amazon to . . . act reasonably and with due care and consideration for Gilimex's interests." Compl. ¶ 120. As the First Circuit instructed in *Industrial General Corp.*, Gilimex's unilateral decision to "repos[e] trust and confidence in" its transactional counterparty does not create a fiduciary relationship. 44 F.3d at 44. Indeed, any such decision by Gilimex to rely on extra-contractual suggestions would have been manifestly unreasonable following the parties' Agreement, in January 2021, which expressly precludes reliance on "ANY PROVISION THAT IS DIFFERENT FROM OR IN ADDITION TO THIS AGREEMENT (WHETHER PROFFERED VERBALLY OR IN ANY . . . CORRESPONDENCE, OR OTHERWISE)." Compl. Ex. A § 17.14.

For these reasons and those discussed *supra* at pp. 11-14, Gilimex's claim for breach of fiduciary duty should be dismissed for failure to state a claim.

## CONCLUSION

For all the foregoing reasons, this Court should grant Amazon's Motion to Dismiss in its

entirety and dismiss, with prejudice, each of the claims in the Complaint.


Dated: New York, New York
   February 24, 2023

         Respectfully submitted,

         PERKINS COIE LLP


         By: */s/ Alan B. Howard*
          Alan B. Howard
          Adam R. Mandelsberg
          Margaret W. Meyers
          Evelyn Y. Pang
          1155 Avenue of the Americas, 22nd Floor
          New York, New York 10036-2711
          Tel: 212.262.6900
          Fax: 212.977.1649
          AHoward@perkinscoie.com
          AMandelsberg@perkinscoie.com
          MMeyers@perkinscoie.com
          EPang@perkinscoie.com

          *Attorneys for Defendant*
          *Amazon.com Services LLC*