UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

BINH THANH IMPORT EXPORT PRODUCTION & :
TRADE JOINT STOCK CO., d/b/a GILIMEX, INC., :
                                    :
                *Plaintiff*, :
                                    :
           -v-                    :     1:23 Civ. 00292 (LGS)
                                      :
AMAZON.COM SERVICES, LLC, d/b/a :
AMAZON ROBOTICS :
                                    :
                *Defendant*. :

---------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

KASOWITZ BENSON TORRES LLP

Marc E. Kasowitz
Edward E. Filusch
Victor J. Brienza
Jonathan-Michael K. Pryor

1633 Broadway
New York, New York 10019
Tel.: (212) 506-1710
Fax: (212) 835-1510

*Attorneys for Plaintiff, Binh Thanh Import
Export Production & Trade Joint Stock Co.
D/B/A Gilimex, Inc.*

March 24, 2023

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ............................................................................................... 3

    Gilimex and the FPAs ............................................................................................... 3

    The Companies' Relationship Grows ....................................................................... 4

    The Pandemic ............................................................................................................ 5

    The Component Sale and Purchase Agreement ........................................................ 5

    Amazon Slashes its Forecasts Without Warning and Abandons Gilimex .................. 6

LEGAL STANDARDS .................................................................................................... 7

ARGUMENT .................................................................................................................... 8

    I.     Massachusetts Law Governs the Non-Contractual Claims ........................... 8

    II.    The CSPA Does Not Foreclose Gilimex's Non-Contractual Claims ................... 12

    III.   Gilimex States a Cognizable Claim for Negligent Misrepresentation ................ 12

    IV.   Gilimex States a Cognizable Claim for Breach of Fiduciary Duty ..................... 16

    V.    Gilimex States a Cognizable Claim for Unfair Trade Practices .......................... 20

    VI.   Gilimex States a Cognizable Claim for Breach of Contract ............................... 22

CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**  **Page(s)**

*Alevsky v. GC Servs. Ltd. P'ship*,
   No. 13-CV-6793 (JG), 2014 WL 1711682 (E.D.N.Y. Apr. 30, 2014) ...................................24

*Arthur D. Little, Inc. v. Dooyang Corp.*,
   147 F.3d 47 (1st Cir. 1998) ...........................................................................................20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................. 7-8

*Baker v. Wilmer Cutler Pickering Hale and Dorr LLP*,
   91 Mass. App. Ct. 835 (2017) ......................................................................................17

*Bd. of Mgrs. of Brightwater Towers Condo. v. FirstService Residential N.Y., Inc.*,
   193 A.D.3d 672 (2d Dep't 2021) ..............................................................................12, 18

*Boccardi Cap. Sys., Inc. v. D.E. Shaw Laminar Portfolios, L.L.C.*,
   No. 05-cv-6882 (GBD), 2009 WL 362118 (S.D.N.Y. Feb. 9, 2009) ....................................25

*Career Partners, Inc. v. Brady*,
   No. 652451/2019, 2020 WL 149606 (N.Y. Sup. Ct. N.Y. Cty. Jan. 13, 2020) .........................9

*CIBC Bank & Trust Co. (Cayman) Ltd. v. Credit Lyonnais*,
   270 A.D.2d 138 (1st Dep't 2000) ..................................................................................18

*Cohen v. State St. Bank & Tr. Co.*,
   72 Mass. App. Ct. 627 (2008) ..................................................................................17, 20

*Computer Sales Int'l, Inc. v. Lycos, Inc.*,
   No. Civ.A.05–10017, 2005 WL 3307507 (D. Mass. Dec. 6, 2005) (RWZ)....................*passim*

*Dallas Aerospace, Inc. v. CIS Air Corp.*,
   352 F.3d 775 (2d Cir. 2003)..........................................................................................16

*De Biase v. Evanston Ins. Co.*,
   No. 18-CV-4402(JS)(SIL), 2020 WL 837435 (E.D.N.Y. Feb. 20, 2020) ..............................24

*Diesel Props S.r.l. v. Greystone Bus. Cred. II LLC*,
   631 F.3d 42 (2d Cir. 2011)............................................................................................25

*Doe v. Harbor Schools, Inc.*,
   446 Mass. 245 (2006) ..................................................................................................17

*Feldman v. Byrne*,
   210 A.D.3d 646 (2d Dep't 2022) ...................................................................................18

*Freedman v. Chem. Constr. Corp.*,
    43 N.Y.2d 260 (1977) ........................................................................................9

*Gertz v. Vantel Int'l Pearls in the Oyster Inc.*,
    No. 19-cv-12036-FDS, 2020 WL 3977404 (D. Mass. July 14, 2020) .............................. 15-16

*Golber v. BayBank Valley Tr. Co.*,
    46 Mass. App. Ct. 256 (1999) .......................................................................13, 15

*Greentech Research LLC v. Wissman*,
    104 A.D.3d 540 (1st Dep't 2013) .......................................................................16

*H1 Lincoln, Inc. v. S. Washington Street, LLC*,
    489 Mass. 1 (2022) ........................................................................................20

*Indus. Gen. Corp. v. Sequoia Pac. Sys. Corp.*,
    44 F.3d 40 (1st Cir. 1995) ...............................................................................19

*Jet Line Servs., Inc. v. Am. Employers Ins. Co.*,
    404 Mass. 706 (1989) .....................................................................................21

*JP Morgan Chase Bank v. Winnick*,
    350 F. Supp. 2d 393 (S.D.N.Y. 2004) ..................................................................16

*JTRE Manhattan Ave. LLC v. Cap. One, N.A.*,
    585 F. Supp. 3d 474 (S.D.N.Y. 2022) ..................................................................13

*Katz v. Belveron Real Estate Partners, LLC*,
    28 F.4th 300 (1st Cir. 2022) .............................................................................18

*Klauber Bros., Inc. v. URBN US Retail LLC*,
    No. 21-cv-4526 (GHW), 2023 WL 1818472 (S.D.N.Y. Feb. 8, 2023) ..............................8

*Krock v. Lipsay*,
    97 F.3d 640 (2d Cir. 1996) ........................................................................... 9-10

*Leavitt v. Welch & Forbes, LLC*,
    2184CV00187-BLS2, 2022 WL 2752532 (Mass. Sup. Ct. May 4, 2022) ...........................18

*Linthicum v. Archambault*,
    379 Mass. 381 (1979) .....................................................................................20

*In re Lois/USA, Inc.*,
    264 B.R. 69 (Bankr. S.D.N.Y. 2001) ...................................................................10

*Lui v. Park Ridge at Terryville Ass'n*,
    196 A.D.2d 579 (2d Dep't 1993) ........................................................................23

*Maloul v. Berkowitz*,
  No. 07 Civ. 8525 (LBS), 2008 WL 2876532 (S.D.N.Y. July 23, 2008) ...............................19

*Mayagüez S.A. v. Citigroup, Inc.*,
  No. 16-cv-6788 (PGG), 2018 WL 1587597 (S.D.N.Y. Mar. 28, 2018) ..................................9

*McNally Wellman Co., a Div. of Boliden Allis, Inc. v. N.Y.S. Elec. & Gas Corp.*,
  63 F.3d 1188 (2d Cir. 1995)...................................................................................................25

*Mem'l Drive Consultants, Inc. v. ONY, Inc.*,
  29 F. App'x 56 (2d Cir. 2002) ...............................................................................................10

*Moriarty v. O'Connell*,
  No. 001181, 2005 WL 1812513 (Mass. Sup. Ct. June 30, 2015).........................................19

*NASCO, Inc. v. Pub. Storage, Inc.*,
  127 F.3d 148 (1st Cir. 1997)..................................................................................................21

*Nasuni Corp. v. ownCloud GmbH*,
  607 F. Supp. 3d 82 (D. Mass. 2022) .................................................................10, 12, 15, 20

*Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*,
  392 F.3d 520 (2d Cir. 2004)...................................................................................................25

*New York Univ. v. Continental Ins. Co.*,
  87 N.Y.2d 308 (1995) ............................................................................................................18

*N.E. Data Sys., Inc. v. McDonnell Douglas Computer Sys. Co.*,
  986 F.2d 607 (1st Cir. 1993)..................................................................................................21

*NPS, LLC v. Ambac Assur. Corp.*,
  706 F. Supp. 2d 162 (D. Mass. 2010) ...................................................................................14

*Oppenheimer & Co. v. Trans Energy, Inc.*,
  946 F. Supp. 2d 343 (S.D.N.Y. 2013)....................................................................................23

*Paradigm BioDevices, Inc. v. Viscogliosi Bros., LLC*,
  842 F. Supp. 2d 661 (S.D.N.Y. 2012)....................................................................................11

*Paye v. Atrium Med. Corp.*,
  No. CV 22-10005-FDS, 2023 WL 349894 (D. Mass. Jan 20, 2023).....................................13

*Polycast Tech. Corp. v. Uniroyal, Inc.*,
  792 F. Supp. 244 (S.D.N.Y. 1992) .........................................................................................14

