UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BINH THAN IMPORT EXPORT PRODUCTION & TRADE JOINT STOCK CO., d/b/a GILIMEX, INC.,<br><br>　　　　　Plaintiff,<br><br>　-against-<br><br>AMAZON.COM SERVICES, LLC, d/b/a AMAZON ROBOTICS,<br><br>　　　　　Defendant. | Case No.: 1:23-cv-00292-LGS |

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

Alan B. Howard
Adam R. Mandelsberg
Margaret W. Meyers
Evelyn Y. Pang
1155 Avenue of the Americas, 22nd Floor
New York, New York 10036-2711
Tel: 212.262.6900
Fax: 212.977.1649
AHoward@perkinscoie.com

*Attorneys for Defendant Amazon.com Services LLC*

April 5, 2023

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

I.  The Component Sale And Purchase Agreement Is Enforceable And Controlling. ......... 2

II. A Heightened Pleading Standard Applies To Gilimex's Negligent
    Misrepresentation Claim. ................................................................................................. 4

III. New York Law Governs The Parties' Dispute. ............................................................... 4

IV. Gilimex Tort Claims Fail Under New York Law Or Massachusetts Law ...................... 6

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*,
 404 F.3d 566 (2d Cir. 2005)...................................................................................4

*Bd. of Mgrs. of Brightwater Towers Condo. v. FirstService Residential N.Y., Inc.*,
 193 A.D.3d 672 (2d Dep't 2021)............................................................................9

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
 778 F. Supp. 2d 375 (S.D.N.Y. 2011)....................................................................3

*CIBC Bank & Trust Co. (Cayman) Ltd. v. Credit Lyonnais*,
 270 A.D.2d 138 (1st Dep't 2000) ...........................................................................8

*Cohen v. State Street Bank and Trust Co.*,
 893 N.E.2d 425 (Mass. App. Ct. 2008) ..................................................................9

*Dallas Aerospace, Inc. v. CIS Air Corp.*,
 352 F.3d 775 (2d Cir. 2003)................................................................................6, 7

*Danann Realty Corp. v. Harris*,
 157 N.E.2d 597 (N.Y. 1959)...................................................................................8

*Feldman v. Byrne*,
 210 A.D.3d 646 (2d Dep't 2022) ............................................................................8

*Gasperini v. Ctr. for Humanities, Inc.*,
 518 U.S. 415 (1996).................................................................................................4

*Gertz v. Vantel Int'l/Pearls in the Oyster Inc.*,
 No. 19-cv-12036-FDS, 2020 WL 3977404 (D. Mass. July 14, 2020)....................8

*Golber v. BayBank Valley Tr. Co.*,
 704 N.E.2d 1191 (Mass. App. Ct. 1999) ................................................................7

*JP Morgan Chase Bank v. Winnick*,
 350 F. Supp. 2d 393 (S.D.N.Y. 2004).....................................................................7

*JTRE Manhattan Avenue LLC v. Capital One, N.A.*,
 585 F. Supp. 3d 474 (S.D.N.Y. 2022).....................................................................4

*Katz v. Belveron Real Estate Partners, LLC*,
 28 F.4th 300 (1st Cir. 2022)....................................................................................9

*Mayagüez S.A. v. Citigroup, Inc.*,
 No. 16-cv-6788 (PGG), 2018 WL 1587597 (S.D.N.Y. Mar. 28, 2018) .................5

*Nasuni Corp. v. ownCloud GmbH*,
    607 F. Supp. 3d 82 (D. Mass. 2022) ...................................................................................6

*Ne. Data Sys., Inc. v. McDonnell Douglas Comput. Sys. Co.*,
    986 F.2d 607 (1st Cir. 1993).................................................................................................6

*Sergeants Benev. Ass'n Annuity Fund v. Renck*,
    796 N.Y.S. 77 (1st Dep't 2005) ...........................................................................................9

*Sound Techniques, Inc. v. Hoffman*,
    737 N.E.2d 920 (Mass. App. Ct. 2000) ................................................................................8

*Torres v. D'Alesso*,
    80 A.D.3d 46 (1st Dep't 2010) ...................................................................................2, 3, 4

*Wells Fargo Bank Nw., N.A. v. Taca Int'l Airlines, S.A.*,
    247 F. Supp. 2d 352 (S.D.N.Y. 2002).................................................................................8

