UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
BINH THANH IMPORT EXPORT                                      :
PRODUCTION & TRADE JOINT CO., d/b/a                           :
GILIMEX, INC.,                                                :   23 Civ. 292 (LGS)
                                            Plaintiff,        :
                                                              :   **OPINION AND ORDER**
            -against-                                         :
                                                              :
AMAZON.COM SERVICES LLC, d/b/a                                :
AMAZON ROBOTICS,                                              :
                                            Defendant.        :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

Plaintiff Binh Thanh Import Export Production & Trade Company brings this action against Defendant Amazon.com Services LLC, alleging negligent misrepresentation, unfair trade practices under Massachusetts General Laws Annotated Chapter 93A Section 9, breach of contract and breach of fiduciary duty. Defendant moves to dismiss the Complaint. For the reasons below, the motion is GRANTED in part and DENIED in part.

I.  BACKGROUND

The following facts are taken from the Complaint and documents attached to the Complaint as exhibits. They are assumed to be true for purposes of this motion. *See United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).

Defendant, doing business as Amazon Robotics, is a Delaware limited liability company with its principal place of business in Seattle, Washington. Defendant, itself a wholly owned subsidiary of Amazon.com, Inc. ("Amazon"), designs and manufactures robotic systems used by Amazon in its more than 175 warehouse fulfillment centers worldwide. Plaintiff Binh Thanh Import Export Production & Trade Joint Stock Company, doing business as Gilimex, Inc., is a

Vietnamese manufacturer of steel and fabric containers, called Fabric Pod Arrays ("pods"). Defendant purchased the first pods from Plaintiff for use in its robotic systems in 2014.

To meet Defendant's growing demand over the years, Plaintiff expanded its labor force and manufacturing facilities, investing $70 million. In recognition of these substantial investments by Plaintiff, Defendant "agreed to provide reasonable and substantial advance notice of any significant changes in its forecasted [pod] demand." When the COVID-19 pandemic triggered massive growth in e-commerce, Defendant's demand for pods boomed, and Plaintiff again adapted its operations to accommodate the surge.

From 2014 to 2021, Plaintiff and Defendant did business without a written agreement, instead operating under "the parties' relationship of trust." The Complaint alleges that Defendant engendered Plaintiff's trust in "Amazon's judgment, honesty, and integrity to guide Amazon's business for the parties' mutual benefit." Defendant did this by, among other things, referring to Plaintiff as Amazon's "partner" and characterizing the business relationship as a "strategic partnership." In 2021, the parties entered the Component Sale and Purchase Agreement ("CSPA"). Plaintiff signed the CSPA "both out of fear of repercussions by Amazon and in reliance on the parties' long-standing strategic partnership, fiduciary relationship, and course of dealing."

In April 2022, Defendant informed Plaintiff that its projected demand for pods would be reduced significantly. Plaintiff nevertheless "maintain[ed] its high rate of production" because past forecasts "were often revised upward," and Plaintiff believed that demand would ultimately approximate demand of prior years. In May 2022, Defendant provided Plaintiff with an even further reduced forecast of its supply needs for 2022 and 2023 and "instructed [Plaintiff] to effectively cease production and return any unused raw materials." Throughout the summer of

2022, the parties met and exchanged proposals on a potential ramp-down period to ease Plaintiff's economic woes flowing from Defendant's reduced demand.  These negotiations did not yield an agreement.

Plaintiff commenced this lawsuit on December 13, 2022, in New York state court.  Invoking diversity jurisdiction, Defendant removed the action to this Court and now moves to dismiss the Complaint for failure to state a claim.

## II.   STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party but does not consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021).  To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *accord Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020).  It is not enough for a complaint to allege facts that are consistent with liability; it must "nudge[]" claims "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Bensch v. Estate of Umar*, 2 F.4th 70, 80 (2d Cir. 2021).  To survive dismissal, "plaintiffs must provide the grounds upon which [their] claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019).

