UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                      :
BINH THANH IMPORT EXPORT         :
PRODUCTION & TRADE JOINT CO., d/b/a   :
GILIMEX, INC.,                        :            23 Civ. 292 (LGS)
                          Plaintiff,   :
                                        :        **OPINION AND ORDER**
             -against-             :
                                        :
AMAZON.COM SERVICES LLC, d/b/a     :
AMAZON ROBOTICS,                :
                         Defendant.   :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

       Plaintiff Binh Thanh Import Export Production & Trade Joint Company brings this action

against Defendant Amazon.com Services LLC, alleging breach of fiduciary duty, intentional

misrepresentation and unfair and deceptive trade practices under Massachusetts General Laws

Annotated Chapter 93A.  Defendant moves for summary judgment as to all claims.  For the

reasons below, the motion is denied.

## I.     BACKGROUND

       The following facts are drawn from the parties' statements pursuant to Federal Rule of

Civil Procedure 56.1 and other submissions on this motion.  The facts are undisputed or based on

record evidence drawing all reasonable inferences in favor of Plaintiff as the non-moving party.

*See N.Y. State Teamsters Conf. Pension & Ret. Fund v. C&S Wholesale Grocers, Inc.*, 24 F.4th

163, 170 (2d Cir. 2022).

       Plaintiff, doing business as Gilimex, Inc., is a Vietnamese manufacturer that produces,

among other products, Fabric Pod Arrays.  Beginning in 2014, Plaintiff began doing business

with Kiva Systems, Inc., a company that had been acquired by Amazon in 2012 and was

renamed Amazon Robotics in 2015.  In 2013 and early 2014, the two companies had

negotiations about their relationship and Plaintiff's manufacturing for Defendant.  As part of the

negotiations, Plaintiff made certain proposals about ramp-down procedures for any future

termination of the relationship; the parties dispute the extent to which these proposals were

accepted or rejected.

In April 2014, Defendant began issuing purchase orders for pods that Plaintiff fulfilled.

These purchase orders included certain terms and conditions, including a statement that the

"Purchase Order may only be accepted on the precise terms in the Purchase Order Terms &

Conditions . . . .  Purchaser does not agree to any other Terms and Conditions."  The parties

began to negotiate a more comprehensive written agreement in 2016, but no written agreement

except the purchase orders governed the parties' relationship until 2021.

On January 7, 2021, the parties signed a Component Sale and Purchase Agreement (the

"CSPA").  Section 4.2 of the CSPA, titled "Capacity Planning and Allocation," states that

Defendant agrees to provide non-binding "Forecasts for Supplier's ease of arrangement the

production of the Products."  In the case of a capacity constraint, that section states that

"Supplier will give Purchaser priority allocation."  Section 17.12 states that Defendant will have

no obligation to "place any Purchase Order or purchase any minimum volume of Products . . . ."

Section 16.1 of the CSPA states that the agreement is effective for a three-year term with an

automatic one-year renewal.  Regarding termination by Defendant, section 16.1 states that

Defendant must provide written notice of non-renewal at least thirty days in advance of the

current term, and section 16.2 states that Defendant can terminate the CSPA without cause by

giving at least thirty days' notice to Plaintiff.

Plaintiff was one of several suppliers that manufactured pods for Defendant. The various suppliers, including Plaintiff, competed for their allocation of pods to be delivered to Defendant. To meet Defendant's demand, Plaintiff converted several of its factories where Plaintiff previously had manufactured pods for other customers. Plaintiff considered Defendant to be an important customer and often felt pressured to prioritize Defendant's needs over those of other customers. Over the course of their relationship, both parties referred to each other as "strategic partners."

In April 2021, Plaintiff did not provide Defendant with the number of pods allocated by Defendant to Plaintiff. An Amazon internal memo from May 17, 2021, states that Defendant intended to "remove [Plaintiff] as a supplier at the earliest ability to do so without impacting customer needs" but would "still need [Plaintiff] to supply up to 20% of [the pods] for the 2022 Season." In June 2021, Defendant advised Plaintiff that Plaintiff had experienced "significant delivery issues," while Defendant continued its internal discussions of reducing Plaintiff's allocation and eventually terminating the relationship with Plaintiff. Defendant did not communicate to Plaintiff the intention to terminate the relationship and instead continued to rely on Plaintiff's pod manufacturing capabilities. For example, an email among Defendant's employees from July 2021 states that Defendant should "keep the upside ambiguous but hopeful so [Plaintiff] stays motivated and well-staffed." Around the same time, Defendant internally was discussing transitioning from using pods to other systems. The parties dispute when Defendant first began to consider this transition and when Defendant informed Plaintiff of its intent to transition. The parties also dispute whether Defendant's internal discussions in the spring of 2021 reflected a final decision by Defendant to terminate its relationship with Plaintiff.

In April 2022, Defendant informed Plaintiff that Defendant was reducing its initial seasonal forecast for pod demand. Defendant instructed Plaintiff not to continue purchasing raw material for pod production. Plaintiff did not respond by reducing its raw material purchases because its prior experience with Defendant's forecasts was that the initial forecast was typically preliminary, that true demand often exceeded the forecast and that Plaintiff would be expected to meet the full demand regardless of the lower initial forecast. In May 2022, Defendant further reduced its forecasted demand. On June 28, 2022, the parties had an in-person meeting at which they discussed a proposed ramp-down of the parties' relationship. Defendant rejected Plaintiff's proposal in August 2022.

Plaintiff commenced this lawsuit on December 13, 2022, in New York state court. Defendant removed the action to this Court on the basis of diversity jurisdiction. On Defendant's motion, the breach of contract, negligent misrepresentation and unfair trade practices claims were dismissed, but the breach of fiduciary duty claim under Massachusetts law was not. Plaintiff sought leave to amend the Complaint, which was granted. The First Amended Complaint (the "FAC") brings a new claim for intentional misrepresentation, repleads the claim for unfair trade practices under Massachusetts law and maintains the claim for breach of fiduciary duty. Defendant now moves for summary judgment on all three claims.

## II.    STANDARD

Summary judgment is appropriate when the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."[1] *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131, 148 (2d Cir. 2017).

In evaluating a motion for summary judgment, a court must "construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021). "Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002); *accord Rodriguez v. City of New York*, No. 21 Civ. 1384, 2023 WL 2368985, at *2 (S.D.N.Y. Mar. 6, 2023). "The moving party bears the burden to demonstrate the absence of any genuine issues of material fact." *New York v. Mountain Tobacco Co.*, 942 F.3d 536, 541 (2d Cir. 2019). "[W]here a movant has shown the existence of a material fact and the nonmovant wishes to challenge it, the nonmovant bears the burden of production to point to significant probative evidence (that is, more than 'a scintilla of evidence') from which a reasonable factfinder could find for the nonmovant." *Gov't Emps. Ins. Co. v. Mayzenberg*, 121 F.4th 404, 413-14 (2d Cir. 2024) (quoting *Anderson*, 477 U.S. at 252), *unrelated certified question accepted*, 249 N.E.3d 37 (N.Y. Dec. 17, 2024). "Demonstrating that such issues exist requires the nonmovant to do more than simply show that there is some metaphysical doubt as to the material facts." *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022). The nonmovant cannot merely "deny the

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

moving party's allegations in a general way," but instead "must present competent evidence that creates a genuine issue of material fact."  *Id.*

## III.    DISCUSSION

### A.    Choice of Law

A threshold issue is the governing substantive law.  The FAC alleges three claims, breach of fiduciary duty, intentional misrepresentation and unfair and deceptive trade practices under Massachusetts General Laws Annotated Chapter 93A.  All three are governed by Massachusetts law.  For the reasons discussed in the prior motion to dismiss Opinion, Massachusetts law governs the breach of fiduciary duty claim.[2]  *See Binh Thanh Imp. Exp. Prod. & Trade Joint Co. v. Amazon.com Servs. LLC*, No. 23 Civ. 292, 2023 WL 6294210, at *6 (S.D.N.Y. Sept. 27, 2023).  Massachusetts law also governs the intentional misrepresentation claim and the unfair trade practices claims because both parties rely on Massachusetts law in discussing these claims. *See In re Snyder*, 939 F.3d 92, 100 n.2 (2d Cir. 2019) ("[I]mplied consent is sufficient to establish the applicable choice of law . . . ."); *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (implied consent to application of New York law where the parties' briefs "assume" that it controlled).

### B.    Breach of Fiduciary Duty

The FAC alleges that Defendant breached its fiduciary duties of care, honesty, good faith, loyalty and disclosure by: (1) failing to exercise due care in formulating and communicating forecasts, (2) refusing to provide Plaintiff sufficient time to ramp down production, (3) concealing Defendant's plan to eliminate Plaintiff as a supplier and misrepresenting the

---

[2] While Defendant attempts to preserve its argument that New York law applies to this claim, Defendant advances no arguments for the application of New York law that have not already been considered and rejected by this Court.

prospects of continued business and (4) concealing Defendant's plan to transition from fabric pods. As described below, a reasonable jury could find a breach of fiduciary duty based on each of these theories except the second; Plaintiff cannot claim that Defendant had a duty to provide more than thirty days' notice of termination or a ramp-down period, as those duties are foreclosed by the CSPA.

### 1. Legal principles

Under Massachusetts law, while "business transactions conducted at arm's length generally do not give rise to fiduciary relationships, such a relationship can develop where one party reposes its confidence in another." *Katz v. Belveron Real Est. Partners, LLC*, 28 F.4th 300, 311 (1st Cir. 2022) (Massachusetts law). A "plaintiff alone, by reposing trust and confidence in the defendant, cannot thereby transform a business relationship into one which is fiduciary in nature." *Indus. Gen. Corp. v. Sequoia Pac. Sys. Corp.*, 44 F.3d 40, 44 (1st Cir. 1995) (Massachusetts law). "To create such a relationship, the fiduciary . . . would have to know of and accept that trust." *Blais v. Warren Five Cents Sav. Bank*, No. 9218, 1993 WL 488429, at *2 (Mass. App. Div. Nov. 22, 1993); *accord FAMM Steel, Inc. v. Sovereign Bank*, 571 F.3d 93, 102 (1st Cir. 2009). To determine if this transformation has occurred, "courts look to the defendant's knowledge of the plaintiff's reliance and consider the relation of the parties, the plaintiff's business capacity contrasted with that of the defendant, and the readiness of the plaintiff to follow the defendant's guidance in complicated transactions wherein the defendant has specialized knowledge." *Sequoia Pac. Sys. Corp.*, 44 F.3d at 44. "The question of whether, in a particular factual setting, a fiduciary relationship exists is a question of fact." *Id.*; *accord Comput. Sales Int'l, Inc. v. Lycos, Inc.*, No. 05 Civ. 10017, 2008 WL 11388595, at *5 (D. Mass.

Sept. 26, 2008) (Massachusetts law); *Moriarty v. O'Connell*, No. 1181, 2005 WL 1812513, at *4 (Mass. Super. Ct. June 30, 2005)*.

### 2. Fiduciary Duties That Survive Summary Judgment

A reasonable jury could find that a special relationship of trust existed between the parties. Plaintiff was a much smaller company than Defendant. Plaintiff relied on Defendant's expertise and forecasting for guidance and planning Plaintiff's production of pods. Plaintiff reposed trust in Defendant that Defendant acted as a "strategic partner" to Plaintiff. Due to Plaintiff's trust in Defendant and belief in the importance of their relationship, Plaintiff tailored its manufacturing capacity and production to Defendant's needs, including at the expense of Plaintiff's relationship with other customers. Plaintiff's reliance on its partnership with Defendant resulted in Plaintiff's converting three factories to produce Defendant's pods and investing significant amounts in pod manufacturing for Defendant. A reasonable jury could find that Defendant knew it was inducing this reliance due to its own invocation of a "strategic partnership" and communications between the parties showing that Defendant was aware of Plaintiff's trust. Sufficient facts exist to suggest that sometime during the parties' regular course of dealing between 2014 and 2021, when the parties were operating without a comprehensive written agreement and pursuant only to the purchase orders, their relationship was transformed from an ordinary transactional relationship to a fiduciary relationship because of Defendant's "knowledge of the [P]laintiff's reliance," the large disparity in the parties' business capacities and "the readiness of the [P]laintiff to follow the [D]efendant's guidance in complicated transactions wherein the [D]efendant has specialized knowledge." *Katz*, 28 F.4th at 311-12.

The purchase orders governing the parties' relationship prior to the CSPA do not preclude a fiduciary duty. The purchase orders each include language stating that "*this*

*Agreement* will not be construed to create a partnership, joint venture, agency, employment, or any other relationship between Supplier and Purchaser." (emphasis added). The purchase orders also state that "any Supplier terms different from or in addition to the terms of the Purchase Order, whether communicated orally or contained in any quote, proposal, pricing term sheet, purchase order confirmation, invoice, acknowledgement, release, acceptance or other written correspondence, irrespective of the timing, *shall not form a part of the Purchase Order . . . .*" (emphasis added). Defendant argues that this language disclaims the existence of any fiduciary duties as a matter of law. At most, the purchase order language clarifies that the purchase orders themselves did not create fiduciary duties. A jury could find that the fiduciary duties here arose through the parties' extra-contractual communications regarding their relationship and Plaintiff's trust in and reliance on Defendant.

Plaintiff argues that, among several duties Defendant breached, Defendant breached its duty to provide advanced notice of termination and a ramp-down period. As a matter of law, the CSPA expressly forecloses the imposition of those duties. Massachusetts courts have held that fiduciary duties cannot be extinguished by contract, but that contractual terms may define the scope of permissible conduct. *See Wartski v. Bedford*, 926 F.2d 11, 20 (1st Cir. 1991) (holding a partnership agreement "cannot nullify the fiduciary duty owed" by the partners); *accord Butler v. Moore*, No. Civ. 10-10207, 2015 WL 1409676, at *88 (D. Mass. Mar. 26, 2015) (Massachusetts Law). Plaintiff correctly argues that the CSPA does not preclude the pre-existing fiduciary relationship between the parties, but Plaintiff does not address the limitations on that duty that are included in the CSPA. Here, Section 16.2 allows Defendant to "terminate this Agreement or [any purchase order] without cause by giving at least 30 days' notice to [Plaintiff]." Section 17.12 states that Defendant will have no obligation to "place any Purchase Order or purchase any

minimum volume of Products . . . ."  The CSPA thus defines the scope of the duties Defendant owed regarding termination of the relationship and clarifies that Defendant had no obligation to continue purchasing a certain amount of product through a ramp down period.  There can be no breach of fiduciary duty due to Defendant's failing to provide an earlier notice of termination than is required by Section 16.2 or a more extensive ramp-down period.

Other sections of the CSPA relied on by Defendant do not preclude the remaining duties Plaintiff alleges.  Specifically, Section 17.12, providing that Defendant has no obligation to place any orders or purchase any minimum quantity of products, and Section 4.2, providing that Defendant's forecasts are non-binding and are not purchase orders, do not prevent Plaintiff's allegations that Defendant breached its duties to exercise due care in formulating and communicating forecasts and not to conceal its plans to eliminate Plaintiff as a supplier or to transition away from the use of fabric pods.  As a fiduciary, Defendant owed Plaintiff a duty to "act for the benefit of" Plaintiff and "with the utmost good faith" in the course of the parties' dealings.  *Doe v. Harbor Schs., Inc.*, 843 N.E.2d 1058, 1064-65 (Mass. 2006).  Plaintiff's alleged breaches stem from self-interested misrepresentations and concealments by Defendant that run contrary to Defendant's duty to Plaintiff, and not from a duty to purchase a specific quantity of products or to purchase amounts commensurate with the forecasts.  Rather, Plaintiff's allegations are that Defendant "exploited the disparity in the relationship and betrayed [Plaintiff's] trust to secure a benefit for itself," *Smith v. Jenkins*, 732 F.3d 51, 63-64 (1st Cir. 2013) (Massachusetts law), by taking advantage of Plaintiff's reliance on Defendant's forecasts and representations regarding the continuance of the parties' relationship.

Defendant argues that it would be improper to impose fiduciary duties on a customer in the commercial sale of goods and that no court applying Massachusetts law has found a fiduciary

relationship in those circumstances.  Defendant points to no case law suggesting that such a relationship cannot be found, and Massachusetts law is clear that fiduciary relationships can arise in varied circumstances, including in the course of an otherwise arms-length relationship, so long as one party has reposed trust and confidence in the other party.  *Katz*, 28 F.4th at 311-12.  There is no legal bar to finding that a fiduciary relationship has arisen in the course of a commercial sale of goods so long as the indicia of a fiduciary relationship are present.  A reasonable jury could find that those indicia are present here.

Defendant disputes the extent to which Plaintiff relied on Defendant for forecasting and direction.  The record shows that, in some instances, Plaintiff did not follow Defendant's instructions regarding raw materials purchasing or production.  But construed in favor of Plaintiff, the record also shows that these decisions were made based on Plaintiff's prior experience with Defendant's demand forecasts and in furtherance of Plaintiff's larger goal of meeting Defendant's variable demand.  A dispute of fact exists about the extent to which Plaintiff reposed confidence in and followed Defendant's instructions.

### 3.  Damages

Defendant argues that Plaintiff's breach of fiduciary duty claim fails for the separate reason that, as a matter of law, Plaintiff has no recoverable damages.  The FAC alleges that Plaintiff suffered damages arising from worthless inventory, unreturnable raw materials, unrecouped investment in manufacturing facilities dedicated to Defendant and costs to modify facilities and train workers for new customers' manufacturing and lost profits.  Defendant argues that the damages from refitting manufacturing facilities have been fully recouped because the relationship was profitable and that any lost profits or other indirect, consequential or special damages are precluded by the CSPA's exclusion of damages provision.  First, Defendant

provides no authority for its proposition that recovery for such damages is precluded if they are recouped through other means, and Defendant appears to abandon this argument in its reply.

Second, the CSPA's damages limitation does not apply to a claim for breach of fiduciary duty. Defendant points to the conclusion in the motion to dismiss Opinion that the CSPA limited Defendant's liability with respect to Plaintiff's now-dismissed breach of contract claim and precluded recovery for that claim. But as discussed above, any fiduciary relationship between the parties was not created by, or dependent on, the CSPA. Consequently, the CSPA's liability limitation for a breach of the CSPA does not affect the remedies available for Defendant's alleged breach of fiduciary duties. Furthermore, Massachusetts courts have declined to apply contractual liability limitations to a breach of fiduciary duty or other intentional torts. *See Leavitt v. Welch & Forbes, LLC*, No. 2184 Civ. 187-BLS2, 2022 WL 2752532, at *4 (Mass. Super. Ct. May 4, 2022) ("[C]oncerning the contractual limitation of liability, [plaintiff] has alleged facts plausibly suggesting that [defendant] took actions and engaged in conduct that was inconsistent with its fiduciary duty to her. If so, then the limitation of liability provision would not apply."); *Standard Reg. Co. v. Bolton-Emerson, Inc.*, 649 N.E.2d 791, 794 (Mass. App. Ct. 1995) (holding contractual limitation of liability will not limit recovery for tort-like claims); *accord Wade v. Tri-Wire Eng'g Sols., Inc.*, No. 20. Civ. 10523, 2021 WL 11886945, at *11 (D. Mass. June 29, 2021) (Massachusetts Law). The case cited by Defendant is not to the contrary as the fiduciary relationship in that case -- that of an accounting firm to its client -- arose directly from the contract at issue, which contained a broad liability limitation that disclaimed liability "for any reason relating to services rendered under" the contract. *Rohtstein Corp. v. KPMG, LLP*, No. Civ. 04-3517, 2007 WL 4416840, at *1 (Mass. Super. Dec. 10, 2007). As explained,

the fiduciary duty claims at issue here are distinguishable because they arise outside the parties' contract.

### C.     Intentional Misrepresentation

Defendant's motion for summary judgment on Plaintiff's intentional misrepresentation claim is denied.  Plaintiff asserts that Defendant made misrepresentations regarding its desire for a continued relationship because Defendant wanted to ensure that its demand during the pandemic was satisfied and that Defendant made material omissions by not disclosing its intention to transition away from using pods and from using Plaintiff as a supplier.  The parties dispute every element of both fraudulent misrepresentation and fraud by omission and support their arguments with citations to the record.  For each element of both theories, Plaintiff points to evidence from which a reasonable jury could find for Plaintiff.

### 1. Fraudulent Misrepresentation

"To recover for fraudulent misrepresentation, a plaintiff must allege and prove that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to [its] damage."  *Greene v. Philip Morris USA Inc.*, 208 N.E.3d 676, 683 (Mass. 2023).  "Such reliance by the plaintiff must be reasonable."  *Masingill v. EMC Corp.*, 870 N.E.2d 81, 88 (Mass. 2007).

Plaintiff points to sufficient evidence from which a reasonable jury could find that Defendant knowingly misrepresented the prospects for the parties' continued relationship and did so in order to induce Plaintiff to continue its manufacturing without altering the status quo. These misrepresentations include Defendant's assurances to Plaintiff to keep Plaintiff "hopeful" about prospects for future manufacturing allocation, which were made to conceal Defendant's

true intentions to terminate the parties' relationship.  Defendant's former manager of supply planning confirmed at his deposition that, as of June 2021, Defendant intended to "keep[] it hopeful on the upside" while simultaneously "ramp[ing] down the production capacity" for Plaintiff.  In early 2021, Defendant's employees discussed how to remove Plaintiff as a supplier at the earliest opportunity, but Defendant did not share that information until approximately a year later, in June 2022.  Between Defendant's initial internal discussions and actual termination of the relationship, Defendant reassured Plaintiff about the relationship and encouraged Plaintiff to continue investing in its manufacturing capacity to meet Defendant's demand.  These misrepresentations include Defendant's employees' statements to Plaintiff that the parties were making progress toward "getting our two companies back into strategic alignment," that Defendant was "committed to working together on the right solutions," that Defendant saw Plaintiff "as a valued partner of Amazon Robotics," and stating that the new Director of Robotics is "looking forward to learning more about our strategic partnerships and how we can continue to grow and scale the Amazon Robotics portfolio of technology together."  Each statement conveyed the message that Defendant was committed to the relationship and to addressing the issues that Plaintiff had experienced with product delivery in April 2021, contrary to Defendant's actual intent to wind up the relationship as soon as it could.

These misrepresentations are material because, had Plaintiff known Defendant's true position regarding the relationship and likelihood of its termination in the near future, Plaintiff may have acted differently, such as by beginning to prepare for a ramp-down and pivoting to focus on other customers.  *See Khelfaoui v. Lowell Sch. Comm.*, 496 F. Supp. 3d 683, 689 (D. Mass. 2020) ("A representation is material when a reasonable man would attach importance (to the fact not disclosed) in determining his choice of action in the transaction in question.")

(Massachusetts law).  A reasonable jury could conclude that these statements about a hopeful upside and continued partnership were materially false when made and were made to induce Plaintiff's continued manufacturing.

Defendant argues that because the CSPA allowed Defendant to terminate the relationship on 30 days' notice, there was no misrepresentation because Defendant was considering and eventually did terminate the relationship on 30 days' notice and had no duty to notify Plaintiff of Defendant's plans any earlier.  Defendant acknowledged in its memorandum of law the Court's prior statement that, under Massachusetts law, "a defendant may be liable for fraudulent misrepresentation despite a contractual integration clause."  *See, e.g.*, *JFF Cecilia LLC v. Weiner Ventures, LLC*, No. 1984 Civ. 3317-BLS2, 2020 WL 4464584, at *11 (Mass. Super. Ct. July 30, 2020) ("The complaint plausibly suggests that [d]efendants had a duty to disclose their alleged plans to announce they were killing the project, notwithstanding the general contractual disclaimer of fiduciary duties."); *Integrated Commc'ns & Techs., Inc. v. Hewlett-Packard Fin. Servs. Co.*, 573 F. Supp. 3d 513, 543 (D. Mass. 2021) (Massachusetts law) ("[T]he general rule holds that an integration or exculpatory clause does not provide a valid defense against a fraud claim.").  As discussed above, the evidence could support a finding that a relationship of trust arose between the parties giving rise to a duty to disclose and a finding that Defendant nevertheless misled Plaintiff about Defendant's intentions and the longer-term outlook of Defendant's need for pods in a way that Defendant knew was false.  Defendant may have met its contractual notice obligations regarding termination, but a reasonable jury could find that Defendant's statements about its plans constitute intentional misrepresentation.

Second, given the evidence of the parties' history and relationship, a jury could find that Plaintiff reasonably relied on Defendant's reassurances.  Defendant's failure to disclose its

intentions was a critical element of Plaintiff's decisions to keep investing in production for Defendant and focusing on Defendant's business to the detriment of Plaintiff's other customer relationships. A reasonable jury could find that, had Plaintiff been aware of Defendant's true intentions, Plaintiff would not have continued making investments into its manufacturing capacity for Defendant and would have taken steps to mitigate more effectively the termination of the relationship. Defendant argues that Plaintiff's reliance on these reassurances was unreasonable because of earlier communications in 2019 in which Defendant mentioned it had "ideated [the] potential evolution of our fulfilment centers" to adopt an alternative means of storing items. Defendant also points to statements by one of its employees that "this could be a meta trend coming," and that "the overall pie would decrease . . . to a quantity that was far lower . . . ." At most, these statements show that Defendant communicated some possibility of pods being phased out at a future point. It is a question of fact for the jury whether Plaintiff's knowledge of this possibility is enough to negate Defendant's later reassurances and render Plaintiff's reliance unreasonable. *See Maja Hosp. Corp. v. Cent. One Fed. Credit Union*, 86 N.E.3d 512, 512 (Mass. App. Ct. 2017) ("A misrepresentation claim is ordinarily one for a jury, unless the undisputed facts are so clear as to permit only one conclusion.").

Third, Plaintiff has proffered evidence from which a reasonable jury could find that Plaintiff relied on these misrepresentations to its detriment. Plaintiff alleges that it was harmed because Defendant caused Plaintiff to believe there would be no significant decrease in demand in 2022 or 2023, and as a result of that belief, Plaintiff expended money to obtain inventory, produce pods and secure raw materials; refrained from pursuing other business opportunities; invested in manufacturing facilities for Defendant; and lost profits.

## 2.  Fraud by Omission

"To show fraud by omission, [a] plaintiff must allege both concealment of material information and a duty requiring disclosure." *Buffalo-Water 1, LLC v. Fid. Real Est. Co., LLC*, 111 N.E.3d 266, 277 (Mass. 2018).  A duty to disclose material information can exist where "(i) there is a fiduciary or other similar relation of trust and confidence, (ii) there are matters known to the speaker that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading, or (iii) the nondisclosed fact is basic to, or goes to the essence of, the transaction." *Knapp v. Neptune Towers Assocs.*, 892 N.E.2d 820, 824 (Mass. App. Ct. 2008); *accord Rezendes v. Mitsubishi Motors N. Am., Inc.*, No. 22 Civ. 10211, 2023 WL 1864405, at *4 (D. Mass. Feb. 9, 2023) (Massachusetts law).

Plaintiff has provided sufficient evidence from which a jury could find that Defendant concealed material information and that Defendant had a duty to disclose that information.  As to the first element, a reasonable jury could find that Defendant concealed material information by failing to communicate its plans to terminate the parties' relationship and to transition away from pods, as described above.  Sufficient evidence exists that a reasonable jury could conclude that Defendant had a concrete plan to terminate the parties' relationship in the spring of 2021, when Defendant's internal discussions demonstrate an intention to "remove [Plaintiff] as a supplier at the earliest ability to do so . . . ."  As to the second element, a duty to disclose, as discussed above, a reasonable jury could find a relationship of trust and confidence between the parties that gave rise to fiduciary duties.  It is a question for the jury whether the fiduciary relationship included a duty to disclose Defendant's true intentions regarding the relationship.

17

### D.    Unfair Trade Practices Under Massachusetts General Laws Chapter 93A

Defendant's motion for summary judgment on the Chapter 93A claim is denied.  Chapter 93A provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  Mass. Gen. Laws ch. 93A, § (2)(a).  To state a claim for a Chapter 93A violation, a plaintiff must plead that "(1) the defendant engaged in trade or business and committed an unfair or deceptive act; (2) this act resulted in economic injury to the plaintiff; and (3) there is a causal connection between the practice and the plaintiff's economic injury."  *Louis v. Saferent Sols., LLC*, 685 F. Supp. 3d 19, 41 (D. Mass. 2023) (Massachusetts Law).  Conduct is "unfair" under Chapter 93A if it (1) falls "within at least the penumbra of some common-law, statutory, or other established concept of unfairness," (2) is "immoral, unethical, oppressive, or unscrupulous" and (3) causes "substantial injury to consumers."  *PMP Assocs., Inc. v. Globe Newspaper Co.*, 321 N.E.2d 915, 917 (Mass. 1975); *accord Walsh v. TelTech Sys., Inc.*, 821 F.3d 155, 160 (1st Cir. 2016).  "To rise to the level of an unfair act or practice, the defendant's conduct must generally be of an egregious, non-negligent nature."  *Walsh*, 821 F.3d at 160.  Conduct is "deceptive" under Chapter 93A "if it possesses a tendency to deceive" and "if it could reasonably be found to have caused a person to act differently from the way he or she otherwise would have acted."  *Aspinall v. Philip Morris Cos., Inc.*, 813 N.E.2d 476, 486-87 (Mass. 2004); *accord Walsh*, 821 F.3d at 160.

For the same reasons that the intentional misrepresentation claim survives, a reasonable jury could find that Defendant's misleading statements about its intentions to terminate Plaintiff as a supplier were deceptive acts causing economic harm to Plaintiff.  Defendant disputes causation, arguing that the termination of Plaintiff as a supplier was not due to Defendant's switch from pods to other systems but rather due to a fall in demand for pods.  This argument

misconstrues the scope of Plaintiff's claim. Plaintiff claims that Defendant acted deceitfully by concealing its plan to terminate its relationship with Plaintiff while simultaneously reaffirming the prospects of continued business in its communications with Plaintiff. A reasonable jury could find that Plaintiff made investments and decisions based on Defendant's communications that Plaintiff otherwise would not have made had it known in early 2021 of Defendant's true intentions.

Defendant argues that its conduct was not egregious. Chapter 93A's requirement that conduct be egregious applies only to "unfair" conduct and not "deceptive" conduct. *See Tomasella v. Nestlé USA, Inc.*, 962 F.3d 60, 70-71 (1st Cir. 2020) (Massachusetts law). Conduct is "deceptive if it possesses a tendency to deceive and if it could reasonably be found to have caused a person to act differently from the way he or she otherwise would have acted." *Id.* In contrast, conduct is "unfair if it falls within at least the penumbra of some common-law, statutory, or other established concept of unfairness; is immoral, unethical, oppressive or unscrupulous; and causes substantial injury to consumers, plus the conduct must generally be of an egregious, non-negligent nature." *Id.* Because a reasonable jury could find that Defendant's conduct meets the elements of deceptive conduct, the Court need not decide whether it also constitutes unfair conduct.

Defendant also raises for the first time in its reply that "businesses seeking relief under Section 11 are held to a stricter standard than consumers in terms of what constitutes unfair or deceptive conduct." *Giuffrida v. High Country Inv., Inc.*, 897 N.E.2d 82, 95 (Mass. App. Ct. 2008); *accord H1 Lincoln, Inc. v. S. Washington St., LLC*, 179 N.E.3d 545, 557 n.10 (Mass. 2022). This is the case in part because, unlike the business-consumer relationship, these relationships are often marked by "vigorous competition among business concerns . . . ."

*Giuffrida*, 897 N.E.2d at 95.  Nevertheless, "misrepresentations [between businesses] may be so seriously deceptive and harmful" to allow recovery, because "[b]usiness strategy in the rough and tumble of the world of commerce should not use conscious misrepresentation as a competitive weapon."  *Id.*  Especially in the context of the parties' fiduciary relationship here, a reasonable jury could find Defendant's conduct crossed the line.

### E.    Parol Evidence

Defendant argues that the parol evidence rule bars Plaintiff's claims because the claims seek to alter a written contract intended by the parties to be a complete statement of their agreement.  Under Massachusetts law, the parol evidence rule applies only to claims for negligent misrepresentation and not intentional misrepresentation or similar intentional conduct. *Sound Techs., Inc. v. Hoffman*, 737 N.E.2d 920, 924 n.6, 925-26 (Mass. App. Ct. 2000) (holding the parol evidence rule applies to negligent misrepresentation claims but explaining that a merger clause will not relieve a defendant of liability if the misrepresentations at issue were intentional); *accord Starr Cap. Partners, LLC v. Toll Bros., Inc.*, No. 21 P. 930, 2022 WL 16641905, at *7 n.14 (Mass. App. Ct. Nov. 3, 2022) (noting that plaintiff brought claims for both intentional or negligent misrepresentation, but because the parol evidence rule barred the negligent misrepresentation claim, only the intentional misrepresentation claim was considered).  The parol evidence rule therefore does not bar the claims at issue here, which concern intentional and not negligent conduct.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is **DENIED**.  An

order scheduling the trial and related pre-trial deadlines will issue separately.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 91.

Dated:  March 4, 2025
          New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE