UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BINH THAN IMPORT EXPORT
PRODUCTION & TRADE JOINT
STOCK CO., d/b/a GILIMEX, INC.,

                Plaintiff,

-against-

AMAZON.COM SERVICES, LLC, d/b/a
AMAZON ROBOTICS,

                Defendant.

Case No. 1:23-cv-00292-LGS

 

**DEFENDANT AMAZON.COM SERVICES LLC'S**
**<u>PRETRIAL MEMORANDUM OF LAW</u>**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................... 1

ARGUMENT ............................................................................................................... 3

I.  The Court Should Adopt Amazon's Proposed Jury Instructions ......................... 3

   A.  Amazon's Instructions Clearly And Concisely State The Law That
       Applies To This Particular Case .......................................................... 3

   B.  Gilimex's Proposal To Give The Jury A Limiting Instruction On The
       Contract And The Purchase Orders Right Out Of The Gate Is Confusing
       And Misstates The Law ........................................................................ 4

   C.  The Court Should Adopt Amazon's Proposed Instructions For The  Breach
       Of Fiduciary Duty Claim (Claim 1) ...................................................... 6

   D.  The Court Should Adopt Amazon's Proposed Instructions For The
       Intentional Misrepresentation Claim (Claim 2) .................................... 12

   E.  The Court Should Adopt Amazon's Proposed Instructions For The
       Chapter 93A Claim (Claim 3) .............................................................. 13

       1.  Unfair Or Deceptive Act Or Practice ........................................ 13

       2.  Willful Or Knowing ................................................................. 14

   F.  A Missing Witness Instruction Is Warranted ....................................... 15

II.  The Court Should Adopt Amazon's Proposed Verdict Form ............................ 20

CONCLUSION ........................................................................................................... 21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Baker v. Goldman, Sachs & Co.*,
   771 F.3d 37 (1st Cir. 2014)..............................................................................5, 9

*In re Bayou Hedge Fund Inv. Litig.*,
   2006 WL 8439724 (S.D.N.Y. Oct. 18, 2006) .........................................................17

*BOCA Aviation Ltd. v. AirBridgeCargo Airlines, LLC*,
   669 F. Supp. 3d 204 (S.D.N.Y. 2023).....................................................................17

*Cambridge Plating Co. v. Napco, Inc.*,
   85 F.3d 752 (1st Cir. 1996)....................................................................................15

*Cann v. Ford Motor Co.*,
   658 F.2d 54 (2d Cir. 1981).............................................................................20, 21

*Chevron Corp. v. Donziger*,
   974 F. Supp. 2d 362 (S.D.N.Y. 2014).....................................................................17

*Commonwealth v. Alves*,
   50 Mass. App. Ct. 796 (2001)................................................................................17

*Commonwealth v. Perryman*,
   55 Mass. App. Ct. 187 (2002)................................................................................18

*Commonwealth v. Saletino*,
   449 Mass. 657 (2007) .....................................................................................15, 17

*Davidson v. Gen. Motors Corp.*,
   57 Mass. App. Ct. 637 (2003)..................................................................................8

*Deler v. Commodore Cruise Line*,
   1995 WL 733655 (S.D.N.Y. Dec. 12, 1995) ..........................................................18

*Doull v. Foster*,
   487 Mass. 1 (2021) ..................................................................................................4

*Du v. Party Perfect Rentals LLC*,
   732 F. Supp. 3d 249 (E.D.N.Y. 2024) ....................................................................15

*Gaw v. Comm'r*,
   1995 WL 664592 (T.C. 1995).........................................................................17, 18

*Gemini Invs., Inc. v. Ches-Mont Disposal, LLC*,
   629 F. Supp. 2d 163 (D. Mass. 2009) ..............................................................10, 12

*Geo. Knight & Co. v. Watson Wyatt & Co.*,
   170 F.3d 210 (1st Cir. 1999).................................................................11

*Girden v. Sandals Int'l*,
   262 F.3d 195 (2d Cir. 2001)...................................................................3

*Giuffrida v. High Country Inv., Inc.*,
   73 Mass. App. Ct. 225 (2008)...............................................................14

*Harry v. Safeway Stores, Inc.*,
   215 F. Supp. 324 (D.D.C. 1963)...........................................................18

*Hawkes v. Lackey*,
   207 Mass. 424 (1911) ...........................................................................11

*Indus. Gen. Corp. v. Sequoia Pac. Sys. Corp.*,
   44 F.3d 40 (1st Cir. 1995)...............................................................10, 11

*Katz v. Belveron Real Est. Partners, LLC*,
   28 F.4th 300 (1st Cir. 2022).................................................................10

*Locator Servs. Grp., Ltd. v. Treasurer*,
   443 Mass. 837 (2005) .............................................................................8

*Martin v. Stone*,
   332 Mass. 540 (1955) ...........................................................................12

*Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*,
   196 F.3d 409 (2d Cir. 1999)............................................................15, 17

*Masingill v. EMC Corp.*,
   449 Mass. 543 (2007) ...........................................................................13

*Porchia v. Design Equip. Co.*,
   113 F.3d 877 (8th Cir. 1997) ..................................................................4

*UBS Fin. Servs., Inc. v. Aliberti*,
   483 Mass. 396 (2019) .............................................................................8

*United States v. Caccia*,
   122 F.3d 136 (2d Cir. 1997)..................................................................15

*United States v. Schultz*,
   333 F.3d 393 (2d Cir. 2003)....................................................................4

*United States v. Torres*,
   845 F.2d 1165 (2d Cir. 1988)...........................................................16, 17

*VMark Software, Inc. v. EMC Corp.*,
    37 Mass. App. Ct. 610 (1994) ............................................................................... 15

*Zotbelle, Inc. v. Kryolan Corp.*,
    416 F. Supp. 3d 33 (D. Mass. 2019) ..................................................................... 14

**Other Authorities**

Massachusetts Superior Court Civil Practice Jury Instructions ............................... 13, 14

Massachusetts Superior Court Model Jury Instructions ...................................... *passim*

## PRELIMINARY STATEMENT

A properly instructed jury, unswayed by irrelevant and prejudicial evidence, is essential to a fair trial. Amazon has therefore proposed a clear, easy-to-apply set of jury instructions and verdict form that accurately and neutrally summarize the legal principles governing this case. And Amazon is pleased that, through a meet-and-confer process, the parties were able to reach agreement on many aspects of the instructions where they initially proposed different language.

Still, a number of items remain in dispute. Gilimex has proposed several one-sided, confusing, or incomplete instructions that are likely to lead the jury to misapply the law, along with a verdict form that omits essential elements of its claims. It is not surprising that Gilimex seeks to tilt the trial in its favor: The evidence conclusively forecloses Gilimex's claims under a proper view of the law. Amazon will show that it had an arm's length business relationship with Gilimex as a purchaser of its Fabric Pod Arrays ("FPAs") and that, in 2021, the parties carefully negotiated an overarching agreement—the Component Sale and Purchase Agreement ("Contract")—to govern this supplier-customer relationship. Eventually, due to Gilimex's poor performance and a post-pandemic decrease in consumer demand, Amazon decided to terminate its relationship with Gilimex pursuant to the terms of their Contract. But rather than winding down its operations under the Contract, Gilimex continued ordering supplies and making FPAs, even after Amazon had specifically and repeatedly told Gilimex to stop. Gilimex then tried to force Amazon to pay for FPAs that Amazon did not order and did not need. It even sought to convince Amazon to revisit its termination decision, including by sending leaders to Amazon's offices uninvited and unannounced. When these efforts failed, Gilimex filed this lawsuit—a final, meritless attempt to circumvent the terms of the parties' agreement.

With both the law and the facts against it, Gilimex now seeks to skew the jury instructions

and verdict form in its favor.  The Court should reject those efforts to distort the trial proceedings.

*First*, the Court should adopt Amazon's proposed instructions, which synthesize the Massachusetts Superior Court model jury instructions ("Superior Court Model") and relevant precedent into clear, neutral, and concise statements of the relevant legal rules.  Gilimex's disputed proposed instructions, by contrast, are confusing and incomplete; they should be rejected.  Several of Gilimex's disputed instructions either misstate the law, including this Court's own rulings, or omit guiding principles (*e.g.*, factors relevant to whether Amazon owed Gilimex a fiduciary duty) that are necessary to enable the jury to fairly and accurately apply the law.  And, at several points, Gilimex's instructions are improperly argumentative.  Gilimex's proposal would skew the jury while depriving it of the tools needed to resolve this case.

For its part, Gilimex's objections to Amazon's proposal rest largely on a misunderstanding about the role of model instructions.  Amazon recognizes the importance of the Superior Court Model and has based its proposal upon it, while properly tailoring the Model's generic statements to the circumstances of this case and elaborating on them with relevant legal principles taken from the case law.  Amazon correctly does not rely *solely* on the Superior Court Model, and this Court likewise should not remove Amazon's neutral, helpful instructions simply to repeat the Superior Court Model verbatim.  Established precedent confirms that it is critical to build out model instructions to ensure that they fully and accurately capture applicable law relevant to the facts. The Court should therefore reject Gilimex's efforts to confine the jury to considering model instructions without the benefit of other principles derived from governing case law.

*Second*, this Court should adopt Amazon's proposed verdict form.  It clearly and carefully presents neutral questions to the jury for each disputed element of each claim to ensure that the jury fairly resolves this case.  Gilimex's proposal, by contrast, conflates issues and assumes

elements of the claims by combining multiple discrete issues into a single question.

## ARGUMENT

### I.    The Court Should Adopt Amazon's Proposed Jury Instructions[1]

#### A.    Amazon's Instructions Clearly And Concisely State The Law That Applies To This Particular Case

"The purpose of jury instructions is to give the jury a clear and concise statement of the law applicable to the facts of the case." *Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001). Amazon's proposed instructions achieve that goal. They derive primarily and substantially from the Superior Court Model. The proposed instructions also incorporate key principles from cases applying Massachusetts law, building on the Superior Court Model where necessary to ensure that the jury understands and can faithfully apply the law to the unique circumstances in this case.

Gilimex objects generally to several portions of Amazon's proposed instructions, arguing that they improperly deviate from the model instructions. These objections are not well founded. Amazon agrees that the Superior Court Model—which would be the relevant guide if this case were in state court—is an important starting point, and Amazon's proposed instructions accordingly are rooted in the Superior Court Model. But the law is clear that federal courts should adopt instructions that clearly explain the law as it relates to the specific dispute before the court, even if that means that the court does not follow a state's model instructions verbatim. As the Second Circuit has held, courts "do not review a jury instruction to determine whether it precisely

---

[1] Consistent with this Court's choice-of-law rulings at the pleading and summary-judgment stages, *see* Dkts. 45, 110, Amazon's proposed instructions assume that the substantive law of Massachusetts governs Gilimex's claims. However, Amazon respectfully preserves its argument that New York law governs all claims, consistent with choice-of-law principles and the parties' agreement that New York law governs "the entire agreement between Purchaser and Supplier regarding the purchase and sale of the [FPAs] and its other subject matter." FAC, Ex. A §§ 17.4, 17.14; Dkt. 94 ¶¶ 46-49 (describing the parties' extensive contract negotiations, including as to the choice-of-law provision).

quotes language suggested by Supreme or Appellate Court precedent. Instead, we review the court's instructions to determine whether 'considered as a whole, [the instructions] adequately communicated [the essential] ideas to the jury.'" *United States v. Schultz*, 333 F.3d 393, 413-14 (2d Cir. 2003); *see Porchia v. Design Equip. Co.*, 113 F.3d 877, 883 (8th Cir. 1997) ("a court sitting in diversity does not have to give the precise instructions set out in a state's approved instructions."). Indeed, "[t]he judge . . . has wide latitude in framing the language to be used in jury instructions as long as the instructions adequately explain the applicable law." *Doull v. Foster*, 487 Mass. 1, 6 (2021).

Here, Amazon has made modest additions to the Superior Court Model in certain instances and tweaked the phrasing to tailor the instructions to this case and improve clarity. Those changes draw from relevant case law to elucidate key legal principles, seeking to avoid confusion and assist the jury. Thus, far from departing from the Superior Court Model, Amazon's proposal rounds out the Model so that it fits this case—just as precedent instructs.

By contrast, Gilimex's instructions largely parrot the model instructions while disregarding the case law, rendering Gilimex's proposed instructions unclear and abstract in places. As explained in more detail below, Gilimex also omits discussion of critical topics; its proposal is thus bound to confuse the jury. Amazon's proposed instructions—not Gilimex's—provide a clear, neutral articulation of the relevant legal principles. This Court should adopt Amazon's proposal.[2]

## B. Gilimex's Proposal To Give The Jury A Limiting Instruction On The Contract And The Purchase Orders Right Out Of The Gate Is Confusing And Misstates The Law

It is clear from the outset that Gilimex is misusing the instructions and being improperly

---

[2] This memorandum focuses on the more substantial differences between the parties' instructions. Other disputes and pertinent authorities are addressed in the footnotes to the proposed instructions, per this Court's procedures.

argumentative.  Gilimex's second proposed instruction—before the jury is instructed on the elements of any claim—is a purported limiting instruction regarding the jury's consideration of the parties' Contract and purchase orders that seeks to prevent the jury from considering those central documents at all.  This Court should reject that proposal for multiple reasons.

*First*, Gilimex's proposed instruction misstates the law and is unnecessary.  Gilimex proposes, for instance, that the jury be told that "the [Contract] and the parties' purchase orders do not bar or foreclose any of Gilimex's claims."  Proposed Jury Instr. § II.  That is incorrect.  This Court held that the parties' purchase orders "do not preclude a fiduciary duty" as a matter of law at the summary judgment stage.  Dkt. 110 at 8-9.  But the Court never suggested that the purchase orders are not a relevant factor for the jury to consider in determining whether a fiduciary duty arose or, if so, the scope of any duties.  Courts applying Massachusetts law have held that "[t]he jury *was* entitled to consider the agreement and its drafting history" and "the course of dealing between the parties before and after the agreement" in "considering" whether "the plaintiff justifiably reposed trust in the defendant and the defendant knew of and accepted that trust."  *Baker v. Goldman, Sachs & Co.*, 771 F.3d 37, 59 (1st Cir. 2014).  As another example, among the list of permissible bases for considering the Contract, Gilimex's proposal never clearly states that the Parties' "contractual terms may define the scope of permissible conduct."  Dkt. 110 at 9-10; *see Baker*, 771 F.3d at 59.  Instead, in purporting to state for what purposes the jury "may consider" the Contract, the proposal confusingly asserts only three things that the Contract does *not* do.  Proposed Jury Instr. § II.

*Second*, and relatedly, the instruction is argumentative and improperly weighs the evidence for the jury.  Rather than adhering to simple and straightforward principles regarding how the jury should consider the Contract and purchase orders, Gilimex's proposal tries to force legal and

factual arguments into the jury instruction to prevent the jury from giving those agreements close consideration.

*Third*, the proposal is confusing.  The jury should not hear about the limits on its consideration of the Contract and the purchase orders before the jury is even told the claims to which those agreements relate.  Gilimex's proposal is thus abstract and confusing.  For example, the proposal would discuss whether "the parties' relationship may have been transformed from an ordinary transactional relationship into a fiduciary one."  Proposed Jury Instr. § II.  But the jury has not been told what a fiduciary relationship is.  This Court should not put the cart before the horse.

As explained below, Amazon offers a clearer, more contextualized, and more accurate instruction regarding the role of the parties' Contract and purchase orders.  This Court should reject Gilimex's instruction and adopt Amazon's proposal.

### C.    The Court Should Adopt Amazon's Proposed Instructions For The Breach Of Fiduciary Duty Claim (Claim 1)

Amazon is confident that a properly instructed jury will find that the evidence presented at trial forecloses a fiduciary relationship between Amazon and Gilimex under Massachusetts law.  To avoid that result, Gilimex has proposed abstract, generic fiduciary-duty jury instructions that ignore the legal principles relevant to this case.  Indeed, Gilimex's proposed instructions are so vague and generalized as to be misleading to the jury—any number of run-of-the-mill commercial relationships could wrongly be deemed fiduciary relationships under Gilimex's capacious proposal.  The Court should reject Gilimex's fiduciary-duty instructions and adopt Amazon's.

The instruction on the existence of a duty, in particular, has several important components.  Most jurors will likely be unfamiliar with the legal definition of a "fiduciary duty" and will have difficulty applying it in the abstract.  It is therefore essential that the instructions provide the jury

with sufficient context and real-world examples to enable it to faithfully apply the law in this area. Amazon's proposed instruction achieves this result; Gilimex's does not.

***Nature of a Fiduciary Relationship.***  As Amazon proposes, the jury should be instructed that only certain special relationships can create a fiduciary duty.  Proposed Jury Instr. § III.B.  To make the abstract concept of a "fiduciary" more concrete, the jury should be instructed, as Amazon proposes, that business transactions conducted at arm's length generally do not give rise to a fiduciary relationship and that mutual respect and confidence alone cannot create a fiduciary relationship in the context of an arm's length business transaction.  *See* Proposed Jury Instr. § III.B. Instead, controlling authorities establish that a fiduciary relationship can exist only if: (i) Gilimex placed its faith, confidence and trust in Amazon's judgment and advice such that Gilimex was in fact dependent on Amazon's judgment in business affairs; *and* (ii) Amazon knew of and accepted that reliance.  *See id.*  Providing this instruction will ensure that the jury understands how to distinguish the "special relationship" of a fiduciary from an ordinary business relationship. Massachusetts law is clear that *most* business relationships do not fall into the narrow category of fiduciary relationships.  *See id.* (citing cases).  Gilimex's instruction omits these aspects of Massachusetts law.  Omitting any instruction concerning this well-established legal principle would be error because it would lead the jury to conclude that a typical, arm's length commercial relationship creates a fiduciary duty.

Instructing the jury about the obligations of a fiduciary will also enable the jury to distinguish fiduciary relationships from standard business relationships.  Gilimex objects to Amazon's instruction that a fiduciary duty can arise only if "Gilimex was in fact dependent on Amazon's judgment in business affairs and reasonably expected Amazon to put Gilimex's interests ahead of Amazon's."  Proposed Jury Instr. § III.B.  But that instruction follows directly from the

Superior Court Model and case law. The first clause of that statement is a direct quote from the Massachusetts Supreme Judicial Court: "Fiduciary duties may arise . . . upon evidence indicating that one person is in fact dependent on another's judgment in business affairs or property matters." *See UBS Fin. Servs., Inc. v. Aliberti*, 483 Mass. 396, 406 (2019). The second clause is lifted from the Superior Court Model, which directs that "a fiduciary duty requires one person to act in the other person's best interests and not out of self-interest," with an innocuous addition drawn from case law clarifying that Gilimex's expectation of Amazon must have been reasonable, *see Davidson v. Gen. Motors Corp.*, 57 Mass. App. Ct. 637, 643-44 (2003) (no fiduciary relationship where plaintiffs could not have reasonably relied on defendant to provide information because parties' contract provided that "plaintiffs were responsible for checking things for themselves").

The Massachusetts Supreme Judicial Court "has recognized fiduciary relationships" only "in limited circumstances." *Locator Servs. Grp., Ltd. v. Treasurer*, 443 Mass. 837, 853 (2005). Amazon's proposed instruction ensures that the jury abides by that direction in determining whether this case fits within that narrow category.

***Relevant Factors.*** Amazon's proposed instruction synthesizes the case law on fiduciary duties to provide several specific factors that the jury should consider in determining whether a fiduciary relationship existed between Gilimex and Amazon. *See* Proposed Jury Instr. § III.B. Gilimex's generic recitation of the fiduciary-duty standard, by contrast, would leave the jury unmoored and likely to err.

The Parties' contracts. As this Court has recognized, the terms of the contractual agreements governing the parties' relationship are a core factor in determining the nature of their relationship. These agreements include both the parties' purchase orders and, eventually, the Contract.

The purchase orders were the center of the parties' business relationship prior to their entry into the Contract, and this Court has recognized that if a fiduciary duty arose between the parties at all, it would have needed to arise "between 2014 and 2021," before the parties entered into the Contract (which "expressly forecloses" creation of a fiduciary duty). Dkt. 110 at 8-9. The Court has also recognized that, if a fiduciary relationship did exist, the parties' agreements would "define the scope of permissible conduct" under that relationship. *Id.* at 9. Accordingly, the nature and terms of the purchase orders, and the parties' conduct pursuant to those orders, are pertinent to the question whether and to what extent a fiduciary duty existed. *See id.* at 9-10; *Baker*, 771 F.3d at 59 ("The jury *was* entitled to consider the agreement and its drafting history" and "the course of dealing between the parties before and after the agreement" in "considering . . . the breach of fiduciary duty claims"). Though Gilimex omits this instruction, it has acknowledged that the purchase orders may be "relevant to whether a fiduciary relationship existed." Dkt. 97 at 6.

Relatedly, the jury should be instructed at this point in the instructions about the role of the Contract in this case. This Court has already recognized that if a fiduciary relationship existed, the Parties' "contractual terms may define the scope of permissible conduct." Dkt. 110 at 9-10; *see Baker*, 771 F.3d at 59. Amazon's proposed instruction on this point reflects Massachusetts law and this Court's summary judgment decision, and it includes the Court's caveat that the Contract "does not preclude" the existence of other legal obligations arising independently of the Contract. Dkt. 110 at 9.

Gilimex would have the Court separately instruct the jury that the purchase orders and Contract cannot extinguish any fiduciary duty. *See* Proposed Jury Instr. § II. This instruction is an improper attempt to influence the jury's weighing of the evidence. No such instruction is necessary if the Court instructs the jury (consistent with Amazon's proposal) to consider the orders

and Contract as part of determining whether and to what extent a duty existed.  *See* Dkt. 110 at 9-10.  As explained, Gilimex also asks the Court to give the jury its limiting instruction *before* the Court instructs the jury on the underlying claims.  *See supra* I.B.  To avoid confusing the jury, the Court should instruct the jury on the role of the parties' agreements in the proper context.

<u>Disparities.</u>  Gilimex and Amazon agree that, under Massachusetts law, the existence of a "great disparity or inequality" between the parties may be relevant to deciding whether a fiduciary relationship exists.  But, while Amazon's instruction concisely synthesizes the applicable principles from controlling authorities to explain what kind of disparity the jury should consider relevant, Gilimex's instruction does not tell the jury in *what sense* there must there be a "great disparity."  Instead, Gilimex's offers a vague proposal—"a large difference in the capabilities of Gilimex and Amazon may point to a special relationship"—that would mislead the jury as to the nature of this inquiry.  Massachusetts law considers the parties' respective "business capacities," focusing on any disparities between the parties' *sophistication and commercial experience*—not, for example, on differences between two company's sheer size or wealth.

For example, in *Industrial General Corp. v. Sequoia Pacific Systems Corp.*, a court found that there was no fiduciary relationship between a company purchasing electronic voting machines (Sequoia) and a company supplying plastic parts for those machines (Plastek) where "[t]he record indicates that both Sequoia and Plastek were experienced in the commercial world."  44 F.3d 40, 44 (1st Cir. 1995).  Likewise, a court declined to impose a fiduciary duty on a company that "enjoyed a certain financial expertise" because the other company was "no business neophyte" and had a "highly experienced management team."  *Gemini Invs., Inc. v. Ches-Mont Disposal, LLC*, 629 F. Supp. 2d 163, 169 (D. Mass. 2009); *see also, e.g.*, *Katz v. Belveron Real Est. Partners, LLC*, 28 F.4th 300, 312 (1st Cir. 2022) (where "all parties involved were sophisticated and

experienced with analogous real estate ventures," there was not "such a disparate capacity or knowledge that a fiduciary duty could be imposed").  The jury thus should be instructed to focus its "disparities" analysis on any differences between Amazon's and Gilimex's general sophistication and commercial experience, as Massachusetts law requires.

Leverage and Control.  Two other relevant considerations are the amount of leverage Gilimex had in the relationship and the level of control Gilimex maintained over its business decisions.  Applying Massachusetts law, the First Circuit has held that a designer-purchaser owed no duty to a supplier in part because the supplier "was not altogether without leverage in the relationship," given that the designer-purchaser "was operating under a tight deadline and had encountered difficulties in locating an adequate plastic parts supplier."  *Indus. Gen. Corp.*, 44 F.3d at 45.  The facts here could lead the jury to draw the same inference about Amazon if the jury knows that it is allowed to do so.

Courts have also recognized that control over business decisions is pertinent.  Where, for example, an individual with "scarcely any business experience" entrusted a relative to advise her on financial investments and "always did what [the relative] asked or advised," the circumstances might suggest a fiduciary relationship.  *Hawkes v. Lackey*, 207 Mass. 424, 431-32 (1911).  On the other hand, when an actuarial company provided services to a manufacturing company related to a retirement plan but had no "control of the Plain's management or assets," the actuarial company incurred no duty for the manufacturing company's financial and legal decisions related to the plan.  *Geo. Knight & Co. v. Watson Wyatt & Co.*, 170 F.3d 210, 216-17 (1st Cir. 1999).  Here, a properly instructed jury could similarly conclude that "this is not a case in which one party's failure to disclose information resulted in some unjust enrichment at the expense of another party" that would warrant the imposition of a fiduciary duty.  *Id.* at 216.

"Partner" or "Strategic Partner."   The jury should also be instructed that the parties' colloquial references to one another as a "partner" or "strategic partner" or similar terms do not, by themselves, create a legal partnership or fiduciary duties.   *See* Proposed Jury Instr. § III.B. Courts have explicitly held that parties' references to one another as "partners" do not create a legal partnership or otherwise create a fiduciary obligation between them, even if they "frequently refer to themselves as such." *Gemini Invs.*, 629 F. Supp. 2d at 167; *see Martin v. Stone*, 332 Mass. 540, 546 (1955) (to create a partnership, "[i]t is not enough that the parties referred to each other as partners").   As in those cases, this case involves "two existing corporations" that remained "distinct." *Martin*, 332 Mass. at 546.   No party has offered any evidence or made any argument that Amazon and Gilimex entered into an "association . . . to carry on as co-owners a business for profit" such that they have a *legal* partnership triggering fiduciary duties. *Id.* at 547.   The jury should be instructed that use of such language does not, by itself, create a legal partnership or fiduciary duties.

### D.    The Court Should Adopt Amazon's Proposed Instructions For The Intentional Misrepresentation Claim (Claim 2)

As with its proposed breach of fiduciary duty instructions, Amazon's proposed instructions on intentional misrepresentation faithfully apply the Superior Court Model, building out relevant principles from decisions applying Massachusetts law that will help the jury understand and apply the law properly here.   Gilimex's objections and counter-proposals are unpersuasive.

On reliance, Gilimex's proposed instruction omits another key legal concept.   As Amazon's instruction states:  "Under the law, it would be unreasonable for Gilimex to rely on prior oral representations that are specifically contradicted by the terms of the Parties' written contract." Proposed Jury Instr. § IV.F.   That principle comes directly from the Massachusetts Supreme Judicial Court:  "It is unreasonable as a matter of law to rely on prior oral representations that are

(as a matter of fact) specifically contradicted by the terms of a written contract. This is a rule of long standing, which we . . . recently reaffirmed." *Masingill v. EMC Corp.*, 449 Mass. 543, 541 (2007). Given that Gilimex has attempted to rely on theories of liability inconsistent with the terms of the parties' Contract and Amazon has pointed to the Contract as a defense against those claims, *see* Dkt. 110 at 9-10 (holding that Amazon cannot have a duty to provide a notice-of-termination or ramp-down period based on the parties' Contract), it is critical that the Court clearly inform the jury of this rule of Massachusetts law.

### E.    The Court Should Adopt Amazon's Proposed Instructions For The Chapter 93A Claim (Claim 3)

The Court should adopt Amazon's proposal on the Ch. 93A claim. Gilimex's proposal confusingly combines unrelated issues and omits central concepts.

### 1.    Unfair Or Deceptive Act Or Practice

Gilimex's proposal on this element relies on a model instruction for a different statutory section that does not apply in this case. Gilimex cites the 2004 version of model jury instructions from the Massachusetts District Court meant for claims under Section 9 (claims by ordinary *consumers*)—rather than Section 11 (claims by *businesses*)—of Ch. 93A. In addition, it omits several key legal principles synthesized from the Massachusetts Superior Court Civil Practice Jury Instructions and Massachusetts case law that will help the jury in this case.[3] First, Gilimex's proposed instruction does not explain that conduct must be "egregious" to be considered "unfair." *See* Proposed Jury Instr. § V.C. This Court has already held as much, *see* Dkt. 110 at 19, and the jury should be so instructed. Gilimex instead proposes a vague "three questions" formulation of "unfairness" as stated in the model instructions. *See* Proposed Jury Instr. § V.C. But Amazon's

---

[3] The Massachusetts Superior Court does not appear to have a model instruction on Ch. 93A, so Amazon relied on the Massachusetts Superior Court Civil Practice Jury Instruction.

proposal incorporates those questions into more digestible statements of the law, which will be easier for the jury to understand and apply.

Second, Gilimex's instruction fails to explain the relevance of the fact that this case is brought by one sophisticated business against another, rather than a case brought by an ordinary, unsophisticated consumer.  Massachusetts law and the Civil Practice Model are clear that what might be unfair or deceptive to an unsophisticated consumer might *not* be unfair or deceptive to a business:  "Businesses seeking relief under Section 11 are held to a stricter standard than consumers in terms of what constitutes unfair or deceptive conduct." *Giuffrida v. High Country Inv., Inc.*, 73 Mass. App. Ct. 225, 238-39 (2008).  In the business-to-business context, conduct must be "seriously deceptive and harmful." *Id.*  Or, as the Civil Practice Model puts it, the conduct must be "reprehensible" to a reasonable businessperson.  Civil Practice Model § 16.4.1.

Third, Gilimex objects to Amazon's proposed instruction that an act cannot be unfair or deceptive "if it is consistent with the bargained-for terms of the parties' contract."  Proposed Jury Instr. § V.C.  But courts have directly held as much in this context:  A party's actions "cannot be reasonably interpreted as being either unfair or deceptive" if they "were consistent with the bargained-for terms of its contract." *Zotbelle, Inc. v. Kryolan Corp.*, 416 F. Supp. 3d 33, 55 (D. Mass. 2019) (citing cases).  That conclusion is also consistent with the law and Amazon's proposed instructions regarding the jury's consideration of the Contract and purchase orders as they relate to fiduciary duties and reliance, as discussed above. *Supra* at 8-10, 12-13.

### 2.    Willful Or Knowing

Rather than include a separate instruction on whether any violation of Ch. 93A was willful or knowing, Gilimex proposes including discussion of the willful or knowing element alongside discussion of what constitutes an unfair or deceptive act or practice.  Those are distinct elements under the statute that should be addressed separately to ensure that the jury understands and

faithfully applies the law. Gilimex also conveniently omits important information about the extraordinary nature of awarding multiple damages—which are intended to be *punitive*—under Ch. 93A. *VMark Software, Inc. v. EMC Corp.*, 37 Mass. App. Ct. 610, 623-24 (1994) (discussing "§ 11's extraordinary damage penalty" and explaining that it is a "severe sanction"). Amazon's proposal makes clear, consistent with precedent, that even "conduct amounting to an intentional misrepresentation" does "not automatically trigger punitive damages" because there is a difference between the intent standard and the willful or knowing standard. *Cambridge Plating Co. v. Napco, Inc.*, 85 F.3d 752, 770 (1st Cir. 1996). Without that important clarification, the jury could be misled to believe that, if it finds liability on the second claim, it must conclude that multiple damages are warranted.

### F.    A Missing Witness Instruction Is Warranted

Amazon is entitled to a missing witness instruction regarding Gilimex's failure to produce Tuan Linh, Gilimex's former Business Director and Amazon's "main point of contact" at Gilimex. *See* Dkt. 105 ¶¶ 21, 92; Ex.1 ("Sall Tr.") at 63:9-24. The jury may "draw an adverse inference against a party failing to call a witness when the witness's testimony would be material and the witness is peculiarly within the control of that party.'" *United States v. Caccia*, 122 F.3d 136, 138 (2d Cir. 1997).[4] Tuan played an important role in the parties' relationship and would offer material testimony. But even though Tuan is peculiarly within Gilimex's control to produce, Gilimex did

---

[4] The Second Circuit has not decided "whether a missing witness charge is governed by federal or state law," *Du v. Party Perfect Rentals LLC*, 732 F. Supp. 3d 249, 252 (E.D.N.Y. 2024), but this Court need not resolve that question "because here the two standards are similar," *Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409, 432 (2d Cir. 1999). Under Massachusetts law, "[a] missing witness instruction is appropriate when a party has knowledge of a person who can be located and brought forward, who is friendly to, or at least not hostilely disposed toward, the party, and who can be expected to give testimony of distinct importance to the case, and the party, without explanation, fails to call the person as a witness." *Commonwealth v. Saletino*, 449 Mass. 657, 667 (2007).

not make him available for deposition or to testify at trial. As a result, a missing witness instruction is warranted.

*First*, Tuan's testimony would be material. Testimony is material if it "would elucidate the transaction[s]" at issue and would not be "merely cumulative." *United States v. Torres*, 845 F.2d 1165, 1169 (2d Cir. 1988). Tuan was central to the parties' communications: He served as Gilimex's Business Director from 2019 to 2023. Dkt. 105 ¶ 92, Ex.2 ("Le Tr.") at 107:19-108:22. As an English speaker, Tuan was Amazon's "main point of contact" at Gilimex, and—at the direction of Gilimex's Chairman Le Hung—acted as Gilimex's lead negotiator with Amazon regarding the pricing of Fabric Pod Arrays. *See* Dkt. 105 ¶ 21; Ex.3 ("Khoa Tr.") at 107:24-108:7. Tuan was also a conduit for Le's English-language communications. *See* Khoa Tr. at 117:24-118:14; Le Tr. at 111:10-17; Ex.4 ("Pham Tr.") at 112:13-113:1. Not surprisingly, then, Tuan was identified in Gilimex's initial disclosures as an individual with "knowledge and information relevant to the allegations in the complaint . . . including the relationship between the parties, Defendant's forecasts of demand for FPAs, and the impact of Defendant's representations upon Plaintiff." Ex.5 at 3. Additionally, Tuan was the custodian of 46,025 of the approximately 69,000 documents Gilimex produced in this case—two-thirds of the production. Declaration of Grace Hart ¶ 2.

Tuan would thus offer testimony related to numerous key issues in this case, including the nature of the relationship between the parties and Amazon's alleged representations to Gilimex. *See* Sall Tr. at 63:9-24; Ex.6 ("30(b)(6) Tr.") at 18:18-19:24; Khoa Tr. at 107:10-108:7; *see also* Pham Tr. at 77:10-78:4 (Le and Tuan were the only Gilimex employees with direct knowledge of Amazon's alleged promises to Gilimex). Indeed, Le testified that Tuan had personal knowledge of the events at issue "because he [was] in charge of this case with Amazon, in charge of the

matters that are relevant to Amazon. . . .  He know[s] the relationship with—between Amazon and

Gilimex."  30(b)(6) Tr. at 23:18-24:4.  Tuan's testimony would thus be critical to the central

disputes, above and beyond the existing record.  *Torres*, 845 F.2d at 1169; *see BOCA Aviation Ltd.*

*v. AirBridgeCargo Airlines, LLC*, 669 F. Supp. 3d 204, 231 (S.D.N.Y. 2023) (giving instruction

where corporations failed to call one company's "General Director," who was "often the signatory

to agreements and official communications" related to breach claim); *In re Bayou Hedge Fund*

*Inv. Litig.*, 2006 WL 8439724, at *6 (S.D.N.Y. Oct. 18, 2006).

Second, Tuan is "peculiarly within the control" of Gilimex.  "In determining whether a

witness was available to be called by the party, the court considers 'all the facts and circumstances

bearing  upon  the  witness's  relation  to  the  parties,  rather  than  merely  on  physical  presence  or

accessibility.'"  *Martinelli*, 196 F.3d at 432 n.10 (quoting *Torres*, 845 F.2d at 1170).[5]  "[C]lose

relationships . . .  afford a basis for determining that a witness is peculiarly within one party's

power."  *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 700 n.161 (S.D.N.Y. 2014).  For

example, the relationship between the government and an informant, an employer and employee,

or a party and his family member often provide a basis for determining that a witness is within a

party's control.  *See id.* (citing, among other things, *Gaw v. Comm'r*, 1995 WL 664592, at *24

(T.C. 1995), *aff'd*, 111 F.3d 962 (D.C. Cir. 1997) (giving missing witness instruction for party's

failure to call his mother-in-law)).

The  facts  here  show  that  Tuan  was  particularly  within  Gilimex's  control.  Until  quite

recently—April 2023—Tuan was a high-level Gilimex employee.  Tuan played a critical role in

building the parties' relationship on behalf of Gilimex.  Le and Tuan worked closely with one

---

[5] Massachusetts law also considers the availability of the missing witness and the witness's
relationship to the parties when determining whether the instruction should apply.  *See Saletino*,
449 Mass. at 667-68; *see also Commonwealth v. Alves*, 50 Mass. App. Ct. 796, 802 (2001).

another for years, with Le relying on Tuan's fluency in English in his dealings with Amazon. Indeed, Le spoke to Tuan *about this case* on multiple occasions after it was filed, and Tuan asked Le how the case was proceeding.  30(b)(6) Tr. at 21:13-23:15.[6]  When Tuan left Gilimex, he was not terminated; he simply resigned of his own accord.  Le Tr. at 109:4-22; *see also* Khoa Tr. at 22:16-22.  In this case, then, the jury could very well "infer that the past employer-employee relationship ma[kes] [Tuan] still peculiarly available to [Gilimex]."  *Harry v. Safeway Stores, Inc.*, 215 F. Supp. 324, 326-27 (D.D.C. 1963).

Tuan also has a familial tie to Gilimex.  Le Hung's wife is Tuan's sister, meaning Tuan is Le's brother-in-law.  Le Tr. at 112:6-13.  That familial relationship supports giving a missing witness instruction.  *Deler v. Commodore Cruise Line*, 1995 WL 733655, at *5 (S.D.N.Y. Dec. 12, 1995).  In *Gaw*, the court emphasized that the defendant and his mother-in-law had a "close and amicable business and family relationship[]."  1995 WL 664592, at *24.  Gilimex has not presented any evidence to suggest Le and Tuan's relationship was anything but amicable.[7]

Finally, Tuan is not available to Amazon.  Tuan is a Vietnamese national who presumably resides outside the United States.  As a result, Tuan is outside this Court's subpoena power and cannot be required to appear at trial—which weighs in favor of a missing witness instruction.  *See Deler*, 1995 WL 733655, at *5 (uncalled witness resided in the Dominican Republic).  Still, Amazon made several attempts to locate Tuan, all to no avail.  When Amazon sought to depose Tuan, Gilimex offered next to no assistance, merely providing Amazon with Tuan's contact

---

[6] Le had earlier testified in his personal capacity that he had never discussed this lawsuit with Tuan. Le Tr. 110:9-11.  That discrepancy in testimony is all the more reason to doubt Gilimex's purported efforts to locate and produce Tuan.

[7] *See also Commonwealth v. Perryman*, 55 Mass. App. Ct. 187, 200 & n.7 (2002) (missing witness instruction proper where witness was a "former girlfriend and the mother of [defendant's] child").

information.  Dkt. 42 at 2; Dkt. 44 at 2.[8]  The phone number that Gilimex provided for Tuan went to an automated voicemail on each of the five occasions that Amazon attempted to contact Tuan. *See* Dkt. 44 at 2.  Though counsel for Amazon left a voicemail for Tuan providing information on the case and counsel's contact information, Tuan never responded.  *See id*.

Gilimex's only response on this score has been its witnesses' meager insistence that they do not know where Tuan lives and have had no contact with him.  Le testified that he last spoke with Tuan in March 2023.  *See* Le Tr. at 109:23-110:8; 30(b)(6) Tr. at 23:5-15; *see also* Khoa Tr. at 22:6-25.[9]  Although Tuan is his brother-in-law, Le claims that he does not know where Tuan lives and, remarkably, that he does not even know if his wife keeps in contact with Tuan.  Le Tr. at 113:5-114:8.  And Gilimex has offered no evidence that it tried and failed to contact Tuan.  Even if the contact information Gilimex had was outdated, Gilimex could have simply asked Le's wife to contact her brother.  That Gilimex has failed to do so—even after Amazon sought to depose Tuan because of his outsized knowledge of and role in the underlying chain of events—warrants the inference that Tuan's testimony would be unfavorable to Gilimex.

For its part, Gilimex not only objects to the missing witness instruction, but seeks to downplay the issue by proposing an unnecessary, boilerplate instruction that all available witnesses need not be produced.  This is a clear attempt to mislead the jury as to Tuan's conspicuous absence in this case.  It is obvious that not *every* possible witness must be called, so the jury need not be given this instruction.  In any event, as explained, Tuan is more than just your average witness.

---

[8] By contrast, Amazon actively sought to procure the availability of its former employees whom Gilimex sought to depose.  *See* Dkt. 42 at 2.

[9] Khoa Thi, who succeeded Tuan as Business Director of Gilimex, testified that he has not spoken to Tuan since Tuan left Gilimex, despite having been a guest at Tuan's wedding in March 2023. Khoa Tr. at 22:6-23:23.

The Court should therefore reject Gilimex's proposed available witness instruction.[10]

Because the jury may infer that Tuan's testimony would have favored Amazon, the Court should give the missing witness instruction.

## II.    The Court Should Adopt Amazon's Proposed Verdict Form

As with Gilimex's proposed jury instructions, Gilimex's proposed verdict form is another attempt to tilt the trial in its favor.  The Court should adopt Amazon's proposed verdict form.  Like the instructions, Amazon's verdict form encapsulates more clearly and more carefully the questions that the jury must answer to resolve this case.  Amazon's proposed form provides a question for the jury to answer for each disputed element of each claim, ensuring that the jury understands its task to address each element of Gilimex's claims.  *See Cann v. Ford Motor Co.*, 658 F.2d 54, 58 (2d Cir. 1981) (the verdict form should not "inaccurately frame the issues to be resolved by the jury").

Gilimex's proposal, by contrast, asks confusing compound questions that mash together the elements of the claims.  For example, Gilimex's first question asks:  "Do you find that Gilimex proved by a preponderance of the evidence that Amazon breached the fiduciary duty that it owed to Gilimex?"  The question thus *assumes* that Amazon owed a fiduciary duty to Amazon, a vigorously disputed elements in this case.  The second proposed question makes the same error.  It asks:  "Do you find that Gilimex proved by a preponderance of the evidence that Amazon harmed Gilimex by knowingly or recklessly making fraudulent misrepresentations to, or concealing or omitting material information from, Gilimex?"  Again, that question assumes that Amazon made false statements or omitted material information; the jury is asked to decide only whether that

---

[10] In an effort to reach consensus, Amazon proposed adding Gilimex's proposed available witness instruction to the beginning of Amazon's proposed missing witness instruction.  Gilimex would not agree.

harmed Gilimex, and it will presumptively adhere to the "literal, grammatical meaning of the written questions." *Cann*, 658 F.2d at 59. It is essential that the jury analyze each element of each claim. Gilimex's proposal attempts to skew the result in this case by asking the jury to gloss over hotly contested questions. *See id.* at 58 (vacating verdict where framing of question "created an unfair obstacle to the jury's returning an answer favorable to the plaintiffs").

Gilimex takes the same approach in the damages section of the proposed verdict form. The parties agree that a mitigation instruction should be given to the jury in this case. Amazon proposes a straightforward question on mitigation in the verdict form that tracks the jury instruction: "If you found that Gilimex proved any of the above claims against Amazon and that the proven claim(s) caused Gilimex's damages, state whether you find that Gilimex failed to mitigate its damages." Gilimex nonetheless objects to the question without explanation. To assist the jury in properly resolving this important issue, the Court should adopt Amazon's proposed verdict form.

**<u>CONCLUSION</u>**

For these reasons, the Court should adopt Amazon's proposed jury instructions and verdict form.

Dated: June 4, 2025
       New York, New York

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Jordan Estes*

    Barry H. Berke
    Jordan Estes
    Grace E. Hart
    Daniel M. Ketani
    GIBSON, DUNN & CRUTCHER LLP
    200 Park Avenue
    New York, NY 10166
    Tel.: (212) 351-4000
    bberke@gibsondunn.com
    jestes@gibsondunn.com
    ghart@gibsondunn.com
    dketani@gibsondunn.com

    Andrew LeGrand (application for *pro hac vice* admission pending)
    GIBSON, DUNN & CRUTCHER LLP
    2001 Ross Avenue
    Ste 2100
    Dallas, TX 75201
    Tel.: (214) 698-3100
    alegrand@gibsondunn.com

PERKINS COIE LLP

    Alan B. Howard
    Adam R. Mandelsberg
    Evelyn Y. Pang
    PERKINS COIE LLP
    1155 Avenue of Americas, 22nd Floor
    New York, NY 10036
    Tel.: (212) 262-6900
    AHoward@perkinscoie.com
    AMandelsberg@perkinscoie.com
    EPang@perkinscoie.com

    *Attorneys for Defendant Amazon.com Services LLC*

22

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Jordan Estes, certify that Defendant Amazon.com Services LLC's Pretrial Memorandum of Law complies with the requirements of Local Rule 7.1(c), as modified by § III(B)(1) of this Court's Individual Practices in Civil Cases.

I further certify that this memorandum of law was prepared with a computer.

I further certify that this memorandum of law contains 6,807 words and is 21 pages, including any footnotes or endnotes and excluding only those sections of the brief that are exempted under Local Rule 7.1(c).  In preparing this certificate of compliance, I have relied on the word count of the word-processing system used to prepare this memorandum of law.

Dated: June 4, 2025

*/s/ Jordan Estes*
Jordan Estes
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Tel.: (212) 351-4000
bberke@gibsondunn.com