**GIBSON DUNN**

Barry Berke
Partner
T: +1 212.351.3860
bberke@gibsondunn.com

June 9, 2025

<u>VIA ECF</u>

Hon. Lorna G. Schofield
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:   *Binh Thanh Import Export Prod. & Trade Joint Stock Co. v. Amazon.com Servs. LLC*,
      Case No. 1:23-cv-00292 (S.D.N.Y.)

Dear Judge Schofield:

Defendant Amazon.com Services LLC ("Amazon") recently learned Plaintiff Binh Thanh Import Export Production & Trade Joint Stock Co. ("Gilimex") has engaged in fraud in this case, including by producing fabricated documents whose inauthenticity has been confirmed by their purported authors. Consistent with N.Y. Rule of Professional Conduct 3.3(b), Amazon respectfully brings this matter to the Court's attention and requests a pre-motion conference regarding this misconduct and Amazon's anticipated motion for sanctions.

A central issue in this case is whether Gilimex sustained nearly $70 million in damages by procuring raw materials to produce pods for Amazon. During fact discovery, Gilimex produced purchase orders and demand letters purporting to show Gilimex's liability to sub-suppliers. Following fact discovery, Gilimex also produced an alleged November 2021 purchase order with Blazemax, a company connected to Gilimex Chairman Le Hung's family ("Blazemax PO"). Dkt. 140-2.

Three of Gilimex's sub-suppliers recently confirmed that demand letters and purchase orders produced by Gilimex and purportedly authored by the sub-suppliers are complete fabrications—the sub-suppliers neither wrote the letters nor issued the purchase orders. Further, a forensic accounting shows that the Blazemax PO—which accounts for the vast majority of Gilimex's damages claim—does not exist.

Gilimex's brazen fraud calls into question every aspect of the record in this case and undermines the integrity of the judicial process. Amazon respectfully submits that this misconduct warrants the most serious sanctions available, including dismissal of the case.

**GIBSON DUNN**

June 9, 2025
Page 2

I.  **Gilimex Produced Fake Sub-Supplier Documents and Falsely Attested to the Blazemax PO's Authenticity.**

Gilimex alleges it incurred nearly $70 million in damages by purchasing raw materials that could not be "returned" to sub-suppliers. FAC ¶ 129. Amazon sought discovery on these alleged damages, and Gilimex produced purchase orders and demand letters purporting to reflect materials purchased from various sub-suppliers. The Blazemax PO was not among these documents.

In expert discovery, Gilimex produced for the first time the Blazemax PO, along with purported warehousing invoices and spreadsheets allegedly documenting meetings between Gilimex and Blazemax in 2022 and 2023, *see* Dkts. 142-2 to -8 ("Meeting Minutes"). The Blazemax PO purports to reflect a $69 million purchase of 72 different materials—by far the largest single purchase order produced by Gilimex. Dkt. 140-2. Gilimex is now relying principally on the Blazemax PO to support its raw-material-damages claim.

During trial preparation, counsel for Amazon discovered metadata for the Meeting Minutes establishing they were generated *after* this litigation began. Amazon therefore moved to exclude this evidence. Dkt. 138. On May 21, 2025, Gilimex responded by submitting a sworn declaration from Chairman Le, producing new PDF versions of the Meeting Minutes. Dkt. 155. He acknowledged that the previously-produced Meeting Minutes were not "contemporaneous electronic versions." *Id.* ¶ 5. Nonetheless, Chairman Le attested to the authenticity of newly produced PDFs—apparently, signed printouts of the inauthentic Meeting Minutes—as well as the previously-produced Blazemax PO. *Id.* ¶¶ 4, 5.

Amazon promptly renewed concerns about the Blazemax PO's authenticity with Gilimex's counsel. Ex.1. But Gilimex's counsel did not provide any evidence of the Blazemax PO's authenticity; instead, they claimed Amazon was raising the issue too late, as if Amazon had a duty to catch fraud sooner. Ex.2; *cf. Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944) (fraud on the court cannot be "condoned" because it was not discovered sooner). On June 3, Gilimex included the Blazemax PO and even the Meeting Minutes on its proposed exhibit list.

II. **Amazon's Investigation Confirms the Blazemax PO and Other Gilimex-Produced Documents Are Fabricated.**

Following Le's declaration, Amazon engaged forensic accountants to analyze Gilimex's raw-material inventories and contacted third-party sub-suppliers. The evidence uncovered during Amazon's investigation confirms Gilimex produced numerous fabricated documents in this litigation—including the Blazemax PO underlying its nearly $70 million damages demand.

**A.** *Fabricated Purchase Orders and Demand Letters.* During fact discovery, Gilimex produced purchase orders and demand letters from sub-suppliers of raw materials to support its damages demand. Amazon has contacted some of these sub-suppliers. Two of the suppliers, Avery Dennison and Graphic Information Systems, have submitted sworn declarations confirming they did not create the purchase orders and demand letters Gilimex produced. Ex.3 ("Nguyen Decl."); Ex.4 ("Kennel Decl."). In other words, these Gilimex-produced documents were fabricated.

**GIBSON DUNN**

June 9, 2025
Page 3

Amazon recently confirmed with a third supplier that documents purportedly signed by it are fraudulent and intends to submit a declaration.

These documents may be the tip of the iceberg: Amazon is continuing to investigate dozens of suspicious demand letters and purchase orders produced by Gilimex. Gilimex and its counsel have represented that these documents are copies of physical documents with wet ink signatures and seals. Ex.2; Dkt. 155 ¶ 5. But Amazon's forensic accountant has already determined the signatures and seals for certain of these documents are identical—which would be impossible if they were all authentic wet-ink signatures. Ex.5 ("Chow-Callam Decl.") ¶¶ 7, 10-19.

**B.** *Fabricated Blazemax PO.* Amazon has also uncovered evidence establishing that the $69 million Blazemax PO—the centerpiece of Gilimex's raw-materials-damages claim—is fabricated. Like the fake sub-supplier documents discussed above, there is no electronic version of the Blazemax PO. But unlike those suppliers, Amazon cannot confirm the inauthenticity of the Blazemax PO with the supplier because Blazemax is affiliated with Gilimex: It is controlled by one of Gilimex's largest shareholders and appears to be owned by Chairman Le's family. *Id.* ¶ 5.

A forensic accounting of Gilimex's own records shows the Blazemax PO is inauthentic. Gilimex produced weekly inventory reports in 2021 and 2022 identifying its open raw-material purchase orders, reflecting 1,329 purchase orders for 1,503 products from 163 suppliers. Ex.6 ("Orozco Decl.") ¶¶ 4, 7. Amazon's forensic accountant analyzed these spreadsheets and confirmed that the Blazemax PO does not appear in *any* of these reports—even though different, much smaller orders from Blazemax (*e.g.*, for a single yarn product) do appear. *Id.* ¶¶ 6, 8-10.

Gilimex's contemporaneous emails likewise show Gilimex did not owe $69 million to Blazemax. In April 2022, Amazon asked Gilimex to send a list of raw materials previously purchased. Ex.7 at 2-3. Gilimex's responses included a list of its raw-material suppliers, Dkt. 165-1; Blazemax was not listed, and for almost all products, the quantities purchased were significantly lower than the quantities on the Blazemax PO. Ex.7 at 6-7. Similarly, in July 2022, Gilimex sent Amazon a list of approximately 20 sub-suppliers supposedly "holding excess inventory for raw materials." Dkt. 165-2. Blazemax was not on this list, either. *Id.* And Gilimex's own securities filings reflect a liability to Blazemax of only about $3 million—a fraction of the $69 million Gilimex claims. Dkt. 140-4 at 3.

In short, there is *no* contemporaneous evidence corroborating the Blazemax PO.

**III.   Severe Sanctions Are Warranted.**

Gilimex's fabrication of evidence is a blatant fraud that warrants severe sanctions, including dismissal of the case. Courts have "inherent power" to impose sanctions—including terminating sanctions—for fabricating documents. *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 135, 141-42 (2d Cir. 2023); *see Network Data Rooms v. Saulrealism*, 2022 WL 17404501, at *1, *3 (S.D.N.Y. Dec. 2, 2022) (granting terminating sanctions where plaintiff submitted to this Court a backdated and substantively altered email). Amazon respectfully requests that the Court schedule a pre-motion conference to address these issues.

**GIBSON DUNN**

June 9, 2025
Page 4

Respectfully submitted,

*/s/ Barry H. Berke*
Barry H. Berke
Jordan Estes
Andrew LeGrand
Grace E. Hart
Daniel M. Ketani

cc: All counsel of record (by ECF)