UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BINH THANH IMPORT EXPORT PRODUCTION & TRADE JOINT STOCK CO., d/b/a GILIMEX, INC., <br><br> Plaintiff, <br><br> -against- <br><br> AMAZON.COM SERVICES, LLC, d/b/a AMAZON ROBOTICS, <br><br> Defendant. | Case No.:  1:23-cv-00292-LGS |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S POST-HEARING BRIEF
IN SUPPORT OF ITS MOTION FOR SANCTIONS**

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND ............................................................................................... 2

   A.   Gilimex Places November PO to Ensure Sufficient Raw Materials Supplies .................. 2

   B.   Gilimex Informs Amazon of Its Raw Materials Exposure ................................. 4

   C.   Gilimex's 2023 Document Productions....................................................... 4

   D.   Amazon Alleges Fraud on the Court .......................................................... 5

   E.   Gilimex Uncovers Luong's Scheme ........................................................... 6

   F.   Gilimex Produces Further Evidence Corroborating November PO's Authenticity........... 7

   G.   Gilimex Demonstrates November PO's Authenticity at Hearing....................... 8

LEGAL STANDARD........................................................................................ 9

ARGUMENT ................................................................................................. 10

I.       EVIDENCE ESTABLISHES NOVEMBER PO'S AUTHENTICITY........................... 10

II.     AMAZON CANNOT DEMONSTRATE NOVEMBER PO IS FRAUDULENT........... 11

   A.   Amazon Claims Gilimex "Cannot Produce the Original" November PO. .......... 11

   B.   Amazon's Metadata-Related Claims. ........................................................ 14

   C.   Amazon Claims Gilimex Never Informed It of November PO. ......................... 15

   D.   Amazon Claims November PO Is Absent from Gilimex's Records.................... 16

   E.   Amazon Claims Gilimex "Originally Produced $69 Million of Admittedly Fraudulent Documents." .................................................................... 18

   F.   Amazon Claims Gilimex Has Untoward Financial Incentives. ........................ 18

   G.   Amazon's Remaining Contentions. .......................................................... 19

III.    NO SANCTION ON GILIMEX IS WARRANTED BECAUSE GILIMEX DID NOT COMMIT MISCONDUCT. .................................................... 23

IV.   AMAZON SHOULD BE SANCTIONED, NOT GILIMEX ........................... 27

CONCLUSION............................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amerisource Corp. v. Rx USA Int'l Inc.*,
  2010 WL 2730748 (E.D.N.Y. July 6, 2010) .......................................................26

*Book v. Moulton*,
  2006 WL 8453019 (N.D.N.Y. June 6, 2006) ......................................................28

*Bravia Cap. Partners Inc. v. Fike*,
  2015 WL 1332334 (S.D.N.Y. Mar. 25, 2015) ..................................................9, 23

*Century Pac., Inc. v. Hilton Hotels Corp.*,
  528 F. Supp. 2d 206 (S.D.N.Y. 2007).................................................................24

*CITGO Petro. Corp. v. Starstone Insur. SE*,
  2023 WL 2525651 (S.D.N.Y. Mar. 15, 2023) .....................................................17

*Colella v. Republic of Argentina*,
  2020 WL 4700930 (S.D.N.Y. Aug. 13, 2020).....................................................24

*In re Corning Inc. Sec. Litig.*,
  2005 WL 714352 (2d Cir. Mar. 30, 2005).............................................................11

*DAG Jewish Directories, Inc. v. Y & R Media, LLC*,
  2010 WL 3219292 (S.D.N.Y. Aug. 12, 2010).....................................................25

*Duka v. Alliance Tri-State Construction, Inc.*,
  2021 WL 4461019 (S.D.N.Y. Sept. 29, 2021).....................................................24

*Hargrove v. Riley*,
  2007 WL 389003 (E.D.N.Y. Jan. 31, 2007) ........................................................25

*Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.*,
  327 F. Supp. 3d 673 (S.D.N.Y. 2018)..................................................................24

*Lawrence v. City of New York*,
  2018 WL 3611963 (S.D.N.Y. July 27, 2018) .................................................25, 26

*Lopez v. Miller*,
  915 F. Supp. 2d 373 (E.D.N.Y. 2013) .................................................................19

*Mazzei v. The Money Store*,
  62 F.4th 88 (2d Cir. 2023) ...................................................................................26

*McClean v. Cnty. of Westchester*,
  2018 WL 6329420 (S.D.N.Y. Dec. 3, 2018) ........................................................23

*McMunn v. Memorial Sloan-Kettering Cancer Center*,
  191 F. Supp. 2d 440 (S.D.N.Y. 2002)........................................................................25

*Miller v. Time-Warner Commc'ns*,
  1999 WL 739528 (S.D.N.Y. Sept. 22, 2019)...........................................................25

*Neroni v. Becker*,
  609 F. App'x 690 (2d Cir. 2015)...............................................................................28

*Network Data Rooms, LLC v. Saulrealism LLC*,
  2022 WL 17404501 (S.D.N.Y. Dec. 2, 2022).........................................................25

*Olsen v. City of New York*,
  1984 WL 20 (S.D.N.Y. Aug. 21, 1984)....................................................................28

*Passlogix, Inc. v. 2FA Tech., LLC*,
  708 F. Supp. 2d 378 (S.D.N.Y. 2010).........................................................9, 23, 24

*Rossbach v. Montefiore Medical Center*,
  81 F.4th 124 (2d Cir. 2023)......................................................................................25

*United States v. Williams*,
  787 F. App'x 8 (2d Cir. 2019)..................................................................................23

*Waran v. Christie's Inc.*,
  315 F. Supp. 3d 713 (S.D.N.Y. 2018)........................................................................9

*Yukos Cap. S.A.R.L. v. Feldman*,
  977 F.3d 216 (2d Cir. 2020).....................................................................................11

*Zubulake v. UBS Warburg LLC*,
  220 F.R.D. 212 (S.D.N.Y. 2003)..............................................................................15

Plaintiff Gilimex respectfully submits this response to Defendant Amazon's brief in support of its motion for sanctions (Dkt. 253, the "Brief" or "Br.").[1]

## PRELIMINARY STATEMENT

After years of unsuccessful Rule 12 and Rule 56 motions to defeat this case before trial, as well as voluminous discovery showing that Amazon defrauded its strategic partner, Gilimex, into continuing manufacturing for it while secretly plotting to wrongfully terminate Gilimex without warning, Amazon now seizes on the admitted fraud of Gilimex's own lower level employee— whose testimony to this Court that he acted alone and for his own benefit is credible and uncontradicted—to try to have this entire case dismissed on the eve of trial.  Amazon has not— because it cannot—come close to meeting its burden either with respect to Luong's fraud, or with respect to showing that any other documents are fabricated, including the $69 million purchase order with Blazemax (the "November PO"), the Gilimex logbooks, or any of the elements of the fanciful fraud it alleges Gilimex and its counsel engaged in to bolster its raw materials damages claim.

Indeed, Amazon's entire argument on the purchase order devolves into a desperate accusation that because it was first produced for Gilimex's expert's report *immediately* after fact discovery ended, it must have been fabricated.  This is as fantastical, contrived, and desperate as Amazon's argument that, at the Hearing, Gilimex had Luong take the fall for falsifying documents that Gilimex supposedly fabricated in mid-2023 in support of its damages claim—documents that were never actually used for Gilimex's damages or put on Gilimex's exhibit list for trial.

Amazon has not met, and cannot meet, its burden and its motion should be denied, and fees and costs awarded to Gilimex, and this case put back on the Court's trial-ready calendar.

---

[1]     Unless otherwise defined, capitalized terms have the meaning ascribed in Amazon's Brief.

## BACKGROUND

### A. Gilimex Issues November PO to Ensure Sufficient Raw Materials

Between 2014 and 2022, Gilimex was one of Amazon's primary suppliers of fabric pod arrays ("FPAs"). Dkt. 98 at 7–13. In early 2021, Amazon complained that Gilimex supposedly failed to timely deliver its FPAs, PX-249, chastising Gilimex for not "utilizing production capacity during the low demand periods to build and warehouse inventory required to ship the full volumes during the high volume periods." PX-11. Amazon then punished Gilimex by substantially reducing its FPA allotment for the following season and informing Gilimex that it would "take some time to earn back the trust in capacity and supply planning." PX-214.

In September 2021, however, Amazon increased Gilimex's FPA allotment because its other suppliers were unable to fulfill orders. Dkt. 98 (citing AMAZ00032822 ("[W]e needed to shift allocations back . . . to Gilimex because of Pou Chen's COVID-19 interruptions.")). To induce Gilimex, Amazon confirmed that FPA orders would continue going forward. *Id.* (citing AMAZ00085601 (Amazon was "looking forward to a successful 2022")); PX-213 ("we lean into the upside/carrot if they perform over the following months"). Gilimex, eager to provide its "best cooperation to fulfill [Amazon's] demand," committed to meeting Amazon's needs. PX-213 at -00465–00466.

Gilimex took affirmative steps to satisfy its largest customer and strategic partner by securing materials needed to produce FPAs. Initially, Gilimex had difficulty sourcing materials directly from suppliers. PX-30-T; PX-9. Gilimex's chairman, Le, instructed Gilimex's procurement team in October 2021 to "research, evaluate, and finalize a solution for purchasing [raw materials] through a third party with the supplier, in order to minimize the recurring issues that have caused internal difficulties and impacted production in recent times." PX-30-T.

Gilimex turned to Blazemax, a company it worked with for approximately ten years. PX-245-T at 8; PX-182 ¶ 4. Blazemax does not produce raw materials and instead serves as an intermediary providing logistics and support. *See, e.g.*, DX-202-A; DX-203-A. With its suppliers struggling, in July 2021, Gilimex began using Blazemax to source materials. *See, e.g.*, DX-115; DX-116. On November 18, 2021, Gilimex placed the November PO with Blazemax for approximately $69.4 million, for quantities Gilimex anticipated would cover Amazon's 2023 season demand. PX-40; PX-245-T at 8; PX-182 ¶ 6; Tr.140:20–141:12.

Gilimex and Blazemax typically conduct business through hard-copy documents, which is common in Vietnam. Tr.124:6–125:4, 141:13–142:11.[2] The November PO, like other Blazemax orders,[3] was executed in hardcopy. Tr.140:20–141:17. Gilimex created two originals of the November PO with Le's signature and Gilimex's "chop," and delivered them to Blazemax. Tr.144:3–15. Blazemax returned the executed documents: one original (the "Color November PO," PX-40), and a black-and-white copy of the other original, which Blazemax retained (the "B&W November PO," PX-223). Tr.144:3–15. Gilimex recorded transmission and receipt of these documents in logbooks.[4] *See* Tr.142:12–145:20; PX-32 at -21409; PX-26 at -22036. Gilimex also noted the dates the November PO was transmitted—respectively, November 19 and 22, 2021—on the Color November PO. PX-40 at -21614.

---

[2]    Amazon misleadingly asserts that Gilimex requires all communications, "including with Blazemax or its suppliers, be documented by email." Br. 12. At deposition, Le explained that Gilimex employees must communicate via email, as opposed to WhatsApp, DX-1002 at 42:17–46:10, and at the Hearing, Le confirmed that Gilimex "dealt with Blazemax [using] hard copy," and "sometimes" by email. Tr.159:12–160:11.

[3]    *See, e.g.*, DX-113–23.

[4]    Gilimex's logbooks also recorded the transmissions of its other Blazemax orders. *See, e.g.*, PX-04 at -21754 (sending September 27, 2021 Gilimex/Blazemax order (DX-116)); PX-37 at -21969 (receiving DX-116)).

Gilimex has not taken possession of, nor paid for, the November PO materials, PX-54; PX-182 ¶¶ 8, 11; PX-245-T at 9, nor would Blazemax allow partial delivery, PX-245-T at 8, forcing Gilimex to order additional materials, *see, e.g.*, DX-113, DX-120. Between January 2022 and March 2023, Gilimex and Blazemax met seven times regarding the order where Blazemax repeatedly demanded that Gilimex accept all materials and pay warehousing fees. *See, e.g.*, PX-54 at 1; PX-182 ¶ 7. These meetings were memorialized in minutes signed and stamped by Gilimex and Blazemax (the "Minutes"). PX-54; PX-182 ¶ 7; DX-818 ¶ 5; DX-822 ¶ 3.

### B. Gilimex Informs Amazon of Its Raw Materials Exposure

In June 2022, pursuant to its plan to "remove Gilimex as a supplier," Amazon informed Gilimex that it would stop purchasing FPAs from Gilimex. Dkt. 98 at 42, 55–56. Gilimex tried to salvage the relationship through meetings and emails with Amazon in the summer of 2022, during which, as Amazon admitted, *see* Tr.43:17–45:20 (Gilimex "kept saying the same thing over and over and over again for months"), Gilimex informed Amazon of its raw materials exposure multiple times. On July 5, Gilimex sent Amazon a PowerPoint indicating that Gilimex's suppliers had "stock[ed] up raw materials which valued in the millions USD." DX-609; DX-609-A at 7. On July 21, Gilimex explained that it faced "**over 68 million USD**" in raw materials exposure. *See* PX-138 at -95272. And on August 3, Gilimex informed Amazon that it "order[ed] over 69.04 million USD in raw materials that our supplier is holding in their inventory." PX-137 (the "August 2022 PowerPoint") at 15; PX-138 at 2–3 (sharing link to same). Amazon refused to change its position, leaving Gilimex with tens of millions of dollars in unsold FPAs, raw materials, and supplier obligations in violation of its duties and obligations. PX-40; PX-54; PX-210.

### C. Gilimex's 2023 Document Productions

During fact discovery, Gilimex produced tens of thousands of documents. This included an August 2, 2023 production of numerous purchase orders and demand letters from its 2022 hard-

copy files that Gilimex believed were responsive to Amazon's request relating to raw materials damages. DX-815; Ex. 1 at RFP 35.[5] Gilimex later learned that ninety-eight of these documents— as well as nineteen additional documents produced during pre-Hearing discovery—were fabricated in 2022 by a low-level Gilimex employee, Tien Luong, in an ultimately abandoned effort to defraud Gilimex. *See* PX-246 (collectively, the "Luong Documents"); Dkt. 206.

Fact discovery ended on October 27, 2023. Approximately three weeks later, on November 20, Gilimex produced its damages expert report and documents relied upon, including documents inadvertently not previously produced. Tr.157:9–13, 165:17–166:13; Dkt. 152 ¶ 2; App. 1.[6] This included a copy of the B&W November PO and native Excel versions of the Minutes. *Id.* Because Gilimex does not have a high-quality scanner, it had trouble creating legible scans of the Minutes. *See* Tr.160:24–161:13. As Gilimex did not retain electronic versions of the Minutes, a Gilimex employee re-typed them verbatim into an Excel template. *See* Tr.160:18– 161:16. Amazon never raised any concerns with Gilimex's production at that time.

### D. Amazon Alleges Fraud on the Court

On May 2, 2025, more than a year-and-a-half after Gilimex produced the November PO, Amazon for the first time questioned the "authenticity" of evidence relating to Gilimex's raw materials damages. DX-835 at 4–5. In response, Gilimex submitted a declaration by Le attesting that Gilimex had produced an "authentic scanned hard copy of the physical [November PO] kept in the normal course of business," which included "physical signatures and physical stamps." Dkt. 152 ¶¶ 2–6. Gilimex also produced a scanned, PDF version of the Minutes containing the

---

[5]    Citations to "Ex. __" herein are to exhibits attached to the accompanying declaration of Edward E. Filusch.

[6]    "App." refers to the chronology attached as Appendix A, requested by the Court. Tr.168:23–169:7.

stamps and signatures of Le and Blazemax's principal, Le Thi Kim Oanh ("Kim").  PX-51.

On June 10, 2025, Amazon filed a letter, claiming that Gilimex committed a "brazen fraud" designed to "undermine[] the integrity of the judicial process."  Dkt. 176 at 1.  Amazon relied primarily on declarations from its label suppliers to claim that certain of the Luong Documents (the "Label-Maker Documents") were forgeries.  Dkt. 176 at 2–3; Dkt. 185 at 2–6.  Amazon also claimed the November PO and Minutes were fabricated, even though it could not "confirm" those documents' "inauthenticity."  Dkt. 176 at 3.  Gilimex denied Amazon's accusations, submitting declarations from Le (DX-822) and Kim (PX-182) confirming the authenticity of the November PO and Minutes.  Gilimex's CEO, Nguyet Pham, also submitted a declaration stating her belief that certain of the Label-Maker Documents were authentic.  *See* PX-183 ¶¶ 7, 16.  As Gilimex learned shortly thereafter, it and Pham had been deceived.

### E.  Gilimex Uncovers Luong's Scheme

Gilimex undertook an investigation concerning its production of allegedly inauthentic documents during which Luong admitted to engaging in a scheme to defraud Gilimex for personal gain.  Dkts. 206 at 1–2, 245 at 1; *see also* PX-186.  In 2022, Luong implemented a plan to trick Gilimex into paying fabricated orders to himself instead of the "issuing" suppliers.  Dkt. 206 at 2.  As part of his scheme, Luong surreptitiously placed fabricated documents into Gilimex's files to make it appear that Gilimex had outstanding liabilities to certain suppliers.  *Id.*; Tr.12:2–4.  Luong then planned to send Gilimex follow-up emails, under the guise of the suppliers, containing "new" wire information that would be tied to his own financial accounts.  Dkt. 206 at 2.  Ultimately, Luong abandoned the scheme before creating these accounts or sending demand emails.  *Id.*; Tr.25:21–26:1.  Luong admitted to fabricating over 100 demand letters and purchase orders.  Dkt. 206 at 2; PX-246.  Unknowingly, Gilimex produced some of Luong's fabrications during discovery, including the Label-Maker Documents.  Dkt. 206 at 2.

On July 10, 2025, in exchange for Gilimex's agreement "not to pursue liability or take disciplinary action against [him]," Luong voluntarily agreed to "cooperate[] fully and truthfully" with Gilimex "in clarifying the details of unauthorized inclusion of falsified documents" in Gilimex's productions, and to "make a sworn statement" concerning his actions.  PX-186 at 5; Tr.12:15–25.

After learning of Luong's scheme, Gilimex promptly took corrective action, informing Amazon of its findings on July 16 and the Court on July 18.  *See* Dkt. 206.

### F. Gilimex Produces Further Evidence Corroborating November PO's Authenticity

During pre-Hearing discovery, Amazon requested, for the first time, all documents relating to the November PO and some of Gilimex's other Blazemax purchase orders.  App. 3.  Gilimex previously produced responsive documents supporting its raw materials damages, including the November PO, but did not produce *every* version, or *all* documents relating thereto, nor had Amazon requested them.  *Id.* at 1–2.  It was not until the Court granted pre-Hearing discovery that Amazon requested, and Gilimex produced, such materials, including: (a) color versions of the November PO and Minutes; (b) the logbooks; and (c) the August 2022 PowerPoint.  *Id.* at 3.

Gilimex and its counsel also repeatedly contacted Kim to ask her to testify at the Hearing and obtain Blazemax's consent so that a third party could inspect Blazemax's warehouses storing the relevant materials.  *See, e.g.*, PX-245-T.  On August 7, Blazemax's lawyer responded, confirming the November PO's authenticity, Blazemax's warehousing of the materials, Gilimex's continuing obligation to pay for those goods and their storage costs, and several of Gilimex's other orders with Blazemax in 2022.  *Id.*  Blazemax also asserted it would "soon file a lawsuit against Gilimex" for Gilimex's "violat[ion of] the commitment in the contract by failure to perform according to the order [and] failure to make payment on time."  *Id.* at 9–10.  Kim declined to testify and Blazemax refused an inspection.  *Id.* at 8.

### G.  Gilimex Demonstrates November PO's Authenticity at Hearing

At the Hearing, Gilimex presented two witnesses: Luong and Le.  Luong admitted to fabricating 117 documents pertaining to dozens of Gilimex sub-suppliers.  *See* Tr.7:24–8:1, 13:2–14:1; PX-186.  Luong explained that he attempted to defraud Gilimex because he "needed the money" since his "father was sick and [his] wife was expecting."  Tr.14:10–15:1.  Luong confirmed that he did not fabricate the November PO, *id.* 17:24–18:10, and testified that, while he knew of Blazemax, he did not fabricate Blazemax documents because he did "not have any dealings with [Blazemax]."  *See id.* 8:4–12, 17:13–23.

Le testified that the November PO—which he personally signed—is authentic, and that Gilimex's logbooks contain a contemporary record of the November PO's transmission to and from Blazemax.  *See id.* 141:10–145:20.  Le denied any accusation that Gilimex, or Gilimex's counsel, fabricated any documents submitted to the Court.  *See id.* 147:11–148:10.

Amazon called four witnesses: one fact, Kelly Jackson, and three purported experts, Alberto Orozco, Jean Chow-Callam, and Andrew Tappeto.  Jackson, Amazon's supply chain manager, confirmed that in 2022 Gilimex repeatedly warned Amazon of its nearly $70 million in supplier exposure "over and over and over again for months."  Tr.43:11–46:3.  Orozco, Amazon's purported accounting expert, admitted he is not an expert in Vietnamese accounting, he is not familiar with Gilimex's business, and his opinion relies on translations and his personal "business experience," not an expertise in Vietnamese manufacturing practices.  *Id.* 74:19–75:8, 79:19–80:20, 83:7–85:2, 86:19–24.  Chow-Callam, Amazon's forensic accountant, opined that different stamps were used on the black-and-white and color versions of the November PO, but conceded that several variables might alter the same stamp's appearance from one stamping to the next.  *Id.* 128:9–15.  Finally, Tappeto, Amazon's digital forensics consultant, conceded that physical records can serve as hard-copy "metadata," *id.* 99:21–100:7, and that electronic metadata shows only when

a file was scanned or converted, not when the underlying paper document was created. *Id.* 96:20–98:21. Tappeto also could not explain whether photographing documents, converting those images to Excel files, and then printing to PDF would result in the presence of an Excel file extension in the PDF's electronic name, and further acknowledged that metadata could not disprove that the November PO existed in 2021. *Id.* 98:6–101:1.

## **LEGAL STANDARD**

"The essence of fraud on the court is when a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process." *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 393–94 (S.D.N.Y. 2010) (citation modified). Such fraud "occurs where a party has acted knowingly in an attempt to hinder the fact finder's fair adjudication of the case and his adversary's defense." *Id.* (citations omitted). Amazon must therefore prove, by clear and convincing evidence, that Gilimex "sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter" by "unfairly hampering" Amazon's defense, and has lied "to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process." *Id.*; *see also Bravia Cap. Partners Inc. v. Fike*, 2015 WL 1332334, at * 3 (S.D.N.Y. Mar. 25, 2015). "Fraud on the court . . . embraces only that species of fraud which does or attempts to, defile the court itself." *Passlogix*, 708 F. Supp. 2d at 393 (citation modified). The proof must be "highly probable and leave[ ] no substantial doubt." *Waran v. Christie's Inc.*, 315 F. Supp. 3d 713, 718 (S.D.N.Y. 2018) (citation modified).

Because Gilimex has not falsified any documents, Amazon cannot meet its heavy burden of proving that the November PO was fraudulent by clear and convincing evidence.

## ARGUMENT

### I. EVIDENCE ESTABLISHES NOVEMBER PO'S AUTHENTICITY.

Although Amazon bears the burden, Gilimex has taken up the Court's invitation to "clear its name," proffering substantial evidence demonstrating the November PO's legitimacy:

***Gilimex's Testimony***: The principals of the November PO's parties—Gilimex's Le and Blazemax's Kim, both of whom have firsthand knowledge—have sworn to its legitimacy.  *See* Tr.140:20–22, 141:6–12; PX-182.  Luong also testified that, despite forging multiple purchase orders, he did not fabricate any Blazemax documents, including the November PO.  Tr.17:13–18:10.

***Logbooks***: Gilimex introduced contemporaneous logbooks reflecting the November PO's transmission to and from Blazemax on November 19 and 22, 2021, respectively.  *See* PX-32 at -21409; PX-26 at -22036; Tr.142:12–25.  These entries were amongst thousands of others reflecting the dates documents were sent to and from Gilimex over a multi-year period.  *See generally* PX-4-O; PX-26-O; PX-32-O; PX-37-O; PX-72-O; PX-123-O.  The logbook dates were consistent with dates written on the back of the Color November PO.  *See* PX-40 at -21614.

***Gilimex Told Amazon About Raw Materials Exposure***: The evidence shows that Gilimex told Amazon multiple times about its raw materials exposure in the summer of 2022, including through its July 5 PowerPoint informing Amazon of its raw materials exposure in the "millions of USD," DX-609-A at 7; its July 21 email noting "**over 68 million USD**" of raw materials in its suppliers' inventory and its attached summary of the same, PX-138 at -95272; and its August 2022 PowerPoint stating that Gilimex had purchased "over $69.04 million USD in raw materials that our supplier is holding in their inventory."  PX-137 at -21629.[7]  Jackson admitted that Gilimex

---

[7]    Gilimex's original complaint, filed on December 13, 2022, likewise alleged "over $68 million in expenses for raw materials."  Dkt. 1-1 ¶ 68.

informed Amazon of its raw materials exposure "over and over and over again." Tr.43:17–25, 45:17–20.

***Other Contemporaneous Evidence***: Gilimex proffered additional evidence corroborating the November PO, including the Minutes and debit notes for sums owed by Gilimex in connection with Blazemax's warehousing of the November PO's materials. *See* PX-54; DX-109–10.

***Evidence Corroborating Why Gilimex Issued the November PO***: As described, *supra* at 2, numerous documents reflect Amazon's desire for Gilimex to increase its FPA production in 2021 after Amazon punished Gilimex for its supposed failure to fulfill orders; Gilimex's supply chain issues beginning in late 2021; and Le's directing the Gilimex supply-chain team to address these issues approximately a month before Gilimex issued the November PO.[8]

## II.  AMAZON CANNOT DEMONSTRATE NOVEMBER PO IS FRAUDULENT.

Amazon does not (because it cannot) proffer any direct proof contravening this voluminous evidence demonstrating the November PO's authenticity. Instead, Amazon relies upon evidence that, at best, questions the sufficiency of Gilimex's evidence of its raw materials damages, an issue for the jury. None of this meets Amazon's heavy burden of showing that Gilimex committed a fraud on the Court. And Amazon's arguments rest on demonstrably false assumptions and interpretations of the evidence.

### A.    Amazon Claims Gilimex "Cannot Produce the Original" November PO.

Amazon claims that Gilimex's inability to produce the original version of the B&W November PO evidences fraud. Br. 10. Amazon further claims that Gilimex fabricated the Color

---

[8]     Whether the November PO "ma[de] business sense," Br. 12–13, is a question for the jury—not evidence that the order isn't real. *See Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 236 (2d Cir. 2020) ("The district court made the acceptable choice to leave 'questions of fact' and 'credibility determinations' to the jury at trial."); *In re Corning Inc. Sec. Litig.*, 2005 WL 714352, at *2 (2d Cir. Mar. 30, 2005) ("[P]laintiffs' allegation [of accounting violations] can be reduced to a claim of poor business judgment, which is not actionable [as fraud].").

November PO to "cover up" Le's representation that the originally produced version has "physical signatures and physical stamps," purportedly shown by two different stamps on the order's two different versions. *Id.* at 11, 17–18, 25–26.

Amazon repeatedly claims Gilimex falsely represented that the B&W November PO has "wet signatures and physical stamps," *see, e.g.*, *id.* at 17–18, arguing Gilimex "shifted its story" when Amazon demanded to inspect the document. Not so—both the black-and-white and color versions of the November PO *do* have wet signatures and physical stamps. Amazon even concedes that both versions have physical stamps (though it claims without evidence that the stamps are different). *Id.* at 11, 18. Gilimex did not produce the version of the order that was photocopied to create the B&W November PO because, as explained, *supra* at 3, it never had that version's original—Blazemax retained the original and sent Gilimex a copy.[9]

Amazon's contention, based on Chow-Callam's testimony, that "two different [Blazemax] stamps were used on the documents," "suggesting that [they] were executed on different dates," *see* Br. 11, 18, is contradicted by direct evidence and a review of the stamps. The only witness with personal knowledge of Blazemax's business practices, Kim, swore in her declaration that the B&W November PO is real and "bears Blaze Max's corporate stamp and is signed and authorized by [her]." PX-182 ¶¶ 5–6; *see* Tr.130:10–19 (Chow-Callam admitting she "d[oes]n't have any personal knowledge" regarding how "signatures or the stamps were applied to these documents").[10] Simply comparing the stamps also severely undermines Chow-Callam's

---

[9]    Gilimex also has never "refused to explain why it produced only one version of the Blazemax PO in 2023." Br. 18. As explained (*supra* at 7; Tr.162:11–16), Gilimex only produced one copy of the November PO in 2023 because that was all Amazon requested during discovery. There was no reason in 2023 to produce two substantively identical copies of the same document.

[10]    Contrary to Amazon's assertion, Br. 7, Gilimex never refused to let Amazon "inspect" the Color November PO—Gilimex only refused Amazon's request to permanently alter the document. App. 6.

conclusion: they share the same text, font, shapes, thickness, and size. The only distinctions are some fading in the black-and-white version of the stamp, which is rotated slightly to the right. This is consistent with Chow-Callam's admission during cross-examination—and common sense—that the *same* stamp can look different based upon, for example, how the stamp was applied (*e.g.*, how much pressure or how the stamp was held) and scanned. *See* Tr.128:9–15; 135:10–135:21. The chart below—which compares the stamps on the originally produced November PO, the re-scanned version Gilimex produced at Amazon's request (which shows how scanning quality can affect the stamp's appearance and that Amazon conveniently omits from its demonstratives, Br. 18–19), and the color version—demonstrates the stamps appear identical and that Chow-Callam's conclusion is wrong:



All these stamps contain the same text, size, and other markings. The inconsistent fading—for example, the bottom left of the outer circles is only faded on page 3—suggests that any

inconsistency between the versions is not from use of a different stamp but instead stems from the fact that they are copies of copies.

### B.    Amazon's Metadata-Related Claims.

Amazon claims the Minutes were fabricated because metadata associated with the originally produced Excel versions shows they were created "no earlier than March 19, 2023." Br. 14.  But, as explained, *supra* at 5, because Gilimex had difficulty scanning the hardcopy Minutes, it retyped them into Excel spreadsheets for production.  Contrary to Amazon's assertions, this creation date metadata is not indicative of fraud—and such a fraud would make no sense. Under Amazon's theory, Gilimex implausibly would have created the Minutes as part of a fraudulent scheme in March 2023 to support the November PO's legitimacy.  But under Amazon's theory, Gilimex did not perpetrate that supposed fraud until *November 2023*, with Gilimex's supposed Luong Documents fraud being perpetrated in the middle, in August 2023.

Amazon also argues that metadata associated with the Luong Documents discredits Luong because the "'[t]itle' metadata field for the documents contains an Excel file name, showing the documents were created by printing to PDF in excel."  Br. 9.  But Amazon's purported "metadata" expert, Tappeto, could not explain whether photographing the documents, converting those images to Excel, and then printing to PDF—the procedure Gilimex used to "scan" many of its hard-copy documents prior to production—would result in the presence of an Excel file extension in the PDF's electronic name.  Tr.98:6–21.[11]

---

[11]    Contrary to Amazon's assertion, Br. 2, Gilimex's not maintaining the interim Excel versions of the Luong Documents is not "spoliation"—as explained, the Minutes were preserved in hardcopy, and Gilimex simply used Excel in preparing the production.  *Supra* at 5.

### C.    Amazon Claims Gilimex Never Informed It of November PO.

Amazon falsely claims Gilimex "never" told Amazon about a $69 million order from Blazemax.  Br. 13–14.  But Amazon concedes, as it must, that Gilimex told it on multiple occasions about its raw materials exposure.  Tr.43:17–45:20.  Multiple documents and Jackson's testimony corroborate that Gilimex informed Amazon of its over-$68 million exposure in raw materials, including in the summer of 2022.  *Supra* at 4.

Amazon urges the Court not to credit the August 2022 PowerPoint's authenticity because, as a hard-copy document, it has no metadata.  *See* Br. 20–21.  But metadata is not required to demonstrate a document's authenticity.  Gilimex maintained a hardcopy of this presentation, consistent with its business practice, and although Gilimex emailed the presentation's link to Amazon, neither party preserved its electronic version.[12]  Amazon also claims the presentation "appears to have been altered" because a slide discussing Gilimex's raw materials exposure is "almost identical" to one in Gilimex's July 5 presentation, which Amazon claims amounts to a "different story."  Br. 20–21.  These reflect neither a "different story" nor fraud.  As Amazon continually refused to honor its commitments in mid-2022, Gilimex refined its approach to salvage the relationship.  It is no surprise that Gilimex's verbiage changed slightly after its prior attempts failed.  Tr.45:14–46:03.

---

[12]    Amazon argues that, because Gilimex did not preserve an electronic version, it "spoliated" evidence.  Br. at 20 n.6.  Gilimex did not spoliate any evidence because it preserved a hard-copy version and, unlike Amazon, did not anticipate litigation in August 2022 and would have had no obligation to retain the document.  *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) (duty to preserve applies to "all relevant documents (*but not multiple identical copies*) in existence at the time [it] attaches") (emphasis added).  If anyone spoliated evidence, it was Amazon, which failed to preserve a copy of the PowerPoint despite Gilimex emailing it to Amazon when Amazon anticipated litigation.  *See* Dkt. 128 at 1–3 (arguing that "Amazon tried to resolve this dispute without litigation" through a settlement offer on August 4, 2022).

### D.    Amazon Claims November PO Is Absent from Gilimex's Records.

Amazon argues that, if the November PO were legitimate, it "should be reflected" in various records—including Gilimex's inventory reports, contemporaneous correspondence, and audited financial statements. Br. 11–12. First, Amazon claims "Gilimex's raw materials inventory reports . . . contained no reference to the Blazemax PO." Br. 4, 11. To support this argument, Amazon's purported expert, Orozco—who does not understand Vietnamese—relied upon one non-translated "inventory report[]" for his analysis. Tr.83:1–84:2. Yet Gilimex produced certified re-translations of these documents showing that they are, in fact, not "inventory reports," but rather status reports reflecting materials Gilimex expects to use in production during a specific period. *See* Tr.55:18–21, 85:17–86:24; DX-501-C–529-C (Gilimex's certified retranslations of DX-501–29). Given Gilimex has not taken possession of the November PO materials, and was therefore not expecting to utilize those materials during the period covered by these reports, those materials do not appear in any status report—rendering Orozco's contentions moot.[13]

Next, Amazon asserts the November PO is not referenced in Gilimex's other documents, including emails, financial records, and shipping records. *See* Br. 11–12. But as Gilimex explained, it generally creates such records *after* an order is fulfilled and its materials delivered. Dkt. 245 at 5–6; Tr.160:4–11. To date, Gilimex still has not scheduled delivery for the November PO. Amazon also notes that a list of raw materials suppliers that Gilimex provided to Amazon in July 2022 did not include Blazemax. Br. 14; DX-603-A. However, Blazemax is a third-party intermediary and not a direct supplier, Tr.157:3–8, a fact that Orozco conceded, *id.* 81:8–82:9.

---

[13]    Amazon similarly takes issue with an April 2022 Excel that only "included a small fraction of the raw materials in the [November PO]." Br. 13. Yet as discussed, such reports only demonstrated materials that Gilimex had purchased and *received*; indeed, Amazon concedes that the Excel only listed "purchased materials exceeding *2022* orders." *Id.* (emphasis added); DX-702 at 1; DX-702-A. The November PO dealt with materials for the 2023 season.

Similarly, Amazon asserts the November PO should be listed in the "Inventories" portion of Gilimex's audited financial statements because it represents "goods on consignment." *See* Br. 12; DX-914. However, Orozco—neither a licensed accountant in Vietnam nor an expert in Vietnamese accounting, Tr.74:19–75:4—improperly relied on International Financial Reporting Standards ("IFRS") and incorrectly testified that they are "the same" as Vietnamese Accounting Standards ("VAS"), *id.* 75:1–14, 77:4–17. Unlike IFRS (under Orozco's reading), VAS—which Gilimex adheres to[14]—specifies: "[o]nly the value of goods and finished products that have been sent to customers, in process for sale, entrusted for sale, or services that have been completed and handed over to customers under a contractual agreement or purchase order—but which have not yet been recognized as sold shall be reflected in Accounting 157 as goods on consignment." *Circular No. 200/2014/TT-BTC Guidelines for Accounting Policies for Enterprises*: *Article 30. Accounting 157(1)(a)*, Agency for Bus. Registration – Ministry of Planning and Investment of Vietnam (last visited Oct. 8, 2025).[15] In other words, "goods on consignment" are goods that Gilimex has *sent to customers* the revenue for which has not yet been recorded—*not* materials Gilimex has ordered but not yet received or paid for, such as those underlying the November PO.

---

[14]    DX-804 at 19 ("[Gilimex] applies Vietnamese Accounting Standards and supplement documents issued by the State.").

[15]    Available at https://dangkykinhdoanh.gov.vn/en/Pages/Detaildocument.aspx?vID=26993&TypeVB=1.

A printout from this Vietnamese government website and certified translation is attached as Exhibit 2. The Court may take judicial notice of the website. *See CITGO Petro. Corp. v. Starstone Insur. SE*, 2023 WL 2525651, at *8 (S.D.N.Y. Mar. 15, 2023) (taking judicial notice of government sources because their "accuracy cannot reasonably be questioned" and facts possessed "high degree of indisputability").

###### E.   Amazon Claims Gilimex "Originally Produced $69 Million of Admittedly Fraudulent Documents."

Amazon erroneously claims the "66 POs produced in fact discovery, most of which Gilimex admits are fraudulent, add up to $69 million," to show these orders were "produced to support Gilimex's claim for over $68 million in raw-materials damages." Br. 14. Yet Amazon's cherry-picked math includes tens of millions of dollars in admittedly *legitimate* orders. Specifically, among the 66 purchase orders are two authentic Blazemax orders, dated January 6, 2022 (DX-119) and April 7, 2022 (DX-114), totaling over $27 million, both of which were cancelled, *see* PX-245-T at 8–9. There are also two sub-supplier Woojeon orders—DX-416 and DX-449, totaling approximately $6.2 million—but Gilimex has *never* sought damages for those legitimate orders, and instead seeks damages only for inventory costs of $1.7 million based upon an arbitration agreement reached between Gilimex and Woojeon. *See* Dkt. 135-1 at 15. Removing these orders brings the value of those remaining Luong Documents to below $35 million, completely undercutting Amazon's claim that certain of Gilimex's orders "add up to $69 million."

###### F.   Amazon Claims Gilimex Has Untoward Financial Incentives.

Gilimex's employees have not committed perjury and do not "have a financial incentive" to do so, as Amazon claims. Br. at 15 n.5. Amazon relies upon an August 20, 2025 shareholder proposal that would create a means to financially reward certain individuals "who participate in, carry out, and support the Company in the Lawsuit" in the event Gilimex is awarded damages greater than its actual damages and costs. Dkt. 251-1 at 4. Two notable things rebut Amazon's contention. First, this concept was originally proposed in April 2025, *see* Dkt. 253-3, months *before* Amazon accused Gilimex of fraud. Second, the shareholder resolution expressly

"exclud[ed]" "all testifying witnesses in the Lawsuit" from receiving such compensation.  *See* Dkt. 255-1 at 11.

Amazon also implies improprieties with Kim because she is a "significant Gilimex shareholder" and Le's sister-in-law.  Br. 3; Tr.111:1–2.  Amazon presents no evidence that Kim is a current shareholder—its conclusion rests upon five-year-old reports.  Dkt. 176-5 ¶ 5b.  Further, as Le explained, he controls neither Blazemax nor Kim, with whom he speaks only once per year.  Tr.146:13–18.  Moreover, Kim declared under penalty of perjury that she "signed and authorized" the November PO.  PX-182 ¶¶ 7–8.  Any relationship between her and Le, or financial incentives she may have if she *were* a Gilimex shareholder, does not diminish the truth of her attestation.[16] *See Lopez v. Miller*, 915 F. Supp. 2d 373, 402 (E.D.N.Y. 2013) ("Respondent has presented no evidence that [the] Guido and Rivera [affidavits] were biased other than the fact that they were once related to Lopez, and that relationship alone would not change the court's determination as to their reliability.").

G.    **Amazon's Remaining Contentions.**

Amazon levels several additional, baseless accusations about Gilimex—and by implication, its counsel—concerning the falsification of evidence and testimony supporting the November PO.  These assertions fail.

---

[16]    Amazon further asserts that Gilimex's inability to secure Blazemax's cooperation at the Hearing is evidence of fraud.  Br. 14–15.  Gilimex does not control Blazemax, and Le barely communicates with Kim.  Nevertheless, Gilimex attempted in good faith to secure Kim's participation in the Hearing.  *See, e.g.*, PX-245-T; Tr.145:21–146:5.  And the information Blazemax *was* willing to provide—including an attestation under oath of the November PO's authenticity (PX-182 ¶¶ 5–7; PX-245-T at 7), and a renewed claim for the sums Gilimex owes Blazemax in warehousing costs (PX-245-T at 7)—disproves Amazon's unfounded accusations.

*i.  Claims that Gilimex fabricated documents prior to Hearing.*

Amazon claims Gilimex's logbooks are "facially suspect," particularly "given the circumstances of their production on the eve of the Hearing." Br. 21–22. The logbooks record certain of Gilimex's outgoing and incoming hard-copy documents, including its orders with Blazemax—said differently, they are hard-copy "metadata," not intended to maintain substantive information. Tr.99:25–100:7. The logbooks were *irrelevant* until Amazon questioned the November PO's authenticity. Indeed, Amazon's never requested the logbooks during discovery, nor documents substantiating Gilimex's transmission of orders with Blazemax or any other supplier. *See* Ex. 1.

Regardless, as the Court can see from their physical versions, the logbooks bear all the hallmarks of authenticity: they are real-time compendiums of Gilimex's transmission of thousands of documents over a multi-year period, prepared by dozens of individuals in different handwritings and inks. *See* PX-4-O; PX-26-O; PX-32-O; PX-37-O; PX-72-O; PX-123-O. Attempting to discredit their veracity, Amazon points to: (1) a three-month gap in log entries, Br. 21; (2) the purported duplication of a Blazemax entry, *id.* at 21–22; and (3) a Blazemax entry "written under the gridlines in a different pen color," *id.* at 21. Amazon does not explain how a three-month gap (from late July to early October 2021) within a two-year period demonstrates *any* impropriety, particularly during the pandemic when lockdowns of non-essential services were common.[17] Second, the entries Amazon points to are *not* duplicates; as shown below, the names in the "sender"

---

[17]    *See* Ba Tuan Nguyen et al, *COVID-19 in Vietnam and Its Impact on Road Trauma: Retrospective Study Based on Nat'l Data*, NAT'L LIBR. MED. (Feb. 6, 2023), https://pmc.ncbi.nlm.nih.gov/articles/PMC9907775/ ("The Vietnamese government placed approximately a third of the national population (including the 2 largest cities, Hanoi and Ho Chi Minh City) under lockdown starting on July 23, 2021.").

and "receiver" columns are reversed, indicating two transmissions, one *to* and another *from* Blazemax:

| Header Translation (PX-39-T) | Day / Month / Year | Sender | Receiver | Dept | Signature | [Other Columns Omitted] |
|---|---|---|---|---|---|---|
| PX-32 at -21409 | 19/11 | Hanh - UH | Ms. Quyen Blaze Max | UH | | |
| PX-26 at -22036 | 11 | Blaze Max | Hanh UH | UH | | |

And third, while Amazon focuses on a single entry's being written in the margin, such margin notes also appear multiple times in each book for non-Blazemax entries (which the Court can see in reviewing the physical versions).  Some examples of this are below:

| PX-26-O at -22035 | |
|---|---|
| PX-26-O at -22065 | |
| PX-72-O at -22212 | |

ii.    *Claims that Luong's testimony is false.*

Despite the Court's recognition that "the central issue in this case" is the November PO, Tr.16:8–14, Amazon still seeks sanctions for Gilimex's purportedly "intentional" production of the Luong Documents, characterizing Luong as a "late-breaking excuse."  Br. 9–10.  But Gilimex did not "intentionally" produce fabricated documents and *could not* have disclosed Luong's scheme earlier—as Le explained, prior to the pre-Hearing period, Gilimex was "not aware of an employee of Gilimex falsifying the documents."   Tr.151:20–23.   Regardless, the Luong

Documents are irrelevant: they are part of neither Gilimex's damages case nor its trial exhibit list. PX-246; Dkt. 206 at n.4. Without supporting evidence, Amazon can no longer bootstrap its claim that the November PO is inauthentic with false allegations that Gilimex "fabricated" other, immaterial documents.

While Amazon asserts that Luong's testimony is "a lie" because he does not know English, Br. 9–10, Luong explained that he used Google Translate to fabricate documents. Tr.19:8–20:7. Given he used actual purchase orders—many of which were already in English[18]—as templates, Luong's use of translation software to supplement text is unremarkable.[19] The fact that "[m]any of the demand letters . . . ask for delivery plans or estimated shipment dates," Br. 10, can lead to many conclusions, including the most likely explanation that Luong simply copied text from legitimate correspondence. *See* Tr.17:2–5 (Luong "ma[de] these documents to appear to reflect real Gilimex purchase orders and correspondence with its suppliers"). As for his failure to profit, Br. 10, Luong explained that he planned to eventually weaponize his fabrications, but abandoned his plan out of guilt. *See* Tr.21:11–25, 25:8–26:1. Yet his abandonment does not diminish the fraud he *did* commit, including fabricating over 100 documents in Gilimex's records. *Id.* 10:18–22, 12:2–4. Finally, Luong did not fabricate *any* Blazemax documents, *id.* 17:6–14, rendering the incomplete nature of his scheme irrelevant to the November PO's authenticity.

Amazon also claims Gilimex promised not to take any action against Luong "on one condition—that he testify at the Hearing." *See* Br. 10. But as the agreement shows, any promises Gilimex made were contingent on Luong's cooperating "fully and truthfully," PX-186 at 5, which

---

[18]    *See, e.g.*, Dkt. 176-4 at 9–11 (English purchase order Amazon concedes is "Authentic").

[19]    Amazon egregiously misstates the record to claim that Luong only mustered English "when needed to 'help' the Chairman," Br. 10 (citing Tr.18:16–17). But after retranslation, Luong just moments later clarified: "I did not help the chairman." Tr.18:23.

he testified was his obligation, Tr.10:14–17.  Courts routinely identify such "truth-telling provisions" as grounds to bolster a witness's credibility once it has been attacked, *United States v. Williams*, 787 F. App'x 8, 10 (2d Cir. 2019), and dismiss contentions that such agreements bolster allegations of fraudulent conduct.  *See McClean v. Cnty. of Westchester*, 2018 WL 6329420, at *19 (S.D.N.Y. Dec. 3, 2018) (subsequent history omitted) ("It is ludicrous to suggest that the everyday event of a prosecutor making deals with witnesses . . . would plausibly suggest a conspiracy.").

### III.  NO SANCTION ON GILIMEX IS WARRANTED BECAUSE GILIMEX DID NOT COMMIT MISCONDUCT.

Amazon fails to present clear and convincing evidence that Gilimex committed *any* wrongdoing, let alone fraud on the Court, and any sanctions, including terminating sanctions, against Gilimex are unwarranted.

Given this standard of proof, courts in this district routinely deny motions for sanctions like Amazon's, even in the face of significant evidence.  For example, in *Bravia Cap. Partners Inc. v. Fike*, the court held, despite explicitly finding plaintiff had "spoliated three emails and submitted one forged document," that terminating sanctions were inappropriate where the defendant did "not establish[] that Plaintiff's actions were the product of intentional bad faith such that [plaintiff] created an 'unconscionable scheme' to defraud this Court."  2015 WL 1332334, at *18 (S.D.N.Y. Mar. 25, 2015).  The court also found the movant's allegations demonstrated no patterned misconduct or bad faith: "While [movant] has alleged a massive fraud on this Court, she seemingly lost the trees for the forest by failing to establish many of the individual wrongs she intimates. . . . [A]lthough there was more than one instance, the Court cannot conclude that they represent a pattern of misbehavior rather than separate, isolated instances of negligence."  *Id.*; *see also Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 406 (S.D.N.Y. 2010) ("Because

Passlogix fails to present clear and convincing evidence [of the identity of the author of an allegedly fabricated email], the Court holds that Salyards did not commit a fraud on the Court."); *Duka v. Alliance Tri-State Constr., Inc.*, 2021 WL 4461019, at *5 (S.D.N.Y. Sept. 29, 2021) (allegations of plaintiff's soliciting perjured testimony from a witness—substantiated by witness's sworn declaration that plaintiff "called him and offered him $10,000 to be his witness and 'falsely testify'"—insufficient given contradictory declarations and lack of clear and convincing evidence); *Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.*, 327 F. Supp. 3d 673, 687–88 (S.D.N.Y. 2018) (sanctions unwarranted where movant "present[ed] little evidence—much less clear and convincing evidence—from which the Court may infer that [defendant] or its counsel knowingly made those misrepresentations as part of a scheme to tamper with the fair adjudication of this action").

Additionally, while Amazon claims circumstantial evidence is sufficient, Br. 8,[20] its authorities rest on overwhelming direct evidence of fraud, in the face of a fraudster's doubling-down on their fabrications' authenticity.  For instance, Amazon relies upon *Colella v. Republic of Argentina*, 2020 WL 4700930 (S.D.N.Y. Aug. 13, 2020), to argue that using "fake documents to secure a judgment" would authorize a court to impose terminating sanctions.  Br. 23.  But *Colella*'s sanctions rested upon uncontradicted statements from multiple banks—who purportedly held assets at issue in the "fake documents"—directly refuting the fraudsters' assertions.  *See* 2020 WL 4700930, at *6–7.  Likewise, Amazon relies upon *Garcia v. Berkshire Life Insurance Company of America*, but there, the court affirmed terminating sanctions where the fraudster "willfully" fabricated documents "directly related to [her] claims," including a falsified letter that its purported

---

[20]    The case Amazon cites for this proposition, *Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206 (S.D.N.Y. 2007), is inapt as it does not involve sanctions.

author testified he "[a]bsolutely, completely, definitively, totally . . . did not write." 569 F.3d 1174, 1177–78 (10th Cir. 2009).

Amazon's remaining caselaw likewise relies on substantial direct evidence, featuring facts entirely dissimilar to those here. *See, e.g.*, *Hargrove v. Riley*, 2007 WL 389003, *3–5, *11 (E.D.N.Y. Jan. 31, 2007) (fraudster produced forms and notary stamps which "notaries . . . testif[ied] that they never notarized"); *Network Data Rooms, LLC v. Saulrealism LLC*, 2022 WL 17404501, at *2 (S.D.N.Y. Dec. 2, 2022) (subsequent history omitted) (plaintiff "essentially admit[ed] that" document at issue had "been altered"); *DAG Jewish Directories, Inc. v. Y & R Media, LLC*, 2010 WL 3219292, at *4–5 (S.D.N.Y. Aug. 12, 2010) (fabrication demonstrated as inauthentic through opponent's submission of original document and other corroborating evidence); *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 135 (2d Cir. 2023) (fabricated digital photograph of screen was inconsistent with plaintiff's account of its creation because it lacked actual screen's "flickering" and "ink bleed" and lacked iPhone metadata despite plaintiff's assertion that photograph was taken with iPhone); *Lawrence v. City of New York*, 2018 WL 3611963, at *2, *6 (S.D.N.Y. July 27, 2018) (plaintiff admitted that she falsely testified as to when photographs were taken, proving that they were "staged"); *McMunn v. Memorial Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 446–58 (S.D.N.Y. 2002) (substantial evidence demonstrated that plaintiff made multiple false statements at deposition, intentionally concealed evidence, failed to disclose identity of material witnesses in discovery, deliberately edited audio recordings and lied to court about same, engaged in sham transaction, and falsely testified about same); *Miller v. Time-Warner Commc'ns*, 1999 WL 739528, at *1–2 (S.D.N.Y. Sept. 22, 2019) ("no doubt" that plaintiff's "testimony was deliberately false" because it was, *inter alia*, "contradictory, illogical, and in some instances patently absurd").

Here, all witnesses with *any* personal knowledge of the November PO, including Blazemax, have attested to its authenticity, *see, e.g.*, PX-182 at 8; PX-245-T at 9—and Amazon has set forth *no* direct evidence to the contrary. Moreover, Gilimex has asserted the same basic facts (*i.e.*, damages based on now-unusable raw materials) and damages figure (*i.e.*, over $68 million) since its first filing. *See* Dkt. 1-1 ¶ 68. Le's testimony supporting the documents' authenticity is consistent, credible, and corroborated by contemporaneous evidence, including Gilimex's logbooks, debit notes, DX-109–10, and information shared with Amazon. Finally, with respect to the fabricated materials Gilimex *did* unwittingly submit—*i.e.*, the Luong Documents—Gilimex only produced them under the belief of their authenticity,[21] and openly admitted to its production of these materials as a "mistake" as soon as it learned they were forged. Tr.153:1–3; Dkt. 203. Far from showing that Gilimex "lied [to] and misled" Amazon or the Court, the record demonstrates that it was *Gilimex* who was misled to believe the Luong Documents were authentic. Tr.151:24–152:6.[22]

Finally, whereas Gilimex's narrative of events is both plausible and credible, Amazon's

---

[21]    Gilimex's innocent mistaken production of documents is not clear and convincing evidence of fraud. *See Mazzei v. The Money Store*, 62 F.4th 88, 95 (2d Cir. 2023) (denying motion for relief from judgment based on fraud on the court where non-movants "had [no] reason to know that their statements about the [information at issue] were false, that their reliance on [third-party's] representations was unreasonable, or that their failure to investigate [third-party's] representations was anything more than mere negligence").

[22]    Amazon claims dismissal is "the only appropriate remedy when the court has 'no way of knowing what story [Gilimex] would offer' on any given issue," Br. 29 (citing *Lawrence*, 2018 WL 3611963, at *8). Yet Gilimex does not rely on the November PO to support Amazon's liability or its alternative damages claims; there is *no* evidence of *any* fraud, let alone "pervasive" fraud, Br. 29; and despite its sweeping proposition, Amazon does not cite a single piece of evidence to the contrary. *Id.* Thus, even if the November PO *were* fabricated—and it most certainly is not—case terminating sanctions are not appropriate. *See, e.g., Amerisource Corp. v. Rx USA Int'l Inc.*, 2010 WL 2730748, at *7 (E.D.N.Y. July 6, 2010) (subsequent history omitted) (imposing monetary sanction where movant failed to demonstrate how "altered emails caused it to change its discovery, settlement, or litigation strategy, or incur expenses that it would have otherwise forgone," outside "added expense of investigating the emails and pursuing sanctions").

makes no sense.  Indeed, Amazon alleges that Gilimex initially committed fraud in August 2023 by creating and producing dozens of fake purchase orders and demand letters to support its raw materials damages claim.  Amazon then claims that, just three months later, Gilimex—of its own volition and for reasons never proffered—abandoned that plan (while leaving the recently produced phony documents with Amazon) and instead embarked on a new fraud by fabricating and producing a single document, the November PO, to support those very same damages.  Finally, Amazon contends that, when confronted years later, Gilimex engaged in a complex, multi-faceted cover-up, including: (1) convincing Luong to commit perjury by testifying under oath that he, acting alone, created the original purchase orders to defraud Gilimex; (2) procuring the perjured testimony of nonparties including Kim (and Blazemax's outside counsel, PX 245-T); (3) having its Chairman lie under oath about Gilimex's relationship with Blazemax and what he told Amazon about that relationship; and (4) apparently with the assistance of counsel (or at least with counsel turning a blind eye), fabricating numerous *other* documents, including: the Color November PO and related Minutes, the voluminous, hand-written logbooks, and the August 2022 PowerPoint.  None of these outrageous allegations are true and there is no evidence that the November PO is inauthentic.

## IV.  AMAZON SHOULD BE SANCTIONED, NOT GILIMEX.

Gilimex requests the Court grant its sanctions application, Dkt. 183, by awarding Gilimex attorneys' fees and costs in defense of Amazon's accusations incurred after July 16, 2025, the date Gilimex informed Amazon of the Luong scheme.

As explained above, there is no proof, let alone clear and convincing evidence, that Amazon's allegations are true, yet it has continued to press its unfounded accusations after Gilimex provided an explanation for producing the falsified Label-Maker Documents and other Luong Documents.  This conduct has cost Gilimex substantial legal and other expenses and is

sanctionable in its baselessness. "A court's inherent authority permits it to impose costs and fees against an attorney who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Neroni v. Becker*, 609 F. App'x 690, 693 (2d Cir. 2015) (citation modified) (affirming sanctions where "arguments . . . lacked factual support and were baseless and vexatious"). Here, the seriousness of Amazon's accusations is matched only by their falsity. Amazon's continued prosecution of its frivolous claims, brought on the eve of trial, has unnecessarily delayed Gilimex's ability to hold Amazon accountable for its misconduct. *See Olsen v. City of New York*, 1984 WL 20, at *2 (S.D.N.Y. Aug. 21, 1984) (imposing costs and attorneys' fees as sanctions where defendant "waited over a year and almost until the eve of trial to file" a motion whose "timing was dilatory and vexat[i]ous and only served to delay the trial"). Given the gravity of Amazon's claims—and its continued pursuit of them despite its heavy burden and utter lack of evidence—it is *Amazon* whose conduct warrants sanctions. *See, e.g.*, *Book v. Moulton*, 2006 WL 8453019, at *7 (N.D.N.Y. June 6, 2006) (subsequent history omitted) ("The clear lack of merit to plaintiff's accusations [regarding fabrications], the waste of the court's, counsel's, and witnesses' time, and the possible unwarranted damage to defense counsel's reputation are sufficient reasons to sanction plaintiff.").

## **CONCLUSION**

Amazon's request for sanctions should be denied, and Gilimex's request for sanctions granted.

Dated: October 8, 2025
        New York, New York

KASOWITZ LLP

By: /s/ *Marc E. Kasowitz*
      Marc E. Kasowitz
      Edward E. Filusch
      Daniel J. Koevary
      Sondra D. Grigsby
      Michael C. Pecorini
      1633 Broadway
      New York, NY 10019
      Tel.: (212) 506-1700
      mkasowitz@kasowitz.com
      efilusch@kasowitz.com
      dkoevary@kasowitz.com
      sgrigsby@kasowitz.com
      mpecorini@kasowitz.com

      ThucMinh Nguyen
      (admitted *pro hac vice*)
      101 California Street,
      Suite 3950
      San Francisco, CA 94111
      Tel.: (650) 453-5420
      tnguyen@kasowitz.com

      *Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE

I, Edward E. Filusch, certify that Plaintiff's response to Defendant Amazon.com Services LLC's post-hearing brief in support of its motion for sanctions complies with the requirements of Local Rule 7.1(c), as modified by Section III(B)(1) of this Court's Individual Rules and Procedures for Civil Cases.

I further certify that Plaintiff's response brief was prepared with a computer.

I further certify that Plaintiff's response contains 8,489 words, including any footnotes or endnotes and excluding those sections of the brief that are exempted under Local Rule 7.1(c) and Section III(B)(1) of this Court's Individual Rules and Procedures for Civil Cases.  In preparing this certificate of compliance, I have relied on the word count of the word-processing system used to prepare Plaintiff's response brief.

Dated: October 8, 2025

*/s/ Edward E. Filusch*
Edward E. Filusch
