UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BINH THANH IMPORT EXPORT PRODUCTION & TRADE JOINT STOCK CO., d/b/a GILIMEX, INC.,<br><br>              Plaintiff,<br><br>-against-<br><br>AMAZON.COM SERVICES, LLC, d/b/a AMAZON ROBOTICS,<br><br>              Defendant. | Case No. 1:23-cv-00292-LGS |

**DEFENDANT AMAZON.COM SERVICES LLC'S POST-HEARING REPLY BRIEF
IN FURTHER SUPPORT OF ITS MOTION FOR SANCTIONS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 1

I.      GILIMEX CANNOT REBUT AMAZON'S OVERWHELMING EVIDENCE
         OF FRAUD ON THE COURT ....................................................................................... 1

      A.    Amazon Proved Gilimex's Story for Why It Produced Nearly 100 Fake
           Documents Was False. ....................................................................................... 1

      B.    Gilimex Cannot Rebut the Substantial Evidence that the Blazemax PO Is Fake. .......... 3

           1.    Gilimex Failed to Present Substantive Testimony at the Hearing and
                Cannot Rely on Out-Of-Court Statements. ............................................... 3

           2.    Gilimex Cannot Explain Why It Does Not Have the Signed Original of the
                Blazemax PO It Produced in 2023. ........................................................... 5

           3.    Gilimex's Prior Production of $69 Million in POs Was Not a Coincidence. .......... 7

           4.    Gilimex Cannot Explain the Absence of the Blazemax PO from Gilimex's
                Records. ....................................................................................................... 8

           5.    Gilimex Did Not Tell Amazon About an Outstanding $69-Million
                Blazemax PO. ............................................................................................ 10

           6.    Gilimex's Package Logbooks Are Suspect and Prove Nothing. ........................... 10

II.     THE COURT MUST IMPOSE TERMINATING SANCTIONS ................................. 11

CONCLUSION ............................................................................................................................ 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Almeciga v. Ctr. for Investigative Reporting, Inc.*,
   185 F. Supp. 3d 401 (S.D.N.Y. 2016) ................................................................................. 13

*Amerisource Corp. v. Rx USA Int'l Inc.*,
   2010 WL 2730748 (E.D.N.Y. July 6, 2010) ......................................................................... 11

*Bravia Cap. Partners Inc. v. Fike*,
   2015 WL 1332334 (S.D.N.Y. Mar. 25, 2015) ...................................................................... 11

*Duka v. All. Tri-State Constr., Inc.*,
   2021 WL 4461019 (S.D.N.Y. Sept. 29, 2021) ..................................................................... 12

*Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.*,
   327 F. Supp. 3d 673 (S.D.N.Y. 2018) ................................................................................. 12

*Lawrence v. City of N.Y.*,
   2018 WL 3611963 (S.D.N.Y. July 27, 2018) ................................................................. 2, 12

*McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*,
   191 F. Supp. 2d 440 (S.D.N.Y. 2002) ................................................................................. 12

*Network Data Rooms, LLC v. Saulrealism LLC*,
   2022 WL 17404501 (S.D.N.Y. Dec. 2, 2022) ..................................................................... 12

*Passlogix, Inc. v. 2FA Tech., LLC*,
   708 F. Supp. 2d 378 (S.D.N.Y. 2010) ................................................................................. 12

*Rhee-Karn v. Lask*,
   2025 WL 2450731 (S.D.N.Y. Aug. 26, 2025) ....................................................................... 4

*Rossbach v. Montefiore Med. Ctr.*,
   81 F.4th 124 (2d Cir. 2023) ................................................................................................... 6

*Thai Lao Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic Republic*,
   2011 WL 4111504 (S.D.N.Y. Sept. 13, 2011) ....................................................................... 4

**Rules**

Local Civil Rule 7.1(a)(4) ........................................................................................................... 13

**PRELIMINARY STATEMENT**[1]

Gilimex admits it produced over 100 fake documents in this case. It doesn't dispute that it submitted sworn declarations that were false, withheld key documents for years, and the documents supporting its $69-million Blazemax claim lack basic metadata showing when they were created. Gilimex's opposition leans instead on lawyer-driven speculation, unsubstantiated by any testimony elicited at the Hearing, to counter Amazon's overwhelming evidence of fraud. But attorney argument—untethered from credible evidence or reality—cannot plug the gaping holes in Gilimex's ever-shifting story for the mountain of fake documents in this case.

The only remedy for that fraud is dismissal. Gilimex does not dispute that dismissal is an available remedy if the Court finds it intentionally fabricated documents in this case. No lesser remedy will suffice to deter Gilimex, which still has not taken responsibility for a single instance of litigation misconduct, from undermining the integrity of the Court.

**ARGUMENT**

**I.   GILIMEX CANNOT REBUT AMAZON'S OVERWHELMING EVIDENCE OF FRAUD ON THE COURT**

   **A.   Amazon Proved Gilimex's Story for Why It Produced Nearly 100 Fake Documents Was False.**

In its opening brief, Amazon explained how the Hearing evidence proved Luong's testimony was false. Br.9-10. Luong testified that he planted paper documents in Gilimex's files, Tr. 20:14-16, and Gilimex claims these documents were later found, scanned, and inadvertently produced, Opp.4-6. But the metadata tells the real story: dozens of these documents were printed to PDF from Excel files on a computer. DX913; Tr.92:11-93:5. They were never scanned

---

[1] Unless otherwise specified, capitalized terms herein maintain the definitions in Amazon's Post-Hearing Brief ("Br.") and Gilimex's Response Brief ("Opp.").

1

hardcopies. Tr.94:8-14. This shows Gilimex did not "find" the documents and accidentally produce them; someone at Gilimex created the documents in Excel and then printed the documents to PDF, so they could be used to support Gilimex's damages claim.

Gilimex does not contest this document metadata. Instead, Gilimex spins a new tale—its procedure for scanning hardcopy documents was to photograph them on a phone, convert them to Excel, and then print to PDF. Opp.14. That story is preposterous on its face, and there's no evidence it ever happened. No Gilimex witness testified to such a process. Gilimex's only citation for that proposition is questioning by Gilimex's counsel to an Amazon expert witness, asking what *would* happen *if* someone did that. Opp.14 (citing Tr.98:6-21). That's not evidence. It's pure conjecture concocted by Gilimex's lawyers and should be disregarded.[2]

Gilimex does not even attempt to explain away the additional evidence that Luong's story is false, including how Luong could have falsified over 100 documents without a Gilimex computer, Tr.8:15-18, 20:2-22, or why he would falsify POs but not change their payment information so the money would go to him instead of Gilimex's suppliers, Tr.20:23-22:5. His story doesn't add up—because it's not true.

Gilimex is simply lying about the supposed employee fraud. Its wanton fabrication of documents and calculated coverup *alone* warrant terminating sanctions. *Lawrence v. City of N.Y.*, 2018 WL 3611963, at *1-2, *6, *8-9 (S.D.N.Y. July 27, 2018) (imposing terminating sanctions where plaintiff faked photographs and engaged in "a sustained effort" to mislead the court with a "continu[ing]…pattern of evasion and untruths").

---

[2] Similarly, Gilimex asserts it "does not have a high-quality scanner," Opp.5, but the testimony it cites says nothing about what device Gilimex used to scan documents, Tr.160:24–161:13.

2

### B. Gilimex Cannot Rebut the Substantial Evidence that the Blazemax PO Is Fake.

Gilimex has no real answer to Amazon's overwhelming evidence that Gilimex fabricated the Blazemax PO. Hung offered no explanation at the Hearing for why the Blazemax PO does not exist in Gilimex's records. Instead, Gilimex's arguments rely not on evidence, but on smoke and mirrors, including out-of-court statements from witnesses who refused to testify, late-produced documents without metadata, and attorney speculation—and deserve little weight.

#### 1. Gilimex Failed to Present Substantive Testimony at the Hearing and Cannot Rely on Out-Of-Court Statements.

In scheduling the Hearing, the Court invited Gilimex and its Chairman Hung to explain the Blazemax PO and clear their names. They failed to do so. Hung offered virtually no substantive testimony at the Hearing—on direct, he merely agreed with leading questions by Gilimex's counsel. Tr.140:20-150:4. He did not explain why Gilimex placed the Blazemax PO.[3] He failed to explain why there is "no electronic version" of the Blazemax PO, which was created on a computer. DX818 ¶4; Tr.160:15-17; Br.4. He failed to justify his false representation to the Court that the Blazemax PO and Black-and-White Minutes have "physical signatures and physical stamps." DX818 ¶¶4-5; Br.19. He had no explanation for why Gilimex produced the Color Blazemax PO on the eve of the Hearing, with different signatures than the one it produced in 2023. Br.6, 19. And he dismissed Gilimex's production of $69 million worth of fake or cancelled POs, Opp.5, as merely "a coincidence," Tr.157:1-2.

---

[3] Instead, Gilimex relies on paper minutes of an October 2021 meeting Hung did not attend or testify about to claim Gilimex subsequently shifted to a single supplier. Opp.2. But the minutes say no such thing. PX30. And they are only in evidence because Amazon highlighted them as yet another document Gilimex produced after discovery, without metadata. DX929.

3

The one thing Gilimex's counsel made sure Hung confirmed is that any conspiracy to fabricate documents did not involve his attorneys. Tr.147:14-148:2. Gilimex's lawyers, having failed to elicit testimony from their client about what actually happened, cannot now fill in the gaps in the record with their own speculation.

Nor did Gilimex offer any testimony from other witnesses with supposed personal knowledge of the Blazemax PO. Hung's sister-in-law, Blazemax's Ms. Kim, declined to testify at the Hearing, even though she had ample notice and opportunity to appear virtually, and Gilimex's nearly $70 million raw-materials damages claim is supposedly meant to make *her* company whole. Br.3, 14-15. Undeterred, Gilimex instead relies on Kim's out-of-court declaration (PX182) and even a letter from her lawyer (PX245-T) as evidence throughout its brief. Opp.3-4, 6-7, 10, 12, 18-19, 26-27. Notably, even these out-of-court statements do not answer Amazon's most basic questions, such as the location of the 36,000 square meter warehouse—the size of seven football fields—supposedly holding the raw materials.[4] The Court should not credit Kim's unreliable statements, and her attorney's letter should be disregarded. *Rhee-Karn v. Lask*, 2025 WL 2450731, at *19 (S.D.N.Y. Aug. 26, 2025) ("self-serving, hearsay-based allegations" in attorney letter "lack the indicia of reliability that warrant consideration on a motion for sanctions"); *Thai Lao Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic Republic*, 2011 WL 4111504, at *5 (S.D.N.Y. Sept. 13, 2011) ("[s]tatements in an attorney's affidavit not based on personal knowledge are not entitled to evidentiary weight").

---

[4] The warehouse "debit notes" Gilimex produced together with the Blazemax PO do not even disclose the location of this supposed warehouse. DX109-10.

## 2. Gilimex Cannot Explain Why It Does Not Have the Signed Original of the Blazemax PO It Produced in 2023.

Less than two weeks before the Hearing, Gilimex first produced the Color Blazemax PO—which has different signatures than the Blazemax PO produced in discovery. App.6. Its lawyers claimed in a production letter that Gilimex had *two* Blazemax POs all along, and that the version produced in 2023 was a copy-of-a-copy of an original document it does not have. *Id*.; Br.6.

In opposition, Gilimex repeats this story. But there is not a shred of evidence in the record to support it. Br.18-20. Gilimex cites Hung's testimony that Gilimex sent the Blazemax PO to Blazemax on November 19 and it was returned on November 22. Opp.3 (citing Tr.144:3-15). But nowhere in the record does Hung claim there were *two* Blazemax POs all along, let alone explain why Gilimex only produced a supposed copy-of-a-copy in 2023. Tr.144:3-15. Absent any evidence, Gilimex's story is simply unbelievable.

Gilimex also tries to excuse its last-minute production of the Color Blazemax PO by claiming it was not obligated to produce it and blaming Amazon for not requesting "*every* version." Opp.7. But Amazon requested "All" documents on which Gilimex relied for its raw-materials damages. App.1. Gilimex failed to produce *any* version of the Blazemax PO in fact discovery, Br.2-3, and its claim that it only had to produce one version of the Blazemax PO is incorrect. Worse, Gilimex's opposition omits a key fact: when it responded to Amazon's June 30, 2025 request for all documents relating to the Blazemax PO, it failed to produce the Color Blazemax PO. App.4. It was not until Amazon specifically requested a color scan that Gilimex finally produced it, two weeks before the Hearing. App.6. It's not credible that Gilimex had this document in its possession all along and just *happened* not to produce it in fact discovery, in expert discovery, or in response to Amazon's June 30, 2025 request. The record points to one conclusion: Gilimex

5

faked the document, as shown by the different stamps on the documents and Gilimex's refusal to allow ink-dating. Br.18-20.

Moreover, Gilimex's false sworn representations that the Blazemax PO and Black-and-White Minutes bear "physical signatures and physical stamps," DX818 ¶¶4-5, constitute an independent basis for sanctions. *See Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 139, 142 (2d Cir. 2023) (upholding sanctions based in part on false statement in a declaration). Gilimex's contention that *all* versions of the Blazemax PO "have wet signatures and physical stamps," Opp.12, defies logic. A copy-of-a-copy does not have "wet signatures and physical stamps"; if it did, it would render Gilimex's representations offered to reassure the Court of the documents' authenticity meaningless. These arguments are just more lawyer sleight-of-hand to excuse Gilimex's lies.

Finally, Gilimex's argument that the stamps on the Blazemax PO and Color Blazemax PO "appear identical," Opp.13, is puzzling. Gilimex's chart, *id.*, corroborates Chow-Callam's testimony that the stamps on the Blazemax PO are faded near the word "Hong," suggesting a worn edge on the stamp, while those on the Color Blazemax PO are not faded at all, suggesting the use of an entirely different stamp, Br.18-19; Tr.117:5-119:3. If this fading was caused by the scan, rather than the stamp itself, the fading would not be in the same part of the stamp in each instance. Gilimex's own chart shows the stamps are *not* the same:

| DX-101 (Original B/W Scan Blazemax PO) | PX-223-R at 1 (Rescan of Original B/W Blazemax PO) | PX-40 at 1 (Color Double Sided Scan Blazemax PO) |
|---|---|---|
| DX-101 at 1 | PX-223-R at 1 | PX-40 at 1 |
| DX-101 at 2 | PX-223-R at 2 | PX-40 at 2 |
| DX-101 at 3 | PX-223-R at 3 | PX-40 at 3 |

Opp.13.[5]

### 3. Gilimex's Prior Production of $69 Million in POs Was Not a Coincidence.

Gilimex admits it produced 66 POs in fact discovery, worth $69 million, because they were responsive to Amazon's request for documents supporting Gilimex's raw-materials damages. Opp.4-5, 18; DX920. Remarkably, Gilimex claims it produced those 66 POs by "mistake," Opp.26, and "inadvertently" failed to produce the $69-million Blazemax PO, *id*. at 5.

Gilimex disputes that the fake POs add up to $69 million; instead, it contends that four of the 66 POs—two Woojeon POs and two cancelled Blazemax POs—reflect "legitimate orders." Opp.18. But Gilimex cannot even get its story straight: it previously *admitted* these Woojeon POs

---

[5] The red arrows have been added to point out the faded portion of the black-and-white stamps.

7

were fabricated by Luong. PX246 at 2, 4 (listing GILM00279379 (DX416) and GILM00279380 (DX449) on "Index of Documents Fabricated"); Dkt. 234 at 5.[6] And the only support for the supposed PO cancellation by Blazemax is a hearsay letter from Kim's attorney. PX245-T; *see supra* §I.B.1.

But whether these POs were cancelled doesn't really matter. It is unbelievable that Gilimex produced $69 million in fake and cancelled POs to support its damages claim in fact discovery, while also forgetting until expert discovery to produce the $69-million Blazemax PO it claims is real. App.2. This was no unfortunate coincidence: *all* of these POs were produced to fraudulently inflate Gilimex's damages.

### 4. Gilimex Cannot Explain the Absence of the Blazemax PO from Gilimex's Records.

Gilimex's emails and documents with metadata are devoid of any reference to the Blazemax PO. Br.2, 11-12. Again, Gilimex has no credible explanation for this.

Gilimex claims the $69-million Blazemax PO is not in the inventory reports because they are actually "status reports reflecting materials Gilimex expects to use in production during a specific period," relying solely on retranslations by a Vietnamese vendor both made and produced within 72 hours of the Hearing. Opp.16; App.8. But Amazon obtained a second set of certified translations from an independent vendor, and they are consistent with Amazon's original translations, not Gilimex's. Tr.87:9-14; DX509-A-T, DX509-A-T-1. More importantly, Hung declined to testify about these reports and why the Blazemax PO was not in them, even though he had a clear opportunity to do so. Instead, Gilimex cites a representation *its attorneys made* when

---

[6] Oddly, Gilimex now admits to producing 98 fraudulent documents, Opp.5, five *more* than before the Hearing, Dkt. 234 at 5-6 (listing 93 admittedly-fabricated, discovery-produced documents, including the Woojeon POs).

cross-examining Amazon's forensic accountant Orozco: "And are you aware that it's Gilimex's position that they weren't weekly inventory reports so much as they were raw material status reports reflecting the raw materials that were in production during the given time on the period or would be in production shortly thereafter?" Tr.85:17-86:24. Gilimex then proffers, without citation at all, that Gilimex was not expecting to utilize the Blazemax PO materials during the period covered in the reports. Opp.16. Because there is no record support for these propositions, they should be disregarded.[7]

Nor does Gilimex explain why the Blazemax PO does not appear anywhere in Gilimex's financial statements. Gilimex offers no evidence suggesting it did not need to record the Blazemax PO in its financial statements. Instead, it disputes Orozco's testimony on whether the Blazemax PO inventory would be considered goods on consignment or some other line item, Opp.17, belatedly attempting to impeach Orozco with translated Vietnamese accounting standards that are not on the exhibit list and bear Gilimex corporate stamps. Dkt. 258-2. Remarkably, Gilimex attacks Orozco for not being a Vietnamese accountant, but its lawyers then proceed to provide their own armchair accountant interpretation of translated Vietnamese accounting rules, without any support in the record. Opp.17. The bottom line is this is a distraction: Gilimex does not and cannot dispute that there is no $69 million liability to Blazemax in Gilimex's financial statements—which one would expect to see if it existed. DX915-16; Tr.69:11-22, 70:20-71:17.

---

[7] Gilimex argues there are no electronic records corroborating the Blazemax PO because "it generally creates such records after an order is fulfilled and its materials delivered," Opp.16, but it cites its *own opening statement* as evidence for this purported practice. By contrast, actual evidence confirms Gilimex likely would have emailed about the Blazemax PO if it were real; Gilimex *did* produce emails about unsigned POs. *E.g.*, DX223-T.

### 5. Gilimex Did Not Tell Amazon About an Outstanding $69-Million Blazemax PO.

Gilimex argues it "told [Amazon] on multiple occasions about its raw materials exposure." Opp.15. But it misses the point—it told Amazon it had *completely different* raw materials exposures than reflected in the Blazemax PO. Br.13-14. The only evidence Gilimex disclosed a $69-million PO to Amazon is a "paper" version of an August 2022 PowerPoint presentation it produced a week before the Hearing (instead of during fact discovery two years ago). PX137; App.1, 4, 7. Gilimex remains silent as to why no electronic version of this presentation *it created* and (allegedly) gave over Zoom exists, but somehow a paper copy does. Opp.15; Br.7, 20-21. It makes no sense that Gilimex would give a presentation with completely different information about its raw-materials orders than it had just a month prior. Br.21; *compare* DX609-A at 7, *with* PX137 at 15.

### 6. Gilimex's Package Logbooks Are Suspect and Prove Nothing.

Finally, Gilimex relies on handwritten package logbooks, produced days before the Hearing and bound together with tape, as evidence corroborating the Blazemax PO. Opp.10; Br.21-22. Gilimex's logbooks do not list specific documents, let alone their contents. *E.g.*, PX4-O. At best, they show Gilimex received mail on certain days. They do not—and cannot—prove Gilimex made a $69 million purchase from Blazemax. Br.21–22.

Fundamentally, the notion that Gilimex conducted its business with Blazemax through hardcopy documents (Opp.3)—and kept track of purchase orders through handwritten package logs—is belied by the record. Gilimex, Blazemax, and third-party suppliers routinely discussed purchase orders over email. DX202-03; DX206-07; DX209-10. Hung himself testified at his deposition that Gilimex employees "work through e-mails" daily and "[e]ven if they communicate

by other ways, they still have to put it in the e-mail." DX1002 at 42:17-24.[8] And many documents involving Gilimex and Blazemax used *electronic* stamps, Tr.115:14-116:16, suggesting they were not sent by mail.

## II. THE COURT MUST IMPOSE TERMINATING SANCTIONS

Gilimex does not dispute that, if the Court credits Amazon's allegations, it can dismiss the case. Opp.23-27. Gilimex merely asserts in a footnote that, even if it had fabricated documents, terminating sanctions would not be "appropriate." Opp.26 n.22. Gilimex cites *Amerisource Corp. v. Rx USA Int'l Inc.*, but the fabricated documents there did not cause the party seeking sanctions to "change its discovery, settlement, or litigation strategy." 2010 WL 2730748, at *7 (E.D.N.Y. July 6, 2010). That is clearly not the case here: every aspect of Amazon's litigation strategy would have been different had it known the $69-million Blazemax PO was fictional. Br.24. Gilimex does not (and cannot) meaningfully dispute that dismissal is the only adequate remedy for the fabrication of tens of millions of dollars in damages.

Gilimex otherwise argues that Amazon has not met its evidentiary burden, Opp.23-26, but that argument fails. Amazon has proffered staggering evidence that Gilimex has committed fraud on the Court. Gilimex relies upon *Bravia Capital Partners Inc. v. Fike*, where plaintiff's CEO submitted an agreement with a forged signature to the court, but he self-reported that issue before any motion for sanctions was filed. 2015 WL 1332334, at *17-18 (S.D.N.Y. Mar. 25, 2015). That court declined to impose sanctions absent evidence the CEO's submission of the forged document was more than "negligence." *Id.* at *18. Unlike *Bravia*, there is substantial evidence that Gilimex

---

[8] Gilimex falsely claims this testimony concerned WhatsApp only. Opp.3 n.2. The transcript shows otherwise. DX1002 at 43:19-24 (immediately following above-quoted testimony, reiterating "*all*...communication needed to be note[d] down in…emails[;] [i]t's like a memo of the work," even if employees also used WhatsApp).

11

intentionally fabricated not one but over 100 documents, Br.9-22, and Gilimex denied that any documents were fraudulent until it was caught by Amazon, Br.5-6. The remaining cases cited by Gilimex are likewise inapposite, as movants there—unlike Amazon—failed to prove a pattern of intentional, bad-faith conduct. Opp.23-24 (citing *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 397-406 (S.D.N.Y. 2010) (defendant "rebut[ted] nearly all of [plaintiff's] evidence" he committed discovery misconduct by sending anonymous emails); *Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.*, 327 F. Supp. 3d 673, 687-89 (S.D.N.Y. 2018) (no sanctions where plaintiff failed to cite specific misrepresentations or prove defendant acted in bad faith); *Duka v. All. Tri-State Constr., Inc.*, 2021 WL 4461019, at *5 (S.D.N.Y. Sept. 29, 2021) (no terminating sanctions because defendants failed to prove plaintiff sought to bribe a witness and there was no pattern of misbehavior)).

      Nor can Gilimex distinguish Amazon's cited cases where courts have granted terminating sanctions. Opp.24-25. As Amazon made clear in its opening brief, the evidence here reveals far more egregious misconduct than that reflected in the mine run of cases involving terminating sanctions. Br.27-29. And insofar as Gilimex asserts terminating sanctions are typically limited to when the sanctioned parties admitted to wrongdoing, Opp.25 (citing *Network Data Rooms, LLC v. Saulrealism LLC*, 2022 WL 17404501, at *2 (S.D.N.Y. Dec. 2, 2022); *Lawrence*, 2018 WL 3611963, at *2, *6), Gilimex has it backwards: a party's lack of remorse for its misconduct counsels *in favor of* imposing terminating sanctions. *McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 462 (S.D.N.Y. 2002) (plaintiff "deserve[d] to be punished severely for perpetrating a fraud upon this Court" where "she ha[d] shown no remorse for her deceptions, offered no apologies for her lies, and never corrected her misstatements").

Gilimex is unrepentant. Gilimex brazenly portrays itself as a victim, and it goes as far as to request that the Court sanction *Amazon* for uncovering its fraud. Opp.26-28. This request is clearly frivolous (and in violation of Local Civil Rule 7.1(a)(4)). But Gilimex's intransigence only shows why terminating sanctions are necessary.

Amazon respectfully submits that Gilimex's lack of remorse and the severity of its misconduct necessitate terminating sanctions and an award of fees and costs. Otherwise, Gilimex will be rewarded for its gambit, and its lies will continue, infecting the entire trial. *Almeciga v. Ctr. for Investigative Reporting, Inc.*, 185 F. Supp. 3d 401, 435 (S.D.N.Y. 2016) ("[W]here the misconduct at issue is the knowing fabrication of the critical allegations underlying the complaint that plaintiff must prove in order to recover, it would be pointless to allow the case to proceed. Dismissal is virtually required under such circumstances.").

## **CONCLUSION**

For these reasons, the Court should impose terminating sanctions, grant Amazon leave to seek attorneys' fees and costs, and deny Gilimex's sanctions request.

Dated: October 22, 2025
      New York, New York

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Jordan Estes*
    Barry H. Berke
    Jordan Estes
    Grace E. Hart
    Daniel M. Ketani
    GIBSON, DUNN & CRUTCHER LLP
    200 Park Avenue
    New York, NY 10166
    Tel.: (212) 351-4000
    bberke@gibsondunn.com
    jestes@gibsondunn.com
    ghart@gibsondunn.com
    dketani@gibsondunn.com

    Andrew LeGrand (admitted *pro hac vice*)
    GIBSON, DUNN & CRUTCHER LLP
    2001 Ross Avenue
    Ste 2100
    Dallas, TX 75201
    Tel.: (214) 698-3100
    alegrand@gibsondunn.com

    *Attorneys for Defendant Amazon.com Services LLC*

## **CERTIFICATE OF COMPLIANCE**

I, Jordan Estes, certify that Defendant Amazon.com Services LLC's Post-Hearing Reply Brief in Further Support of its Motion for Sanctions complies with the requirements of Local Rule 7.1(c).

I further certify that this Brief was prepared with a computer.

I further certify that this Brief contains 3,498 words, including any footnotes and excluding only those sections that are exempted under Local Rule 7.1(c). In preparing this certificate of compliance, I have relied on the word count of the word-processing system used to prepare this Brief.

Dated: October 22, 2025

/s/ *Jordan Estes*
Jordan Estes
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Tel.: (212) 351-4000
bberke@gibsondunn.com