UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BINH THANH IMPORT EXPORT PRODUCTION & TRADE JOINT STOCK CO., d/b/a GILIMEX, INC.,<br><br>                    Plaintiff,<br><br>-against-<br><br>AMAZON.COM SERVICES, LLC, d/b/a AMAZON ROBOTICS,<br><br>                    Defendant. | Case No. 1:23-cv-00292-LGS |

**DEFENDANT AMAZON.COM SERVICES LLC'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT..................................................................................................1

BACKGROUND ...................................................................................................................3

    A.   The Sanctions Investigation.................................................................................3

    B.   The Sanctions Motion and Expedited Discovery ...........................................4

    C.   The Hearing and Decision ...................................................................................5

    D.   Amazon's Fees and Costs.....................................................................................7

ARGUMENT ........................................................................................................................9

I.       AMAZON SHOULD BE AWARDED ATTORNEYS' FEES AND EXPENSES..........................................................................................................9

II.      AMAZON'S REQUESTED FEES ARE REASONABLE.......................................12

    A.   Gibson Dunn's Time Spent Investigating and Litigating the Fraud Was Reasonable...........................................................................................................12

    B.   Gibson Dunn's Hourly Rates Are Reasonable. .............................................15

III.    AMAZON'S REQUESTED COSTS ARE REASONABLE....................................19

CONCLUSION....................................................................................................................22

i

**TABLE OF AUTHORITIES**

**Cases**                                                                                          **Pages**

*Alcon Vision, LLC v. Lens.com, Inc.*,
    2023 WL 8072507 (E.D.N.Y. Nov. 21, 2023) ....................................................................12

*An v. Despins*,
    2024 WL 1157281 (S.D.N.Y. Mar. 18, 2024), *appeal dismissed*, 2024 WL
    4524742 (2d Cir. Aug. 13, 2024) ............................................................................. 17, 19

*Annie Oakley Enterprises, Inc. v. Amazon.com, Inc.*,
    2021 WL 2373779 (S.D. Ind. June 10, 2021)......................................................................7

*ATX Debt Fund 1, LLC v. Paul*,
    2024 WL 2093387 (S.D.N.Y. May 9, 2024).......................................................................17

*Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*,
    2002 WL 1733681 (S.D.N.Y. July 26, 2002)......................................................................19

*Carnegie Inst. of Wash. v. Fenix Diamonds LLC*,
    2024 WL 706964 (S.D.N.Y. Feb. 21, 2024), *appeal docketed*, No. 2024-1804
    (Fed. Cir. May 9, 2024) .....................................................................................................19

*Carrington v. Graden*,
    2020 WL 5758916 (S.D.N.Y. Sept. 28, 2020) ...................................................................19

*Cerco Bridge Loans 6 LLC v. Schenker*,
    2026 WL 710363 (S.D.N.Y. Mar. 13, 2026).......................................................................17

*Cerruti 1881 S.A. v. Cerruti, Inc.*,
    169 F.R.D. 573 (S.D.N.Y. 1996)........................................................................................11

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) ...............................................................................................................9

*China AI Cap. Ltd. v. DLA Piper LLP (US)*,
    2025 WL 2466633 (S.D.N.Y. May 22, 2025)......................................................................17

*City of Almaty, Kaz. v. Ablyazov*,
    2022 WL 1406248 (S.D.N.Y. May 4, 2022)........................................................................16

*Doe 1 v. E. Side Club, LLC.*,
    2023 WL 4174141 (S.D.N.Y. June 23, 2023)......................................................................16

*Goodyear Tire & Rubber Co. v. Haeger*,
    581 U.S. 101 (2017) ................................................................................................ 12, 13, 15

*Google LLC v. Starovikov*,
    2023 WL 2344935 (S.D.N.Y. Mar. 3, 2023)............................................................... 12, 15

*Holick v. Cellular Sales of N.Y., LLC*,
    48 F.4th 101 (2d Cir. 2022)................................................................................................12

*Hong v. Mommy's Jamaican Mkt. Corp.*,
  2024 WL 3824394 (S.D.N.Y. Aug. 14, 2024), *aff'd sub nom. Lee v. Hong*,
  2025 WL 3637495 (2d Cir. Dec. 16, 2025)........................................................ 10, 11

*Int'l Cards Co., Ltd. v. MasterCard Int'l Inc.*,
  2017 WL 3575254 (S.D.N.Y. Aug. 17, 2017) (Schofield, J.) ........................................ 9, 10

*Int'l Techs. Mktg., Inc. v. Cognyte Techs. Ltd.*,
  2022 WL 11280876 (S.D.N.Y. Oct. 19, 2022)..................................................10, 11, 15, 19

*Johnson v. Ga. Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974)........................................................................17

*Jung v. Neschis*,
  2009 WL 762835 (S.D.N.Y. Mar. 23, 2009).........................................................11

*Klipsch Grp., Inc. v. ePRO E-Com. Ltd.*,
  880 F.3d 620 (2d Cir. 2018)........................................................................15

*Laba v. JBO Worldwide Supply Pty Ltd.*,
  2023 WL 4985290 (S.D.N.Y. July 19, 2023).........................................................10

*McKenzie-Morris v. VP Recs. Retail Outlet Inc.*,
  2023 WL 4422495 (S.D.N.Y. July 10, 2023).........................................................13

*Millea v. Metro-N. R. Co.*,
  658 F.3d 154 (2d Cir. 2011)........................................................................12

*Miltland Raleigh-Durham v. Myers*,
  840 F. Supp. 235 (S.D.N.Y. 1993) ..................................................................21

*Oakley v. MSG Networks, Inc.*,
  2025 WL 3041936 (S.D.N.Y. Oct. 31, 2025).........................................................18

*Reiter v. MTA N.Y.C. Transit Auth.*,
  457 F.3d 224 (2d Cir. 2006)........................................................................16

*Restivo v. Hessemann*,
  846 F.3d 547 (2d Cir. 2017)........................................................................16

*Rossbach v. Montefiore Med. Ctr.*,
  2021 WL 3421569 (S.D.N.Y. Aug. 5, 2021), *aff'd in part, vacated in part,
  remanded*, 81 F.4th................................................................................13

*Rossbach v. Montefiore Med. Ctr.*,
  2021 WL 4940306 (S.D.N.Y. Oct. 22, 2021), *aff'd in part, vacated in part,
  remanded*, 81 F.4th................................................................................13

*Rossbach v. Montefiore Med. Ctr.*,
  81 F.4th 124 (2d Cir. 2023)....................................................................... 9, 10

*Rybner v. Cannon Design, Inc.*,
  1996 WL 470668 (S.D.N.Y. Aug. 20, 1996) ..........................................................11

*Scholastic, Inc. v. Stouffer*,
     221 F. Supp. 2d 425 (S.D.N.Y. 2002)..................................................................................11

*Shangold v. Walt Disney Co.*,
     2006 WL 71672 (S.D.N.Y. Jan. 12, 2006)...........................................................................11

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.*,
     2026 WL 850548 (S.D.N.Y. Mar. 27, 2026).......................................................... 16, 17, 18

*Tessemae's LLC v. Atlantis Cap. LLC*,
     2019 WL 2635956 (S.D.N.Y. June 27, 2019)......................................................................16

*Trs. of the N.Y. State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors,
     LLC*,
     102 F.4th 572 (2d Cir. 2024).......................................................................................... 12, 14

*United States Bank Nat'l Ass'n v. Dexia Real Est. Cap. Mkts.*,
     2016 WL 6996176 (S.D.N.Y. Nov. 30, 2016)......................................................................15

*Usherson v. Bandshell Artist Mgmt.*,
     2020 WL 3483661 (S.D.N.Y. June 26, 2020)......................................................................11

*Vista Outdoor Inc. v. Reeves Fam. Tr.*,
     2018 WL 3104631 (S.D.N.Y. May 24, 2018).................................................................16, 17

*Zama Cap. Advisors LP & Zama Cap. Strategy Advisors LP v. Universal Ent.
     Corp.*,
     2025 WL 3525044 (S.D.N.Y. Dec. 9, 2025).......................................................................18

Pursuant to the Court's July 9, 2026 Order, Dkt. 271 (the "Decision"), Defendant Amazon.com Services LLC ("Amazon") respectfully submits this memorandum of law in support of its motion for attorneys' fees and costs for investigating and proving Plaintiff Binh Thanh Import Export Production & Trade Joint Stock Co., d/b/a Gilimex, Inc.'s ("Gilimex") fraud on the court.

## PRELIMINARY STATEMENT[1]

In accordance with the Decision, Amazon respectfully requests that the Court "assess[] against Gilimex the costs Amazon incurred to investigate and prove the fraud" by Gilimex on the Court. Decision at 22. The Court found by clear and convincing evidence that "Gilimex acted with 'willfulness, bad faith, or reasonably serious fault'" by committing three frauds on the court: (1) the fabrication of 90 documents produced during fact discovery; (2) the "presentation of false and incredible testimony to excuse that fraud"; and (3) the fabrication of a $69 million November 2021 purchase order. *Id*. at 14. The fraud was concealed until the eve of trial. Uncovering and proving the fraud required not just many hours of attorney time, but also a team of forensic accounting and digital forensics experts. Proving the fraud was especially time-consuming because Gilimex's litigation conduct forced Amazon to investigate new issues repeatedly: it denied the fraud, offered perjured testimony from a low-level employee, and—each time Amazon challenged a document —supplemented its productions with new documents in the weeks before the hearing. The law requires Gilimex to take responsibility for the legal expenses caused by its willful, bad faith conduct.

Amazon seeks approximately $3.6 million of its attorneys' fees and $1.4 million of its costs to prove Gilimex's fraud, expose Gilimex's coverup, and refute the false testimony by Gilimex's

---

[1] Unless otherwise specified, capitalized terms herein maintain the definitions in the Decision.

witnesses at the evidentiary hearing. Amazon's fees arise from time reasonably spent by its attorneys at Gibson, Dunn & Crutcher LLP ("Gibson Dunn") on, among other things, investigating the fraud, uncovering the fraud, moving for sanctions, conducting expedited pre-hearing discovery regarding the fraudulent documents and Gilimex's rogue employee theory, preparing for and presenting evidence at the evidentiary hearing, and drafting the post-hearing briefing (the "Sanctions Litigation").[2] The fees that Amazon requests are reasonable. Amazon is only seeking fees for attorney time spent between May 23 and October 22, 2025 on the Sanctions Litigation— not Amazon's significant prior work regarding Gilimex's fraudulent raw materials damages claim. Amazon has limited the fees it is seeking to fees for two partners, its co-lead trial counsel Barry Berke and Jordan Estes, and the core team that worked on the Sanctions Litigation. The volume of work by the Sanctions Litigation team is reflective of Gilimex's "implausible, ever-changing explanations" for the fraud, Decision at 20, requiring substantial, time-consuming efforts by the Gibson Dunn team to understand and disprove Gilimex's coverup. And Gibson Dunn's customary billing rates are reasonable and in line with market rates for leading lawyers in the Southern District of New York. Further, out of an abundance of caution and notwithstanding current market rates, Amazon has adjusted the requested billing rates for Gibson Dunn's associates, law clerk, and paralegal downward from Gibson Dunn's market rates to rates well within a range that has been accepted as reasonable in this District, even though recent, industry-wide market rate increases could support higher rates.

Amazon's fees and costs reflect the complexity and volume of work reasonably needed to discover and prove Gilimex's fraud on the Court and to prevail in the Sanctions Litigation.

---

[2] As set forth further below and in the Declaration of Jordan Estes (the "Estes Declaration"), the Gibson Dunn team consisted of attorneys, as well as one paralegal and one law clerk, Ingrid Cherry, who was admitted as an attorney to the bar in October 2025. Estes Decl. ¶ 36.

2

Amazon respectfully requests that the Court award it $3,570,377.85 in attorneys' fees and $1,392,162.58 in costs.

## BACKGROUND

Amazon respectfully refers to the Court's thorough Decision for a recitation of the facts concerning Gilimex's conduct, Dkt. 271, as well as to the chronology accompanying Amazon's sanctions motion, Dkt. 253-1. For the Court's convenience, a brief summary of the background relevant to this motion follows.

### A.    The Sanctions Investigation

In March 2025, the Court denied summary judgment to Amazon and scheduled a trial for July 21, 2025. Dkts. 110, 111. Three months before the scheduled trial, Amazon discovered that certain documents produced by Gilimex relating to its purported damages—specifically the $69 million November PO and the November PO Meeting Minutes—either lacked metadata or contained metadata suggesting they were created during litigation. *See* Dkt. 138 at 3-5. On May 2, 2025, Amazon moved *in limine* to exclude this evidence containing metadata discrepancies, which was produced after the end of fact discovery. *Id*. In support of its motion, Amazon submitted a declaration from a digital forensic expert working for Nardello & Co. ("Nardello"), Andrew Tappeto, Dkt. 141, to explain the metadata discrepancies. In response to Amazon's motion, on May 21, 2025, Gilimex produced scanned hard copies of the November PO Meeting Minutes and a sworn declaration from its Chairman, Le Hung, Dkt. 253-1 at 3, representing that the November PO was "an authentic scanned hard copy of the physical purchase order," Decision at 4.

At this point, Amazon began the work that would lead to the sanctions motion. On May 27, 2025, Amazon sent Gilimex a letter asking to inspect the new November PO Meeting Minutes, which appeared to have been created for litigation, as well as the November PO and Ninety

3

Fraudulent Supplier Documents, which also contained metadata discrepancies. *Id*. at 2-4. Gilimex declined Amazon's request, instead representing that all the documents Amazon asked to inspect were hard-copy documents with wet-ink signatures. *Id*. at 4.

### B.    The Sanctions Motion and Expedited Discovery

On June 9, 2025, Amazon filed a pre-motion letter seeking sanctions on the basis that Gilimex fabricated the November PO, the November PO Meeting Minutes, and the Ninety Fraudulent Supplier Documents. Decision at 5. In support of its motion, Amazon submitted evidence of Gilimex's fraud, including declarations from multiple Gilimex third-party suppliers and two experts from Nardello: forensic accountant Alberto Orozco and Jean Chow-Callam, an expert on "chops"—seals and signatures used for Vietnamese business documents. *Id*. at 5, 7-8; Dkt. 176-5; Dkt. 176-6. Gilimex submitted sworn declarations in opposition from Hung, Gilimex CEO Nguyet Pham, and Blazemax principal Le Thi Kim Oanh, disputing Amazon's claims and attesting to the authenticity of the challenged documents. Decision at 5; Dkt. 183-2 ¶ 3.

On June 23, 2025, the Court adjourned the trial, scheduled an evidentiary hearing for August 4, 2025 (later adjourned to August 12, 2025, the "Hearing"), and ordered limited pre-Hearing discovery. Dkts. 190, 212. Gilimex produced more than 5,500 documents—including many Vietnamese-language documents and complex spreadsheets—on a rolling basis over the next seven weeks. Estes Decl. ¶ 4; Dkt. 253-1 at 5. Gilimex continued to produce new purportedly contemporaneous documents on a weekly, if not daily, basis leading up to even 72 hours before the Hearing, requiring Amazon to investigate the authenticity of each document and respond to Gilimex's new explanations. Dkt. 253-1 at 5-8. As the Court recognized, "each time Amazon challenged a particular document, Gilimex supplemented its productions with new materials to corroborate the document's authenticity and gave new explanations for the documents," including new versions of the fraudulent November PO. Decision at 5. Gilimex's shifting explanations and

4

voluminous suspect documents multiplied Amazon's legal and forensic accounting expenses. Estes Decl. ¶¶ 4, 12, 13.

Amazon's expenses on the Sanctions Litigation compounded because of "a dramatic disclosure" less than a month before the Hearing: Gilimex claimed that "a low-level employee," Tien Luong, "had come forward and admitted fabricating numerous demand letters and purchase orders." Decision at 6. Gilimex identified more than one hundred fraudulent documents allegedly fabricated by Luong, including the Ninety Fraudulent Supplier Documents. *Id*. By proffering Luong's "implausible, far-fetched" story, Decision at 15, Gilimex significantly added to the attorney time to investigate his claims and unravel them at the Hearing. Estes Decl. ¶¶ 4, 12.

Even less than a week before the Hearing, Gilimex continued to suggest that additional witnesses might appear at the Hearing who never materialized, resulting in more attorney time to prepare for the Hearing. *See* Dkt. 229. Those witnesses included Gilimex CEO Nguyet Pham; Gilimex employee Bich Hanh; and Blazemax owner and Hung's sister-in-law Le Thi Kim Oanh. *Id*. at 3-4.

### C.    The Hearing and Decision

On August 12, 2025, the Court held the Hearing. Decision at 7. Amazon called four witnesses: Amazon supply chain executive Kelly Jackson; forensic accounting expert Alberto Orozco; digital forensics expert Andrew Tappeto; and financial investigations and "chops" expert Jean Chow-Callam. *Id*. at 7-8. Gilimex called two witnesses, who Amazon cross-examined: Hung and Luong. *Id*. at 9-10. Throughout the Hearing, Gilimex's witnesses made false statements to the Court, including its "coverup story – presented directly to the Court via declaration and perjured testimony." *Id*. at 14-15. Following the Hearing, Amazon filed a moving and reply brief and a chronology of the fraud requested by the Court in support of its motion for sanctions,

completing its briefing on October 22, 2025; Gilimex continued to dispute the fraud and sought sanctions against Amazon. *Id*. at 24.

On July 9, 2026, the Court granted Amazon's motion for sanctions and dismissed this case with prejudice. Dkt. 271. As the Court observed, "Gilimex's fraud falls into three categories: (1) the fabrication of the Ninety Fraudulent Supplier Documents produced during fact discovery, which Gilimex admits are fake, (2) the presentation of false and incredible testimony to excuse that fraud and (3) the fabrication of the November PO." Decision at 14. The Court found that "the forensic evidence, the absence of any contemporaneous corroboration and Gilimex's implausible, ever-changing explanations establish by clear and convincing evidence," *id*. at 20, that Gilimex "committed fraud on the court," *id*. at 14. The Court confirmed that "metadata revealed that many of the documents" that Gilimex produced to substantiate its $69 million raw materials claims "were created two days before their production and were likely generated using Excel's print-to-PDF function -- not scanned from paper originals, as Gilimex claimed." *Id*. at 14-15. The Court emphasized that Gilimex cannot "escape responsibility by blaming a low-level employee whose testimony was implausible, far-fetched and utterly lacking credibility." *Id*. Further, the Court credited each of Amazon's expert witnesses from Nardello: Tappeto, Orozco, and Chow-Callam. *Id*. at 7-8, 15, 17-18. The Court explicitly held that Gilimex "acted with willfulness, bad faith, or reasonably serious fault." *Id*. at 14.

The Court also denied Gilimex's request for sanctions and granted Amazon leave to seek its fees and costs, finding that the "record warrants . . . assessing against Gilimex the costs Amazon incurred to investigate and prove the fraud." *Id.* at 22, 24-25.

D.    **Amazon's Fees and Costs**

As set forth below, and in the materials accompanying the Estes Declaration,[3] *see* Ex. 1, Amazon's requested attorneys' fees total $3.6 million—a product of the number of hours Gibson Dunn spent investigating and proving Gilimex's fraud, *infra* § II(A), and Gibson Dunn's reasonable hourly rates, *infra* § II(B).[4]

These fees are for time spent by Gibson Dunn between May 23, 2025 (following sworn representations made by Gilimex's Chairman in opposing Amazon's motion in limine to exclude the November PO) and October 22, 2025 (when Amazon filed its post-Hearing reply brief) on the Sanctions Litigation. Estes Decl. ¶ 10. They do not include the significant expenses that Amazon incurred earlier in litigation on Gilimex's fraudulent raw materials damages claim. *Id.* ¶¶ 10-11. And they do not include time spent by Gibson Dunn attorneys other than core members of the Sanctions Litigation team or any partners other than co-lead trial counsel Barry Berke and Jordan Estes. *Id.* ¶ 11. The time can be broken down into time spent by Gibson Dunn in four phases of the Sanctions Litigation, *see id.* ¶ 12:

- **Phase One (May 23 to June 23, 2025)**: Sanctions investigation and motion to the Court – **$418,323.57**.

---

[3] All exhibits refer to those accompanying the Estes Declaration, attached hereto.

[4] Amazon paid Gibson Dunn for its fees related to the Sanctions Litigation as part of an annual, negotiated flat fee for all of the legal services that Gibson Dunn provides to Amazon on an annual basis. Estes Decl. ¶ 9. That fee for 2025 far exceeds the Gibson Dunn fees that Amazon seeks from Gilimex. *Id.*; *see also Annie Oakley Enterprises, Inc. v. Amazon.com, Inc.*, 2021 WL 2373779, at *10 (S.D. Ind. June 10, 2021) (awarding fees to Amazon notwithstanding and without requiring disclosure of Amazon's flat fee arrangement with counsel).

- **Phase Two (June 24 to July 17, 2025)**: Expedited pre-Hearing discovery, forensic analysis of Gilimex business records and spreadsheets, and preparation for the August 12 Hearing – **$714,069.42**.

- **Phase Three (July 18 to August 12, 2025)**: Analyzing new documents produced in connection with the Tien Luong disclosure and the production of new versions of the November PO and November PO Meeting Minutes beginning on July 29, 2025; working with experts to update the forensic analysis to account for the new disclosures, preparation for the Hearing including witnesses, cross-examination outlines for newly disclosed witnesses, exhibit lists, and opening statement, and participation at the evidentiary hearing itself  – **$1,692,885.74**.

- **Phase Four (August 13 to October 22, 2025)**: Preparation of post-Hearing moving brief, chronology, and reply brief – **$745,099.12**.

Amazon also seeks to recover costs for Nardello's work on the Sanctions Litigation, including time spent by Amazon's three testifying experts employed by Nardello, in the amount of $1,392,162.58.  *Id.* ¶¶ 44-45.

With respect to Amazon's costs incurred for work performed by Nardello, Amazon worked with several investigators at Nardello who examined documents, including inventory reports, purchase orders, meeting minute spreadsheets, and the attendant metadata, to help identify Gilimex's fraud and unravel its shifting explanations.  *Id*. ¶ 13.  Specifically, Amazon engaged Nardello testifying experts Ms. Chow-Callam, Mr. Tappeto, and Mr. Orozco.  *Id*. ¶ 45.  Further, Amazon worked with Nardello Managing Director Benet Kearney, *id.* ¶ 45(a), who led Nardello's investigative efforts for Amazon, as well as Managing Director Nicholas Blank, *id*. ¶ 45(e).  A team of directors and senior analysts/investigators also supported Nardello's investigative efforts

8

by conducting research on Gilimex, Blazemax, and the personnel of those companies; identifying and reviewing inventory reports, purchase orders, and corporate documents for further analysis by Mr. Orozco; and conducting initial analysis of purchase orders and other Gilimex or Blazemax documents for further analysis by Ms. Chow-Callam. *Id*. ¶ 45(f). The $1,392,162.58 in Nardello fees consists of, in addition to costs and sales tax, $938,112 for the work of Ms. Kearney, Mr. Blank, and the team of investigators, and $313,878 for the work of the three testifying experts: Ms. Chow-Callam ($165,120, based on 192 hours at an hourly rate of $860), Mr. Tappeto ($28,014, based on 40.6 hours at an hourly rate of $690), and Mr. Orozco ($120,744, based on 140.4 hours at an hourly rate of $860).

## ARGUMENT

I. **AMAZON SHOULD BE AWARDED ATTORNEYS' FEES AND EXPENSES.**

It is well-established that federal courts may exercise their inherent power to "fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991). Not only do courts have the discretion to "outright dismiss[]" a lawsuit, but the "less severe sanction of an assessment of attorney's fees is undoubtedly within a court's inherent power as well." *Id*. at 45.

As the Court found in the Decision, the record warrants "assessing against Gilimex the costs Amazon incurred to investigate and prove the fraud." Decision at 22. To "impose a sanction of attorney's fees and costs pursuant to its inherent power," a court must find "clear evidence that the challenged conduct is (1) entirely without color . . . and (2) taken in bad faith." *Int'l Cards Co., Ltd. v. MasterCard Int'l Inc.*, 2017 WL 3575254, at *2 (S.D.N.Y. Aug. 17, 2017) (Schofield, J.) (citation omitted); *see Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 142 (2d Cir. 2023) (a court must find that a party "acted in bad faith in engaging in the sanctionable conduct"). Upon a finding of bad faith, "a court may order a party to pay the other side's legal fees that would not

9

have been incurred *but for* the bad faith." *Hong v. Mommy's Jamaican Mkt. Corp.*, 2024 WL 3824394, at *13 (S.D.N.Y. Aug. 14, 2024), *aff'd sub nom. Lee v. Hong*, 2025 WL 3637495 (2d Cir. Dec. 16, 2025) (emphasis added).

Here, an award of attorneys' fees and costs is appropriate because Gilimex committed fraud on the court: fabricating evidence, covering it up, and presenting perjured testimony to the Court. *See* Decision at 14-15. The Court found "by clear and convincing evidence, that Gilimex committed fraud on the court" and concluded that the "record warrants . . . assessing against Gilimex the costs Amazon incurred to investigate and prove the fraud." *Id*. at 22. The Court expressly found that Gilimex "acted with willfulness" and in "bad faith." *Id*. at 14; *see Int'l Cards*, 2017 WL 3575254, at *2. "Imposing sanctions in this instance serves to 'vindicat[e] judicial authority' and make [Amazon,] the wronged party 'whole for expenses caused by his opponent's obstinacy.'" *Int'l Techs. Mktg., Inc. v. Cognyte Techs. Ltd.*, 2022 WL 11280876, at *4 (S.D.N.Y. Oct. 19, 2022) (quoting *Chambers*, 501 U.S. at 46).

Courts in the Second Circuit have repeatedly held that an award of attorneys' fees is merited where, as here, a party committed fraud on the court or acted in bad faith. *See Rossbach*, 81 F.4th at 139, 142 (affirming attorneys' fees award where plaintiff provided false testimony and "willfully and in bad faith fabricated evidence . . . and attempted to mislead" the court); *Hong*, 2024 WL 3824394, at *7, *12 (awarding attorneys' fees where there was "clear and convincing evidence that a fraud ha[d] been perpetrated on the Court," including "flat-out misstatements of fact made to the Court"); *Laba v. JBO Worldwide Supply Pty Ltd.*, 2023 WL 4985290, at *13 (S.D.N.Y. July 19, 2023) (attorneys' fees were appropriate where a party committed fraud on the court by

10

knowingly fabricating documents and submitting false declarations and testimony).[5]   It is well-established that "a finding that a litigant successfully defrauded the court is sufficient grounds for imposing monetary sanctions." *Int'l Techs. Mktg.*, 2022 WL 11280876, at *4 (citation omitted).

Awarding fees and costs is "[a] well-accepted measure of sanctions" where a party like Gilimex has engaged in "bad faith conduct that unnecessarily prolongs a proceeding and multiplies the expense incurred by an adversary." *Usherson v. Bandshell Artist Mgmt.*, 2020 WL 3483661, at *20 (S.D.N.Y. June 26, 2020).  The Court "has inherent authority to impose sanctions based on [Gilimex] submitting false declarations to the Court and making misrepresentations to the Court." *Hong*, 2024 WL 3824394, at *15.  Gilimex significantly increased Amazon's fees and expenses by forcing it to devote thousands of attorney hours to disproving "implausible, ever-changing explanations" for its fraudulent documents.  Decision at 20.  An "award of [attorneys'] fees and costs" is especially "appropriate" in these circumstances, "given . . . [Gilimex's] pattern of intentional bad faith conduct and fail[ure] to correct [its] fraudulent submissions, even when confronted with evidence undermining the validity of those submissions." *Scholastic, Inc. v. Stouffer*, 221 F. Supp. 2d 425, 444 (S.D.N.Y. 2002).

Gilimex continues to deny the fraud to this day: through its counsel, Gilimex called the Decision "wrong on both the facts and the law" and described the truth—that it fabricated documents for litigation—a "speculative narrative."  *See* Briana Warsing, *Amazon Wins Dismissal of $840M Lawsuit Filed by Supplier, After Judge's Finding of 'Fraud on the Court'*, Nat'l L.J.

---

[5] *See Jung v. Neschis*, 2009 WL 762835, at *21 (S.D.N.Y. Mar. 23, 2009) (awarding attorneys' fees where plaintiff fabricated evidence); *Shangold v. Walt Disney Co.*, 2006 WL 71672, at *6 (S.D.N.Y. Jan. 12, 2006) (imposing "an award of attorneys' fees and costs" where plaintiff fabricated evidence); *Cerruti 1881 S.A. v. Cerruti, Inc.*, 169 F.R.D. 573, 583 (S.D.N.Y. 1996) (awarding attorneys' fees where parties produced false documents); *Rybner v. Cannon Design, Inc.*, 1996 WL 470668, at *5 (S.D.N.Y. Aug. 20, 1996) (Sotomayor J.) (awarding fees where fraud was uncovered during the course of discovery).

11

(July 10, 2026).  Amazon is legally entitled to its fees and costs incurred because of Gilimex's recalcitrant, willful, and bad faith conduct.

## II.    AMAZON'S REQUESTED FEES ARE REASONABLE.

Where, as here, an award of attorneys' fees is warranted, courts calculate fees by multiplying the "reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).  Courts routinely apply this "lodestar" approach when imposing sanctions under their inherent authority.  *See Alcon Vision, LLC v. Lens.com, Inc.*, 2023 WL 8072507, at *3 (E.D.N.Y. Nov. 21, 2023).   There is a "strong presumption" that the "lodestar calculation" produces a "presumptively reasonable fee."  *Google LLC v. Starovikov*, 2023 WL 2344935, at *2 (S.D.N.Y. Mar. 3, 2023) (quoting *P.J. by & through W.J. v. Conn. State Bd. of Educ.*, 931 F.3d 156, 169 (2d Cir. 2019) and *Millea*, 658 F.3d at 166).

### A.    Gibson Dunn's Time Spent Investigating and Litigating the Fraud Was Reasonable.

In evaluating a motion for attorneys' fees, courts consider the reasonableness of the hours of attorney work at issue.  *See Millea*, 658 F.3d at 166.  An inherent-power fee award is generally limited to "to those [fees] that would not have been incurred *but for* the bad faith."  *Trs. of the N.Y. State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors, LLC*, 102 F.4th 572, 615 (2d Cir. 2024) (emphasis added); *see also supra* § I.  Courts therefore consider the "causal connection" between the attorney work and the sanctionable conduct, asking "whether a given legal fee . . . would or would not have been incurred in the absence of the sanctioned conduct."  *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 104, 109-10 (2017).  Courts retain "broad discretion to calculate fee awards under that standard."  *Id*. at 104; *see Holick v. Cellular Sales of N.Y., LLC*, 48 F.4th 101, 105 (2d Cir. 2022) (recognizing courts' "considerable discretion in determining what

12

constitutes reasonable attorney's fees in a given case"). The "essential goal . . . is to do rough justice, not to achieve auditing perfection." *Goodyear*, 581 U.S. at 110 (citation modified).

Here, Amazon only seeks attorneys' fees that are directly related to its investigation and litigation of Gilimex's fraud, which are indisputably "legal bills that the litigation abuse occasioned." *Id*. at 108. Gilimex's "willful misconduct in fabricating evidence . . . caused [Amazon] to incur the significant expense of investigating [its] actions and litigating the evidentiary hearing and [its] motion for sanctions." *Rossbach v. Montefiore Med. Ctr.*, 2021 WL 3421569, at *8 (S.D.N.Y. Aug. 5, 2021), *aff'd in part, vacated in part, remanded*, 81 F.4th at 124. Imposing a sanction in the amount of fees "associated with addressing [Gilimex's] fabrication" is necessary "to restore [Amazon,] the prejudiced part[y] to the same position they would have been in absent [Gilimex's] misconduct." *Id*.

To support its motion for fees, Amazon has filed "contemporaneous time records that show for each attorney, the date, the hours expended, and the nature of the work done." *McKenzie-Morris v. VP Recs. Retail Outlet Inc.*, 2023 WL 4422495, at *2 (S.D.N.Y. July 10, 2023); *see* Estes Decl. ¶ 8, Ex. 1. Because Amazon is only seeking fees for Gibson Dunn's work that was directly related to the Sanctions Litigation, any time spent on work that was not related to the Sanctions Litigation has been excluded from the time records. *See* Estes Decl. ¶¶ 8, 10, Ex. 1. As these records make clear, *see* Ex. 1, the tasks that Gibson Dunn undertook "were integrally connected with the conduct necessitating the imposition of sanctions and the hours expended on those tasks were reasonable." *Rossbach v. Montefiore Med. Ctr.*, 2021 WL 4940306, at *2 (S.D.N.Y. Oct. 22, 2021), *aff'd in part, vacated in part, remanded*, 81 F.4th at 124. The fees include: (1) an investigation of the fraud, including with a forensic accounting expert, and briefing to bring the fraud to the Court's attention ($**418,323.57**); (2) initial expedited pre-Hearing discovery, including

13

reviewing more than 5,500 documents produced by Gilimex, and preparation for the Hearing, including work with fact and expert witnesses, drafting witness outlines, and preparing Hearing exhibits and demonstratives (**$714,069.42**); (3) final pre-Hearing work after Gilimex changed its arguments, made the Tien Luong disclosure, and produced new versions of the fraudulent November PO and other documents, including analyzing new Vietnamese-language documents that were produced on a near daily basis, preparing witnesses, revising witness outlines and drafting outlines for entirely new witnesses, preparing new summary charts and demonstratives, pre-Hearing written submissions, and the Hearing itself (**$1,692,885.74**); and (4) post-Hearing briefing (**$745,099.12**).  Estes Decl. ¶ 12.

The amount of time Gibson Dunn attorneys spent litigating Amazon's sanctions motion was reasonable, particularly in light of the complex and relentless nature of Gilimex's fraud.  As the Court found, Gilimex offered "implausible, ever-changing explanations" for the fraud, Decision at 20, and "each time Amazon challenged a particular document, Gilimex supplemented its productions with new materials to corroborate the document's authenticity and gave new explanations for the document," *id*. at 5.  Gilimex produced fabricated documents on a weekly, if not daily, basis leading up to the Hearing, *see* Dkt. 253-1 at 5-8, even producing additional hardcopy documents, including two handwritten Post-it style notes, less than 72 hours before the Hearing, *id*. at 8.  This steady stream of shifting explanations, new witnesses, and newly materialized documents produced by Gilimex in advance of the Hearing significantly increased the amount of time Gibson Dunn was forced to spend litigating the sanctions motion and preparing for the Hearing.  Estes Decl. ¶ 4.

None of this time would have been necessary but for Gilimex's fraud.  *See Trs. of the N.Y. State Nurses Ass'n*, 102 F.4th at 615 (explaining that "fees that would not have been incurred but

14

for the bad faith" are eligible for reimbursement) (alteration omitted).  Indeed, "it was largely the actions of [Gilimex] that dictated the kinds of work and the amount of work undertaken by [Amazon's] counsel." *Google LLC,* 2023 WL 2344935, at *3 (rejecting argument that requested fees were excessive); *see Int'l Techs.,* 2022 WL 11280876, at *9 (granting fees where defendant "was forced to expend substantial litigation resources where it otherwise would not have been required to do so").  It is Gilimex, not Amazon, that repeatedly fabricated documents and submitted perjured testimony to the Court.  *See* Decision at 14-15.  Gilimex, not Amazon, should thus bear the financial consequences of its own misconduct.  *See Klipsch Grp., Inc. v. ePRO E-Com. Ltd.,* 880 F.3d 620, 634 (2d Cir. 2018) (explaining, in the context of discovery sanctions, that the movant "is simply being compensated for costs it should not have had to bear").

Moreover, Amazon requests only a portion of the fees and costs it incurred in investigating and litigating the fraud, adopting the narrowest possible interpretation of "the legal bills that the litigation abuse occasioned."  *Goodyear*, 581 U.S. at 110.  Amazon is only seeking fees for the work Gibson Dunn and experts undertook between May and October 2025 for the Sanctions Litigation, not its prior significant costs defending against Gilimex's fraudulent raw materials damages claim.  Estes Decl. ¶ 10.  For Gibson Dunn's fees, Amazon does not seek fees for work done by multiple partners other than its lead trial counsel Barry Berke and Jordan Estes, or by Gibson Dunn's co-counsel at Ashurst Perkins Coie.  *Id*. ¶¶ 10-11.  And Amazon is not, at this time, seeking its fees for preparing this fee application.

### B.      Gibson Dunn's Hourly Rates Are Reasonable.

In addition to attorney hours, courts consider the reasonableness of the fees themselves in evaluating the other half of the lodestar equation.  While courts have "broad discretion to determine . . . the reasonable hourly rate," *United States Bank Nat'l Ass'n v. Dexia Real Est. Cap. Mkts.*, 2016 WL 6996176, at *8 (S.D.N.Y. Nov. 30, 2016), fees "should be based on market rates 'in line

with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Reiter v. MTA N.Y.C. Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)); *see Restivo v. Hessemann*, 846 F.3d 547, 590 (2d Cir. 2017) ("courts should generally use the hourly rates employed in the district in which the reviewing court sits"). Accordingly, courts look to "prevailing rates within this District," *Tessemae's LLC v. Atlantis Cap. LLC*, 2019 WL 2635956, at *4 (S.D.N.Y. June 27, 2019), as well as "other factors . . . such as the novelty and difficulty of the questions involved in the litigation" and the size of the firm. *Vista Outdoor Inc. v. Reeves Fam. Tr.*, 2018 WL 3104631, at *5 (S.D.N.Y. May 24, 2018) (citation modified). "Complex cases requiring particular attorney skills and experience may command higher attorney rates, as may cases requiring retention of a firm with the resources needed to prosecute a case effectively." *City of Almaty, Kaz. v. Ablyazov*, 2022 WL 1406248, at *4 (S.D.N.Y. May 4, 2022).

Here, the rates reported in Amazon's application reflect Gibson Dunn's customary rates. *See Doe 1 v. E. Side Club, LLC.*, 2023 WL 4174141, at *6 (S.D.N.Y. June 23, 2023) ("an attorney's customary billing rate . . . is ordinarily the best evidence of a reasonable hourly rate") (citation modified) (collecting cases). The rates for Amazon's lead trial counsel Barry Berke and Jordan Estes were $2,405 and $1,895, respectively; and for Of Counsel Daniel Ketani, who was also trial counsel at the Hearing, $1,635. For associate, law clerk, and paralegal time, out of an abundance of caution and in line with precedent in this District that predates current market rates for leading law firms, Amazon seeks less than two-thirds of Gibson Dunn's customary rates, seeking rates ranging from $995.20 to $604.80 for Gibson Dunn's associates and law clerk.

This Court recently approved similar rates in *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.*, 2026 WL 850548, at *3 (S.D.N.Y. Mar. 27, 2026). After considering "the

16

*Johnson* factors" to "help determine what rate a paying client would be willing to pay," the Court found that Kirkland & Ellis's "hourly rates . . . from $785 for junior attorneys to $2,465 to lead attorneys . . . . are reasonable rates given the rates typically charged for similar services by lawyers of comparable skill, expertise and reputation in this market."[6] *Id*.

Courts in this District have approved similar rates for Gibson Dunn as reasonable. *See Cerco Bridge Loans 6 LLC v. Schenker*, 2026 WL 710363, at *5 (S.D.N.Y. Mar. 13, 2026) (approving hourly rate of $1,915 for Gibson Dunn partner); *China AI Cap. Ltd. v. DLA Piper LLP (US)*, 2025 WL 2466633, at *7 (S.D.N.Y. May 22, 2025) (approving hourly rate of $1,408 for Gibson Dunn partner); *ATX Debt Fund 1, LLC v. Paul*, 2024 WL 2093387, at *5 (S.D.N.Y. May 9, 2024) (approving hourly rates of up to $1,265 for associates and $1,975 for partners, subject "to a 10% cut across the board"); *Vista Outdoor Inc.*, 2018 WL 3104631, at *6 (approving Gibson Dunn's hourly rates at the time as they were "not excessive in the New York City 'big firm' market") (citation modified).

Further, Gibson Dunn's rates are comparable to those charged by "similarly situated law firms of equivalent skill, status, and reputation." *An v. Despins*, 2024 WL 1157281, at *2 (S.D.N.Y. Mar. 18, 2024), *appeal dismissed*, 2024 WL 4524742 (2d Cir. Aug. 13, 2024) (finding evidence, including public filings, of peer firms' rates relevant to evaluating fees). Gibson Dunn's

---

[6] The *Johnson* factors, set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), include: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Id*. at 717-19. As the Court explained, "[a] court need not make specific findings as to each factor as long as all are considered." *Syntel*, 2026 WL 850548, at *2.

17

peers charge similar rates in this District, as evidenced by public filings disclosing their hourly fees. *See* Ex. 4 at 8-9 (disclosing hourly rates of up to $2,935 for partners, $2,235 for counsel, and $1,885 for associates at Davis Polk & Wardwell LLP); Ex. 5 at 8 (hourly rates of up to $2,880 for partners, $2,000 for counsel, and $1,840 for associates at Debevoise & Plimpton LLP).[7]  While these rates may be considered "high," they are "roughly comparable to rates at similarly sized firms in New York City, which other courts have found reasonable." *Zama Cap. Advisors LP & Zama Cap. Strategy Advisors LP v. Universal Ent. Corp.*, 2025 WL 3525044, at *7 (S.D.N.Y. Dec. 9, 2025) (approving hourly rates of $1,168 for Milbank LLP associates); *see Oakley v. MSG Networks, Inc.*, 2025 WL 3041936, at *7 (S.D.N.Y. Oct. 31, 2025) (declining to reduce hourly rate of $1,135 for King & Spalding LLP associates).

Moreover, the reported rates reflect the scope and complexity of Gilimex's fraud, *supra* § II(A), as well as the skill of the Gibson Dunn team required to litigate the fraud.  Untangling Gilimex's shifting, contradictory positions and protecting Amazon against its fraudulent damages claim required the deep bench of experienced litigators at Gibson Dunn, which is ranked by Chambers as one of the top nine "Elite" firms for commercial litigation in New York. Estes Decl. ¶ 7; *see Syntel*, 2026 WL 850548, at *3 (weighing Kirkland & Ellis's top-ranking practice as relevant to the reasonableness of fees).  The team was led by Barry Berke, Co-Chair of Gibson Dunn's Litigation Practice Group and a fellow of the American College of Trial Lawyers.  Estes Decl. ¶¶ 20-21.  Mr. Berke has more than three decades of trial experience and has been recognized by Chambers with its highest ranking as one of only 10 "Star Individual" trial lawyers in the United States.  His co-lead trial counsel on the case was Jordan Estes, a Chambers-ranked former federal

---

[7] *See also* Ex. 6 at 3 (hourly rates of up to $2,595 for partners, $1,995 for counsel, and $1,695 for associates at Paul, Weiss, Rifkind, Wharton & Garrison LLP); Ex. 7 at 2 (hourly rates of up to $2,595 for partners and $1,725 for associates at Weil, Gotshal & Manges LLP).

prosecutor in this District, who has tried 13 cases to verdict. *Id.* ¶¶ 22-23. Mr. Berke's and Ms. Estes's extensive trial experience and specialized expertise was essential to uncovering and proving the complex fraud here. *Id.* ¶¶ 5, 16-23. Given "the difficulty of the questions involved, the skill required to handle the problem, the time and labor required, the lawyer's experience, ability and reputation, the customary fee charged by the Bar for similar services, and the amount involved," Gibson Dunn's rates are reasonable. *Int'l Techs. Mktg.*, 2022 WL 11280876, at *5; *An*, 2024 WL 1157281, at *4 (finding rates reasonable due in part to the effort required to assemble evidence of plaintiff's "harassment campaign" and the partner's experience).

## III.   AMAZON'S REQUESTED COSTS ARE REASONABLE.

Attorneys' fees awards also include "reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *Carrington v. Graden*, 2020 WL 5758916, at *16 (S.D.N.Y. Sept. 28, 2020) (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)). Courts have found that reasonable costs include "travel time in addition to forensic discovery services . . . legal research, electronic discovery software and data hosting fees, printing and scanning costs, and mailing fees." *Carrington*, 2020 WL 5758916, at *17. Further, "a district court may invoke its inherent power to impose sanctions in the form of reasonable expert fees" where, as here, there is "a finding of fraud or abuse of the judicial process." *Carnegie Inst. of Wash. v. Fenix Diamonds LLC*, 2024 WL 706964, at *3 (S.D.N.Y. Feb. 21, 2024), *appeal docketed*, No. 2024-1804 (Fed. Cir. May 9, 2024) (quoting *Takeda Chem. Indus., Ltd. v. Mylan Lab'ys, Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008)); *see Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 2002 WL 1733681, at *14 (S.D.N.Y. July 26, 2002) (awarding expert witness fees in excess of $2.5 million based on the court's "inherent equitable authority to sanction").

Exposing Gilimex's fraud required Amazon to retain experts, consultants, and other external parties to ensure that Amazon established the fraud by clear and convincing evidence.

19

The investigators and experts at Nardello, and the testifying experts in particular, were instrumental in proving that Gilimex fabricated documents.[8]  Specifically:

- **Andrew Tappeto**:  Mr. Tappeto is a digital forensic expert working at Nardello.  He has conducted forensic examinations on thousands of digital devices.  Estes Decl. ¶ 45(b).  Mr. Tappeto has provided incident response, insider threat assessments, and cybersecurity consulting and advisory services to corporations worldwide in the context of litigation.  *Id*.  After Gibson Dunn recognized that the November PO and November Meeting Minutes either lacked metadata or contained metadata suggesting they were created during litigation, Mr. Tappeto further investigated the documents.  *See* Dkt. 138 at 4-5.  He also subsequently performed analysis determining that many of the alleged purchase orders and demand letters produced by Gilimex were "likely generated using Excel's print-to-PDF function," undermining Gilimex's narrative and establishing that Tien Luong's testimony was false.  Decision at 15.

- **Alberto Orozco:**  Mr. Orozco is a Managing Director and member of the Financial Investigations Forensics Accounting practice group at Nardello.  He has over two decades of experience in financial consulting, assurance, and business advisory services, including as a partner at one of the big four accounting firms.  Estes Decl. ¶ 45(c).  As a recognized expert in accounting, finance controls, compliance, and corporate governance, he has led compliance audits, investigations, and acquisition reviews on a global scale, with extensive international experience.  *Id*.  Mr. Orozco conducted a comprehensive forensic accounting

---

[8] The biographical information presented herein was derived from biographies published on the Nardello & Co. website, *see Our People*, Nardello & Co., https://nardelloandco.com/our-people/ (last visited Aug. 7, 2026), as well as declarations of the testifying experts, *see* Dkts. 141, 176-5, 176-6.

of Gilimex's financial records that "undercut the veracity of the November PO."  Decision at 19.  He analyzed Gilimex's financial statements and determined that "if the November PO were genuine and Blazemax were holding $69 million in raw materials for Gilimex as claimed, those materials should have been reflected as goods on consignment in the financial statements."  *Id*. at 7.  Mr. Orozco "explained that Gilimex's financial statements reflected only approximately $3 million owed to Blazemax in trade payables and an additional $1.1 million owed in other payables – far short of $69 million."  *Id*.

- **Jean Chow-Callam:**  Ms. Chow-Callam is a forensic accountant and investigator who was employed by Nardello at the time of the Hearing.  Estes Decl. ¶ 45(d).  Ms. Chow-Callam is an expert in the business practice of using "chops" in Vietnam and certain other countries.  *Id*.  She has more than 25 years of professional experience in providing consulting services regarding forensic accounting, auditing, fraud investigations, internal controls, compliance, governance, and other matters related to financial statement matters, including multi-jurisdictional matters.  *Id*.   Ms. Chow-Callam specializes in financial investigations and analysis, including with respect to allegations related to fraud.  *Id*.  As the Court recognized, Ms. Chow-Callam was critical in demonstrating that iterations of the November PO and meeting minutes were fabricated due to the inconsistency of their chops.  *See* Decision at 8-9, 17.

Because these "out-of-pocket expenses . . . were incidental and necessary to the representation" of Amazon, "inclusion of [these] disbursements in the fee award is appropriate." *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993).

Notably, Amazon is *not* seeking other substantial costs it incurred in proving Gilimex's fraud.  For example, preparing Amazon's sanctions motion required analyzing Vietnamese

documents, yet Amazon does not seek any fees for the translator it engaged.  Further, Amazon does not seek costs incurred ordering transcripts, retrieving documents from PACER, engaging litigation consultant DOAR, Inc. for trial support for the Hearing, or conducting legal research to prepare Amazon's sanctions motion, such as fees charged by Bloomberg, Westlaw, and LEXIS. Accordingly, Amazon seeks reimbursement for approximately $1.4 million in costs, consisting of the $1,392,162.58 that Amazon paid Nardello.

## CONCLUSION

For the foregoing reasons, Amazon respectfully requests that the Court enter an order granting Amazon's motion for attorneys' fees and costs, in the total amount of approximately $4.96 million, including $3,570,377.85 in attorneys' fees and $1,392,162.58 in expenses, incurred in investigating and litigating the fraud, along with such other and further relief as the Court deems just and proper.  Amazon reserves its right to seek additional fees and costs that may be warranted, including to the extent that Gilimex appeals the Decision.

Dated: August 10, 2026
       New York, New York

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Jordan Estes*

Barry H. Berke
Jordan Estes
Grace E. Hart
Daniel M. Ketani
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Tel.: (212) 351-4000
bberke@gibsondunn.com
jestes@gibsondunn.com
ghart@gibsondunn.com
dketani@gibsondunn.com

*Attorneys for Defendant Amazon.com Services LLC*

22

## CERTIFICATE OF COMPLIANCE

I, Jordan Estes, certify that Defendant Amazon.com Services LLC's Memorandum of Law In Support of Its Motion For Attorneys' Fees And Costs complies with the requirements of Local Rule 7.1(c).

I further certify that this Brief was prepared with a computer.

I further certify that this Brief contains 6,862 words, including any footnotes and excluding only those sections that are exempted under Local Rule 7.1(c).  In preparing this certificate of compliance, I have relied on the word count of the word-processing system used to prepare this Brief.

Dated: August 10, 2026

/s/ Jordan Estes
Jordan Estes
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Tel.: (212) 351-4000
jestes@gibsondunn.com

23