UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BINH THANH IMPORT EXPORT PRODUCTION & TRADE JOINT STOCK CO., d/b/a GILIMEX, INC.,<br><br>Plaintiff,<br><br>-against-<br><br>AMAZON.COM SERVICES, LLC, d/b/a AMAZON ROBOTICS,<br><br>Defendant. | Case No. 1:23-cv-00292-LGS |

**DECLARATION OF JORDAN ESTES IN SUPPORT OF DEFENDANT AMAZON.COM SERVICES LLC'S MOTION FOR ATTORNEYS' FEES AND COSTS**

JORDAN ESTES, an attorney duly admitted to practice in the State of New York and in the Southern District of New York, declares under penalty of perjury and pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I respectfully submit this declaration in support of Defendant Amazon.com Services LLC's ("Amazon") motion to recover fees and costs incurred in investigating and litigating the fraud perpetrated by Plaintiff Binh Thanh Import Export Production & Trade Joint Stock Co. ("Gilimex") (the "Motion"). *See* Dkt. 272. I am an attorney admitted to practice law before this Court. I am over the age of eighteen and make this declaration from personal knowledge based on the information and documents referenced in this declaration and from knowledge conveyed to me by my colleagues.

2. I am a partner in the law firm Gibson, Dunn & Crutcher LLP ("Gibson Dunn"). I served, together with my partner Barry Berke, as lead trial counsel in this action, overseeing all aspects of the case—including strategy, staffing, and supervision.

3. Amazon seeks reimbursement of amounts incurred as legal fees for work performed by Amazon's counsel Gibson Dunn in connection with investigating fraudulent documents produced by Gilimex, moving for sanctions, and successfully proving that Gilimex committed successive frauds on the court (the "Sanctions Litigation"). As further set forth below, Amazon seeks reimbursement of $3,570,377.85 in fees for Gibson Dunn's work on the Sanctions Litigation.

4. This requested sum reflects the substantial work required to litigate this complex, fast-evolving sanctions matter, where Gilimex had produced and relied on fraudulent documents to seek hundreds of millions of dollars in damages. The work was compounded because Gilimex made false statements and produced additional fabricated documents until shortly before the August 12 Hearing (the "Hearing") to try to cover up the fraud. Specifically, Gilimex produced more than 5,500 documents, including many Vietnamese-language documents and complex spreadsheets, on a rolling basis over the seven weeks leading up to the Hearing. *See* Dkt. 253-1 at 5-6. Less than one month before the Hearing, Gilimex also claimed that its employee, Tien Luong, admitted to fabricating numerous demand letters and purchase orders. *Id.* at 5; Dkt. 271 (the "Decision") at 6-7. Gilimex's changing explanations and voluminous productions of documents multiplied Amazon's legal and forensic accounting expenses.

5. In my opinion and based on my professional experience, all of the fees that Amazon is seeking in connection with the Sanctions Litigation were reasonably incurred, and necessary and appropriate to investigate and litigate Gilimex's fraud.

6. Nothing in this declaration, its exhibits or attachments, is intended to be a waiver of the attorney-client privilege or the work product doctrine.

## I. Gibson Dunn's Invoices

7. Gibson Dunn is a premier, full-service international law firm with more than 2,200

lawyers and almost two dozen offices located in major cities throughout the United States, Europe, the Middle East, and Asia.[1] Gibson Dunn is one of only nine firms ranked Band 1 by Chambers USA in *Litigation: General Commercial: The Elite* for New York.[2] Among other third-party recognitions of Gibson Dunn's qualifications, The American Lawyer named Gibson Dunn a Finalist in its 2025 Litigation Department of the Year, General Litigation competition.[3] In 2026, Best Law Firms awarded the firm a Tier 1 ranking for Commercial Litigation.[4] BTI Consulting Group also named Gibson Dunn to the "Fearsome Foursome" BTI Litigation Outlook for 2026.[5]

8. In recording their time, Gibson Dunn attorneys are required to specify the client and matter number, the nature of the work performed, and the amount of time expended on that task. Attached hereto as **Exhibit 1** is a schedule detailing the billing records for timekeepers in connection with the Sanctions Litigation for which Amazon seeks reimbursement from Gilimex. This information was obtained from Gibson Dunn's electronic billing system, which is maintained by the firm in the ordinary course of business. In certain instances, the total time for a given entry has been reduced to reflect the amount of time worked on the Sanctions Litigation only, as opposed to other trial preparation. In other words, because Amazon is only seeking fees for Gibson Dunn's

---

[1] *See* Gibson, Dunn & Crutcher LLP, *People*, https://www.gibsondunn.com/people/ (last visited Aug. 10 2026).

[2] *See* Chambers & Partners, *Litigation: General Commercial: The Elite, New York, USA*, https://chambers.com/legal-rankings/litigation-general-commercial-the-elite-new-york-5:1451:12806:1 (last visited Aug. 10, 2026).

[3] *See* Gibson, Dunn & Crutcher LLP, *Gibson Dunn Named a Finalist for Three American Lawyer Industry Awards* (Aug. 15, 2025), https://www.gibsondunn.com/gibson-dunn-named-a-finalist-for-three-american-lawyer-industry-awards/ (last visited Aug. 10, 2026).

[4] *See* Best Law Firms® US (2026 ed.), Gibson, Dunn & Crutcher LLP, https://www.bestlawfirms.com/firms/gibson-dunn-crutcher-llp/14163/US (last visited Aug. 10, 2026) (listing Commercial Litigation among the firm's national Tier 1 rankings).

[5] *See* The BTI Consulting Group, *BTI Litigation Outlook 2026*, https://bticonsulting.com/bti-litigation-outlook (last visited Aug. 10, 2026).

work that was directly related to the Sanctions Litigation, Amazon has removed time entries reflecting work that was not related to the Sanctions Litigation from **Exhibit 1**. Amazon has also incorporated limited redactions to portions of time entries that contain material protected by the attorney-client privilege or work product doctrine.[6] Further, Amazon has corrected certain purely typographical and formatting errors in **Exhibit 1**, for the ease of the Court's review.

9. Gibson Dunn provides legal services across multiple matters for Amazon. Gibson Dunn annually negotiates a flat fee arrangement covering all of these matters, including this case. The flat rate is variable annually and is based on existing cases and past and anticipated workload. For matters like this one in which Gibson Dunn represents Amazon, we track all time spent daily and enter narratives for each task performed, just as we do when billing clients on an hourly basis. For 2025, the fees paid by Amazon to Gibson Dunn for legal services far exceed the fees that Amazon seeks from Gilimex.

10. In this Motion, Amazon seeks only a portion of fees incurred between May 23, 2025 (following sworn representations made by Gilimex's Chairman in opposing Amazon's motion *in limine* to exclude the November PO, *see* Decision at 4) and October 22, 2025 (when Amazon filed its post-Hearing reply brief, Dkt. 261) for the Sanctions Litigation. Amazon does not seek its pre-May 2025 fees and costs related to Gilimex's raw materials damages claim. Amazon also does not seek fees for work performed by Gibson Dunn's co-counsel at Ashurst Perkins Coie.

11. **Exhibit 1** only includes fees for work performed by a core team at Gibson Dunn

[6] If necessary and at the Court's request, Amazon will provide to the Court a fully unredacted copy of **Exhibit 1** for *in camera* review. *See Major League Baseball Props., Inc. v. Corporacion de Television y Microonda Rafa, S.A.*, 2020 WL 5518361, at *4 (S.D.N.Y. Sept. 14, 2020) (observing that "courts often review invoices and billing records *in camera* when calculating awards of attorneys' fees and costs") (collecting cases).

focused on the Sanctions Litigation; it does not include other trial preparation work performed by other team members. The core Sanctions Litigation team includes me, Barry Berke, of counsel Daniel Ketani, four associates, one law clerk, and one paralegal.[7] To be conservative, Amazon has excluded fees for two other law clerks who spent a significant amount of time on the Sanctions Litigation.

12. Amazon seeks $3,570,377.85 in attorneys' fees for Sanctions Litigation work performed by Gibson Dunn. This work can be broken down as follows:

**a.** **Phase One (May 23 to June 23, 2025)**: Sanctions investigation and motion to the Court – **$418,323.57**.

b. **Phase Two (June 24 to July 17, 2025)**: Expedited pre-Hearing discovery, forensic analysis of Gilimex business records and spreadsheets, and preparation for the Hearing – **$714,069.42**.

c. **Phase Three (July 18 to August 12, 2025)**: Post-Tien Luong disclosure expedited discovery, continuously revised forensic analysis based on rolling new disclosures and the production of fraudulent documents by Gilimex (including the production of new versions of the November PO and November PO Meeting Minutes beginning on July 29, 2025—less than two weeks before the Hearing), preparation for the Hearing including witness and exhibit preparation, drafting cross-examination outlines for newly disclosed witnesses, drafting the opening statement, and the evidentiary Hearing itself – **$1,692,885.74**.

[7] Any reference to a "law clerk" herein refers to a Gibson Dunn associate pending admission to the bar.

d. **Phase Four (August 13 to October 22, 2025)**: Post-Hearing moving brief, chronology, and reply brief – **$745,099.12**.

13. Gibson Dunn also retained Nardello & Co. ("Nardello"), a leading global investigations firm, on behalf of Amazon to investigate Gilimex and provide expert services for the Sanctions Litigation. Nardello's experts were necessary to analyze the metadata on Gilimex's fraudulent productions, prove the inauthenticity of Gilimex's alleged hardcopy documents, and conduct a forensic accounting that substantiated Gilimex's fraud.

14. Attached hereto as **Exhibit 2** is a compilation of invoices from Nardello for their work in connection with the Sanctions Litigation for which Amazon seeks reimbursement.

15. In this Motion, Amazon does not seek other costs arising from the Sanctions Litigation, including, but not limited to, costs for translating hundreds of Vietnamese-language documents and legal research expenses. Amazon has omitted these costs to avoid further disputes and ensure a quick resolution of this litigation.

## II. Timekeeper Qualifications and Roles

16. The Gibson Dunn team was led by highly experienced attorneys whose practices focus on high-stakes trial work, including attorneys with substantial experience in complex commercial litigation and white collar defense.

17. Gibson Dunn and Amazon made every effort to staff the case efficiently and to delegate work to attorneys with lower billing rates where appropriate. Once the Court adjourned the merits trial and scheduled the sanctions Hearing, Gibson Dunn reduced the number of attorneys on the team. More labor-intensive tasks—such as legal research and document review and analysis—were primarily performed by Gibson Dunn's associates and law clerk, while partners and of counsel focused on overall strategy, supervision, and Hearing presentation. This allocation

of work reduced costs while maintaining the quality and effectiveness of Gibson Dunn's representation.

18. The qualifications and roles of the attorneys who performed work on this case are described below.

**A. The Gibson Dunn Partners**

19. The two core Gibson Dunn partners were involved in all aspects of litigation requiring partner-level judgment, including making the strategic decision to pursue a sanctions motion, identifying and preparing witnesses and experts for the evidentiary Hearing, drafting pre-motion letters and motions, pre-Hearing preparation, examining witnesses at the Hearing, and interacting with Gilimex's counsel.

***1. Barry H. Berke***

20. Barry H. Berke served as co-lead counsel in this matter and was responsible for the case from the inception of Gibson Dunn's involvement, including through determining to pursue sanctions against Gilimex, staffing, and supervision. Mr. Berke cross-examined Gilimex's witnesses at the Hearing.

21. Mr. Berke is the Co-Chair of Gibson Dunn's Litigation Practice Group and is a partner in the firm's New York office. He is a fellow of the American College of Trial Lawyers and a renowned first-chair trial lawyer who focuses on bet-the-company trials, complex litigation, and white collar defense and investigations. Mr. Berke is recognized by *Chambers USA* as a "Star Individual" in Trial Lawyers Nationwide (one of only ten nationwide), was named a "Leading Trial Lawyer" by *The Legal 500 US* in 2025, and has been recognized by *Benchmark Litigation* as a New York "Litigation Star" (2026). Mr. Berke graduated from Harvard Law School, *cum laude*, in 1989. Attached as **Exhibit 3** is a true and correct copy of his official firm biography.

### *2. Jordan Estes*

22. Jordan Estes served as co-lead counsel in this matter and was responsible for the case from the inception of Gibson Dunn's involvement, including through determining to pursue sanctions against Gilimex, staffing, and supervision. Ms. Estes guided the team's briefing efforts for Amazon's pre-motion letter briefing and motion for sanctions. Ms. Estes also oversaw the team's factual investigation into Gilimex's fraud, including managing the review and analysis of documents by Gibson Dunn's associates and law clerk, and devising Amazon's broader strategy and response to Gilimex's serial productions. Ms. Estes led the preparation of Amazon's experts in advance of the Hearing and examined Amazon supply chain executive Kelly Jackson, financial investigations expert Jean Chow-Callam, and forensic accountant Alberto Orozco at the Hearing.

23. Ms. Estes is a partner in Gibson Dunn's New York office and a first-chair trial lawyer who focuses her practice on complex civil litigation and high-stakes criminal and regulatory matters. She has repeatedly been recognized by *Chambers USA: America's Leading Lawyers for Business* in White-Collar Crime & Government Investigations in New York. Ms. Estes was recently named a 2026 "Next Generation Partner" for Corporate Investigations: Advice to Individuals by *The Legal 500*. Before joining Gibson Dunn, Ms. Estes spent more than eight years with the U.S. Attorney's Office for the Southern District of New York, where she served as the co-chief of the General Crimes Unit and was a senior member of the Securities and Commodities Fraud Task Force. During her tenure at the U.S. Attorney's Office, Ms. Estes tried 13 cases to verdict, securing convictions in all of them, and her jury addresses were covered in major publications such as *The New York Times*, the *Wall Street Journal*, and *Bloomberg*. Ms. Estes graduated from Harvard Law School, *cum laude*, in 2008. Attached as **Exhibit 3** is a true and correct copy of her official firm biography.

**B. Gibson Dunn Of Counsel**

24. In addition to the Gibson Dunn partners, Amazon staffed this matter with an experienced of counsel who took a key role in leading the team's sanctions strategy. This staffing decision was one of efficiency, as the of counsel was able to take on managerial and supervisory responsibilities typical of a junior partner, at a lower billing rate.

***1. Daniel M. Ketani***

25. Daniel M. Ketani is of counsel in Gibson Dunn's New York office and is a member of the firm's Litigation Department. He led Amazon's factual investigation into Gilimex's fraud. Mr. Ketani supported the preparation of Amazon's experts and examined digital forensics expert Andrew Tappeto at the evidentiary Hearing. He took a leading role in devising the cross-examination strategy and outlines for Gilimex's witnesses, and drafting Amazon's pre-motion, pre-Hearing, and post-Hearing written submissions. Mr. Ketani has substantial experience representing clients in high-stakes litigation and investigations, including complex, high-profile, and sensitive matters. Mr. Ketani has been recognized in *Best Lawyers: Ones to Watch® in America* in the areas of commercial litigation, securities litigation, and white collar criminal defense. He is a member of the Securities Litigation Committee of the New York City Bar Association. Mr. Ketani received his J.D. from Columbia Law School in 2014 where he was a Harlan Fiske Stone scholar. Attached as **Exhibit 3** is a true and correct copy of Mr. Ketani's official firm biography.

**C. The Gibson Dunn Associates and Law Clerk**

26. Gibson Dunn also staffed this matter with four associates and one law clerk, who performed substantial work on Amazon's Sanctions Litigation against Gilimex. These timekeepers were responsible for many of the core, labor-intensive tasks required to prosecute this

case, including managing and conducting review and analysis of Vietnamese business documents and spreadsheets, preparing fact and expert witnesses for the Hearing, researching and drafting pre-motion letters and motions, drafting witness outlines and assisting with Hearing preparation and presentation. Work was delegated to these timekeepers in a manner designed to maximize efficiency and minimize cost, with more complex and high-level assignments handled by more senior associates and more hour-intensive tasks performed by Gibson Dunn's junior associates and law clerk at lower billing rates.

27. The Gibson Dunn team for the Gilimex trial included additional associates and law clerks from across multiple Gibson Dunn offices. Amazon is not seeking fees for the contributions of those associates and law clerks who were not part of the core Sanctions Litigation team.

***1. Kathryn N. Salvaggio***

28. Kathryn N. Salvaggio is an associate in Gibson Dunn's New York office and a member of the firm's Litigation Department. In this matter, Ms. Salvaggio led Hearing preparation efforts, playing a key role in cross-examination preparation, discovery, and correspondence with the Court, as well as contributing to broader legal strategy throughout Amazon's Sanctions Litigation.

29. Ms. Salvaggio has experience handling complex litigation, including in high-stakes class actions and commercial disputes. Her practice focuses on litigation involving antitrust, contractual, and commercial issues. Prior to joining Gibson Dunn, Ms. Salvaggio served as a law clerk to the Honorable Roslynn Mauskopf (E.D.N.Y.). Ms. Salvaggio received her J.D. from Columbia Law School in 2018 where she was a James Kent Scholar. Attached as **Exhibit 3** is a true and correct copy of Ms. Salvaggio's official firm biography.

### ***2. Timothy E. Deal***

30. Timothy E. Deal was an associate in Gibson Dunn's New York office and a member of the firm's Litigation Department. In this matter, Mr. Deal led the briefing of several key pre-motion letters and motions and played a central role in post-Hearing briefing. He also contributed to cross-examination strategy.

31. Mr. Deal has experience handling complex litigation, including leading briefing efforts in high-stakes commercial disputes. His practice, while at Gibson Dunn, focused on litigation involving contractual disputes and commercial issues. Mr. Deal previously served as a law clerk to the Honorable Joseph F. Bianco (2d Cir.) and the Honorable Kenneth M. Karas (S.D.N.Y.). Mr. Deal graduated, *summa cum laude*, from Fordham University School of Law in 2017. Mr. Deal is currently an Assistant United States Attorney for the U.S. Attorney's Office for the Southern District of New York.

### ***3. Kasturi Mitra***

32. Kasturi Mitra is an associate in Gibson Dunn's New York office and a member of the firm's Litigation Department. In this matter, Ms. Mitra helped lead discovery efforts, including coordinating document review and the translation of Vietnamese documents. Ms. Mitra also played a key role in expert witness and cross-examination preparation.

33. Ms. Mitra has experience in commercial litigation and white collar defense matters, including assisting with discovery and trial preparation in high-stakes disputes. She graduated from Cornell Law School in 2020 where she was an associate for the *Journal of Law and Public Policy*. Attached as **Exhibit 3** is a true and correct copy of Ms. Mitra's official firm biography.

### ***4. Morgan A. Carter***

34. Morgan A. Carter is an associate in Gibson Dunn's New York office and a member

of the firm's Litigation Department. In this matter, Ms. Carter reviewed and identified key documents in support of Amazon's Sanctions Litigation, supported discovery and Vietnamese document translation efforts, and assisted in Hearing preparations and briefing.

35. Ms. Carter graduated from Columbia Law School in 2024 where she was a *Forum* editor for the *Columbia Law Review*. Attached as **Exhibit 3** is a true and correct copy of Ms. Carter's official firm biography.

#### ***5. Ingrid V. Cherry***

36. Ingrid V. Cherry is an associate in Gibson Dunn's New York office and a member of the firm's Litigation Department. Ms. Cherry was a law clerk during the majority of Gibson Dunn's work on the Sanctions Litigation, as she was admitted as an attorney to the bar in October 2025. In this matter, Ms. Cherry assisted in pre- and post-Hearing briefing efforts, identified key documents in support of Amazon's Sanctions Litigation, and assisted in expert witness and cross-examination preparation.

37. Ms. Cherry graduated from Columbia Law School in 2024 where she was a James Kent and Harlan Fiske Stone scholar. While at Columbia, Ms. Cherry served as the Student Director of the Foundation Moot Court program and externed at Volunteer Lawyers for the Arts. Attached as **Exhibit 3** is a true and correct copy of Ms. Cherry's official firm biography.

### D. The Gibson Dunn Legal Staff

38. Gibson Dunn further staffed this matter with experienced legal staff who performed substantial organizational, administrative, and specialized work on Amazon's Sanctions Litigation against Gilimex. Work was delegated to these timekeepers according to their job functions and experience level and included tasks such as motion filing, exhibit preparation, and eDiscovery assistance.

39. Several additional Gibson Dunn legal staff billed to the matter in support of Amazon's Sanctions Litigation. To avoid any dispute in this regard and ensure swift resolution of this Motion, Amazon has eliminated their time from this fee application and seeks only the fees for Senior Paralegal, Nilhan Gezgin, the primary paralegal on the Sanctions Litigation team.

40. Ms. Gezgin has been a paralegal at Gibson Dunn for 18 years and has experience supporting complex litigation matters, including trial preparation, filings, and document organization. Before working at Gibson Dunn, Ms. Gezgin was a paralegal in the New York offices of patent law firms.

41. Amazon seeks attorneys' fees of $3,570,377.85. Amazon calculated these fees using the lodestar method, which is determined by multiplying a reasonable hourly rate by the number of hours reasonably expended in pursuing the Sanctions Litigation.

42. Market rates for elite New York law firms have significantly increased in the past decade. Regardless, to avoid any dispute over its rates, Gibson Dunn has adjusted the standard rates of its associates, law clerk, and paralegal in this matter downward by over 30%, so they are consistent with rates found reasonable in this District in earlier, lower rate markets. Gibson Dunn has further excluded timekeepers or time entries to minimize any duplication. The rates charged by Gibson Dunn and the hours expended were reasonable and necessary for Amazon to prevail on its Sanctions Litigation. Amazon's requested rates, hours, and total fees for Gibson Dunn attorneys and legal staff are provided below:

| Timekeeper | Title | Requested Rate[8] | Total Hours | Total Fees |
|---|---|---|---|---|
| Barry H. Berke | Partner | $2,405.00 | 110.1 | $264,790.50 |
| Jordan Estes | Partner | $1,895.00 | 350.7 | $664,576.50 |
| Daniel M. Ketani | Of Counsel | $1,635.00 | 373.1 | $610,018.50 |
| Timothy E. Deal | Associate | $995.20 | 499.1 | $496,704.32 |
| Kathryn N. Salvaggio | Associate | $995.20 | 562.9 | $560,208.03 |
| Kasturi Mitra | Associate | $905.60 | 310.5 | $281,188.80 |
| Morgan A. Carter | Associate | $604.80 | 443.1 | $267,986.88 |
| Ingrid V. Cherry | Law Clerk | $604.80 | 654.7 | $395,962.56 |
| Nilhan Gezgin | Paralegal | $476.80 | 60.7 | $28,941.76 |
| **TOTAL** | | | **3,364.91** | **$3,570,377.85** |

43. The rates that Amazon seeks for Gibson Dunn's fees are at or below recently disclosed rates for partner, counsel, and associate roles by Gibson Dunn's competitors, particularly for experienced first-chair trial lawyers like Barry Berke and me. In further support of the reasonableness of Gibson Dunn's rates, attached hereto as **Exhibit 4** is a May 27, 2026 public filing in the Southern District of New York's Bankruptcy Court made by peer, full-service law firm Davis Polk & Wardwell LLP. **Exhibit 4** discloses partner hourly rates of up to $2,935.00, counsel hourly rates of up to $2,235.00, associate hourly rates of up to $1,885.00, and legal assistant hourly rates of up to $790.00. Attached hereto as **Exhibit 5** is a May 19, 2026 public filing in the Southern District of New York's Bankruptcy Court made by peer, full-service law firm Debevoise & Plimpton LLP. **Exhibit 5** discloses partner hourly rates of up to $2,880.00, counsel hourly rates of up to $2,000.00, associate hourly rates of up to $1,840.00, and paraprofessional hourly rates of up to $645.00. Attached hereto as **Exhibit 6** is a September 22, 2025 public filing in the District of New Jersey's Bankruptcy Court made by peer, full-service law

[8] The requested rates of Gibson Dunn's partners and of counsel reflect Gibson Dunn's customary rates, while the requested rates of Gibson Dunn's associates, law clerk, and paralegal have been adjusted downward by over 30%.

firm Paul, Weiss, Rifkind, Wharton & Garrison LLP. **Exhibit 6** discloses partner hourly rates of up to $2,595.00, counsel hourly rates of up to $1,995.00, associate hourly rates of up to $1,695.00, and paralegal hourly rates of up to $560.00. Attached hereto as **Exhibit 7** is an April 28, 2026 public filing in the Southern District of New York's Bankruptcy Court made by peer, full-service law firm Weil, Gotshal & Manges LLP. **Exhibit 7** discloses partner hourly rates of up to $2,595.00, associate hourly rates of up to $1,725.00, and paraprofessional hourly rates of up to $675.00.

44. Amazon also seeks $1,392,162.58 in costs for Nardello's services between June and October 2025. These costs were reasonable and necessarily incurred to litigate this Sanctions Litigation. In an abundance of caution, Amazon is not seeking Nardello's costs incurred prior to June 2025, including for Mr. Tappeto's work in connection with Amazon's motion *in limine* to exclude raw materials damages evidence that led to the Sanctions Litigation, and it is not seeking the fees of senior Nardello personnel who were not core members of the Sanctions Litigation team. These costs are reflected in **Exhibit 2**. A breakdown of the Nardello hours, rates, and fees for which Amazon seeks reimbursement is below:

| Timekeeper | Rate | Total Hours | Total Fees |
|---|---|---|---|
| Benet Kearney | $900.00 | 295.20 | $265,680.00 |
| Jean Chow-Callam | $860.00 | 192.00 | $165,120.00 |
| Alberto Orozco | $860.00 | 140.40 | $120,744.00 |
| Andrew Tappeto | $690.00 | 40.60 | $28,014.00 |
| Nicholas Blank | $860.00 | 182.40 | $156,864.00 |
| Director(s) | $635.00 | 81.30 | $51,625.50 |
| Senior Analyst/Investigator(s) | $525.00 | 883.70 | $463,942.50 |
| **TOTAL FEES** | | **1,815.60** | **$1,251,990.00** |
| Nardello Expenses | | | $48,167.90 |
| N.Y. 8.875% Sales Tax | | | $92,004.68 |
| **TOTAL** | | | **$1,392,162.58** |

45. Exposing Gilimex's fraud required Amazon to retain experts, consultants, and other external parties to ensure that Amazon established the fraud by clear and convincing evidence. The investigators and experts at Nardello, in particular, were instrumental in proving that Gilimex fabricated documents.[9] Specifically:

a. **Benet Kearney:** Ms. Kearney is a Managing Director at Nardello. She brings more than 15 years of experience investigating and prosecuting criminal offenses, including a decade as a federal prosecutor where she tried six jury trials and three bench trials to verdict. At the United States Attorney's Office for the Southern District of New York, Ms. Kearney led numerous investigations and prosecutions involving complex frauds and

[9] The biographical information presented herein was derived from biographies published on the Nardello & Co. website, *see Our People*, Nardello & Co., https://nardelloandco.com/our-people/ (last visited Aug. 7, 2026), as well as declarations of the testifying experts, *see* Dkts. 141, 176-5, Dkt. 176-6.

financial transactions. She also served as Deputy General Counsel at the New York City Department of Investigation, where she conducted investigations into corruption, official misconduct, waste, fraud, and abuse. Ms. Kearney spearheaded Nardello's efforts in investigating Gilimex's fraud.

b. **Andrew Tappeto:** Mr. Tappeto is a digital forensic expert working at Nardello. He has conducted forensic examinations on thousands of digital devices. Mr. Tappeto has provided incident response, insider threat assessments, and cybersecurity consulting and advisory services to corporations worldwide in the context of litigation. Prior to joining Nardello, he led a global team of forensic practitioners and eDiscovery professionals at a legal consulting firm. After Gibson Dunn recognized that the November PO and November Meeting Minutes either lacked metadata or contained metadata suggesting they were created during litigation, Mr. Tappeto further investigated the documents. He also subsequently performed analysis determining that many of the alleged purchase orders and demand letters produced by Gilimex were "likely generated using Excel's print-to-PDF function," undermining Gilimex's narrative. Decision at 15.

c. **Alberto Orozco**: Mr. Orozco is a Managing Director and member of the Financial Investigations Forensics Accounting practice group at Nardello. He has over two decades of experience in financial consulting, assurance, and business advisory services, including as a partner at PwC. As a

recognized expert in accounting, finance controls, compliance, and corporate governance, he has led compliance audits, investigations, and acquisition reviews on a global scale, with extensive international experience. Mr. Orozco's experience includes financial fraud, anti-bribery, asset misappropriation, and procurement/vendor fraud investigations, as well as due diligence and compliance reviews in over 20 countries. Mr. Orozco conducted a comprehensive forensic accounting of Gilimex's records that established serious doubts that the November PO was authentic because of its absence from Gilimex's business records. *See* Decision at 7. He also analyzed Gilimex's financial statements and determined that "if the November PO were genuine and Blazemax were holding $69 million in raw materials for Gilimex as claimed, those materials should have been reflected as goods on consignment in the financial statements." *Id.* at 7.

d. **Jean Chow-Callam**: Ms. Chow-Callam is a forensic accountant and investigator who was employed by Nardello at the time of the Hearing. She is an expert in the business practice of using "chops" in Vietnam and certain other countries. Ms. Chow-Callam has more than 25 years of professional experience in providing consulting services regarding forensic accounting, auditing, fraud investigations, internal controls, compliance, governance, and other matters related to financial statement matters, including multi-jurisdictional matters. She specializes in financial investigations and analysis, including with respect to allegations related to fraud. Prior to joining Nardello, Ms. Chow-Callam worked at firms including Alvarez &

Marsal, PwC, and KPMG. Ms. Chow-Callam was critical in demonstrating that iterations of the November PO and meeting minutes were fabricated due to the inconsistency of their chops. Decision at 8-9, 17.

e. **Nicholas Blank**: Nicholas Blank is a Managing Director at Nardello. He is based in Hong Kong and manages a wide variety of investigations. He has extensive on-the-ground experience in Vietnam and other Asia-Pacific countries, where he has assisted companies and investors with numerous fraud investigations. He is ranked by Chambers as Band 1 for Litigation Support. He is a certified fraud examiner, and he has a master's degree in International Economics and International Relations from the Johns Hopkins School of Advanced International Studies.

f. **Directors and Senior Analyst/Investigators**: Additional directors and senior analyst/investigators supported Nardello's investigative efforts by conducting research on Gilimex, Blazemax, and the personnel of those companies; identifying and reviewing inventory reports, purchase orders, and corporate documents for further analysis by Mr. Orozco; and conducting initial analysis of purchase orders and other Gilimex or Blazemax documents for further analysis by Ms. Chow-Callam.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 10, 2026
New York, New York

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Jordan Estes*

Jordan Estes
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Tel.: (212) 351-4000
jestes@gibsondunn.com

*Attorney for Defendant Amazon.com Services LLC*