UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BINH THANH IMPORT EXPORT PRODUCTION & TRADE JOINT STOCK CO., d/b/a GILIMEX, INC.,<br><br>Plaintiff,<br><br>-against-<br><br>AMAZON.COM SERVICES, LLC, d/b/a AMAZON ROBOTICS,<br><br>Defendant. | Case No.: 1:23-cv-00292-LGS |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF MARK F. RULE**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..... 1

BACKGROUND ..... 2

ARGUMENT ..... 3

I. Legal Standard ..... 3

II. Rule's Inventory Damages Opinion Is Admissible ..... 4

A. Rule's Opinion Is Based On Expert Analysis ..... 4

B. Rule's Opinion Is Relevant ..... 6

III. Rule's Raw Materials Damages Opinion Is Admissible ..... 8

A. Challenges To Materials Rule Relied On Go To Weight Not Admissibility ..... 8

B. Rule's Opinion Is Based On Expert Analysis ..... 11

C. Gilimex's Raw Materials Damages Are Tied To Gilimex's Liability Theory ..... 11

IV. Rule's Lost Profits Damages Opinion Is Admissible ..... 12

A. Rule's Lost Profits Opinion Is Relevant ..... 13

B. Rule's Lost Profits Opinion Is Reliable ..... 13

CONCLUSION ..... 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Actava TV, Inc. v. Joint Stock Co. "Channel One Russia Worldwide"*,
2023 WL 2529115 (S.D.N.Y. Mar. 15, 2023) ....................8

*American Mfrs. Mut. Ins. Co. v. Cosmec, Inc.*,
2008 WL 11517682 (S.D.N.Y. Apr. 14, 2008)....................10

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
303 F.3d 256 (2d Cir. 2002)....................4

*Boucher v. U.S. Suzuki Motor Corp.*,
73 F.3d 18 (2d Cir. 1996)....................13, 14

*Cambridge Plating Co. v. Napco, Inc.*,
85 F.3d 752 (1st Cir. 1996)....................13

*Crawford-Brunt v. Kruskall*,
2021 WL 3516523 (D. Mass. Aug. 9, 2021) ....................13

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)....................3, 4, 5

*Edmondson v. RCI Hosp. Holdings, Inc.*,
2020 WL 1503452 (S.D.N.Y. Mar. 30, 2020) ....................6

*Golden Unicorn Enters., Inc. v. Audible, Inc.*,
682 F. Supp. 3d 368, 379 (S.D.N.Y. 2023)....................5, 6

*Howard v. Walker*,
406 F.3d 114 (2d Cir. 2005)....................9

*Incase, Inc. v. Timex Corp.*,
421 F. Supp. 2d 226 (D. Mass. 2006), aff'd, 488 F.3d 46 (1st Cir. 2007)....................13

*KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC*,
729 F. Supp. 3d 84 (D. Mass. 2024) ....................13

*Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*,
97 F. Supp. 3d 485 (S.D.N.Y. 2015)....................5

*Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*,
2015 WL 5459662 (S.D.N.Y. Sept. 16, 2015)....................8

*MacQuesten Gen. Contracting, Inc. v. HCE, Inc.*,
2002 WL 31388716 (S.D.N.Y. Oct. 22, 2002) ....................6

*Manbro Energy Corp. v. Chatterjee Advisors, LLC*,
2022 WL 4225543 (S.D.N.Y. Sept. 13, 2022) (Schofield, J.) ....................3, 4

*Molly C. v. Oxford Health Ins., Inc.*,
2024 WL 4850813 (S.D.N.Y. Nov. 21, 2024) ....................5

*Nemec v. Shrader*,
2015 WL 1650391 (S.D.N.Y. Apr. 13, 2015) ....................9

*Nike, Inc. v. StockX LLC*,
2024 WL 3361411 (S.D.N.Y. July 10, 2024) ....................10

*O'Brien v. Pearson*,
449 Mass. 377 (2007) ....................13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
2022 WL 15053250 (E.D.N.Y. Oct. 26, 2022) ....................10

*Price v. L'Oreal USA, Inc.*,
2020 WL 4937464 (S.D.N.Y. Aug. 24, 2020) ....................14

*Rahman v. Lee*,
2024 WL 4043697 (S.D.N.Y. Sept. 4, 2024) ....................9

*Redcell Corp. v A. J. Trucco, Inc.*,
2022 WL 3700148 (S.D.N.Y. Aug. 26, 2022) ....................4

*Scottsdale Ins. Co. v. McGrath*,
2024 WL 4434943 (S.D.N.Y. Oct. 7, 2024) ....................12

*SourceOne Dental, Inc. v. Patterson Companies, Inc.*,
2018 WL 2172667 (E.D.N.Y. May 10, 2018) ....................14

*Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co.*,
445 Mass. 411 (2005) ....................13

*Tyler v. Bethlehem Steel Corp.*,
958 F.2d 1176 (2d Cir. 1992) ....................10

*U.S. Bank Nat. Ass'n v. PHL Variable Life Ins. Co.*,
112 F. Supp. 3d 122 (S.D.N.Y. 2015) ....................10

*US Airways, Inc. v. Sabre Holdings Corp.*,
2016 WL 11796987 (S.D.N.Y. Aug. 3, 2016) (Schofield, J.) ....................10

**Statutes**

Massachusetts General Laws Chapter 93A........................................................................2, 13

**Other Authorities**

Fed. R. Evid 702 ..............................................................................................................3, 4

Plaintiff Binh Thanh Import Export Production & Trade Joint Stock Co. ("Gilimex") respectfully submits this memorandum of law in opposition to defendant Amazon.com Services LLC's ("Amazon") motion *in limine* to exclude Gilimex's damages expert, Mark F. Rule (the "Motion" or "Mot.").

**PRELIMINARY STATEMENT**

Unable to levy any serious challenge to the credentials, methodologies, or conclusions of Gilimex's damages expert, Amazon instead turns once more to its tired contract-based arguments regarding its purported lack of duty to Gilimex to seek to exclude Rule's qualified and well-supported opinions that follow widely accepted damages methodologies. At best, any such criticisms should go to the weight of his testimony, not admissibility. Ignoring this Court's summary judgment decision, Amazon again claims that Gilimex "seeks to turn Amazon's decision to exercise its *contractual right* to stop ordering [FPAs] into a nine-figure windfall" (Mot. at 1), but Amazon cannot avoid the consequences of its actions under the guise of "its contractual rights." The Court has repeatedly rejected Amazon's attempt to do just that, noting, for example, that Gilimex's surviving fiduciary duty claims "arise outside the parties' contract" (Dkt. 110, the "Decision," at 12-13) and that a reasonable juror could find intentional misrepresentation even if Amazon "may have met its contractual notice obligations regarding termination." Decision at 15.

Amazon seeks to exclude Rule's opinions in their entirety based on this retreading of rejected arguments related to the parties' contract, combined with (1) an oversimplification of Rule's analysis, (2) belated discovery issues, and (3) a fundamental misreading of this Court's summary judgment decision. Each of these arguments fails.

First, Amazon argues that Rule's opinions are "largely devoid of expert analysis" because they are based on "basic math." Mot. at 1. Not so. Not only does Rule perform calculations that would undoubtedly assist the jury in assessing Gilimex's damages, but Rule also thoroughly

analyzed otherwise obtuse data to distill his expert opinions on Gilimex's existing inventory and raw material damages that this Court has recognized are relevant to Gilimex's existing claims.

Second, Amazon argues that Rule's opinions are not reliable because they are based on documents that were produced in connection with his report after the close of fact discovery, and because they are purportedly based on speculative assumptions. Mot. at 1-2. Amazon has had over 18 months to challenge Gilimex's produced discovery and should not be permitted to raise a belated discovery dispute for the first time on the eve of trial. Furthermore, if Amazon has objections to specific evidence, it may raise them individually at trial. There is no basis to exclude entire categories of damages evidence.

Third, Amazon argues that Rule's opinions are unhelpful for the jury because "they are irrelevant and disconnected from Gilimex's theory of liability," primarily because they are purportedly "foreclosed" by Amazon's interpretation of the Court's summary judgment decision. Mot. at 2. As discussed further herein, however, the Court's ruling that Amazon did not owe an express fiduciary duty to Gilimex to ramp down FPA production, does not mean that evidence of a ramp down is irrelevant to Gilimex's surviving claims and damages. In fact, the summary judgment decision says just the opposite. *See infra* at 13. Finally, Amazon's criticism that Rule did not measure damages *caused* by Amazon's conduct overlooks well-settled law that damages experts may assume causation and liability in their opinions.

The Motion should be denied.

## BACKGROUND

Gilimex seeks damages related to its claims for breach of fiduciary duty, intentional misrepresentation, and Amazon's unfair and deceptive trade practices under Massachusetts General Laws Chapter 93A, and has presented Rule's qualified expert opinion to assist the jury in

understanding and calculating Gilimex's damages.[1] Rule measures Gilimex's damages arising from Amazon's "alleged breaches," which Rule defines, based on Gilimex's then-operative complaint, as Amazon's breaches of its fiduciary duties, including taking advantage of Gilimex's "reliance on Amazon's repeated assurances that the two companies were engaged in a strategic partnership and that Amazon would protect Gilimex from business downturns by, among other things, providing advance forecasts of changes in demand." Ex. 1 at ¶¶1-2 (cleaned up).[2] Rule's "but for" methodology—which Amazon does not challenge—measures the "financial difference between what would reasonably have been expected to have occurred 'but for' the alleged actions or inactions of the alleged wrongdoer . . . and what actually occurred or is expected to occur." *Id.* ¶19. Rule calculated three categories of damages: existing FPA inventory that has no alternative use other than for Amazon, raw materials ordered from Gilimex's suppliers with no prospective use to Gilimex, and Gilimex's lost profits. *Id.* ¶20.

## ARGUMENT

### I. Legal Standard

"Expert testimony should be excluded only 'if it is speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison.'" *Manbro Energy Corp. v. Chatterjee Advisors, LLC,* 2022 WL 4225543, at *9 (S.D.N.Y. Sept. 13, 2022) (Schofield, J.) (quotation omitted). In determining whether expert testimony "rests on a reliable foundation and is relevant to the task at hand" (*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)), Rule 702 provides a "liberal

---

[1] Expert discovery was completed prior to the Court granting Gilimex's motion to amend its complaint on February 2, 2024 (Dkt. 80), and as such only Gilimex's claim for breach of fiduciary duty was at issue at the time of Rule's report. Rule notes that Gilimex's then-proposed amended complaint "would not impact my opinions, analysis, or the quantification of damages as presented herein, which would also apply to the contemplated claims for unfair trade practices and intentional misrepresentation." Ex. 1 at ¶1 n.2.

[2] Citations to "Ex. __" herein are to exhibits attached to the accompanying declaration of Edward E. Filusch.

and permissive standard of admissibility." *Manbro Energy Corp.*, 2022 WL 4225543, at *9 (internal quotations omitted); *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002) (recognizing that limitations on the exclusion of expert testimony "accord[] with the liberal admissibility standards of the federal rules"); *see also* Fed. R. Evid. 702 Advisory Committee's note (2000) ("A review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."); *Redcell Corp. v A. J. Trucco, Inc.*, 2022 WL 3700148, at *7 (S.D.N.Y. Aug. 26, 2022) ("Because the federal rules emphasize liberalizing expert testimony, doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions.") (citation omitted). The requirements under this standard are more than met here, and any remaining qualms Amazon has with Rule's opinions affect only the weight to be given to that testimony, not its admissibility. *See Daubert,* 509 U.S. at 596; *Amorgianos*, 303 F.3d at 267; *Manbro Energy Corp.*, 2022 WL 4225543, at *9.

## II. Rule's Inventory Damages Opinion Is Admissible

Amazon attacks Rule's opinion with respect to Gilimex's claimed damages for existing inventory of FPAs on two grounds: first, that it purportedly consists entirely of basic arithmetic rather than expert analysis; and second, that it is based on Gilimex's claim that it was entitled to a ramp-down period. Mot. at 5-7. Both are incorrect.

### A. Rule's Opinion Is Based On Expert Analysis

Amazon first attacks Rule's opinion because Amazon believes that it is "basic arithmetic—not expert analysis." Mot. at 6. Amazon grossly oversimplifies and understates Rule's analysis. In order to present Gilimex's claimed damages in a format that would be easily understandable by the jury, and, to check the reasonableness of his opinions, Rule, among other things, examined Gilimex's underlying inventory and raw material count documentation—which are technical

accounting documents that require detailed analysis—compared those documents to Gilimex cost breakdowns and invoices paid by Amazon, and analyzed Gilimex's incremental and non-incremental costs to determine what shipping costs needed to be deducted for Gilimex's inventory damages. *See* Ex. 1 at ¶¶ 25-29, 38, Exhibit 1. This is far from "basic arithmetic."

Even if it were, it is well-settled that when an expert's analysis and presentation of those calculations derived from underlying documents would assist the jury, there is no basis to exclude the expert opinion. *See Molly C. v. Oxford Health Ins., Inc.*, 2024 WL 4850813, at *8 (S.D.N.Y. Nov. 21, 2024) (rejecting defendant's argument to exclude plaintiff's expert on the ground that the expert "merely added up" information for damages because "[c]ombing through a lengthy data set, isolating and aggregating the data, and presenting it in a more readily understandable format are appropriate tasks for an expert") (cleaned up); *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 504-05 (S.D.N.Y. 2015) (denying *Daubert* motion made on the ground that plaintiff's expert "did nothing more than 'simply add up' figures where expert "combed through at least 100 pages of sales reports, compiled and aggregated the data . . . and presented it in a more readily understandable format").[3]

Despite Amazon's contention that "[a]llowing Rule to testify about this simple math carries the unfair risk that the jury will conclude . . . that damages on this basis are legitimate" (Mot. at 6), as discussed further below, this Court has already recognized that a reasonable jury could find that Gilimex detrimentally relied on Amazon's misrepresentations, including by "expend[ing] money to obtain inventory, produc[ing] pods . . . and los[ing] profits." Decision at 16.[4]

3 Amazon is simply incorrect that Rule relied solely on conversations with Gilimex management concerning whether "FPAs could be repurposed and sold to other customers." Mot. 6. In fact, the very next sentence from the portion of Rule's report that Amazon cites notes that "Amazon acknowledged in an internal memo that the majority of the FPA-related inventory does not have a practical alternative use." Ex. 1 at ¶23 (citing AMAZ00095113).

4 The cases Amazon relies on are inapposite. For instance, in *Golden Unicorn Enters., Inc. v. Audible, Inc.*, the court found Plaintiff's damages expert used "relatively simple arithmetic, not expert analysis" "[b]ut making matters worse, the calculations appear in [defendant's] document upon which [the expert] relied. That is, [the

**B. Rule's Opinion Is Relevant**

Amazon next attacks Rule's inventory damages opinion because it is purportedly based on Gilimex's claimed entitled to a ramp-down period, which Amazon represents was "foreclosed" as a matter of law in the Court's decision denying summary judgment. Mot. at 7.

Amazon's argument rests on a fundamental misunderstanding of both Rule's opinions and the Court's decision. First, Rule's report makes clear that the inventory damages are for *existing* inventory that was manufactured only "*until* the Amazon Termination," which Rule defines in his report, based on citations to Amazon documents, as August 25, 2022. Ex. 1 at ¶¶17, 22 (emphasis added). Amazon represents that it had no duty to continue buying FPAs "after April 2022" and that any purchase of FPAs after that constitutes a "ramp down" (Mot. at 7), but that distorts the record, and the Court has made no such finding that April 2022 is the date of Amazon's termination.[5] In fact, as the Court noted, Amazon continued to provide forecasts to Gilimex after April 2022. *See* Decision at 4. Any factual disputes over when Amazon's termination was effective is clearly a question for the jury. *See, e.g.*, *MacQuesten Gen. Contracting, Inc. v. HCE, Inc.*, 2002 WL 31388716, at *1 (S.D.N.Y. Oct. 22, 2002) (denying motions *in limine* to preclude evidence of damages and expert testimony when each "involves factual disputes and credibility issues properly resolved by the jury").

---

expert] simply replicated calculations that [defendant] had already done. After that, [the expert] used the 'sum' function on Microsoft Excel . . . That too involves no expertise; it is simple addition." 682 F. Supp. 3d 368, 379 (S.D.N.Y. 2023). Here, not only did Rule perform substantive analysis of record evidence in his opinions (*supra* 14), but Rule also calculated (not simply copied) the quantities for Gilimex's inventory damages from Gilimex inventory count documentation. *See* Ex. 1 at n.39, Exhibit 1. In *Edmondson v. RCI Hosp. Holdings, Inc.*, the court held that an expert merely averaging two data points was a "basic mathematical calculation" that did not warrant expert testimony particularly where the expert did not "explain why averaging the two amounts is the most appropriate or accurate way to determine damages in this case." 2020 WL 1503452 (S.D.N.Y. Mar. 30, 2020). Amazon does not dispute Rule's methodology and overlooks the extent of Rule's work in presenting his opinions.

[5] Amazon itself expressly draws a distinction between the parties' ongoing relationship *before* Amazon's termination and Amazon's purported duty to "gradually ramp down production *after* termination of the parties' relationship." Dkt. 121 at 3 (emphasis in original). Even a cursory review of Rule's inventory damages opinion makes clear that the scope of this category of Gilimex's damages is prior to Amazon's termination.

Second, Amazon argues that "Gilimex's dismissed ramp-down theory is the only theory Gilimex offers to support its claim that Amazon should be required to purchase nearly 400,000 FPAs that it did not order and does not need." Mot. at 7-8. However, Rule's basis for calculating Gilimex's inventory damages is not tethered to Gilimex's belief that it was entitled to a ramp down in the event Amazon terminated the relationship, but rather that, "'but for' Amazon's Alleged Breaches"—which Rule defines to include Gilimex's allegations that "Amazon breached its fiduciary duties of care, honesty, good faith, and disclosure" (*see supra* at 2-3, Ex. 1 ¶1)—Amazon would have purchased Gilimex's *existing* inventory that Gilimex manufactured in reliance on Amazon's misrepresentations.

Amazon further argues, without any authority, that "Rule's remaining theory of liability, which posits that Amazon was required to provide 'advance forecasts of changes of demand' does not support the conclusion that Gilimex would have *made a profit* by selling nearly 400,000 FPAs to Amazon." Mot. at 8 (emphasis in original). But as this Court held, "the evidence could support a finding . . . that Defendant nevertheless misled Plaintiff about Defendant's intentions and the longer-term outlook of Defendant's need for pods in a way that Defendant knew was false" and that "Plaintiff has proffered evidence from which a reasonable jury could find that Plaintiff relied on these misrepresentations to its detriment," including because "Defendant caused Plaintiff to believe there would be no significant decrease in demand in 2022 or 2023, and as a result of that belief, Plaintiff expended money to obtain inventory, produce pods and secure raw materials . . . and lost profits."[6] Decision at 15-16; *see also* Decision at 11 (noting that there is a dispute of fact as to whether it was reasonable for Gilimex to manufacture inventory "based on Plaintiff's prior

[6] Any claim that Rule did not calculate the per-FPA out-of-pocket costs (Mot. at 8) is also false. Rule calculated material cost, variable production cost (which includes, among other things, direct manufacturing labor and production costs), and shipping costs in his calculation for Gilimex's lost profits. *See* Ex. 1 at ¶55.

experience with Defendant's demand forecast and in furtherance of Plaintiff's larger goal of meeting Defendant's variable demand").[7]

Finally, to the extent Amazon argues that Rule did not "explain why any supposed misrepresentations or omissions would have caused Gilimex to make nearly 400,000 extra FPAs that Amazon had no use for" (Mot. at 3-4), that is not his burden to bear on his expert report. Causation will be an issue presented through evidence at trial and which the jury will ultimately determine. Consistent with well-settled law, that is no basis to exclude Rule's opinions. *See, e.g.*, *Actava TV, Inc. v. Joint Stock Co. "Channel One Russia Worldwide"*, 2023 WL 2529115, at *6 n.9 (S.D.N.Y. Mar. 15, 2023) ("As an expert on damages, Dr. Kerr can assume a finding of liability.") (citation omitted); *Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 2015 WL 5459662, at *10 (S.D.N.Y. Sept. 16, 2015) ("[A] damages expert does not need to perform her own causation analysis to offer useful expert testimony.").[8]

## III. Rule's Raw Materials Damages Opinion Is Admissible

Amazon argues that Rule's opinion regarding Gilimex's raw materials is inadmissible for three distinct reasons—that the opinion lacks a "reliable foundation," is not based on "specialized knowledge," and is "untethered to Gilimex's liability theory"—each of which are incorrect.

### A. Challenges To Materials Rule Relied On Go To Weight Not Admissibility

As an initial matter, Amazon seeks to exclude Rule's raw materials damages opinion, and evidence related to raw materials generally, because the documents underlying Gilimex's damages

[7] That finding is in accord with Amazon's own expert, who conceded that he would have no further criticism of Rule's analysis with respect to the inventory damages if the jury finds that it was reasonable for Gilimex to continue manufacturing FPAs. *See* Ex. 3 at 95:25-96:21 ("If the jury were to find that it was reasonable for Gilimex to continue to manufacture the FPAs in inventory . . . would that change your analysis with regard to the FPAs in inventory damages? . . .if you ask me to assume that there was a basis tied to the alleged breach that allowed Gilimex to manufacture those, then it might change my analysis . . . I don't know that I would have any other criticisms to that").

[8] Amazon's own expert notes that it "is customary in evaluating damages in commercial disputes, I have assumed that Amazon is liable to Gilimex for breach of fiduciary duty." Ex. 4 at ¶6.

in this category purportedly "lack a reliable foundation" and cannot be authenticated, including because they were produced in connection with Rule's report immediately after the close of fact discovery. *See* Mot. at 8-9. To the extent Amazon, who made its own belated production of documents on January 5, 2024, believes there is a deficiency in Gilimex's discovery, it has had over 18 months to challenge any purported issues. *See Rahman v. Lee*, 2024 WL 4043697, at *2 (S.D.N.Y. Sept. 4, 2024) (denying motion *in limine* in part where defendant "waited until eve of trial to raise [discovery dispute]"); *Nemec v. Shrader*, 2015 WL 1650391, at *2-3 (S.D.N.Y. Apr. 13, 2015) (denying motion *in limine* for an adverse inference instruction as a sanction for alleged discovery abuses after extensive discovery where "[p]laintiffs had every opportunity to seek sanctions for alleged discovery misconduct during the years of pretrial discovery" yet "waited until days before trial to raise this quite complex issue. Moreover, they cloaked the issue in the sheep's clothing of a so-called *in limine* motion rather than call it what it is-a motion for discovery sanctions filed nearly 17 months after the close of discovery.").[9]

Moreover, Amazon challenges specific documents it believes are unreliable (Mot. at 9) and "Rule's opinion premised on [those] documents," but Amazon's argument goes to the issue of credibility and the weight of the evidence, not the admissibility of an entire category of claimed damages.[10] *See Howard v. Walker*, 406 F.3d 114, 127-28 (2d Cir. 2005) ("To the extent that the reliability of certain facts accepted by an expert is questionable, the exercise and process of cross-examination allow a [party] to bring any such factual disputes to the attention of the jury."); *Tyler*

---

[9] The court in *Nemec* further noted "a problem of incentives," specifically that "[w]ere the Court to grant the plaintiffs' motion, it in effect would encourage parties to stay silent as to some discovery disputes during pretrial proceedings, and thus to lie in wait until long after discovery is complete only to ambush their unsuspecting adversaries with charges of wrongdoing on the eve of trial. It would be counterproductive to permit this in circumstances in which any alleged discovery problem could and should have been addressed long ago." 2015 WL 1650391, at *3. That is precisely the issue here.

[10] Rule's basis for his raw materials damages is derived from two of Gilimex's sub-suppliers (*see* Ex. 1 at 12-15), yet Amazon appears to challenge documents related to only one. That is further cause for denying Amazon's motion to exclude an entire category of documents based on purported questions of certain documents' authenticity.

*v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1188 (2d Cir. 1992) (holding defendant's arguments that expert should be excluded based on "unfounded assumptions" are "better addressed to a jury" because they "do not address the admissibility of [expert] testimony" but rather "go to the weight, not the admissibility, of the testimony"); *US Airways, Inc. v. Sabre Holdings Corp.*, 2016 WL 11796987, at *1 (S.D.N.Y. Aug. 3, 2016) (Schofield, J.) ("Although [defendant] argues that the assumptions are incorrect, they are not so unrealistic or irrational as to suggest bad faith, and therefore are for the jury to evaluate."); *U.S. Bank Nat. Ass'n v. PHL Variable Life Ins. Co.*, 112 F. Supp. 3d 122, 134-35 (S.D.N.Y. 2015) (denying motion *in limine* to preclude expert based on purported unfounded assumptions because challenges to factual basis of expert opinion is a "quintessential jury issue" and through cross-examination can demonstrate 'garbage in, garbage out'"); *American Mfrs. Mut. Ins. Co. v. Cosmec, Inc.*, 2008 WL 11517682, at *5-6 (S.D.N.Y. Apr. 14, 2008) (denying motion to exclude plaintiff's expert's testimony at trial based upon a lack of proper authentication of evidence, with leave to renew the motion at trial in the event that a sufficient foundation is not laid at trial). Indeed, even where an expert opinion "relies upon some unverified or inaccurate information" it "is not *per se* unreliable." *Nike, Inc. v. StockX LLC*, 2024 WL 3361411, at *8 (S.D.N.Y. July 10, 2024) (internal quotation omitted); *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2022 WL 15053250, at *29 (E.D.N.Y. Oct. 26, 2022) ("[I]f a party provides its expert with a piece of false information or withheld relevant data, [the opposing party] can cross-examine the experts on this matter, calling into question the weight that the jury should accord their testimony.") (internal quotation omitted).[11]

---

[11] For the avoidance of doubt, as Gilimex's Chairman attests to in his declaration submitted in support of this opposition, the materials Rule relied on are authentic, and consistent with Gilimex business practice and Vietnamese law, are kept in hard copy with affixed physical signatures and corporate seals. *See* Le Hung Declaration.

**B. Rule's Opinion Is Based On Expert Analysis**

Amazon also seeks to exclude Rule's opinion on raw materials because it purportedly consists of "basic math" (Mot. at 10), but this argument fails for the same reasons as Amazon's attacks on Rule's inventory damages analysis. *Supra* 6-7. Rule reviewed and analyzed purchase orders, meeting minutes, debit notes, a detailed breakdown of 2022 costs, and related communications to distill his raw materials opinion. *See* Ex. 1 at ¶¶34-36. Amazon also ignores the additional work Rule performed to, among other things, limit Gilimex's claimed raw materials damages to one year of production and to ensure that there would not be a double count with Gilimex's inventory damages. *See* Ex. 1 at ¶38, n.59-60; Ex. 2 at 215:17-218:20.

**C. Gilimex's Raw Materials Damages Are Tied To Gilimex's Liability Theory**

Amazon further challenges Rule's assumptions that all of the raw materials Gilimex purportedly ordered were attributable to Amazon and that "Rule's opinion is completely untethered to any theory of liability." Mot. at 11. Amazon already argued on summary judgment that there was no basis for Gilimex to accrue raw materials after Amazon instructed Gilimex to stop ordering materials in April 2022 (*e.g.* Dkt. 95 at 13, 23 n.4), yet the Court held there is a question of fact "about the extent to which Plaintiff reposed confidence in and followed Defendant's instructions," including Gilimex's purchase of raw materials in light of Amazon's instructions concerning same.[12] *See* Decision at 11; *id.* at 16 ("Plaintiff has proffered evidence from which a reasonable jury could find that Plaintiff relied on these misrepresentations to its detriment. Plaintiff alleges that it was harmed because Defendant caused Plaintiff to believe there would be no significant decrease in demand in 2022 or 2023, and as a result of that belief, Plaintiff

[12] Further, as Amazon acknowledged in its motion *in limine* to exclude evidence of Gilimex's asserted raw materials damages, "[m]ost of Gilimex's raw materials damages are based on a single alleged November 2021 purchase order to Blazemax," which was well before April 2022. Dkt. 138 at 3.

expended money to obtain inventory, produce pods and secure raw materials . . ."); *id.* at 19 ("A reasonable jury could find that Plaintiff made investments and decisions based on Defendant's communications that Plaintiff otherwise would not have made had it known in early 2021 of Defendant's true intentions."). Amazon "may not use a motion in limine as a disguised attempt for a second bite at the apple for summary judgment." *Scottsdale Ins. Co. v. McGrath*, 2024 WL 4434943, at *1 (S.D.N.Y. Oct. 7, 2024) (collecting cases).[13]

Finally, Amazon is incorrect that Rule did not "investigate what raw materials Gilimex ordered, when Gilimex ordered those raw materials, or why Gilimex ordered them." Mot. at 11. First, Rule's Report does not include all unused raw materials. Rather, it includes only the "Amazon-specific materials" that Gilimex reasonably expected to use in the 2023 production season. *See* Ex. 1 at ¶¶31-33; Ex. 2 at 219:3-13. Further, the Report *does* analyze what raw materials Gilimex ordered, when Gilimex ordered those raw materials, and why Gilimex ordered them. *See e.g.*, Ex. 1 at n.45-46, 59, ¶¶34, 37.

## IV. Rule's Lost Profits Damages Opinion Is Admissible

Lastly, Amazon seeks to exclude Rule's lost profits opinion as irrelevant insofar as it is based on Gilimex's claim to a ramp down period, and because the opinion purportedly is derived from speculative and unsubstantiated assumptions. Mot. at 12-15. Amazon is wrong.

[13] In any event, to the extent Amazon believes Rule's assumptions are unfounded, that is not a basis to exclude this opinion. *See supra* 10. Amazon's own expert conceded that, should the jury find that it was reasonable for Gilimex to order raw materials in advance, then he would have no further criticism of Rule's analysis. *See* Ex. 3 at 156:24-157:22 ("If the finder of fact was determine that there was a business practice between Amazon and Gilimex, whereby Gilimex would place a bulk order for all of its raw materials for the following season . . . would you have any critique of Mr. Rule's calculation of raw material damages[?] . . . if you're asking me to assume that there was this practice, and assume that Amazon is responsible to reimburse them for those materials . . . then I don't know that I would have any other criticisms").

### A. Rule's Lost Profits Opinion Is Relevant

Amazon first seeks to exclude Rule's lost profits opinion because it is purportedly foreclosed by the Court's summary judgment decision and thus irrelevant. Mot. at 12. Not so. As explained further in Gilimex's opposition to Amazon's motion to exclude evidence of any purported obligation to provide a ramp down period and advance notice of termination, even though the Court precluded Gilimex's claimed fiduciary duty on these bases, evidence of a ramp down or advance notice of termination is clearly relevant to Gilimex's intentional misrepresentation and 93A claims because "had Plaintiff known Defendant's true position regarding the relationship and likelihood of its termination in the near future, Plaintiff may have acted differently, such as by beginning to prepare for a ramp-down and pivoting to focus on other customers." Decision at 14; Ramp Down Opp. at 1-4. And as stated *supra* 6, this Court has already recognized that "Plaintiff proffered evidence that a reasonable jury could find that Plaintiff relied on these misrepresentations to its detriment" including suffering lost profits.[14]

### B. Rule's Lost Profits Opinion Is Reliable

Finally, Amazon argues that Rule's lost profits analysis relies on "speculative and unsubstantiated assumptions." Mot. at 13-15. Amazon cites *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 22 (2d Cir. 1996) for the proposition that it is an "abuse of discretion" to admit expert testimony based on "speculative assumptions," but Rule's opinions are a far cry from being

[14] That finding is in accord with the available damages to Gilimex under Massachusetts law, including lost profits, which are recoverable for Gilimex's surviving claims. *See Cambridge Plating Co. v. Napco, Inc.*, 85 F.3d 752, 772 (1st Cir. 1996) (finding there was sufficient evidence of causation to support award of damages for lost profits on fraud and willful breach of warranty claims); *KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC*, 729 F. Supp. 3d 84, 120-21 (D. Mass. 2024), judgment entered, 2025 WL 438735 (D. Mass. Feb. 7, 2025) ("'actual damages' in the 93A context 'consist[s] of all damages foreseeably flowing from an unfair or deceptive act or practice'" including lost profits); *Incase, Inc. v. Timex Corp.*, 421 F. Supp. 2d 226, 242 (D. Mass. 2006), *aff'd*, 488 F.3d 46 (1st Cir. 2007) (same); *O'Brien v. Pearson*, 449 Mass. 377, 388 (2007) (recognizing lost profits as compensatory damages for breach of fiduciary duty); *see also Crawford-Brunt v. Kruskall*, 2021 WL 3516523, at *5 (D. Mass. Aug. 9, 2021) (noting that lost profits expectation damages are appropriate where plaintiffs acquired something they "did not want" or "had less value than it was represented to have") (citing *Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co.*, 445 Mass. 411, 425-26 (2005)).

Case 1:23-cv-00292-LGS Document 151 Filed 05/21/25 Page 19 of 21

inadmissible. In *Boucher* for instance, the expert in a products liability case estimated lost earnings "based on assumptions about [plaintiff's] employment prospects that represent a complete break with his work history of seasonal and intermittent employment." *Id.* Conversely, here, Rule did not speculate or assume anything even remotely close to resembling a "complete break" from reality, and in fact, not only based his opinion on Gilimex's own expectations reflected in record evidence, but also independently checked the reasonableness of his opinions through his own review of record evidence. *See, e.g.*, Ex. 1 at ¶40 n.63. To the extent Amazon believes Rule's assumptions are "implausible" (Mot. at 13), such challenges go to the weight of his expert opinion, not the admissibility. *See supra* 10; *SourceOne Dental, Inc. v. Patterson Companies, Inc.*, 2018 WL 2172667, at *6 (E.D.N.Y. May 10, 2018) (denying motion *in limine* to preclude where objections to expert's damages model "focus almost entirely on his factual inputs and assumptions rather than his methodology" because "[t]hese objections go to the probative value of [expert's] testimony, not its admissibility, and the jury will decide how probative it is").

Furthermore, to the extent Rule noted that he included different scenarios "for the sake of completeness and conservatism," they are not divorced from any analysis demonstrating a basis for those scenarios, despite Amazon's suggestions to the contrary. In fact, Rule cites specific record evidence for each scenario.[15] *See* Ex. 1 at ¶40; Ex. 2 at 56:16-58:10. Nor is Amazon correct

---

[15] That is unlike the situation in *Price v. L'Oreal USA, Inc.*, 2020 WL 4937464, at *7 (S.D.N.Y. Aug. 24, 2020), where the expert in question did not provide an adequate explanation for his methodology "beyond emphasizing that he used the rate [i]n order to be conservative." Here, while Rule presented different factual scenarios "for the sake of completeness and conservatism," the scenarios themselves are expressly based on record evidence, and Rule did not, and is not, opining on the appropriate lost profits period. Rule expressly stated that, "While these are the scenarios that Counsel asked me to calculate at this time, I can update my calculation as appropriate based on the trier of fact's decisions regarding the appropriate ramp down period." Ex. 1 at ¶41. Indeed, even if Gilimex was only entitled to 30 days' advance notice of Amazon's termination, Gilimex would have ramped down its production of FPAs during that limited window. Therefore, at minimum, the first two of Rule's scenarios presented in his opinion, measuring one year at full capacity and a one-year ramp down (*see* Ex. 1 at ¶40), would be relevant to determining what portion of those calculations would be applicable to a 30-day ramp down or termination period.

that Rule's assumptions are "pulled out of thin air." Mot. at 14. As Rule explained in his report, he conducted his lost profits analysis based on the contemporaneous "latest agreed prices between Gilimex and Amazon" to estimate prices looking forward because no such prices exist beyond the 2022 season given that Gilimex stopped producing FPAs in 2022. Ex. 1 at ¶51; Ex. 2 at 94:11-21. Rule's opinions are therefore not premised on speculative and unreliable assumptions and there is no basis to categorically exclude Rule's testimony on Gilimex's damages.

**CONCLUSION**

For all of the foregoing reasons, the Court should deny Amazon's Motion.

Dated: May 21, 2025
New York, New York

**KASOWITZ BENSON TORRES LLP**

By: _/s/ Marc E. Kasowitz_
Marc E. Kasowitz
Edward E. Filusch

1633 Broadway
New York, New York 10019
Tel.: (212) 506-1710
Fax: (212) 506-1800

**CERTIFICATE OF COMPLIANCE**

I, Edward E. Filusch, certify that Plaintiff Gilimex's Memorandum of Law in Support of its Opposition to Amazon's Motion *in Limine* complies with the requirements of Local Rule 7.1(c), as modified by § I (A)(2) of this Court's Individual Trial Rules and Procedures and this Court's Order, Dkt. 118, granting Defendant's request for an extension of the page limit for this Motion to 15 pages and providing Plaintiff 15 pages for its Opposition.

I further certify that this Memorandum of Law was prepared with a computer.

Dated: May 21, 2025

*/s/ Edward E. Filusch*
Edward E. Filusch