*Rodi v. S. New England Sch. of Law*,
  389 F.3d 5 (1st Cir. 2004).......................................................................................................16

*Santiago v. Westchester County*,
   No. 13-cv-1886 (LGS), 2014 WL 2048201 (S.D.N.Y. May 19, 2014) ...................................8

*Saul v. Cahan*,
   153 A.D.3d 947 (2017) ...................................................................................18

*Schuster v. Dragone Classic Motor Cars, Inc.*,
   67 F. Supp. 2d 288 (S.D.N.Y. 1999) .................................................................10

*Sergeants Benev. Ass'n Annuity Fund v. Renck*,
   796 N.Y.S.2d 77 (1st Dep't 2005) ...................................................................18

*S. Wine & Spirits of Am., Inc. v. Impact Envtl. Eng'g, PLLC*,
   915 N.Y.S.2d 541 (2011) ...............................................................................23

*Sparago v. Beaver Mountain Log Homes, Inc.*,
   No. 20-CV-276 (KMK), 2021 WL 965448 (S.D.N.Y. Mar. 15, 2021) ...............................13

*Sterry St. Auto Sales, Inc. v. Cummins Inc.*,
   No. 1:20-10798-MPK, 2020 WL 6871022 (D. Mass. Nov. 23, 2020) ................................20

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank*,
   250 F.3d 87 (2d. Cir. 2001) ............................................................................14

*Telerep, LLC v. U.S. Int'l Media, LLC*,
   74 A.D.3d 401 (1st Dep't 2010) .....................................................................23

*In re TJX Cos. Retail Sec. Breach Litig.*,
   524 F. Supp. 2d 83 (D. Mass 2007) .............................................................13, 20

*Torres v. D'Alesso*,
   80 A.D.3d 46 (1st Dep't 2010) ......................................................................12

*Trez Cap. (Fla.) Corp. v. Noroton Heights & Co., LLC*,
   No. 20-cv-9622 (DLC), 2022 WL 16833701 (S.D.N.Y. Nov. 8, 2022) ...............................10

*U.S. Bank N.A. v. Bank of Am., N.A.*,
   No. 12-cv-4873(CM), 2012 WL 6136017 (S.D.N.Y. Dec. 11, 2012) ................................24

*United Res. Recovery Corp. v. Ramko Venture Mgmt., Inc.*,
   584 F. Supp. 2d 645 (S.D.N.Y. 2008) ...........................................................23-24

*Worldwide Commodities, Inc. v. J. Amicone Co.*,
   36 Mass. App. Ct. 304 (1994) ......................................................................21

**Statutes**

Massachusetts General Laws Annotated Chapter 93A ......................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 9(b) ................................................................................................13

Fed. R. Civ. P. 12(b)(6) ................................................................................ *passim*

Plaintiff Binh Thanh Import Export Production & Trade Joint Stock Co. D/B/A Gilimex, Inc. ("Gilimex") respectfully submits this memorandum of law in opposition to defendant Amazon.com Services LLC D/B/A Amazon Robotics' ("Amazon" or "Amazon Robotics") Motion to Dismiss.[1] For the reasons set forth below, the motion should be denied.

## PRELIMINARY STATEMENT

Ignoring the realities of the parties' decade-long relationship, Amazon bases almost the entirety of its motion on the fallacious claim that the parties' "entire commercial relationship is confined" to a one-sided contract executed in 2021. Dkt. No. 27 at 1. Amazon's attempt to recast this action as a case concerning solely a "commercial agreement," *id.*, rings hollow in the face of the true nature of the parties' lengthy special relationship and Amazon's representations (including of a "strategic partnership" with Gilimex), which gave rise to legal duties independent of, and unchanged by, the parties' Component Sale and Purchase Agreement ("CSPA").

As alleged in the complaint, beginning in 2012, Amazon, one of the largest and most powerful companies in the world, approached Gilimex, a much smaller and less sophisticated Vietnamese textile company, and recruited Gilimex to supply Amazon with ever-increasing amounts of Fabric Pod Arrays ("FPAs"), a component of the robotic warehouse transport systems that have been critical to the success of Amazon and its parent, Amazon.com, Inc. ("Amazon.com"). Using its superior size, resources, and expertise, Amazon pressured Gilimex into changing its entire business model, forgoing all other customers, and investing vast sums of money to satisfy Amazon's burgeoning demand, particularly during the COVID-19 pandemic. Gilimex did so in reliance on the parties' long-established course of dealing and on Amazon's

---

[1] *Binh Thanh Import Export Prod. & Trade Joint Stock Co. v. Amazon.com Servs. LLC*, No. 1:23-cv-00292-LGS, Dkt. Nos. 26, 27 (02/24/2023) (Amazon's Motion to Dismiss and accompanying Memorandum of Law).

repeated representations and assurances that Amazon viewed Gilimex as its "strategic partner" and "valued partner" and would protect Gilimex from the potentially disastrous financial consequences of a precipitous drop in Amazon's demand. However, when demand softened last year, Amazon abruptly abandoned its "strategic partner" and refused to purchase any additional FPAs from Gilimex or otherwise compensate Gilimex for the enormous damage to its business.

Amazon's conduct, as alleged in detail in the complaint, was in clear breach of the duties it owed to Gilimex as a result of the parties' special relationship, which included duties to formulate and communicate to Gilimex its FPA demand forecasts with due care, and to act on behalf of Gilimex as a "strategic partner" fiduciary. Amazon's wrongful conduct also constituted an unfair trade practice as contemplated by Massachusetts General Laws Annotated Chapter 93A ("Chapter 93A") and a breach of Amazon's obligations under the CSPA. The complaint thus states cognizable causes of action under Massachusetts law for negligent misrepresentation, breach of fiduciary duty, unfair trade practices, and breach of contract.

Faced with these clear violations of its legal duties, Amazon invokes the (very recently executed) CSPA as purportedly precluding Gilimex from relying on the parties' long course of dealing or Amazon's representations and assurances. Indeed, Amazon would have this Court read the CSPA to give Amazon carte blanche to cheat Gilimex with impunity. However, the CSPA does not affect Gilimex's negligent misrepresentation, unfair trade practices, or fiduciary duty claims, each of which arise independently of the contract. And, contrary to Amazon's arguments, Gilimex's breach of contract allegations are more than sufficient to establish a cause of action.

Amazon's near-complete reliance on the January 2021 CSPA, while only cursorily addressing the actual merits of Amazon's substantive allegations, is telling and underscores that Amazon has no viable arguments that Gilimex's comprehensive allegations fail to state a claim for

the causes of action Gilimex has set forth in its complaint. To the extent Amazon advances any argument whatsoever regarding the merits of Gilimex's claims, those arguments either mischaracterize the complaint or raise issues of fact not appropriate for resolution at this stage.

The Court should reject Amazon's attempt to hide behind the provisions of an agreement signed in 2021 to evade liability for Amazon's egregious violations of its legal duties and obligations to Gilimex—duties and obligations that arose as a result of Amazon's own representations and the parties' close relationship over a ten-year period, both before and after the CSPA was signed. Amazon's motion to dismiss thus should be denied in its entirety.

## STATEMENT OF FACTS

### *Gilimex and the FPAs*

Since 2000, Gilimex has manufactured textile goods for personal and industrial use. Compl.[2] ¶ 18. In 2012, Kiva Systems, which Amazon later acquired, approached Gilimex to develop FPAs to be used in Amazon.com's warehouses.[3] Compl. ¶¶ 19, 22. After the acquisition, Kiva was rebranded "Amazon Robotics," and the company remained headquartered in North Reading, Massachusetts. Compl. ¶ 15. FPAs are fabric and steel superstructures placed atop moving robotic drive units to transport goods for shipment throughout Amazon.com's warehouses. Compl. ¶ 20. In combination with drive units, FPAs function as enormous moving storage shelves, enabling large quantities of goods to be efficiently transported throughout Amazon.com's fulfillment centers—a function vital to Amazon.com's business. Compl. ¶¶ 2, 21.

When Amazon first approached Gilimex and asked Gilimex to become a key supplier of FPAs, Gilimex's operation consisted of two factories and some 1,500 employees. Compl. ¶ 23.

---

[2] Gilimex's December 13, 2022 Complaint, ECF Dkt. No. 1.

[3] Amazon, f/k/a Amazon Robotics LLC, is a wholly owned subsidiary of Amazon.com. Compl. ¶ 15.

Neither factory was configured to produce FPAs. *Id.* In reliance on Amazon's entreaties, Gilimex agreed to completely transform its business model and factories to devote a substantial portion of its capacity to producing FPAs for Amazon. Compl. ¶¶ 5, 26. To secure Gilimex's agreement to do so, Amazon assured Gilimex that it could trust Amazon's judgment, guidance, expertise, and partnership. Compl. ¶¶ 1, 4, 6, 10, 26, 32. From the outset, Gilimex made clear to Amazon that, in view of the massive investment required, it would need advance notice of at least one year of any significant changes in Amazon's demand for FPAs. Compl. ¶¶ 27, 36.

### *The Companies' Relationship Grows*

Gilimex began supplying FPAs to Amazon in 2014, and Amazon's demand steadily increased thereafter. Compl. ¶¶ 28-29. To satisfy these increases in demand, Gilimex had to invest approximately $70 million in its factories, infrastructure, and workforce. Compl. ¶¶ 3, 31.

Recognizing that FPA manufacturing was a time-consuming and labor-intensive process, the two companies worked out a system to ensure that Amazon's voracious demand for FPAs was satisfied: Because Amazon's spikes in demand were cyclical, typically occurring in March, April, and May, Amazon would issue forecasts of its anticipated demand at least every six months, and Gilimex was expected to produce FPAs at full bore year-round and stockpile the excess FPAs during low-demand months to satisfy the demand projected in the forecasts. Compl. ¶¶ 6, 33-40.

If Gilimex failed to stockpile quantities of product to satisfy Amazon's demand forecast— even in the absence of firm purchase orders sufficient to cover such quantities—Amazon would strongly reprimand Gilimex and threaten to reduce its future business with Gilimex. In one such instance on June 2, 2021—*after* the CSPA that Amazon now maintains reflects the entirety of the parties' obligations to each other was signed—an Amazon executive chided that "[B]ecause Amazon sent Gilimex forecasts well in advanced [sic], Gilimex should have been utilizing its full

production capacity during the low demand periods to build and warehouse inventory required to ship the full volumes during the high volume periods."  Compl. ¶ 40.

Amazon deliberately induced Gilimex to place special trust in Amazon so that Gilimex would invest unprecedented amounts of resources on Amazon's behalf.  Compl. ¶¶ 6, 10, 41-49. To foster such trust and reliance, Amazon repeatedly referred to Gilimex as Amazon's "partner" and to their relationship as a "strategic partnership."  Compl. ¶¶ 1, 10, 43-46.

### The Pandemic

With the onset of the COVID-19 pandemic and the corresponding dramatic increase in e-commerce, Amazon's business surged, and it demanded that Gilimex dramatically expand its FPA manufacturing capacity to keep up.  Compl. ¶¶ 3, 7, 50-51.  Relying on its long relationship with Amazon and Amazon's assurances of a "strategic partnership," Gilimex constructed three new factories at a cost of tens of millions of dollars, devoted solely to manufacturing Amazon FPAs. Compl. ¶¶ 1, 3-4, 53.  Gilimex spent millions more to refit the entirety of its three preexisting factories to produce only Amazon FPAs.  Compl. ¶ 54.  In doing so, Gilimex gave up valuable business relationships with other customers, including IKEA, Decathlon, and Columbia Sportswear.  Compl. ¶¶ 3, 5, 54.  Gilimex put forth additional resources to house and feed its employees in isolation, to keep its operations running at 100% capacity and meet Amazon's demands during the quarantine days of the pandemic.  Compl. ¶¶ 56-58.

### The Component Sale and Purchase Agreement

For years, Gilimex manufactured and supplied FPAs to Amazon without any written agreement.  Compl. ¶ 59.  Rather, Gilimex relied on Amazon's assurances of its good faith and partnership, as well as the parties' longstanding course of dealing.  *Id.*  It was not until 2021 that Amazon had Gilimex sign a one-sided contract on a take-it-or-leave-it basis.  Compl. ¶¶ 2, 59-63.

5

Given the massive investments it had already made and Amazon's demands, and in reliance on Amazon's representations of partnership and good faith, as well as the parties' course of dealing, Gilimex agreed to sign the CSPA in January 2021. Compl. ¶¶ 60, 63. Having placed its fate and that of its thousands of Vietnamese workers in Amazon's hands, Gilimex relied upon Amazon for—and vitally needed—clear, timely, and accurate communications about future orders and demand for FPAs. Compl. ¶ 64. Even the one-sided CSPA expressly recognized this by requiring Amazon to provide forecasts of anticipated demand at least every six months and to hold quarterly business review meetings ("QBRs") during which representatives of the companies would discuss business issues and future projections. Compl. ¶¶ 37, 64. However, Amazon failed to hold any QBRs after May 2021, despite Gilimex's continued requests for them. Compl. ¶ 65. As a result, Gilimex found itself in an unenviable position—utterly dependent on Amazon's business, and completely in the dark as to the behemoth's future plans, with only Amazon's forecasts and purchase orders (which gave no indication of declining) on which to rely for its continued livelihood. Compl. ¶ 66.

### *Amazon Slashes its Forecasts Without Warning and Abandons Gilimex*

In the spring of 2022, Gilimex had no reason to believe that there would be any change in the trajectory of Amazon's FPA demand. Compl. ¶ 67. In keeping with the parties' course of dealing—one in which Amazon expected and demanded that Gilimex maintain 100% production and stockpile excess FPAs—Gilimex continued production of FPAs and contracted for the supply of raw materials at the levels required in 2021. Compl. ¶¶ 67-68.

Yet beginning in April 2022, Amazon provided, suddenly and without warning, a series of reduced demand forecasts, culminating in a May 28, 2022 forecast that effectively reduced to zero Amazon's projected demand for additional FPAs. Compl. ¶¶ 69-71. Though concerned,

Gilimex's apprehension was tempered by its past experience that such preliminary forecasts were often revised upward—especially because Amazon gave no indication of a fundamental, deeper change in demand. Compl. ¶¶ 48, 49, 70. Moreover, Gilimex reasonably relied on Amazon's promises that, should demand shift in a serious way, Amazon would continue to purchase large numbers of FPAs so that Gilimex could ramp down production gradually. Compl. ¶¶ 68, 70. For its part, Amazon indicated that it would honor that commitment: During the spring and summer of 2022, its senior personnel assured Gilimex that the parties could work something out, and led Gilimex to believe that at least a one-year ramp-down period would be provided. Compl. ¶¶ 75-83. However, after an initially productive meeting at Amazon Robotics' North Reading, Massachusetts headquarters, Amazon began to renege on its assurances and ignored the Gilimex delegation. Compl. ¶¶ 85-86. At one point, Gilimex executives were escorted out of Amazon Robotics' Massachusetts offices after requesting a follow up meeting. Compl. ¶ 85. Finally, on August 3, 2022, Amazon jettisoned any idea of a ramp-down and informed Gilimex that its hardships, including hundreds of millions of dollars of sunk costs in raw material, inventory, factory investments, and employee salaries—all at Amazon's direction—as well as tens of millions of dollars in lost profits, were "not [Amazon's] business." Compl. ¶ 86.

As a result, Gilimex was left with more than $55 million in unsellable FPAs, $68 million in materials that it does not need and cannot return, $30 million in factory investments expended at Amazon's urging, $37 million in costs to refit factories from their function manufacturing FPAs, and more than $90 million in lost profits while seeking new customers. Compl. ¶ 88. All while, Gilimex continues to employ and pay its full 7,000 employee workforce. Compl. ¶ 89.

## LEGAL STANDARDS

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint only must plead factual allegations that are plausible and entitle the plaintiff to relief. *See Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009). "A claim is plausible when the plaintiff pleads facts to support the reasonable inference that the defendant has acted unlawfully." *Klauber Bros., Inc. v. URBN US Retail LLC*, No. 21-cv-4526 (GHW), 2023 WL 1818472, at *2 (S.D.N.Y. Feb. 8, 2023) (citing *Iqbal*, 556 U.S. at 678). For the purposes of a motion to dismiss, courts must accept all of the factual allegations in the complaint as true. *See Iqbal*, 556 U.S. at 678. A motion to dismiss is properly denied where, as here, the plaintiff's claim "requires a factual inquiry." *See Santiago v. Westchester County*, No. 13-cv-1886 (LGS), 2014 WL 2048201, at *3 (S.D.N.Y. May 19, 2014).

## ARGUMENT

Amazon's motion to dismiss hinges on its inaccurate contention that the parties' *entire* economic relationship is governed by the CSPA—an agreement signed years after the parties' relationship began. Dkt. No. 27 at 7. Under both Massachusetts and New York law, however, the complaint sufficiently alleges the existence of a special relationship between Amazon and Gilimex and independent legal duties that arose from such a relationship. The complaint also adequately alleges wrongful and unfair conduct by Amazon under Chapter 93A, which prohibits unfair business conduct regardless of whether there is a contract concerning the parties' business relationship. Finally, the complaint sufficiently alleges a breach of contract claim based on Amazon's failure to hold QBRs in violation of the CSPA.

## I. Massachusetts Law Governs the Non-Contractual Claims

Along with breach of contract, the complaint alleges three non-contractual claims: (1) negligent misrepresentation; (2) unfair trade practices; and (3) breach of fiduciary duty. Amazon's argument that the CSPA requires application of New York law to these non-contractual claims is without merit and contradicts Second Circuit case law directly on point. Although it is true that CSPA § 17.4 has New York venue and choice-of-law clauses, those provisions are

critically different in scope. Whereas the choice-of-law clause reads "***This Agreement***[4] is governed by the substantive laws of the state of New York, excluding its conflicts of law provisions," the New York venue provision is far broader, extending to "Any dispute arising ***under, in connection with, or incident to*** this Agreement or about its interpretation . . . ." Second Circuit and New York cases have seized on this distinction to interpret nearly identical clauses to apply New York law only to ***contractual*** claims, and not to related ***non-contractual*** claims.[5]

*Mayagüez S.A. v. Citigroup, Inc.*, No. 16-cv-6788 (PGG), 2018 WL 1587597 (S.D.N.Y. Mar. 28, 2018), is directly on point. There, plaintiff Mayagüez purchased exotic financial hedge devices from defendant Citigroup pursuant to a written contract. *Id.* at *2. That contract included a narrow choice-of-law clause providing that "[t]his Agreement will be governed by and construed in accordance with the laws of the State of New York," and a broader New York venue clause that applied to "any suit, action or proceedings relating to any dispute arising out of or in connection with this Agreement." *Id.* at *6. In addition to a contractual unconscionability claim, Mayagüez's suit alleged a number of tort claims relating to the subject matter of the contract, including a negligent misrepresentation claim and several Colombian tort claims. *Id.* at *7. In ruling that the choice-of-law provision did not govern the tort claims, the court held that "New York does not read a choice of law provision that appears, by its terms, to address only the governing law for purposes of interpreting the contract, to encompass tort and other non-contractual causes of action." *Id.*; *see also Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996) ("Under New York law, in order for a choice-of-law provision to apply to claims for tort arising incident to the contract, the

---

[4] All emphasis supplied unless otherwise noted.

[5] Amazon's citations of *Freedman v. Chem. Constr. Corp.*, 43 N.Y.2d 260, 264-65 (1977) and *Career Partners, Inc. v. Brady*, No. 652451/2019, 2020 WL 149606 (N.Y. Sup. Ct. N.Y. Cty. Jan. 13, 2020) are inapposite because both involved *contract* claims, not tort claims.

express language of the provision must be 'sufficiently broad' as to encompass the entire relationship between the contracting parties."); *accord Computer Sales Int'l, Inc. v. Lycos, Inc.*, No. Civ.A.05–10017 (RWZ), 2005 WL 3307507, at *2 (D. Mass. Dec. 6, 2005) (finding Missouri choice-of-law provision did not preclude application of Massachusetts law to related negligent misrepresentation and Chapter 93A claims). Amazon cites *In re Lois/USA, Inc.*, 264 B.R. 69 (Bankr. S.D.N.Y. 2001) in support of its choice-of-law argument, but that case is consistent with *Mayagüez* and *Krock* and actually supports **Gilimex's** position in holding very similar choice-of-law language to apply only to contractual claims and not to related non-contractual claims including negligent misrepresentation and fraud.[6]

In view of this clear precedent, the New York choice-of-law provision does not control Gilimex's non-contractual claims, and the law applicable to those claims should be determined according to a traditional interests analysis under New York choice-of-law rules. *See Mem'l Drive Consultants, Inc. v. ONY, Inc.*, 29 F. App'x 56, 62 (2d Cir. 2002). Under those rules, if there is a conflict between two states' substantive law, the court must employ an interest analysis that "applies the laws of the jurisdiction with the greatest interest in the application of its law based on

---

[6] Amazon's reliance on *Trez Cap. (Fla.) Corp. v. Noroton Heights & Co., LLC*, No. 20-cv-9622 (DLC), 2022 WL 16833701 (S.D.N.Y. Nov. 8, 2022) is misplaced for at least two reasons. First, the court's decision to apply New York law to non-contractual claims was based on choice-of-law language in the loan agreement at issue far broader than that in the CSPA, providing "the **note** and the other loan documents **and the obligations arising hereunder and thereunder** shall be governed by, and construed in accordance with, the laws of the state of New York . . . ." *Trez*, 2022 WL 16833701, at *18. The CSPA's choice-of-law clause applies far more narrowly to "This Agreement" only. *See Schuster v. Dragone Classic Motor Cars, Inc.*, 67 F. Supp. 2d 288, 290-91 (S.D.N.Y. 1999) (refusing to apply New York choice-of-law clause to fraud claim, reasoning that in the Second Circuit, contractual choice-of-law language encompassing the agreement only is insufficiently broad to reach related tort claims). Second, the *Trez* court acknowledged that "a simple breach of contract is not to be considered a tort **unless a legal duty independent of the contract itself** has been violated," and relied on the fact that the borrower's negligent misrepresentation claim was indistinguishable from its breach of contract claims for failure to fund the loan. *Trez*, 2022 WL 16833701, at *18. In contrast, here, Amazon's liability for the non-contractual claims does not spring from any contractual provision; rather, it springs from Amazon's *independent* legal duties to Gilimex. *See Nasuni Corp. v. ownCloud GmbH*, 607 F. Supp. 3d 82, 99 (D. Mass. 2022) (New York choice-of-law provision did not apply to Massachusetts negligent misrepresentation claim because "[Plaintiff] need not prove breach of contract to demonstrate that [Defendant] . . . negligently misrepresented its services or software before or after execution of the [contract.]").

the occurrences within each jurisdiction, or contacts of the parties with each jurisdiction, that relate to the purpose of the particular law in conflict." *Paradigm BioDevices, Inc. v. Viscogliosi Bros., LLC*, 842 F. Supp. 2d 661, 665 (S.D.N.Y. 2012) (internal quotation and citation omitted).

In this case, Massachusetts holds the greatest interest in applying its laws. At all relevant times, Amazon Robotics was headquartered in North Reading, Massachusetts. Compl. ¶ 15. Amazon Robotics LLC operated as a free-standing subsidiary of Amazon.com, Inc. until it merged with the defendant—Amazon.com Services, LLC—in January 2021. *Id.* Amazon Robotics now operates as a division of the defendant and is still headquartered in North Reading. *Id.* Amazon Robotics was the entity that ordered and directed the purchases of FPAs from Gilimex, contracted with Gilimex, and was responsible for the forecasts provided to Gilimex.[7] All relevant conduct by Amazon Robotics was directed out of Massachusetts, and most of the key Amazon Robotics personnel who interfaced with Gilimex, made the assurances and representations at issue in this case, and negotiated the CSPA did so from Amazon Robotics' offices in Massachusetts. *See e.g.*, Compl. ¶¶ 39-40, 44-47. Moreover, numerous meetings between the parties were conducted in Massachusetts, including the critical meetings between the parties in the summer of 2022 after Amazon informed Gilimex of its dramatically reduced FPA forecasts. Compl. ¶¶ 75-86. Because Massachusetts is the state where the weight of the conduct, witnesses, and evidence lie in this action, Massachusetts has a strong interest in the application of its laws to this matter. Conversely, New York has effectively zero interest in the application of its law to this case: Amazon Robotics did not conduct any business out of New York, nor does this case concern conduct or individuals located in New York.[8]

---

[7] The preamble to the complaint defines "Amazon" or "Amazon Robotics" to be this Massachusetts entity, and all allegations referencing "Amazon" or "Amazon Robotics" in the complaint concern the Massachusetts entity.

[8] Amazon's argument that New York law applies to the non-contractual claims because those claims "necessarily implicate—and, indeed, seek to avoid—multiple provisions" of the CSPA, Dkt. No. 27 at 10-11, is unavailing because

Gilimex's negligent misrepresentation, unfair trade practices, and breach of fiduciary duty claims should thus be assessed under Massachusetts law.

## II.     The CSPA Does Not Foreclose Gilimex's Non-Contractual Claims

The contours of the parties' decade-long relationship of trust extend far beyond the CSPA, and the law in both Massachusetts and New York recognizes that a defendant's conduct can give rise to duties separate and distinct from those specified in their contract. *See Computer Sales*, 2005 WL 3307507, at *5, 8 (upholding negligent misrepresentation and Chapter 93A claims under Massachusetts law notwithstanding integrated contract). "Even if a cause of action concerns some of the same underlying conduct as the breach of contract cause of action, if the allegations concern a breach of a duty that is independent of the contract, they are not subject to dismissal . . . ." *Bd. of Mgrs. of Brightwater Towers Condo. v. FirstService Residential New York, Inc.*, 193 A.D.3d 672, 674-75 (2d Dep't 2021) (denying motion to dismiss fiduciary duty claim notwithstanding existence of a contract governing the parties' relationship).[9]

Here, Gilimex has alleged much more than mere breach of contract, and Gilimex's complaint alleges precisely the sort of behavior that gives rise to the non-contractual claims Gilimex has brought, notwithstanding the existence of the CSPA.

## III.    Gilimex States a Cognizable Claim for Negligent Misrepresentation

Amazon contends that Gilimex has failed to state a claim for negligent misrepresentation, arguing that the CSPA precludes any such claim and that Amazon had no independent legal duty

---

the duties Amazon incurred arose independent of the CSPA, even if they tangentially touch upon subjects addressed in the CSPA. *See Nasuni Corp. v. ownCloud GmbH*, 607 F. Supp. 3d 82, 100 (D. Mass. 2022).

[9] Amazon relies on *Torres v. D'Alesso*, 80 A.D.3d 46 (1st Dep't 2010) for the proposition that the CSPA extinguished any prior oral agreement between it and Gilimex. Dkt. No. 27 at 8. But Amazon's argument misconstrues Gilimex's claims: Gilimex does not argue that Amazon violated a previous oral agreement or a parol term of the CSPA. Rather, it contends that Amazon violated independent fiduciary and other legal duties it owed Gilimex as a result of the long and close special relationship between the parties both before and after the CSPA was signed.

to Gilimex.  Dkt. No. 27 at 11.  Amazon is wrong on both counts.

In Massachusetts, the elements of negligent misrepresentation are: (1) in the course of their business; (2) defendant supplied false information for the guidance of others in their business transactions; (3) causing and resulting in pecuniary loss to those others; (4) by their justifiable reliance on the information, and (5) defendant failed to exercise reasonable care or competence in obtaining or communicating the information.  *See Golber v. BayBank Valley Tr. Co.*, 46 Mass. App. Ct. 256, 257 (1999).  "[A] claim of negligent misrepresentation is ordinarily one for the jury, unless the undisputed facts are so clear as to permit only one conclusion."  *In re TJX Cos. Retail Sec. Breach Litig.*, 524 F. Supp. 2d 83, 91 (D. Mass 2007); *Golber*, 46 Mass. App. Ct. at 257 ("A claim for negligent misrepresentation is ordinarily one for a jury . . . .").[10]

The complaint alleges that Gilimex and Amazon had a decade-long, close strategic partnership—one in which Gilimex and Amazon both understood that Amazon's forecasts would be used by Gilimex to purchase materials and stockpile product.  *See* Compl. ¶¶ 37-40, 91-92.  However, in breach of its duty to provide accurate and timely forecasts, Amazon negligently failed to provide any indication that demand would soften before April 2022.  Compl. ¶ 66-67, 93-94, 97.  The forecasts provided to Gilimex for the periods covering 2022 and 2023 were false and were

---

[10] Amazon argues that negligent misrepresentation is subject to Fed. R. Civ. P. 9(b)'s elevated pleading standard.  Dkt. No. 27 at 11.  However, that is far from settled in this district: "There is debate within this Circuit over whether Rule 8(a) or Rule 9(b) governs claims of negligent misrepresentation."  *JTRE Manhattan Ave. LLC v. Cap. One, N.A.*, 585 F. Supp. 3d 474, 478 (S.D.N.Y. 2022).  Moreover, courts have clarified that, to the extent an elevated pleading standard may apply to negligent misrepresentation, such application is appropriate only where the "claims overall sound in fraud," and not simple negligence. *See, e.g., Paye v. Atrium Med. Corp.*, No. CV 22-10005-FDS, 2023 WL 349894, at *11 (D. Mass. Jan 20, 2023).  In any event, the allegations of the complaint are sufficient even under Rule 9(b), which requires the complaint to "detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Sparago v. Beaver Mountain Log Homes, Inc.*, No. 20-CV-276 (KMK), 2021 WL 965448, at *8 (S.D.N.Y. Mar. 15, 2021).  Gilimex has complied with each requirement: the statements pertained to forecasts, including those issued on April 2, 2022 and May 28, 2022, that were, at minimum, negligently inaccurate, Compl. ¶¶ 94, 96, and Gilimex has also alleged actionable omissions stemming from Amazon's failure to warn of significant changes of demand before the spring of 2022, Compl. ¶¶ 67–68.  Gilimex has also alleged that the statements and omissions were made by Amazon, *id.*, and that they were ultimately revealed to be negligently prepared and false, Compl. ¶¶ 72, 101.

repeatedly and dramatically revised after Gilimex had already committed resources to the production of FPAs in reliance on those forecasts. Compl. ¶¶ 69-77, 94-98. The forecasts were prepared without due care for their accuracy—indeed, in an August 10, 2022 meeting, an Amazon executive admitted that Amazon "just had a bad forecast system, due to their limited competence." Compl. ¶ 72. As a direct result of Amazon's failure to exercise the reasonable care or competence in obtaining and delivering forecasts, Gilimex "suffered enormous pecuniary loss" in the hundreds of millions of dollars. Compl. ¶ 102. These allegations are sufficient to plead each element of negligent misrepresentation under Massachusetts law.[11]

Contrary to Amazon's contention, the CSPA is not a bar to Gilimex's negligent misrepresentation claim. Throughout the parties' decade-long relationship both before and after execution of the CSPA, both parties understood that Gilimex would rely on the forecasts to manufacture and stockpile inventory and materials to satisfy Amazon's demand. *See* Compl. ¶¶ 37-40, 91-92. In fact, even after the CSPA was signed, when it suited Amazon's interests, Amazon would threaten Gilimex with harsh consequences should Gilimex fail to stockpile FPAs

---

[11] The applicable negligent misrepresentation law in Massachusetts does not require the existence of a "special relationship" for a duty to arise. *See NPS, LLC v. Ambac Assur. Corp.*, 706 F. Supp. 2d 162, 179 (D. Mass. 2010). However even if New York law—which requires a special relationship to trigger a duty—applied, the allegations in the complaint would still be sufficient. First, the existence of a special relationship in New York is typically an issue of fact that cannot be resolved on a Rule 12(b)(6) motion. *See Polycast Tech. Corp. v. Uniroyal, Inc.*, 792 F. Supp. 244, 269-70 (S.D.N.Y. 1992) ("New York cases generally hold that '[t]he issue of whether a 'special relationship' exists sufficient to make out a cause of action for negligent misrepresentation should […] be left to the finder of fact.'" (citation omitted)). Second, the complaint sufficiently alleges the existence of a special relationship; the allegations state that Amazon, a company orders of magnitude larger than Gilimex with unique access to critical information, repeatedly induced Gilimex to view the two companies' relationship as a special one, referred to Gilimex as a "valued" and "strategic" partner, encouraged Gilimex to place trust in it and rely on its superior expertise and specialized knowledge, and induced Gilimex to recalibrate its entire business model to one dependent upon Amazon. Compl. ¶¶ 41–43, 45-46, 55–56. These allegations are more than sufficient to create an issue of fact as to the existence of a special relationship and attendant duty of care, even under New York law. *See Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d. Cir. 2001) ("Whether a special relationship exists is an issue of fact, to be governed by the weighing of three factors: . . . whether the person making a representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." (internal quotation and citation omitted)).

consistent with Amazon's forecasts, regardless of the issuance of firm purchase orders. Compl. ¶ 40. Moreover, the CSPA language itself confirms that Gilimex was expected to rely on the forecasts provided by Amazon, stating that the forecasts would be provided for Gilimex's "planning purposes" and "ease of arrangement." Compl. ¶ 37; Exhibit A at § 4.2.

Although it is true that the CSPA provides that the forecasts do not give rise to a **_contractual_** duty to **_purchase_** the forecast quantities, based on the parties' course of dealing, both before and after execution of the CSPA, Amazon had an **_independent legal duty_** to formulate and provide the forecasts with due care.[12] *See Nasuni Corp. v. ownCloud GmbH*, 607 F. Supp. 3d 82, 98-99 (D. Mass. 2022) (defendant may be liable for negligent misrepresentation in addition to breach of contract; "neither the parol evidence rule nor a contractual integration clause, such as that which is included in the [agreement], bars a plaintiff from pursuing a claim for misrepresentation"); *Computer Sales*, 2005 WL 3307507, at *8 (written contract was not a bar to Massachusetts negligent misrepresentation claim); *see also Golber*, 46 Mass. App. Ct. at 258 ("Although there may be 'no duty imposed upon one party to a transaction to speak for the information of the other . . . if he does speak with reference to a given point of information . . . he is bound to speak honestly and to divulge all the material facts bearing upon the point that lie within his knowledge.'" (internal quotation and citation omitted)).

Amazon also argues that any reliance by Gilimex on Amazon's representations was unreasonable given the CSPA language regarding the purportedly non-binding nature of the forecasts.[13] That argument is unavailing for all of the reasons discussed in this section, and because

---

[12] Moreover, the damages sought by Gilimex for Amazon's negligent misrepresentation do not seek to compel Amazon to purchase forecasted quantities of FPAs, but rather to compensate Gilimex for its detrimental changes in position as a result of Amazon's failure to provide timely notice of changes in FPA demand and provision of carelessly prepared forecasts. Compl. ¶ 102.

[13] Amazon relies on *Gertz v. Vantel Int'l Pearls in the Oyster Inc.*, No. 19-cv-12036-FDS, 2020 WL 3977404, at *11 (D. Mass. July 14, 2020) for this proposition. Dkt. No. 27 at 12. But the facts of that case are very different than

a reliance argument is an issue of fact not appropriate for resolution on a motion to dismiss. *See*

*Rodi v. S. New England Sch. of Law*, 389 F.3d 5, 16 (1st Cir. 2004) ("Under Massachusetts law,

the reasonableness of a party's reliance ordinarily constitutes a question of fact for the jury.");

*Computer Sales*, 2005 WL 3307507, at *8 (upholding Massachusetts negligent misrepresentation

claim notwithstanding integrated contract because "reliance is an issue of fact").[14]

The Court should deny Amazon's motion to dismiss Gilimex's properly pled claim for

negligent misrepresentation.

## IV.    Gilimex States a Cognizable Claim for Breach of Fiduciary Duty

Amazon argues that the breach of fiduciary duty claim must fail because the parties'

contractual relationship did not give rise to fiduciary duties and because the claim is a "rehash" of

---

those here.  The plaintiffs there relied on vague marketing statements to argue that their relationship with Vantel was not terminable at will, though their contract with Vantel expressly provided that it was.  *Id.* at *10-11.  The court held that their reliance was unreasonable because the vague representations amounted to mere puffery and because any notion that the relationship was not terminable at will was "flatly contradicted" by the contract.  *Id.*  Here, the parties understanding as to the forecasts was clear and concrete, and Gilimex's reliance on the forecasts was not flatly contradicted by the CSPA, which acknowledged Amazon's duty to provide forecasts for Gilimex's "planning purposes."  Although the CSPA provides that Amazon's forecasts are not a commitment to **purchase,** it **does not** state that Gilimex could not **rely** on them.  Indeed, the parties' course of dealing indicates that Amazon **expected** Gilimex to rely on the forecasts.

[14] Amazon's reliance on *Dallas Aerospace, Inc. v. CIS Air Corp.,* 352 F.3d 775 (2d Cir. 2003), *JP Morgan Chase Bank v. Winnick,* 350 F. Supp. 2d 393 (S.D.N.Y. 2004), and *Greentech Research LLC v. Wissman,* 104 A.D.3d 540, 540 (1st Dep't 2013) is misplaced, both because each case turns on the "special relationship" standard under New York law that does not apply to this matter and because they are factually or procedurally inapposite.  *Dallas* is a **summary judgment** decision that dealt with the one-time purchase of a jet engine between two sophisticated parties "in the business of buying, selling, and leasing aircraft and aircraft engines." 352 F.3d at 778.  There, the parties were of roughly equal bargaining power and expertise, with no prior relationship or course of dealing.  *See id.* at 789 ("[Plaintiff] cannot claim it relied on [Defendant's] special expertise because it is clear that [Plaintiff] itself had the relevant expertise at issue.").  Similarly, in *Winnick*, plaintiffs were highly sophisticated banks and the parties had no relationship outside of the "plain vanilla" contract.  350 F. Supp. 2d at 396, 401, 404.  Moreover, in *Winnick*, the plaintiff relied on the **contract itself** as the **sole basis** for the alleged special relationship with the defendant.  *Id.* at 401 ("[I]f not for the existence of the contract, [Defendants] would have had no relationship to the Banks whatsoever.").  Here, Gilimex does not argue that the parties' special relationship arose from the CSPA; rather, it arose from the parties' decade-long course of dealing.  Finally, in *Greentech*, plaintiff was an experienced financial analyst and money manager, and there was no disparate bargaining power, resources or expertise; moreover, the only superior knowledge allegedly possessed by defendants was knowledge of their own wrongdoing, "not the type of unique or specialized expertise that would support a cause of action for negligent misrepresentation."  104 A.D.3d at 541.

allegations underlying Gilimex's negligent representation claim.[15]  Dkt. No. 27 at 21.  Neither argument is meritorious and the complaint adequately pleads a claim for breach of fiduciary duty.

In Massachusetts, the elements of a breach of fiduciary duty claim are: "(1) the existence of a fiduciary duty; (2) breach of that duty; (3) damages; and (4) a causal connection between breach of the duty and the damages." *See Baker v. Wilmer Cutler Pickering Hale and Dorr LLP*, 91 Mass. App. Ct. 835, 842 (2017).  "A fiduciary duty exists 'when one reposes faith, confidence, and trust in another's judgment and advice,'" *Doe v. Harbor Schools, Inc.*, 446 Mass. 245, 252 (2006) (citation omitted), and fiduciary duties can arise outside traditional fiduciary relationships. *See Baker*, 91 Mass. App. Ct. at 844.  The law is settled that "the determination of whether a fiduciary relationship exists outside one of the well-defined relationships is largely a question of fact . . . ." *Id*.

The complaint plausibly alleges a fiduciary relationship between Gilimex and Amazon. The complaint alleges a great bargaining inequality of Gilimex relative to Amazon, Amazon's superior resources, expertise, experience, and access to information, and Amazon's inducement and acceptance of Gilimex's placement of trust in Amazon and massive investments in reliance on Amazon's superior position and assurances.  *See* Compl. ¶¶ 26, 41-49.  The complaint thus sufficiently pleads that Amazon owed Gilimex fiduciary duties of care, loyalty, disclosure, honesty, and good faith and was bound to act in Gilimex's best interests.  *See* Compl. ¶¶ 124-125.

Although Amazon argues that the "parties' arms-length contractual relationship" should not be "recast" "into a fiduciary one," Dkt No. 27 at 26, the law is clear that both contractual and fiduciary relationships may exist simultaneously.  *See Cohen v. State St. Bank & Tr. Co.*, 72 Mass.

---

[15] Amazon does not appear to dispute that the elements of breach, causation, and injury are adequately alleged.  In any event, Gilimex adequately pleaded breach, causation, and injury.  *See* Compl. ¶¶ 124-26.

App. Ct. 627, 633 (2008) (contractual and fiduciary duties can coexist distinct from one another); *see also Brightwater Towers*, 147 N.Y.S.3d at 82 (fiduciary relationship may arise where contracting parties "agree to and accept the responsibilities that flow from such a contractual fiduciary bond"); *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 316 (1995) ("[D]efendant may be liable in tort when it has breached a duty of reasonable care distinct from its contractual obligations, or when it has engaged in tortious conduct separate and apart from its failure to fulfill its contractual obligations.").[16]

The execution of the CSPA in 2021 did not dissolve the fiduciary relationship and Amazon's attendant duties that had developed over a years-long course of dealing. *See Leavitt v. Welch & Forbes, LLC*, 2184CV00187-BLS2, 2022 WL 2752532, at *4 (Mass. Sup. Ct. May 4, 2022) (holding the enforceable contract's limitation of liability provision will not apply to bar plaintiff's recovery if plaintiff shows that defendant took actions and engaged in conduct that was inconsistent with its fiduciary duties owed to plaintiff).[17]

---

[16] Amazon's reliance on *CIBC Bank & Trust Co. (Cayman) Ltd. v. Credit Lyonnais*, 270 A.D.2d 138 (1st Dep't 2000), *Feldman v. Byrne*, 210 A.D.3d 646 (2d Dep't 2022), *Katz v. Belveron Real Estate Partners, LLC*, 28 F.4th 300 (1st Cir. 2022), and *Saul v. Cahan*, 153 A.D.3d 947 (2017) for its argument that Gilimex and Amazon had an arm's-length non-fiduciary relationship is unfounded. *CIBC* involved a suit between two highly sophisticated international banks and the parties' contract itself included specific language reciting that each party "is a sophisticated institutional investor" and "has acted in the capacity of an arm's-length contractual counterparty and not as [the other's] financial advisor or fiduciary." 270 A.D.2d at 139. The language Amazon cites from *Feldman* pertains not to fiduciary duty but to negligent misrepresentation under inapplicable New York law, and in any event, that case concerned a suit between two individuals with no indication of disparate bargaining power, resources, or expertise. 210 A.D.3d at 650. *Katz* is a **summary judgment** decision concerning what the court described as a suit by "a sophisticated real estate investor currently suffering from seller's remorse" and in which there was no "disparate capacity or knowledge" between the parties. 28 F.4th at 312. Amazon cites *Katz* for the proposition that "business transactions conducted at arm's length generally do not give rise to fiduciary relationships," but conveniently omits the conclusion of that sentence: "such a relationship can develop where one party reposes its confidence in another." Dkt. No. 27 at 21; *Katz*, 28 F.4th at 311. That is precisely what Gilimex alleges. Finally, *Saul* also involved a sophisticated plaintiff (an attorney and business owner) and is devoid of any indicia of disparate bargaining power, resources, or expertise. 153 A.D.3d 947. Although Amazon's brief characterizes *Saul* as requiring "control" for a fiduciary relationship to be found, that overstates *Saul*'s holding. Dkt. No. 27 at 22. Rather, *Saul* notes that control is just one way to demonstrate special circumstances giving rise to a fiduciary duty—not the only way. *Saul*, 153 A.D.3d at 949.

[17] New York law also recognizes that fiduciary duties can arise outside of a contract. *See Sergeants Benev. Ass'n Annuity Fund v. Renck*, 796 N.Y.S.2d 77, 79 (1st Dep't 2005) ("[L]iability for breach of a fiduciary duty is not

Amazon also argues that Gilimex's decision to repose trust and confidence in Amazon was "manifestly unreasonable" in light of the CSPA's merger clause. Dkt. No. 27 at 22. However, as with the other factual issues used improperly by Amazon to avoid liability at the pleading stage, "[w]hether there is a relationship of trust and confidence under particular circumstances is a question of fact." *Moriarty v. O'Connell*, No. 001181, 2005 WL 1812513, at *4 (Mass. Sup. Ct. June 30, 2015); *see also Maloul v. Berkowitz*, No. 07 Civ. 8525 (LBS), 2008 WL 2876532, at *2 (S.D.N.Y. July 23, 2008) ("Whether or not reliance on alleged misrepresentations is reasonable in the context of a particular case is intensely fact-specific and generally considered inappropriate for determination on a motion to dismiss."); *Computer Sales*, 2005 WL 3307507, at *4 (D. Mass. Dec. 6, 2005) ("Reliance is generally a question of fact for the jury . . . ."). Here, the factual inquiry would be particularly complex, given the parties' long course of dealing that predated the CSPA by several years.[18] *See* Compl. ¶ 59.

Amazon's argument that the fiduciary duty claim "rehashes the same allegations underpinning [the] negligent misrepresentation claim" is similarly meritless. Dkt. No. 27 at 21. Gilimex has alleged specific facts separate from those relating to the negligent misrepresentation claim, which focus on Amazon's failures regarding the forecasts. *See, e.g.*, Compl. ¶¶ 4-6, 119-22. In any event, it is black-letter law that "[a] course of conduct may give rise to more than one

---

dependent solely upon an agreement or contractual relation between the fiduciary and the beneficiary but results from the relation.").

[18] Citing *Indus. Gen. Corp. v. Sequoia Pac. Sys. Corp.*, 44 F.3d 40 (1st Cir. 1995), Amazon argues that there was no fiduciary relationship because Amazon claims Gilimex unilaterally vested its trust in Amazon. Dkt. No. 27 at 22. But the complaint specifically alleges that *Amazon induced* Gilimex to place its trust and reliance in Amazon and that Amazon was aware of and accepted that reliance when it encouraged Gilimex to increase its FPA manufacturing capacity for Amazon's benefit. *See* Compl. ¶¶ 41-43, 47, 121-23. Gilimex also alleges that Amazon consistently referred to Gilimex as a "partner" to further induce Gilimex's placement of trust in Amazon. Compl. ¶¶ 10, 32, 42-46. In any event, *Industrial General* is easily distinguishable. First, that case was decided on the merits following a *bench trial*, and expressly recognizes that "[t]he question of whether, in a particular factual setting, a fiduciary relationship exists is a question of fact." *Indus. Gen. Corp.*, 44 F.3d at 44. Second, the parties there had no long-standing relationship, let alone one preexisting the contract, and the plaintiff's business counterparty was a third-party, not the defendant. *See id.*

cause of action," and that is the case here. *Cohen*, 72 Mass. App. Ct. at 633.

For these reasons, the complaint states a cognizable claim for breach of fiduciary duty.

## V.    Gilimex States a Cognizable Claim for Unfair Trade Practices

Amazon does not—because it cannot—deny that the allegations in the complaint lay out a *prima facie* claim for unfair trade practices pursuant to Chapter 93A.[19]  Rather, almost the entirety of Amazon's argument with regard to the Chapter 93A claim is that the CSPA precludes such a claim because of the New York choice-of-law provision. Dkt. No. 27 at 14-15.  Because, as shown in Section I above, that provision does not apply to this non-contractual claim, Amazon's argument for dismissal of the Chapter 93A claim should be rejected.  *See Nasuni*, 607 F. Supp. 3d at 100 (denying motion to dismiss Chapter 93A claim notwithstanding New York choice-of-law clause); *Computer Sales*, 2005 WL 3307507, at *8 (same, notwithstanding Missouri choice-of-law).

The existence of a contract concerning the parties' commercial relationship does not foreclose claims under Chapter 93A.  *See Nasuni*, 607 F. Supp. 3d at 100 (upholding Chapter 93A claim and rejecting defense argument that it was "duplicative" of plaintiff's contract claim); *Linthicum v. Archambault*, 379 Mass. 381, 383 (1979) ("[Chapter 93A's] relief is ***in addition to***, and not an alternative to, traditional tort and contract remedies."), *abrogated on other grounds by*

---

[19] Chapter 93A renders unlawful any "[u]nfair . . . acts or practices in the conduct of any trade or commerce." Massachusetts General Laws Annotated Chapter 93A § 2(a).  Although the statute does not define the term "unfair," it has been afforded a very broad interpretation by Massachusetts courts. *See Sterry St. Auto Sales, Inc. v. Cummins Inc.*, No. 1:20-10798-MPK, 2020 WL 6871022, at *5 (D. Mass. Nov. 23, 2020) ("Practices may be deemed deceptive where they could reasonably be found to have caused a person to act differently from the way he otherwise would have acted, or if 'they tend to mislead.'" (quotation omitted)).  In fact, courts have held that negligent misrepresentation can serve as the basis for a Chapter 93A violation. *See In re TJX Companies Retail Sec. Breach Litig.*, 524 F. Supp. 2d 83, 93 (D. Mass. 2007).  Moreover, determining if a defendant's behavior rises to the level of a Chapter 93A violation is an extraordinarily fact-intensive exercise: "Chapter 93A liability is decided case-by-case, and Massachusetts courts have consistently emphasized the fact-specific nature of the inquiry." *Arthur D. Little, Inc. v. Dooyang Corp.*, 147 F.3d 47, 55 (1st Cir. 1998) (internal quotation and citation omitted); *see also H1 Lincoln, Inc. v. S. Washington Street, LLC*, 489 Mass. 1, 13-14 (2022) (whether defendant's conduct is unfair or deceptive is a question of fact).  Here, Gilimex has alleged behavior plausibly rising to the level of Chapter 93A liability.

*Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.*, 418 Mass. 737 (1994).[20]  Indeed, if the mere existence of a contract governing the business relationship at issue were sufficient to preclude a claim under Chapter 93A, the statute would be rendered meaningless because much of the business conduct within the purview of the statute inevitably would be subject to an agreement between the parties.  The Massachusetts Legislature enacted Chapter 93A to prohibit unfair business conduct, even if such acts or omissions were done under the guise of contractual rights and obligations.  Indeed, a party's inequitable behavior can form the basis of a Chapter 93A claim even where that behavior does not violate the contract.  *See NASCO, Inc. v. Pub. Storage, Inc.*, 127 F.3d 148, 152 (1st Cir. 1997) ("A party is not exonerated from chapter 93A liability because there has been no breach of contract."); *Jet Line Servs., Inc. v. Am. Employers Ins. Co.*, 404 Mass. 706, 713, 717 (1989) (insurer liable under Chapter 93A for conduct leading insured to believe there was coverage even though insurance contract did not provide coverage).

In any event, the CSPA provisions cited by Amazon are not inconsistent with Gilimex's claims because they speak only to whether Amazon is ***contractually*** obligated to ***purchase*** FPAs.  Gilimex's claims extend far beyond any failure by Amazon to purchase FPAs; Gilimex's suit largely seeks ***reliance*** damages based on Gilimex's detrimental change in position as a result of

---

[20] *Worldwide Commodities, Inc. v. J. Amicone Co.*, 36 Mass. App. Ct. 304 (1994) and *N.E. Data Sys., Inc. v. McDonnell Douglas Computer Sys. Co.*, 986 F.2d 607 (1st Cir. 1993) provide no support for Amazon's argument that the Chapter 93A claim is barred by the New York choice-of-law clause because it "implicates" express provisions of the CSPA. Dkt. No. 27 at 14-15.  Rather, those cases stand only for the proposition that where a Chapter 93A claim is based exclusively on a claim for breach of an express term of the contract, the parties' contractual choice-of-law clause will apply.  *See Worldwide*, 36 Mass. App. Ct. at 305 (defendant's breach of exclusive distribution agreement breached an express term of the contract and also served as the basis of plaintiff's Chapter 93A claim); *N.E. Data*, 986 F.2d at 609-10 (California choice-of-law clause barred Chapter 93A claim where that claim was based solely on plaintiff's allegations that defendant's breaches of express terms of the contract were willful and knowing, so as to render the breaches of contract "essential elements of the 93A claims").  Here, the conduct underlying Gilimex's Chapter 93A claim is not necessarily violative of the CSPA, and the conduct alleged is distinct from the contract claim Gilimex has brought.  Unlike *Worldwide* and *N.E. Data*, breach of the CSPA thus is not required to establish the Chapter 93A claim, and therefore that claim is not subject to the New York choice-of-law provision. *Worldwide* and *N.E. Data* are also easily distinguished because both decisions were issued after ***trial on the merits*** and did not involve a long-standing relationship between the parties outside of the contracts at issue.

Amazon's unfair and deceptive conduct, including Gilimex's purchase of raw materials, the stockpiling of inventory, investment in new factories, conversion of existing factories, and the anticipated conversion of those factories to serve other customers.  Compl. ¶ 88.  Gilimex's claim for Chapter 93A damages based on those changes of position is neither barred by the CSPA nor dependent on any breach of contract.  As such, the Chapter 93A claim should survive.[21]

## VI.    Gilimex States a Cognizable Claim for Breach of Contract

Finally, Amazon argues that the breach of contract claim must be dismissed because the complaint fails to allege the elements of plaintiff's performance under the contract and causation.  Dkt. No. 27 at 16-20.  Amazon is incorrect, as the complaint properly alleges each element of a breach of contract claim and Amazon's arguments at most raise factual issues inappropriate for resolution on a motion to dismiss.  *See* Compl. ¶¶ 112-16.

Amazon seeks to excuse its non-performance by arguing that Gilimex itself failed to perform its obligations in connection with QBRs.  However, this argument is based on a misreading of the CSPA.  In relevant part, CSPA § 1.3(b) provides: "At the end of each calendar quarter during the Term, [Gilimex] and [Amazon] *shall* meet . . . to discuss all factors affecting the then-current Product pricing . . . ."  Contrary to Amazon's claim that Gilimex had to provide "'detailed documentation' setting forth critical information regarding Gilimex's costs and other pricing and process-related issues" as a condition precedent to Amazon's obligation under the CSPA, Dkt. No. 27 at 17-18, the operative provision begins by unequivocally requiring the parties to meet quarterly and in no way ties that obligation to Gilimex's provision of any documentation.  The last sentence of the provision states: "No fewer than thirty (30) days *prior to each QBR*,

---

[21] Because negligent misrepresentations can underlie a Chapter 93A claim (and because, as stated above, the same set of facts can properly support multiple causes of action), Amazon's argument that "the Chapter 93A claim warrants dismissal as a repackaged recitation of the same allegations that comprise Gilimex's claim for negligent misrepresentation" is meritless.  Dkt. No. 27 at 16.

Supplier shall provide to Purchaser detailed documentation setting forth the information required by items (1)-(3) above and any other information affecting Product prices reasonably requested by Purchaser in advance of the QBR." This sentence merely obligates Gilimex to provide documentation *assuming the existence of a scheduled QBR*, and is not a condition precedent to the scheduling of such meetings—meetings that Amazon refused to hold notwithstanding Gilimex's repeated requests. Compl. ¶ 65. *See Lui v. Park Ridge at Terryville Ass'n*, 196 A.D.2d 579, 582 (2d Dep't 1993) ("The general rule is that it must clearly appear from the contract itself that the parties intended a provision to operate as a condition precedent (*see*, 22 NY Jur 2d, Contracts, §234) and that where there is ambiguity in a contractual term, the law does not favor a construction which creates a condition precedent."). In any event, interpretation of this contractual provision is not appropriate for resolution on Amazon's 12(b)(6) motion. *See Oppenheimer & Co. v. Trans Energy, Inc.*, 946 F. Supp. 2d 343, 349 (S.D.N.Y. 2013) ("[W]hen the language of a contract is ambiguous, its construction presents a question of fact, which of course precludes summary dismissal on a Rule 12(b)(6) motion." (quotation omitted)); *Telerep, LLC v. U.S. Int'l Media, LLC*, 74 A.D.3d 401, 403 (1st Dep't 2010) ("Because we find that the contracts here are reasonably susceptible of more than one interpretation and thus are ambiguous, the complaint should not have been dismissed pre-answer before the development of a full factual record as to the parties' intent." (citation omitted)).

Moreover, Amazon's argument regarding the purported failure of a condition precedent is an affirmative defense inappropriate for consideration on a motion to dismiss.[22] *See United Res.*

---

[22] Citing *Southern Wine & Spirits of America, Inc. v. Impact Environmental Engineering, PLLC*, 915 N.Y.S.2d 541 (2011), Amazon suggests that plaintiffs must affirmatively allege satisfaction of conditions precedent, but *Southern Wine* provides no support for that proposition. There, the contract at issue contained an express condition precedent to filing a lawsuit, insofar as it required submission of an expert certification before suit could be brought. *See id*. at 541.

*Recovery Corp. v. Ramko Venture Mgmt., Inc.*, 584 F. Supp. 2d 645, 656-57 (S.D.N.Y. 2008) (denying motion to dismiss breach of contract claim because "[Plaintiff] is under no obligation to affirmatively plead compliance with conditions precedent."). Amazon points to no statement in the complaint indicating that Gilimex failed to perform; to the contrary, the complaint alleges that Gilimex fully performed under the contract. Compl. ¶ 113. That is sufficient at this stage, and any contention by Amazon that Gilimex failed to provide documentation—even if that was a prerequisite for a QBR under the CSPA—is to be resolved by the factfinder. *See De Biase v. Evanston Ins. Co.*, No. 18-CV-4402(JS)(SIL), 2020 WL 837435, at *3 (E.D.N.Y. Feb. 20, 2020) (compliance with conditions precedent is a "factual dispute not amenable to resolution on a motion to dismiss").

Amazon also attempts to excuse its breach by arguing that Gilimex's alleged injuries and damages resulting from Amazon's failure to hold QBR meetings are speculative. This, however, is a causation argument, which is equally inappropriate for resolution on a motion to dismiss. *See U.S. Bank N.A. v. Bank of Am., N.A.*, No. 12-cv-4873(CM), 2012 WL 6136017, at *6 n.2 (S.D.N.Y. Dec. 11, 2012) (Causation "is a question of fact not properly resolved on a motion to dismiss"). Moreover, Amazon incorrectly characterizes Gilimex's claimed damages as "rank speculation" simply because Gilimex does not specify with certainty how it would have acted to mitigate such damages had Amazon fulfilled its contractual obligation to hold QBR meetings. Damages, however, need not be pleaded with exact certainty, and this argument is not appropriate on a Rule 12(b)(6) motion. *See Alevsky v. GC Servs. Ltd. P'ship*, No. 13-CV-6793 (JG), 2014 WL 1711682, at *1 (E.D.N.Y. Apr. 30, 2014) ("[A]s a general matter, damages are not an element of a cause of action. A Rule 12(b)(6) motion therefore cannot challenge the demand for relief, since that motion

tests the legal sufficiency of allegations . . . .").[23]

Finally, to the extent Amazon contends certain purported consequential damages are limited by the CSPA, Dkt. No. 27 at 20, such limitations do not, at minimum, apply to direct damages, including those related to Gilimex's inventory and raw material expenditures. *See* Compl. ¶ 88.

Because the complaint plausibly alleges Amazon's breach of the CSPA, and because Amazon's arguments at best raise affirmative defenses and issues of fact that cannot be resolved at this juncture, the Court should deny Amazon's motion to dismiss the breach of contract claim.

## <u>CONCLUSION</u>

Amazon's attempted reliance on an agreement signed in 2021 to absolve it of any liability arising from the parties' long-standing relationship fails because the CSPA does not preclude the complaint's well-pled non-contractual claims and Amazon is unable to point to any deficiency in the substantive allegations regarding either those claims or Gilimex's breach of contract claim. Accordingly, Gilimex respectfully requests that the Court deny Amazon's motion in its entirety.

---

[23] The remaining cases cited by Amazon in support of its breach of contract arguments are easily distinguishable. *Diesel Props S.r.l. v. Greystone Bus. Cred. II LLC*, 631 F.3d 42 (2d Cir. 2011) and *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520 (2d Cir. 2004) were both decided after ***trial on the merits*** and relied heavily on specific findings of fact based on the evidence presented. Similarly, *McNally Wellman Co., a Div. of Boliden Allis, Inc. v. N.Y.S. Elec. & Gas Corp.,* 63 F.3d 1188 (2d Cir. 1995) is a ***summary judgment*** case, in which the decision was based on lengthy fact-specific analyses that would be inappropriate on a motion to dismiss. In *Boccardi Cap. Sys., Inc. v. D.E. Shaw Laminar Portfolios, L.L.C.*, the plaintiff's damages were based on its speculation that it would engage in a number of securities transactions and eventually acquire control of a third party, offering only "hypothesized successful completion of proposed transactions." No. 05-cv-6882 (GBD), 2009 WL 362118, at *6 (S.D.N.Y. Feb. 9, 2009) (internal quotation and citation omitted).

Dated: New York, New York
March 24, 2023

Respectfully Submitted,

**KASOWITZ BENSON TORRES LLP**

By:

Marc E. Kasowitz
Edward E. Filusch
Victor J. Brienza
Jonathan-Michael K. Pryor

1633 Broadway
New York, New York 10019
Tel.: (212) 506-1710
Fax: (212) 506-1800

*Attorneys for Plaintiff, Binh Thanh
Import Export Production & Trade Joint
Stock Co. D/B/A Gilimex, Inc.*