*Worldwide Commodities, Inc. v. J. Amicone Co., Inc.*,
    630 N.E.2d 615 (Mass. App. Ct. 1994) ................................................................................5

**STATUTES**

Mass. Gen. Laws ch. 93A ...........................................................................................................5, 6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b) .........................................................................................................................4

Fed. R. Civ. P. 12(b)(6)...................................................................................................................2

**PRELIMINARY STATEMENT**

Gilimex's opposition to Amazon's motion to dismiss the Complaint (Dkt. No. 32) (the "Opposition" or "Opp."), like the Complaint itself, ignores and defies the parties' comprehensive and integrated supply agreement, which expressly precludes Gilimex's claims. Instead, Gilimex: (1) relies on alleged extrinsic representations and understandings explicitly barred by the Component Sale and Purchase Agreement ("CSPA"), which states that "NEITHER PARTY WILL BE BOUND BY . . . ANY PROVISION THAT IS DIFFERENT FROM OR IN ADDITION TO THIS AGREEMENT (WHETHER PROFFERED VERBALLY OR IN ANY . . . CORRESPONDENCE, OR OTHERWISE)," Compl. Ex. A § 17.14 (capitalization in original); (2) ascribes to Amazon obligations with respect to forecasts of future purchases that directly conflict with the CSPA, which provides that forecasts "are for planning purposes only, are non-binding, and are not an order, purchase or commitment," *id.* § 4.2; and (3) demands damages which are definitively disclaimed by the CSPA, which states that "NEITHER PARTY WILL BE LIABLE TO THE OTHER FOR ANY LOST PROFITS OR INDIRECT, INCIDENTAL, CONSEQUENTIAL OR SPECIAL DAMAGES," *id.* § 12.3 (capitalization in original).

Notwithstanding the parties' express agreement not to be bound by extra-contractual representations, correspondence, or other provisions, Gilimex insists that it had a special or fiduciary relationship with Amazon that supersedes the CSPA. But Gilimex fails to identify any factual or legal basis to convert a commercial arrangement for the purchase of goods into a fiduciary or otherwise "special" relationship. As Gilimex would have it, after receiving from Amazon $250 million for pods pursuant to the CSPA, if Amazon's demand for pods ever declined, Gilimex could unilaterally disclaim the parties' agreement that Amazon "will have no obligation to . . . place any Purchase Order or purchase any minimum volume of Products." *Id.* § 17.12(a).

Gilimex fails to identify any plausible legal basis to avoid its claim-defeating promises made pursuant to an arms-length commercial agreement. As a matter of law, Amazon had no obligations to Gilimex beyond those described in the CSPA.

The Court should dismiss with prejudice each of Gilimex's claims, which impermissibly seek to circumvent the CSPA and fail to state a claim under Rule 12(b)(6).

## ARGUMENT

### I. The Component Sale And Purchase Agreement Is Enforceable And Controlling.

The Opposition proceeds on the unfounded assumption that the CSPA is somehow voidable or inapplicable to the tort and statutory claims asserted and the damages sought in this action. That mistaken premise underpins Gilimex's entire case.

Stripped of hyperbole, the Opposition does nothing to dent the enforceability of the parties' comprehensive and integrated commercial agreement. Gilimex admits that, before it supplied pods to Amazon, Gilimex was a large company whose "operation consisted of two factories and some 1,500 employees." Opp. at 3 (citing Compl. ¶ 23). After realizing hundreds of millions of dollars from pod sales to Amazon, "Gilimex agreed to sign the CSPA in January 2021," *id.* at 6 (citing Compl. ¶¶ 60, 63), after which Gilimex realized hundreds of millions of dollars more in sales to Amazon. Gilimex specifically agreed that the CSPA "**is the entire agreement between Purchaser and Supplier** regarding the purchase and sale of [pods] and its other subject matter" and "**supersedes all prior and contemporaneous agreements and communications** about its subject matter." Compl. Ex. A § 17.14 (emphasis added).

Merger clauses, like the one in the CSPA, "*are not mere boilerplate.* They provide further protection for the interests of certainty and finality." *Torres v. D'Alesso*, 80 A.D.3d 46, 53 (1st Dep't 2010) (emphasis in original). Construing a similarly broad merger clause which provided that "the writing constitutes the parties' entire agreement and specif[ied] that no prior agreements

or representations survive the execution of the writing," the First Department held that a party to the contract "could not expect to rely on any previous understanding or oral representation that was not included in the mutually executed written document." *Id.*

The Opposition suggests that Gilimex's claims implicate some nebulous "independent fiduciary and other legal duties," Opp. at 12 n.9, yet both the Complaint and Opposition confirm that Gilimex's claims stem from its supposed extra-contractual "underst[anding]" of the parties' commercial responsibilities. *See* Opp. at 13 ("The complaint alleges that . . . Gilimex and Amazon both understood that Amazon's forecasts would be used by Gilimex to purchase materials and stockpile product."). That purported understanding is at odds with the plain text of the CSPA, which provides that forecasts provided to Gilimex by Amazon "are non-binding, and are not an order, purchase or commitment." Compl. Ex. A § 4.2. In the same vein, Gilimex's attempt to weaponize what it characterizes as "Amazon's promises that . . . Amazon would continue to purchase large numbers of FPAs so that Gilimex could ramp down production gradually," Opp. at 7 (citing Compl. ¶¶ 68, 70), flouts the parties' specific agreement that Amazon would have "no obligation to . . . purchase any minimum volume of [pods,]" Compl. Ex. A § 17.12(a), and that "NEITHER PARTY WILL BE BOUND BY . . . ANY PROVISION THAT IS DIFFERENT FROM OR IN ADDITION TO THIS AGREEMENT (WHETHER PROFFERED VERBALLY OR IN ANY . . . CORRESPONDENCE, OR OTHERWISE)," *id.* § 17.14.

The Opposition does not even mention the CSPA's numerous claims-defeating provisions. Nor does Gilimex argue that the CSPA is unenforceable. Gilimex chose to enter into the CSPA and profited substantially from that choice. Such "[d]eliberate choices . . . in a 'multimillion-dollar transaction' must be given effect." *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 410 (S.D.N.Y. 2011). Allowing Gilimex's claims to proceed would open the courthouse

doors to any contract party seeking to circumvent the terms to which it agreed and would eviscerate the "certainty and finality" that merger clauses exist to protect. *Torres*, 80 A.D.3d at 53.

## II. A Heightened Pleading Standard Applies To Gilimex's Negligent Misrepresentation Claim.

Gilimex's failure to articulate any applicable extra-contractual duty, or otherwise to state precisely what Amazon did or did not do in violation of that duty, is especially fatal to Gilimex's negligent misrepresentation claim given the heightened pleading requirement applicable to that claim. The Second Circuit has held that a negligent misrepresentation claim "must be pled in accordance with the specificity criteria of Rule 9(b)." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 583 (2d Cir. 2005). This pleading standard is not a matter of substantive state law; it is the Second Circuit's construction of a governing Federal Rule of Civil Procedure. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) ("[F]ederal courts sitting in diversity apply state substantive law and federal procedural law.").[1] The heightened pleading standard prescribed in Rule 9(b) plainly applies to Gilimex's negligent misrepresentation claim.

## III. New York Law Governs The Parties' Dispute.

Recognizing that Gilimex does not – and cannot – allege with the requisite particularity (or, indeed, any level of particularity) that Amazon and Gilimex maintained the sort of "special relationship" required to state claims for negligent misrepresentation or breach of fiduciary duty

---

[1] This Court should decline Gilimex's invitation to ignore binding Second Circuit precedent in reliance on an out-of-Circuit district court decision prescribing a more lenient pleading standard. *See* Opp. at 13 n.10 (citing *Paye v. Atrium Med. Corp.*, No. 22-cv-10005-FDS, 2023 WL 349894 (D. Mass. Jan. 20, 2023)). Gilimex's reliance on *JTRE Manhattan Avenue LLC v. Capital One, N.A.*, 585 F. Supp. 3d 474 (S.D.N.Y. 2022), is also misplaced. While Judge Caproni cited a 2004 Second Circuit decision that expressed uncertainty as to the applicable pleading standard, *id.* at 478 (citing *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 188 (2d Cir. 2004)), any doctrinal confusion was resolved by the Second Circuit's subsequent decision in *Aetna*, 404 F.3d at 583; and, in any event, Judge Caproni's pleading standard discussion was rendered moot as the court concluded it "need not resolve the question of which pleading standard governs . . . because Plaintiffs have failed to plead sufficient facts to state a claim for negligent misrepresentation under either standard." *Id.*

under New York law, Gilimex insists that this Court evaluate its tort claims under Massachusetts law. Additionally, Gilimex asserts a statutory claim, for unfair trade practices pursuant to Massachusetts General Laws Chapter 93A ("Chapter 93A"), arising from the parties' commercial relationship and relating to Amazon's purchase of pods. Once again, Gilimex seeks to avoid the plain terms of the parties' agreement, which preclude application of Massachusetts law and, in the case of Gilimex's Chapter 93A claim, preclude the claim altogether.

The CSPA does not mention the Commonwealth of Massachusetts. *See generally* Compl. Ex. A. Instead, the parties specifically agreed that "[t]his Agreement is governed by the substantive laws of the state of New York." *Id.* § 17.4. Gilimex's attempt to bypass its contractual bargain on choice of law is unavailing. Unlike the highly specific currency forward contract at issue in *Mayagüez S.A. v. Citigroup, Inc.*, No. 16-cv-6788 (PGG), 2018 WL 1587597 (S.D.N.Y. Mar. 28, 2018) (cited in Opp. at 9), here, the parties did not simply designate New York governing law, but further agreed that "[t]his Agreement . . . is the entire agreement between Purchaser and Supplier regarding the purchase and sale of the Product and its other subject matter," and that the CSPA "supersedes all prior and contemporaneous agreements and communications about its subject matter." Compl. Ex. A § 17.14. Gilimex's claims rely entirely on extra-contractual purported communications and understandings regarding the parties' rights and obligations relating to Amazon's purchase of pods, which is the very subject matter of the CSPA. This Court should reject Gilimex's attempted end-run around the parties' agreement that New York law would govern their commercial relationship and the transactions at issue.

The fact that the parties agreed to apply New York law to any claims relating to the parties' commercial relationship also precludes Gilimex's claim under Chapter 93A. *See Worldwide Commodities, Inc. v. J. Amicone Co., Inc.*, 630 N.E.2d 615, 618 (Mass. App. Ct. 1994) (dismissing

claim under Chapter 93A because the parties' contractual relationship lay "at the core of" the plaintiff's claims and the parties had agreed that their contract would be governed by New York law); *see also Ne. Data Sys., Inc. v. McDonnell Douglas Comput. Sys. Co.*, 986 F.2d 607, 609-10 (1st Cir. 1993) (dismissing Chapter 93A claims described as "embroidered 'breach of contract' claims" foreclosed by the parties' California choice of law agreement). Gilimex relies principally on *Nasuni Corp. v. ownCloud GmbH*, 607 F. Supp. 3d 82, 100 (D. Mass. 2022), which it cites for the proposition that "[t]he existence of a contract concerning the parties' commercial relationship does not foreclose claims under Chapter 93A." Opp. at 20. But the court in *Nasuni* permitted plaintiff's Chapter 93A claim to proceed only because it concerned "the circumstances underlying the formation of the contract, such as alleged fraudulent inducement." 607 F. Supp. 3d at 100. Here, by contrast, Gilimex's claim implicates the very substance of the parties' contract and – far from challenging the formation of the contract – Gilimex claims its breach in this action.[2]

In accordance with the plain text of the CSPA, Gilimex's tort claims must be evaluated under New York law, which also precludes its Chapter 93A claim.

## IV. Gilimex Tort Claims Fail Under New York Law Or Massachusetts Law.

Under New York law, the defendant to a negligent misrepresentation claim "must express the words directly, with knowledge or notice that they will be acted upon, to one to whom the declarant is bound by some relation or duty of care." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003). Moreover, "the law of negligent misrepresentation requires a closer degree of trust between the parties than that of the ordinary buyer and seller in order to find reliance

---

[2] Gilimex maintains that "if the mere existence of a contract governing the business relationship at issue were sufficient to preclude a claim under Chapter 93A, the statute would be rendered meaningless because much of the business conduct within the purview of the statute inevitably would be subject to an agreement between the parties." Opp. at 21. This is not Amazon's argument. Rather, a claim under Chapter 93A is precluded when the parties have agreed to a contract covering the transactions that give rise to the claim **and that contract is governed by another state's law**.

on such statements justified." *Id.* (citing *Kimmell v. Schaefer*, 89 N.Y.2d 257, 264 (1996)); *see JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 404 (S.D.N.Y. 2004) (dismissing negligent misrepresentation claim because New York law does not impose liability absent a "duty of care arising from any source external" to the parties' agreement). Gilimex contends that Amazon is "a company orders of magnitude larger than Gilimex" and "referred to Gilimex as a 'valued' and 'strategic' partner," Opp. at 14 n. 11, but fails to identify a single case in which disparity in size or empty rhetoric established a special relationship between arms-length contractual counterparties.

Gilimex urges this Court to apply Massachusetts law to its negligent misrepresentation claim because Massachusetts law does not require that plaintiffs identify a "special relationship." Opp. at 14 n. 11. Massachusetts law, however, **does** require that plaintiffs allege the communication of false information without reasonable care and plaintiffs' justifiable reliance on the information. *See Golber v. BayBank Valley Tr. Co.*, 704 N.E.2d 1191, 1192 (Mass. App. Ct. 1999). Gilimex's allegations fail to satisfy these elements, and certainly not with any specificity. Gilimex contends, in entirely conclusory fashion, that it relied on pre-2022 demand forecasts provided by Amazon, which allegedly "failed to provide any indication that demand would soften," Opp. at 13; yet Gilimex fails to allege how or even that Amazon knew before 2022 that its demand for pods would eventually soften. Gilimex likewise claims that the forecasts provided by Amazon in April and May 2022 were "false," *id.* at 13-14, without identifying any false statement in either forecast. Finally, Gilimex alleges that it "committed resources to the production of FPAs in reliance on those forecasts," *id.* at 14, even though the CSPA expressly precluded such reliance, clarifying that Amazon's forecasts were "non-binding" and did not constitute orders or commitments by Amazon to purchase of any number of pods. Compl. Ex. A § 4.2. Such "reliance on supposed misrepresentations that contradict the terms of the parties' agreement is unreasonable

as a matter of [Massachusetts] law." *Gertz v. Vantel Int'l/Pearls in the Oyster Inc.*, No. 19-cv-12036-FDS, 2020 WL 3977404, at *11 (D. Mass. July 14, 2020).

Moreover, whether this Court applies New York or Massachusetts law, Gilimex's negligent misrepresentation claim cannot proceed in the face of the parties' express agreement not to be bound by any representation or purported obligation inconsistent with their written, enforceable agreement. *See Danann Realty Corp. v. Harris*, 157 N.E.2d 597, 600 (N.Y. 1959) (dismissing action to redress oral misrepresentation where "the plaintiff made a representation in the contract that it was not relying on specific representations not embodied in the contract"); *Wells Fargo Bank Nw., N.A. v. Taca Int'l Airlines, S.A.*, 247 F. Supp. 2d 352, 364 (S.D.N.Y. 2002) ("Defendants, having expressly disclaimed in the text of the Leases any reliance on precisely the kinds of misstatements they now claim were made to them, cannot as a matter of law establish that they reasonably relied."); *accord Sound Techniques, Inc. v. Hoffman*, 737 N.E.2d 920, 926 (Mass. App. Ct. 2000) ("To ignore a merger clause and allow recovery for a negligent misrepresentation does little to promote honesty and fair dealing in business relationships.").

With respect to Gilimex's breach of fiduciary duty claim, Gilimex cannot plausibly allege that there was a fiduciary relationship between Gilimex and Amazon, or, indeed, any relationship aside from the commercial one between a manufacturer/seller and a purchaser. New York law does not ascribe a "fiduciary duty" to sophisticated commercial counterparties. *See CIBC Bank & Trust Co. (Cayman) Ltd. v. Credit Lyonnais*, 270 A.D.2d 138, 139 (1st Dep't 2000). Accordingly, "[a] conventional business relationship, without more, is insufficient to create a fiduciary relationship. Rather, a plaintiff must make a showing of 'special circumstances' that could have transformed the parties' business relationship to a fiduciary one, such as control by one party of the other." *Feldman v. Byrne*, 210 A.D.3d 646, 650 (2d Dep't 2022). Indeed, in a case relied upon by Gilimex,

the Second Department confirmed that "[a]n arms-length business relationship does not give rise to a fiduciary obligation," and "when the parties have entered into a contract, 'a fiduciary relationship does not arise by operation of law, but must spring from the parties themselves, who **agree to and accept** the responsibilities that flow from such a contractual bond.'" *Bd. of Mgrs. of Brightwater Towers Condo. v. FirstService Residential N.Y., Inc.*, 193 A.D.3d 672, 673 (2d Dep't 2021) (citation omitted) (emphasis added). Likewise, Massachusetts courts have held that "business transactions conducted at arm's length generally do not give rise to fiduciary relationships." *Katz v. Belveron Real Estate Partners, LLC*, 28 F.4th 300, 311 (1st Cir. 2022).

Gilimex has not alleged any agreement by Amazon to assume a fiduciary relationship with Gilimex, or any "special circumstances" that would transform the parties' commercial relationship into a fiduciary one. The difference in size between Amazon and Gilimex, which Gilimex presumes without any basis or additional detail to be "a great bargaining inequality," Opp. at 17, would arguably make Amazon a fiduciary to any contractual counterparty. Were that the case, each of Amazon's contractual counterparts could disclaim their bargained-for promises whenever convenient. That is not the law. The cases on which Gilimex relies are inapposite. In *Cohen v. State Street Bank and Trust Co.*, 893 N.E.2d 425 (Mass. App. Ct. 2008), an investor was allowed to sue his investment manager where the parties had entered into an agreement "imposing rights and duties on both sides that existed **independently** of any fiduciary relationship." *Id.* at 430 (emphasis added); *accord Sergeants Benev. Ass'n Annuity Fund v. Renck*, 796 N.Y.S. 77, 79 (1st Dep't 2005). Unlike the investment advisors in Gilimex's proffered case authorities, Amazon had no duties to Gilimex distinct from the ones it agreed to assume in the CSPA, which "supersedes all prior and contemporaneous agreements and communications." Compl. Ex. A § 17.14.

Gilimex also insists that its "claims extend far beyond any failure by Amazon to purchase FPAs," and that "Gilimex's suit largely seeks *reliance* damages based on Gilimex's detrimental change in position as a result of Amazon's unfair and deceptive conduct, including Gilimex's purchase of raw materials, the stockpiling of inventory, investment in new factories, conversion of existing factories, and the anticipated conversion of those factories to serve other customers." Opp. at 21-22 (emphasis in original). Gilimex's argument reflects the fundamental flaw underpinning its Complaint, namely its disregard of the parties' agreement. The CSPA is not simply a purchase order for pods – it is a comprehensive, integrated commercial contract covering the parties' respective rights and obligations and "**supersed[ing] all prior and contemporaneous agreements and communications**" as they relate to "**the purchase and sale of [pods] and its other subject matter**." Compl. Ex. A § 17.14 (emphasis added). Indeed, the very damages identified in the Opposition are expressly excluded by the CSPA: "NEITHER PARTY WILL BE LIABLE TO THE OTHER FOR ANY LOST PROFITS OR INDIRECT, INCIDENTAL, CONSEQUENTIAL OR SPECIAL DAMAGES." *Id.* § 12.3. Gilimex is not entitled to circumvent its contractual bargain. Its claims warrant dismissal in accordance with the CSPA.[3]

## CONCLUSION

For all the foregoing reasons and those addressed in Amazon's moving brief, this Court should grant Amazon's Motion to Dismiss in its entirety and dismiss, with prejudice, each of the claims in the Complaint.

---

[3] Amazon stands on its moving brief with respect to Gilimex's breach of contract claim. The Opposition has done nothing to bolster the Complaint's failure to plausibly allege (i) Gilimex's performance of its own contractual obligations with respect to quarterly business review meetings, (ii) that the quarterly business meetings caused the damages alleged, or (iii) that Gilimex's alleged damages are recoverable under the CSPA.

Dated: New York, New York
April 5, 2023

Respectfully submitted,

PERKINS COIE LLP

By: */s/ Alan B. Howard*
    Alan B. Howard
    Adam R. Mandelsberg
    Margaret W. Meyers
    Evelyn Y. Pang
    1155 Avenue of the Americas, 22nd Floor
    New York, New York 10036-2711
    Tel: 212.262.6900
    Fax: 212.977.1649
    AHoward@perkinscoie.com
    AMandelsberg@perkinscoie.com
    MMeyers@perkinscoie.com
    EPang@perkinscoie.com

    *Attorneys for Defendant*
    *Amazon.com Services LLC*