### III.   DISCUSSION

#### A.   Choice of Law

A threshold issue is the governing substantive law.  The Complaint asserts one breach of contract claim and three tort claims -- negligent misrepresentation, breach of fiduciary duty and unfair trade practices under a Massachusetts statute.

The CSPA states, "This Agreement is governed by the substantive laws of the state of New York, excluding its conflicts of law provisions."  The parties agree that New York law governs the breach of contract claim.  Defendant argues that this provision, along with the CSPA's integration clause, require that New York law also govern the two common law tort claims and preclude the unfair trade practices claim brought pursuant to a Massachusetts statute.  As this case is based on diversity jurisdiction, the law of the forum state, New York, determines the scope of the parties' contractual choice-of-law clause.  *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 157 (2d Cir. 2012); *accord Susana v. NY Waterway*, No. 20 Civ. 455, 2023 WL 2575050, at *7 (S.D.N.Y. Mar. 20, 2023).

Under New York law, "tort claims are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contract."  *Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 335 (2d Cir. 2005) (New York law); *accord Farsura v. QC Terme US Corp.*, No. 21 Civ. 9030, 2022 WL 4226266, at *6 (S.D.N.Y. Sept. 13, 2022) (New York law).  Courts have consistently held that contractual language similar to the choice-of-law provision in the CSPA is too narrow to encompass tort claims arising incident to the agreement.  *See, e.g.*, *von Kahle v. Cargill, Inc.*, No. 21 Civ. 8532, 2022 WL 4096164, at *2 (S.D.N.Y. Sept. 7, 2022) (holding that although a contract's choice-of-law provision applied New York law to the construction of that contract, an incidental fraudulent

4

conveyance claim was governed by Florida law); *Cotiviti, Inc. v. McDonald*, No. 19 Civ. 6559, 2021 WL 2784529, at *4 (S.D.N.Y. July 2, 2021) ("[W]here a choice-of-law clause specifies only that the contract will be 'governed by and construed in accordance with' the law of a certain state, New York courts hold that the clause does not control the law that applies to tort claims.") (*quoting TransPerfect Glob., Inc. v. Lionbridge Techs., Inc.*, No. 19 Civ. 3283, 2020 WL 1322872, at *7 (S.D.N.Y. Mar. 20, 2020) (same)).  The CSPA's choice-of-law provision therefore governs only the breach of contract claim.

New York choice-of-law principles govern what substantive law applies to the remaining claims.  A federal court sitting in diversity applies the choice of law analysis of the forum state. *Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 176 (2d Cir. 2021).  "Under New York choice-of-law rules, the first step in any choice of law inquiry is to determine whether there is an actual conflict between the rules of the relevant jurisdictions." *Id.*  An actual conflict of law exists if "the applicable law from each jurisdiction provides different substantive rules" and the differences "have a significant possible effect on the outcome of the trial." *Fin. One Pub. Co.*, 414 F.3d at 331; *accord Cambridge Cap. LLC v. Ruby Has LLC*, No. 20 Civ. 11118, 2023 WL 3956868, at *35 (S.D.N.Y. June 2, 2023).

If an actual conflict exists, courts next determine which choice-of-law test is most appropriate.  "In tort cases, New York applies the law of the state with the most significant interest in the litigation." *Kinsey*, 991 F.3d at 176.  New York tort laws are either considered conduct-regulating or loss-allocating depending on their primary purposes. *In re Thelen LLP*, 736 F.3d 213, 220 (2d Cir. 2013); *accord Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*, No. 20 Civ. 5120, 2022 WL 1997207, at *15 (S.D.N.Y. June 6, 2022).  "If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally

5

apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *In re Thelen LLP*, 736 F.3d at 220.

### B. Breach of Contract

Defendant's motion to dismiss the breach of contract claim is granted. The claim is based on the CSPA's requirement that the parties hold quarterly business review ("QBR") meetings. The Complaint alleges that Defendant breached the CSPA by refusing to hold the meetings from May 2021 onward. This breach, the Complaint asserts, "meant that [Plaintiff] did not have a sufficient opportunity to discuss business trends and projections," from which Plaintiff could have gleaned "Amazon's current and future [pod] demand." With this information, Plaintiff "more likely than not . . . would have learned from Amazon in advance of April 2022 that there was a risk of decreased [pod] demand." If Plaintiff had known that risk, Plaintiff "would not have continued to purchase raw materials and manufacture [pods]." Without that information, Plaintiff now has "tens of millions of dollars" of worthless inventory, raw materials and unrecouped investment in manufacturing facilities dedicated to Amazon, as well as "costs [Plaintiff] will incur to modify its facilities and train workers to manufacture products for prospective new customers, as well as lost profits while it works to locate new customers."

The claim for these damages is foreclosed by the CSPA's express "Exclusion of Certain Damages" in Subsection 12.3. It states that "neither party will be liable to the other for any lost profits or indirect, incidental, consequential or special damages, even if it has notice of that those kinds of damages may occur." The Complaint's claim for lost profits is expressly excluded. The remaining damages are consequential damages and are also precluded. "General damages are the natural and probable consequence of the breach of a contract. They include money that the

6

breaching party agreed to pay under the contract.  By contrast, consequential, or special, damages do not directly flow from the breach." *Biotronik A.G. v. Conor Medsystems Ireland, Ltd.*, 11 N.E.3d 676, 680 (N.Y. 2014).  Consequential damages are a detriment suffered by the plaintiff, while direct damages are the loss of what the defendant promised.  *See Keystone Foods Holdings Ltd. v. Tyson Foods, Inc.*, No. 22-1113-CV, 2023 WL 3477157, at *1 (2d Cir. May 16, 2023) (New York law) (describing consequential damages that were not recoverable on a contract claim but might be recoverable on a fraud claim).  Here, Plaintiff bargained to be paid for pods it manufactured and delivered.  Specific to the QBR meetings, Plaintiff bargained for regular discussions of pricing and the opportunity to negotiate changes to the initial product pricing.  Plaintiff did not bargain for meetings where it would receive information or assurances about future demand on which Plaintiff was contractually entitled to rely.  That the bargained-for meetings might have afforded Plaintiff information about future demand on which Plaintiff could have decided unilaterally to rely, at best gives rise to indirect or consequential damages when the meetings did not occur.  Those damages are foreclosed by the contract.

    **C.**    **Negligent Misrepresentation**

        **1. Choice of Law**

The parties dispute whether New York or Massachusetts law applies to Plaintiff's negligent misrepresentation claim.  "The Court does not address the choice of law issue [when] the claim fails under both states' laws." *MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*, No. 17 Civ. 7568, 2018 WL 847014, at *8 (S.D.N.Y. Jan. 12, 2018).  Because negligent misrepresentation under New York law requires the existence of a "special or privity-like relationship," *J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (2007), a requirement not present under Massachusetts law, the two jurisdictions impose "different substantive rules."

7

*Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998). However, because the Complaint fails to state a claim for negligent misrepresentation under either jurisdiction's law, the difference does not have a "significant possible effect on the outcome of [a] trial." *Fin. One Pub. Co.*, 414 F.3d at 331. The following analysis considers Plaintiff's claim under Massachusetts law, which imposes a less onerous requirement than New York law to state a claim for negligent misrepresentation.

2. Analysis

Defendant's motion to dismiss Plaintiff's negligent misrepresentation claim is granted. Defendant contends that Plaintiff's negligent misrepresentation claim is subject to the heightened pleading standard of Federal Rule of Civil Procedures 9(b). Rule 9(b) requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake." Rule 8(a), the general pleading standard, requires a plaintiff to provide only "a short and plain statement of the claim showing that the pleader is entitled to relief." There is debate within the Second Circuit over whether Rule 8(a) or Rule 9(b) governs claims of negligent misrepresentation. *See JTRE Manhattan Ave. LLC v. Cap. One, N.A.*, 585 F. Supp. 3d 474, 478 (S.D.N.Y. 2022). That question need not be resolved here, however, because the Complaint pleads insufficient facts to state a claim for negligent misrepresentation under either rule.

In Massachusetts, to succeed on a negligent misrepresentation claim, the plaintiff must prove that the defendant

> "(1) in the course of his business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance on the information, and that he (6) failed to exercise reasonable care or competence in obtaining or communicating the information."

*Gossels v. Fleet Nat. Bank*, 453 Mass. 366, 372 (2009); *accord Nizhoni Health Sys. LLC v. Netsmart Techs., Inc.*, No. 22 Civ. 11212, 2023 WL 3657386, at *6 (D. Mass. May 25, 2023) (Massachusetts law).

Here, the Complaint does not allege that Defendant provided *false* information to Plaintiff. Instead, it alleges that, prior to April 2022, Defendant failed to provide any indication that demand for pods would abate. On April 2, 2022, Defendant provided Plaintiff with a reduced demand forecast, which Defendant again reduced on May 28, 2022. While these reductions in projected demand may have come as a surprise to Plaintiff, the Complaint does not allege facts to support the inference that these updated forecasts -- or the more substantial forecasts made ahead of April 2022 -- were false when made. Without factual allegations supporting the inference that Defendant knew its projections about future demand were false, the negligent misrepresentation claim fails.

The negligent misrepresentation claim is dismissed on the independent ground that it is foreclosed by the CSPA. Subsection 4.2 of the CSPA states that Defendant's forecasts "are for planning purposes only, are non-binding, and are not an order, purchase or commitment." Subsection 17.12 states that Defendant "will have no obligation to . . . place any Purchase Order or purchase any minimum volume of Products." Finally, the CSPA's merger clause states that "neither party will be bound by . . . any provision that is different from or in addition to this agreement (whether proffered verbally or in any quotation, invoice, shipping document, acceptance, confirmation, correspondence, or otherwise), unless such provision is specifically agreed to in a writing signed by both parties." Together, these provisions preclude Plaintiff from claiming "justifiable reliance" on Defendant's forecasted need for pods. Per the explicit terms of

the CSPA, Defendant's projections are non-binding, and do not commit Defendant to purchasing the volume of pods quoted in the forecasts.

Plaintiff's arguments to the contrary are unpersuasive. Plaintiff contends that a defendant may be liable for negligent misrepresentation despite a contractual integration clause. However, the exception on which Plaintiff relies applies to fraudulent misrepresentation claims, but not those asserting negligence. "[W]hile the general rule holds that an integration or exculpatory clause does not provide a valid defense against a fraud claim, Massachusetts courts have found that the public policy concerns motivating this rule are not applicable in the context of negligent misrepresentation." *Integrated Commc'ns & Techs., Inc. v. Hewlett-Packard Fin. Servs. Co.*, 573 F. Supp. 3d 513, 543 (D. Mass. 2021) (Massachusetts law); *see also Starr Cap. Partners, LLC v. Toll Bros., Inc.*, 101 Mass. App. Ct. 1123, *7 n.14 (2022) ("Because the agreement included a clause that the written agreement constituted 'the entire agreement between [the parties] and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever,' any claim for negligent misrepresentation fails."); *Sound Techs., Inc. v. Hoffman*, 50 Mass. App. Ct. 425, 433 (2000) ("To ignore a merger clause and allow recovery for a negligent misrepresentation does little to promote honesty and fair dealing in business relationships."). "Unlike a claim for fraudulent inducement, a claim for negligent misrepresentation ordinarily can be released or waived." *Sapir v. Dispatch Techs., Inc.*, No. 1984 Civ. 666BLS1, 2019 WL 7707794, at *3 (Mass. Super. Dec. 4, 2019). Here, the misrepresentation claim sounds in negligence rather than fraud. The CSPA's integration clause waives the Complaint's negligent misrepresentation claim.

Plaintiff also cites *In re TJX Companies Retail Securities Breach Litigation*, 524 F. Supp. 2d 83, 91 (D. Mass. 2007), for the proposition that a claim of negligent misrepresentation "is

ordinarily one for the jury, unless the undisputed facts are so clear as to permit only one conclusion." That may be true, but here the claim is foreclosed by the contract as a matter of law. The claim does not depend on a factual question for the jury to resolve.

### D. Unfair Trade Practices Under Massachusetts General Laws Chapter 93A

#### 1. Choice of Law

Defendant argues that the applicability of New York law forecloses any claim under Massachusetts General Laws Chapter 93A, a Massachusetts statute. But because Plaintiff's claim under Chapter 93A fails even if Massachusetts law applies, no choice-of-law analysis is necessary. *See MiMedx Grp., Inc.*, 2018 WL 847014, at *8.

#### 2. Analysis

Chapter 93A provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Mass. Gen. Laws ch. 93A, § (2)(a). To state a claim for a Chapter 93A violation, a plaintiff must plead that "(1) the defendant engaged in trade or business and committed an unfair or deceptive act; (2) this act resulted in economic injury to the plaintiff; and (3) there is a [causal] connection between the practice and the plaintiff's economic injury." *Louis v. Saferent Sols., LLC*, No. 22 Civ. 10800, 2023 WL 4766192, at *14 (D. Mass. July 26, 2023). Conduct is "unfair" under Chapter 93A if it (1) falls "within at least the penumbra of some common-law, statutory, or other established concept of unfairness"; (2) is "immoral, unethical, oppressive, or unscrupulous" and (3) causes "substantial injury to consumers." *PMP Assocs., Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596 (1975); *accord Walsh v. TelTech Sys., Inc.*, 821 F.3d 155, 160 (1st Cir. 2016). To rise to the level of an "unfair" act or practice, "the defendant's conduct must generally be of an egregious, non-negligent nature." *Walsh*, 821 F.3d at 160. Conduct is "deceptive" under Chapter 93A "if it

11

possesses a tendency to deceive" and "if it could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted." *Aspinall v. Philip Morris Cos.*, 442 Mass. 381, 394 (2004); *accord Walsh*, 821 F.3d at 160.

The Complaint does not allege facts that give rise to an inference of either unfair or deceptive trade practices under Chapter 93A. The Complaint makes the conclusory claim that Defendant "pressured [Plaintiff] to expand its manufacturing capacity and penalized [Plaintiff] for failure to meet [Defendant's] [pod] volume demands," but offers no factual allegations to support this assertion. The Complaint also alleges that Defendant "unfairly and deceptively induced [Plaintiff] to continue to purchase raw materials and manufacture [pods] when [Defendant] knew it was only going to buy a fraction of the inventory . . . and knew it was going to refuse Gilimex any time to ramp down its production."

As with the deficiencies in its negligent misrepresentation claim, the Complaint fails to allege any basis to infer that Defendant *knew* "it was only going to buy a fraction of the inventory." To the contrary, the Complaint alleges that, despite Defendant's warnings in April 2022 that its projected needs would fall from what was previously anticipated, Plaintiff "relied on this forecast to maintain its high rate of production and to secure raw materials" knowing that Defendant's projections were "lower than expected." The Complaint's assertion that Defendant "unfairly and deceptively induced [Plaintiff] to continue to purchase raw materials" cannot be reconciled with the simultaneous factual allegation that Plaintiff continued to purchase raw materials *despite* Defendant's downward forecast. The activities alleged in the Complaint cannot be reasonably characterized as "egregious," or having "a tendency to deceive." *See Walsh*, 821 F.3d at 160. Because the Complaint fails to plead unfair or deceptive acts or practices by Defendant, the Chapter 93A claim is dismissed.

E.  **Breach of Fiduciary Duty**

1.  **Choice of Law**

For a breach of fiduciary claim, the elements of the claim under Massachusetts and New York law are substantially the same. *Compare Baker v. Wilmer Cutler Pickering Hale & Dorr LLP*, 91 Mass. App. Ct. 835, 842 (2017), *with Glaubach v. Slifkin*, 155 N.Y.S.3d 182, 184 (2021). However, the two jurisdictions impose conflicting requirements to determine whether the parties to a commercial transaction have a fiduciary relationship.

In New York, "[a] conventional business relationship, without more, is insufficient to create a fiduciary relationship. Rather, a plaintiff must make a showing of 'special circumstances' that could have transformed the parties' business relationship to a fiduciary one, such as control by one party of the other for the good of the other." *Feldman v. Byrne*, 210 A.D.3d 646, 650 (2d Dep't 2022). "Special circumstances" have been found where a defendant induced a continued business relationship with the plaintiff -- without an underlying contract -- by "representing that [the plaintiff] could trust [the defendant]," referring to plaintiff's contributions as part of the "team" or "venture," and "allocat[ing] overhead, operational, and marketing costs" to plaintiff's expenses. *See AHA Sales, Inc. v. Creative Bath Prod., Inc.*, 58 A.D.3d 6, 22 (2d Dep't 2008). On the other hand, "special circumstances" were found not to exist where the plaintiff, "an attorney and sophisticated business owner, was not under the control of [the defendant]" and made business decisions "independent of [the defendant's] advice and counseling." *See Saul v. Cahan*, 153 A.D.3d 947, 949 (2d Dep't 2017).

Massachusetts courts have recognized that "though business transactions conducted at arm's length generally do not give rise to fiduciary relationships, such a relationship can develop where one party reposes its confidence in another." *Katz v. Belveron Real Est. Partners, LLC*,

28 F.4th 300, 311 (1st Cir. 2022) (Massachusetts law).  To determine if this transformation has occurred, "courts look to the defendant's knowledge of the plaintiff's reliance and consider the relation of the parties, the plaintiff's business capacity contrasted with that of the defendant, and the readiness of the plaintiff to follow the defendant's guidance in complicated transactions wherein the defendant has specialized knowledge." *Id.* at 312.  These different substantive rules for determining the existence of a fiduciary relationship between parties to a commercial transaction "have a significant possible effect on the outcome of the trial." *Fin. One Pub. Co.*, 414 F.3d at 331.  The allegations in the Complaint likely cannot satisfy New York law's "special circumstances" requirement, but Massachusetts imposes no such requirement.  Accordingly, an actual conflict exists between New York and Massachusetts law.

New York treats a breach of fiduciary duty claim as conduct-regulating.  *See Rose v. Arthur J. Gallagher & Co.*, 928 N.Y.S.2d 783, 784 (2011); *accord Holborn Corp. v. Sawgrass Mut. Ins. Co.*, 304 F. Supp. 3d 392, 398 (S.D.N.Y. 2018) (New York law).  "If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *White Plains Coat & Apron Co, Inc. v. Cintas Corp.*, 460 F.3d 281, 284 (2d Cir. 2006).  Here, the tort occurred in Massachusetts, which has the greatest interest in regulating the alleged misconduct.  At all relevant times, Amazon Robotics was headquartered in North Reading, Massachusetts.  Defendant contracted with Plaintiff, ordered the pods and generated forecasts from Massachusetts.  Defendant communicated with Plaintiff through personnel located in Massachusetts and the parties met there in the summer of 2022.  Plaintiff has not alleged, and Defendant has not argued, that the locus of the tort was anywhere other than Massachusetts.  The case's only connection to New York appears to be the CSPA's forum-

selection clause requiring litigation in a New York court. Massachusetts law therefore governs the breach of fiduciary duty claim.

### 2. Analysis

Defendant's motion to dismiss the breach of fiduciary duty claim is denied because the Complaint sufficiently pleads the basis for a fiduciary duty between the parties under Massachusetts law. Massachusetts courts have recognized that "though business transactions conducted at arm's length generally do not give rise to fiduciary relationships, such a relationship can develop where one party reposes its confidence in another." *Katz*, 28 F.4th at 311–12 (Massachusetts law). To determine if this transformation has occurred, "courts look to the defendant's knowledge of the plaintiff's reliance and consider the relation of the parties, the plaintiff's business capacity contrasted with that of the defendant, and the readiness of the plaintiff to follow the defendant's guidance in complicated transactions wherein the defendant has specialized knowledge." *Id.* "The question of whether, in a particular factual setting, a fiduciary relationship exists is a question of fact." *Indus. Gen. Corp. v. Sequoia Pac. Sys. Corp.*, 44 F.3d 40, 44 (1st Cir. 1995) (Massachusetts law); *accord Computer Sales Int'l, Inc. v. Lycos, Inc.*, No. 05 Civ. 10017, 2008 WL 11388595, at *5 (D. Mass. Sept. 26, 2008) (Massachusetts law); *Moriarty v. O'Connell*, No. 1181, 2005 WL 1812513, at *4 (Mass. Super. June 30, 2005).

The Complaint alleges sufficient facts to sustain its claim of a fiduciary relationship between Plaintiff and Defendant. Defendant plausibly induced Plaintiff's reliance by referring to Plaintiff as a "strategic partner" and invoking this partnership to encourage Plaintiff to "undert[ake] millions of dollars in capital investment and expenditures," including its request that Plaintiff "spen[d] tens of millions of dollars to build three new factories dedicated solely to

Amazon [pod] production." Defendant's "knowledge of the plaintiff's reliance," *Katz*, 28 F.4th at 312, may be inferred from the allegation that

> [Plaintiff] repeatedly told [Defendant] that, in agreeing to invest large sums toward [pod] production on behalf of [Defendant] and forgoing other customers to service [Defendant's] needs, it was relying on [Defendant] to exercise care in preparing its forecasts, to provide advance communication of any changes in demand, and to allow sufficient time to gradually ramp down production in the event that demand decreased.

In 2014, "top Amazon executives traveled to Vietnam to convince [Plaintiff] to place trust in Amazon's judgment, guidance, and direction, and to support Amazon's business by investing in the capacity to manufacture and produce [pods] for Amazon at a high volume." This allegation undercuts Defendant's contention that Plaintiff made the "unilateral decision to repose trust and confidence in its transactional counterparty." On the contrary, the Complaint spells out facts sufficient to infer a mutual desire to cultivate trust and confidence in the parties' business relationship. The Complaint also alleges that "[Defendant] understood [Plaintiff's] requirements and agreed to provide reasonable and substantial advance notice of any significant changes in its forecasted [pod] demand." Plaintiff, a "Vietnamese company with modest resources and limited English language skills," relied on Defendant's "expertise and specialized knowledge regarding [pod] manufacture, demand, and market trends." Together, these allegations "nudge[]" Plaintiff's argument for the existence of a fiduciary relationship "across the line from conceivable to plausible." *See Twombly*, 550 U.S. at 570.

Defendant argues that the CSPA's merger provision extinguishes any fiduciary relationship between the parties. Defendant offers no caselaw to support that proposition. Massachusetts courts have held that a contract's liability release is not enough to dismiss a claim of breach of fiduciary duty at the pleading stage if Plaintiff "has alleged facts plausibly suggesting that [Defendant] took actions and engaged in conduct that was inconsistent" with that

16

fiduciary duty. *Leavitt v. Welch & Forbes, LLC*, No. 2184 Civ. 187, 2022 WL 2752532, at *4 (Mass. Super. May 4, 2022); *see also Merriam v. Demoulas Super Mkts., Inc.*, 464 Mass. 721, 727 (2013) (suggesting that where a fiduciary duty exists, "the existence of a contract does not relieve [fiduciaries] of the high fiduciary duty owed to one another in all their mutual dealings"). Especially given the Complaint's allegations that the relationship between the parties long pre-dates the execution of the CSPA, the CSPA's merger provision does not extinguish as a matter of law the existence of any fiduciary duty that may have developed between the parties before Plaintiff and Defendant entered the CSPA.

## IV.   CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is GRANTED in part and DENIED in part. The Complaint's breach of contract, negligent misrepresentation and unfair trade practices claims are dismissed. The Complaint's breach of fiduciary duty claim survives under Massachusetts law.

The Clerk of Court is respectfully directed to close the motions at Dkt. No. 26.

Dated: September 27, 2023
   New York, New York

_____
LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE